No. 24-40792

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

TEXAS TOP COP SHOP, INC., et al.,

*Plaintiffs-Appellees*,

v.

MERRICK GARLAND, ATTORNEY GENERAL OF THE UNITED
STATES, et al.,

*Defendants-Appellants*.

Appeal from the United States District Court
for the Eastern District of Texas, Sherman Division
(No. 4:24-cv-478, Hon. Amos L. Mazzant)

_____

## BRIEF OF AMICUS CURIAE AMERICANS FOR PROSPERITY FOUNDATION IN SUPPORT OF PLAINTIFFS-APPELLEES' OPPOSITION TO DEFENDANTS-APPELLANTS' EMERGENCY MOTION FOR STAY PENDING APPEAL

_____

Michael Pepson
AMERICANS FOR PROSPERITY FOUNDATION
4201 Wilson Blvd., Ste. 1000
Arlington, VA 22203
571.329.4529
mpepson@afphq.org

December 17, 2024          *Attorney for Amicus Curiae*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record for *amicus curiae* Americans for Prosperity Foundation certifies that the following listed persons and entities as described in Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case.

| | |
|---|---|
| Texas Top Cop Shop, Inc.; Russell Straayer; Mustardseed Livestock, L.L.C.; Libertarian Party of Mississippi; National Federation of Independent Business, Inc.; Data Comm for Business, Incorporated<br>**Plaintiffs-Appellees** | Caleb Kruckenberg; Center for Individual Rights; John Clay Sullivan; SL Law, P.L.L.C.; Andrew M. Grossman; Baker & Hostetler LLP<br><br>**Counsel for Plaintiffs-Appellees** |
| Merrick Garland, U.S. Attorney General; U.S. Treasury Department; Andrea Gacki, Director of the Financial Crimes Enforcement Network; FinCEN; Janet Yellen, Secretary of the U.S. Department of Treasury<br>**Defendants-Appellants** | Daniel Tenny; Steven H. Hazel; Faith E. Lowry; Sophia Shams; Brian M. Boynton; Damien Diggs; U.S. Department of Justice<br><br><br>**Counsel for Defendants-Appellants** |
| Eagle Forum Education & Legal Defense Fund<br>*Amicus Curiae* | Andrew L. Schlafly<br>**Counsel for *Amicus Curiae* Eagle Forum Education & Legal Defense** |
| Americans for Prosperity Foundation<br>*Amicus Curiae* | Michael Pepson<br>**Counsel for *Amicus Curiae* AFPF** |

Undersigned counsel further certifies that *amicus curiae* Americans for Prosperity Foundation is a nonprofit corporation. It has no parent companies, subsidiaries, or affiliates that have issued shares or debt securities to the public.

These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

/s/ Michael Pepson

Dated: December 17, 2024        Michael Pepson

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ................................................... i

TABLE OF AUTHORITIES .............................................................. iii

INTEREST OF *AMICUS CURIAE* ........................................................ 1

SUMMARY OF ARGUMENT ............................................................... 1

ARGUMENT .......................................................................... 3

    I.   Federalism Protects Liberty ..................................................... 3

    II.  Congress's Legislative Power Is Not Plenary But Narrow and Limited .... 4

        A.  The Commerce Clause, As Originally Understood, Only Grants Congress Power to Regulate Interstate Trade and Transportation ........................ 5

        B.  The Necessary and Proper Clause Is Not a Free-Floating Source of Federal Power Untethered to Congress's Enumerated Powers .......................... 8

    III. The CTA Exceeds Constitutional Limits on Federal .................................. 10

        A.  The CTA Infringes States' Sovereign Power ......................................... 10

        B.  The CTA Is Unconstitutional Under the Original Understanding of the Commerce Clause .................................................................. 11

        C.  The CTA Fails the Judicially Created "Substantial Effects" Test ......... 12

    IV. The "Substantial Effects" Test Has No Basis In the Constitution .............. 14

    V.  This Court Should Enforce the Constitution's Original Public Meaning to the Maximum Extent Permissible Under Existing Precedent .......................... 15

CONCLUSION ........................................................................ 16

CERTIFICATE OF COMPLIANCE ......................................................... 17

CERTIFICATE OF SERVICE ............................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Artis v. District of Columbia*,
   583 U.S. 71 (2018)..................................................................10

*Bond v. United States*,
   572 U.S. 844 (2014)...............................................................3, 10

*Bond v. United States*,
   564 U.S. 211 (2011)................................................................3, 4

*Carter v. Carter Coal Co.*,
   298 U.S. 238 (1936)...................................................................6

*Cort v. Ash*,
   422 U.S. 66 (1975)...................................................................10

*CTS Corp. v. Dynamics Corp. of Am.*,
   481 U.S. 69 (1987)...................................................................10

*Dobbs v. Jackson Women's Health Org.*,
   597 U.S. 215 (2022)...................................................................5

*Gibbons v. Ogden*,
   22 U.S. (9 Wheat.) 1 (1824)...............................................4, 5, 6, 7

*Gonzales v. Raich*,
   545 U.S. 1 (2005)............................................................4, 6, 14, 15

*Gregory v. Ashcroft*,
   501 U.S. 452 (1991)...................................................................3

*Haaland v. Brackeen*,
   599 U.S. 255 (2023)..................................................................7, 8

*Kinsella v. United States*,
   361 U.S. 234 (1960)...................................................................8

*License Tax Cases*,
   72 U.S. (5 Wall.) 462 (1867) ..........................................................7

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
    591 U.S. 657 (2020) ........................................................................13

*Marbury v. Madison*,
    5 U.S. (1 Cranch) 137 (1803) ..........................................................4

*Martin v. Hunter's Lessee*,
    14 U.S. (1 Wheat.) 304 (1816) ........................................................4

*McCulloch v. Maryland*,
    17 U.S. (4 Wheat.) 316 (1819) .................................................4, 9, 10

*NFIB v. Sebelius*,
    567 U.S. 519 (2012) ................................................................2, 3, 4, 13

*NSBU v. Yellen*,
    721 F. Supp. 3d 1260 (N.D. Ala. 2024) ....................2, 10, 12, 13, 15

*Printz v. United States*,
    521 U.S. 898 (1997) ......................................................................3, 8

*Sackett v. EPA*,
    598 U.S. 651 (2023) ...............................................................5, 14, 15

*Seila Law LLC v. Consumer Financial Protection Bureau*,
    591 U.S. 197 (2020) ...................................................................13, 14

*Taylor v. United States*,
    579 U.S. 301 (2016) ...................................................................11, 12

*Texas v. Rettig*,
    993 F.3d 408 (5th Cir. 2021) ..........................................................16

*United States v. Allen*,
    86 F.4th 295 (6th Cir. 2023) ...................................3, 7, 12, 14, 15, 16

*United States v. Al-Maliki*,
    787 F.3d 784 (6th Cir. 2015) ..........................................................14

*United States v. Comstock*,
    560 U.S. 126 (2010) ......................................................................8, 9

*United States v. Darby,*
    312 U.S. 100 (1941).......................................................................15

*United States v. Dewitt,*
    76 U.S. (9 Wall.) 41 (1869) ..............................................................7

*United States v. E.C. Knight Co.,*
    156 U.S. 1 (1895).............................................................................3

*United States v. Lopez,*
    514 U.S. 549 (1995)....................................................6, 12, 13, 14, 15

*United States v. Morrison,*
    529 U.S. 598 (2000).....................................................................4, 13

*United States v. Rife,*
    33 F.4th 838 (6th Cir. 2022) .................................................5, 6, 7, 15

*United States v. Seekins,*
    52 F.4th 988 (5th Cir. 2022) ............................................................4, 16

*Wickard v. Filburn,*
    317 U.S. 111 (1942).....................................................................14, 15

*Zivotofsky v. Kerry,*
    576 U.S. 1 (2015)............................................................................10

**Constitution**

U.S. Const., art. I, § 8, cl. 3.................................................................2, 5

U.S. Const., art. I, § 8, cl. 18.......................................................2, 5, 8, 9

U.S. Const. amend. X.................................................................2, 4, 15

**Statutes**

Ala. Code § 10A-1-2.01....................................................................11

8 Del. Code § 101(b)..........................................................................11

31 U.S.C. § 5336..............................................................................12

31 U.S.C. § 5336(a)(11)....................................................................11

31 U.S.C. § 5336(h) ...................................................................2

**Rules**

FRAP 29(a)(4)(E) ......................................................................1

**Other Authorities**

Antonin Scalia,
*Foreword: The Importance of Structure in Constitutional
Interpretation*,
83 Notre Dame L. Rev. 1417 (2008) ....................................1

George A. Mocsary,
*Freedom of Corporate Purpose*,
2016 B.Y.U.L. Rev. 1319 (2016) ........................................11

Randy E. Barnett,
*New Evidence of the Original Meaning of the Commerce Clause*,
55 Ark. L. Rev. 847 (2003)....................................................6

Randy E. Barnett,
*The Original Meaning of the Commerce Clause*,
68 U. Chi. L. Rev. 101 (2001) ......................................5, 7, 8

Randy E. Barnett,
*The Original Meaning of the Necessary and Proper Clause*,
6 U. Pa. J. Const. L. 183 (2003) ....................................9, 14

1 S. Johnson, A Dictionary of the English Language (6th ed. 1785) .......................5

William J. Seidleck,
*Originalism and the General Concurrence: How Originalists Can
Accommodate Entrenched Precedents While Reining in Commerce
Clause Doctrine*,
3 U. Pa. J. L. & Pub. Affs. 263 (2018) ............................6, 7

# INTEREST OF *AMICUS CURIAE*[1]

*Amicus curiae* Americans for Prosperity Foundation ("AFPF") is a 501(c)(3) nonprofit organization committed to educating and training Americans to be courageous advocates for the ideas, principles, and policies of a free and open society. Some of those key ideas include the vertical and horizontal separation of powers, federalism, and constitutionally limited government. As part of this mission, AFPF appears as *amicus curiae* before state and federal courts.

# SUMMARY OF ARGUMENT

"The constitutional structure of the United States has two main features: (1) separation and equilibration of powers and (2) federalism. Each functions to safeguard individual liberty in isolation, but they provide even greater protection working together." Antonin Scalia, *Foreword: The Importance of Structure in Constitutional Interpretation*, 83 Notre Dame L. Rev. 1417, 1418 (2008). "In the compound republic of America, the power surrendered by the people is first divided between two distinct governments, and then the portion allotted to each subdivided among distinct and separate departments." *Id.* at 1418–19.

---

[1] This brief is accompanied by an unopposed motion for leave to file. Pursuant to FRAP 29(a)(4)(E), *amicus curiae* states that no counsel for a party other than AFPF authored this brief in whole or in part, and no counsel or party other than AFPF made a monetary contribution intended to fund the preparation or submission of this brief. No person other than *amicus curiae* or its counsel made a monetary contribution to its preparation or submission.

Under this system of dual sovereignty, the federal government's powers are not unlimited but rather narrow and defined. Thus, while the Constitution grants Congress authority "to regulate Commerce" "among the several States," U.S. Const., art. I, § 8, cl. 3, and to "make all Laws which shall be necessary and proper for carrying into Execution" that power, U.S. Const. art. I, § 8, cl. 18, it does not grant the federal government a general police power. The Constitution instead reserves to the States the general task of governing. U.S. Const. amend. X.

The Corporate Transparency Act ("CTA") is an "unprecedented," Add. A2, affront to our system of federalism that "would work a substantial expansion of federal authority," *NFIB v. Sebelius*, 567 U.S. 519, 560 (2012); *see* Add. A53. Its federal disclosure regime is triggered by a wholly *intra*state ministerial act—entity formation under state law—without any necessary link to commerce, let alone *inter*state commerce. "The ultimate result of this statutory scheme is that tens of millions of Americans must either disclose their personal information to FinCEN through State-registered entities, or risk years of prison time and thousands of dollars in civil and criminal fines." *NSBU v. Yellen*, 721 F. Supp. 3d 1260, 1269 (N.D. Ala. 2024), *appeal filed*, No. No. 24-10736 (11th Cir.); *see* 31 U.S.C. § 5336(h). This *ultra vires* and unconstitutional assertion of federal power should not be allowed to stand. "To hold otherwise would be to unleash a slippery slope that could wreak havoc on the structure of our government." Add. A72.

This Court should therefore deny the government's stay motion.

## ARGUMENT

### I. Federalism Protects Liberty.

"[O]ur Constitution establishes a system of dual sovereignty[.]" *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991). "The States have broad authority to enact legislation for the public good—what we have often called a 'police power.' The Federal Government, by contrast, has no such authority[.]" *Bond v. United States ("Bond II")*, 572 U.S. 844, 854 (2014) (cleaned up). The "general power of governing" belongs to the States, not the federal government. *See NFIB*, 567 U.S. at 535–36. *Cf. United States v. E.C. Knight Co.*, 156 U.S. 1, 12 (1895). "This separation of the two spheres is one of the Constitution's structural protections of liberty." *Printz v. United States*, 521 U.S. 898, 921 (1997). It is "a check on the power of the Federal Government[.]" *NFIB*, 567 U.S. at 536.

"By denying any one government complete jurisdiction over all the concerns of public life, federalism protects the liberty of the individual from arbitrary power." *Bond v. United States (Bond I)*, 564 U.S. 211, 222 (2011). Federalism thereby "protect[s] the liberty of the local communities in each State to choose the policies that would govern their local conduct." *United States v. Allen*, 86 F.4th 295, 313 (6th Cir. 2023) (Murphy, J., concurring). And it "ensur[es] that laws enacted in excess of delegated governmental power cannot direct or control their actions," *Bond I*, 564

U.S. at 222, and "promotes innovation[.]" *Gonzales v. Raich*, 545 U.S. 1, 42 (2005) (O'Connor, J., dissenting).

## II. Congress's Legislative Power Is Not Plenary But Narrow and Limited.

Under the Constitution, the federal government is "one of enumerated powers." *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 405 (1819). This "presupposes something not enumerated[.]" *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 195 (1824). "[T]he Constitution cannot realistically be interpreted as granting the Federal Government an unlimited license to regulate." *United States v. Morrison*, 529 U.S. 598, 618 n.8 (2000). To the contrary, it "can claim no powers which are not granted to it by the [C]onstitution, and the powers actually granted, must be such as are expressly given, or given by necessary implication." *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 304, 326 (1816); *see* U.S. Const. amend. X. "And those powers are 'few and defined.'" *United States v. Seekins*, 52 F.4th 988, 990 (5th Cir. 2022) (Ho, J., dissenting from denial of rehearing en banc) (citation omitted).

"Every law enacted by Congress must be based on one or more of its powers enumerated in the Constitution." *Morrison*, 529 U.S. at 607; *see NFIB*, 567 U.S. at 535. Without a constitutional grant of authority to Congress, it simply cannot act. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 176 (1803) ("The powers of the legislature are defined, and limited; and that those limits may not be mistaken, or forgotten, the constitution is written."). As relevant here, Article I grants Congress

authority "to regulate Commerce" "among the several States," U.S. Const., art. I, § 8, cl. 3, and "make all Laws which shall be necessary and proper for carrying into Execution" that power, U.S. Const. art. I, § 8, cl. 18. Neither provision can justify the CTA.

## A. The Commerce Clause, As Originally Understood, Only Grants Congress Power to Regulate Interstate Trade and Transportation.

"The [Commerce] Clause's text, structure, and history all indicate that, at the time of the founding, the term 'commerce' consisted of selling, buying, and bartering, as well as transporting for these purposes." *Sackett v. EPA*, 598 U.S. 651, 708 (2023) (Thomas, J., concurring) (cleaned up).

"Constitutional analysis must begin with 'the language of the instrument,' which offers a 'fixed standard' for ascertaining what our founding document means." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 235 (2022) (citations omitted). "The public meaning of 'commerce' at the time of the Constitution's ratification . . . meant 'trade' or economic 'intercourse,' which consisted of 'exchange of one thing for another,' 'interchange,' or 'traffick.'" *United States v. Rife*, 33 F.4th 838, 842 (6th Cir. 2022) (Kethledge, J.) (citing 1 S. Johnson, A Dictionary of the English Language 422 (6th ed. 1785)); *see* Randy Barnett, *The Original Meaning of the Commerce Clause*, 68 U. Chi. L. Rev. 101, 146 (2001). As Chief Justice Marshall put it: "Commerce, undoubtedly, is traffic, but it is something more: it is intercourse. It describes the commercial intercourse between nations, and

parts of nations[.]" *Gibbons,* 22 U.S. (9 Wheat.) at 189–90; *see Carter v. Carter Coal Co.,* 298 U.S. 238, 298 (1936).

"[W]hen Federalists and Anti-Federalists discussed the Commerce Clause during the ratification period, they often used trade (in its selling/bartering sense) and commerce interchangeably." *United States v. Lopez*, 514 U.S. 549, 586 (1995) (Thomas, J., concurring). "Commerce, or trade, stood in contrast to productive activities like manufacturing and agriculture." *Raich*, 545 U.S. at 58 (Thomas, J., dissenting); *see Lopez*, 514 U.S. at 587 (Thomas, J., concurring). "[T]he founding generation would not have seen production activities, such as manufacturing, mining, and agriculture, as being part of commerce." William J. Seidleck, *Originalism and the General Concurrence: How Originalists Can Accommodate Entrenched Precedents While Reining in Commerce Clause Doctrine*, 3 U. Pa. J. L. & Pub. Affs. 263, 269 (2018).

"Federalists and Antifederalists alike . . . distinguished 'commerce' from manufacturing and agriculture." *Rife*, 33 F.4th at 842 (citations omitted). "The term 'commerce' commonly meant trade or exchange (and shipping for these purposes) not simply to those involved in the drafting and ratification processes, but also to the general public." *Raich*, 545 U.S. at 59 (Thomas, J., dissenting) (citing Randy Barnett, *New Evidence of the Original Meaning of the Commerce Clause*, 55 Ark. L. Rev. 847, 857–62 (2003)). In short, "[t]he founding generation understood the

term 'commerce' to mean only 'trade or exchange of goods.'" Seidleck, 3 U. Pa. J. L. & Pub. Affs. at 269.

As originally understood, then, the Commerce Clause "allowed Congress to regulate both 'trade' and the 'transportation' of the traded products." *Allen*, 86 F.4th at 308–09 (Murphy, J., concurring) (quoting *Rife*, 33 F.4th at 842). And it only empowered Congress to regulate *inter*state (not *intra*state) trade and transportation. *See United States v. Dewitt*, 76 U.S. (9 Wall.) 41, 43–44 (1869). That is, "Congress's power under the Interstate Commerce Clause operates only on commerce that involves 'more States than one.'" *Haaland v. Brackeen*, 599 U.S. 255, 323 (2023) (Gorsuch, J., concurring) (quoting *Gibbons*, 22 U.S. (9 Wheat.) at 194); *see License Tax Cases*, 72 U.S. (5 Wall.) 462, 470–71 (1867).

This commonsense conclusion flows from the Clause's text. *See* Barnett, 68 U. Chi. L. Rev. at 132. "[T]he term 'among' found in the Interstate Commerce Clause most naturally suggests that Congress may regulate only activities that extend in their *operation* beyond the bounds of a particular State and into another." *Brackeen*, 599 U.S. at 321–22 (Gorsuch, J., concurring) (cleaned up). The Federalist Papers, ratification debates, and "a scholarly and judicial consensus" further support this reading. *See* Barnett, 68 U. Chi. L. Rev. at 132–36. "In other words, commerce that takes place 'among' (or between) two or more *territorial* units, and not just any

commerce that involves *some* member of *some* State." *Brackeen*, 599 U.S. at 323 (Gorsuch, J., concurring) (citation omitted).

In sum, the Commerce Clause gives Congress "power to specify rules to govern the manner by which people may exchange or trade goods from one state to another . . . and to both regulate and restrict the flow of goods to and from other nations (and the Indian tribes) for the purpose of promoting the domestic economy and foreign trade." Barnett, 68 U. Chi. L. Rev. at 146. But that is all.

## B.   The Necessary and Proper Clause Is Not a Free-Floating Source of Federal Power Untethered to Congress's Enumerated Powers.

Justice Scalia colorfully described the Necessary and Proper Clause as the "best hope of those who defend *ultra vires* congressional action[.]" *Printz*, 521 U.S. at 923. But it "does not give Congress *carte blanche*." *United States v. Comstock*, 560 U.S. 126, 158 (2010) (Alito, J., concurring). It "is not itself a grant of power, but a caveat that the Congress possesses all the means necessary to carry out the specifically granted 'foregoing' powers of § 8 'and all other Powers vested by this Constitution[.]'" *Kinsella v. United States*, 361 U.S. 234, 247 (1960). The "Clause empowers Congress to enact only those laws that 'carr[y] into Execution' one or more of the federal powers enumerated in the Constitution." *Comstock*, 560 U.S. at 159 (Thomas, J., dissenting) (quoting U.S. Const. art. I, § 8, cl. 18). It is not

a free-floating source of federal power and thus cannot save laws that are untethered to Congress's enumerated powers.[2]

As Chief Justice Marshall described the Clause's sweep: "Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional." *McCulloch*, 17 U.S. (4 Wheat.) at 421. For a law to fall within the scope of Congress's power under the Clause it "must be directed toward" "the powers expressly delegated to the Federal Government by some provision in the Constitution," and "there must be a necessary and proper fit between the 'means' (the federal law) and the 'end' (the enumerated power or powers) it is designed to serve." *Comstock*, 560 U.S. at 160 (Thomas, J., dissenting).

In sum, "no matter how 'necessary' or 'proper' an Act of Congress may be to its objective, Congress lacks authority to legislate if the objective is anything other than 'carrying into Execution' one or more of the Federal Government's enumerated powers." *Id.* at 161 (Thomas, J., dissenting) (quoting U.S. Const. art. I, § 8, cl. 18); *see id.* at 158 (Alito, J., concurring). *Cf. id.* at 150 (Kennedy, J., concurring in judgment) ("[T]he analysis depends not on the number of links in the congressional-

_____

[2] Federalists "insisted that the Necessary and Proper Clause was not an additional freestanding grant of power[.]" Randy Barnett, *The Original Meaning of the Necessary and Proper Clause*, 6 U. Pa. J. Const. L. 183, 185 (2003).

power chain but on the strength of the chain."). And "[n]o law that flattens the principle of state sovereignty, whether or not 'necessary,' can be said to be 'proper.'" *Bond II*, 572 U.S. at 879 (Scalia, J., concurring in judgment); *see Artis v. District of Columbia*, 583 U.S. 71, 106 (2018) (Gorsuch, J., dissenting); *Zivotofsky v. Kerry*, 576 U.S. 1, 48 (2015) (Thomas, J., concurring in judgment, dissenting in part).

### III. The CTA Exceeds Constitutional Limits on Federal Power.

#### A. The CTA Infringes States' Sovereign Power.

"The plain text of the CTA does not regulate the channels and instrumentalities of commerce, let alone commercial or economic activity." *NSBU*, 721 F. Supp. 3d at 1278. Instead, the CTA regulatory regime is triggered by purely *intra*state noncommercial conduct (entity formation under state law) that may not have any nexus with commercial activity, let alone *inter*state commerce.

Regulation of entity formation is a core exercise of State police power. "Corporations are creatures of state law[.]" *Cort v. Ash*, 422 U.S. 66, 84 (1975). "No principle of corporation law and practice is more firmly established than a State's authority to regulate domestic corporations[.]" *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 89 (1987). Indeed, "[a] State can create a corporation, in virtue of its sovereignty, without any specific authority for that purpose, conferred in the State constitutions." *McCulloch*, 17 U.S. (4 Wheat.) at 400.

In many states, corporations may be formed for any lawful purpose, many of which are noncommercial. *See, e.g.*, Ala. Code § 10A-1-2.01; 8 Del. Code § 101(b); *see* George Mocsary, *Freedom of Corporate Purpose*, 2016 B.Y.U. L. Rev. 1319, 1365 (2016). People form entities for noncommercial reasons, including solely to exercise freedom of association, protect privacy, or hold real property.

Yet the CTA's regulatory regime and reporting requirements are triggered by the bare act of entity formation under state or tribal law the moment an entity is formed, irrespective of the entity's purpose and whether it will ultimately engage in any activity at all. The CTA's definition of "reporting company" sweeps in entities engaged solely in intrastate activities within the borders of the State in which they are formed and noncommercial entities. *See* 31 U.S.C. § 5336(a)(11). For example, entities formed to hold a family residence and entities formed with the intent to seek 501(c) federal tax-exempt status that have not received that status are subject to the CTA's requirements. So, too, are non-profit entities like local private social clubs that do not intend to seek 501(c) federal tax-exempt status.

The CTA thereby reaches entirely *intra*state *non*commercial conduct.

## B. The CTA Is Unconstitutional Under the Original Understanding of the Commerce Clause.

The CTA plainly exceeds Congress's power under the Commerce Clause as understood by the Framers. The Clause "empowers Congress to regulate the buying and selling of goods and services trafficked across state lines." *Taylor v. United*

*States*, 579 U.S. 301, 313 (2016) (Thomas, J., dissenting) (cleaned up). That is, it "originally allowed Congress to regulate both 'trade' and the 'transportation' of the traded products." *Allen*, 86 F.4th at 308–09 (Murphy, J., concurring) (citation omitted). The CTA regulates neither. *See* Add. A38–A40. Because the CTA's objective has nothing to do with Congress's enumerated powers under the Commerce Clause it also falls outside the scope of Congress's power under the Necessary and Proper Clause.

### C.     The CTA Fails the Judicially Created "Substantial Effects" Test.

Even under the Supreme Court's modern Commerce Clause doctrine, the CTA fails to pass constitutional muster. The Court's modern jurisprudence authorizes Congress to regulate three categories of interstate commerce: "the use of the channels of interstate commerce"; "the instrumentalities of interstate commerce"; and  "activities that substantially affect interstate commerce." *Lopez*, 514 U.S. at 558–59 (citations omitted). The CTA regulates none of those things.

"[T]he CTA does not regulate, by its text, a channel or instrumentality of commerce." Add. A38. "The word 'commerce,' or references to any channel or instrumentality of commerce, are nowhere to be found in the CTA." *NSBU*, 721 F. Supp. 3d at 1278 (citing 31 U.S.C. § 5336). It "does not facially regulate commerce." Add. A52. Thus, if the CTA is to be upheld it must fall within Congress's authority

to regulate "activities that substantially affect interstate commerce." *Morrison*, 529 U.S. at 608–09 (cleaned up). It does not.

The CTA has "no express jurisdictional element which might limit its reach" to entities that "have an explicit connection with or effect on interstate commerce." *Lopez*, 514 U.S. at 562. That alone is a fatal constitutional defect. Given that the CTA's regulatory regime is triggered by the mere act of entity formation under state law and sweeps in entities created for noncommercial reasons that may not engage in any activity, let alone *commercial* activity, the absence of a jurisdictional hook or even any reference to commerce renders the statute facially invalid even under current precedent.[3] *See id.* at 561; *Morrison*, 529 U.S. at 613.

The CTA's novelty underscores its unconstitutionality. "[S]ometimes 'the most telling indication of [a] severe constitutional problem [] is the lack of historical precedent' for Congress's action." *NFIB*, 567 U.S. at 549 (citation omitted). That resonates here. *See* Add. A45–A46; *NSBU*, 721 F. Supp. 3d at 1281. The statute is "unprecedented[.]" Add. A2.

This Court cannot solve the CTA's constitutional problems by judicially editing it. *See Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 677 (2020). Nor can constitutional avoidance rescue Congress's constitutionally flawed handiwork. *See Seila Law LLC v. CFPB,* 591 U.S. 197, 230

---

[3] The district court correctly identified additional infirmities. *See* Add. A52–A53.

(2020). And because the CTA's objectives are untethered to Congress's Commerce Clause powers, the Necessary and Proper Clause cannot support the CTA's intrusions on individual liberty and State sovereignty. *See Raich*, 545 U.S. at 34 (Scalia, J., concurring); Barnett, 6 U. Pa. J. Const. L. at 185; *see also Lopez,* 514 U.S. at 588–89 (Thomas, J., concurring); Add. A55–A56.

In sum, the district court correctly found that "the CTA exceeds Congress's commerce power," Add. A46, and "cannot be upheld as a necessary and proper component of Congress's commerce power," Add. A56.

## IV.   The "Substantial Effects" Test Has No Basis In the Constitution.

The federal government's overreach here showcases why it is important to return to the Constitution's original public meaning.

"[T]he [Supreme] Court's Commerce Clause jurisprudence has significantly departed from the original meaning of the Constitution." *Sackett*, 598 U.S. at 708 (Thomas, J., concurring); *see United States v. Al-Maliki*, 787 F.3d 784, 792 (6th Cir. 2015); *Allen*, 86 F.4th at 309 (Murphy, J., concurring). "In the New Deal era," the Supreme "Court adopted a greatly expanded conception of Congress' commerce authority[.]" *Sackett* , 598 U.S. at 696 (Thomas, J., concurring) (citing *Wickard v.*

*Filburn*, 317 U.S. 111, 127–29 (1942); *United States v. Darby*, 312 U.S. 100, 119 (1941)); *see Rife*, 33 F.4th at 844; *Allen*, 86 F.4th at 309 (Murphy, J., concurring).

"By departing from" the Clause's "limited meaning," this line of precedent "ha[s] licensed federal regulatory schemes that would have been unthinkable to the Constitution's Framers and ratifiers." *Sackett*, 598 U.S. at 708–09 (Thomas, J., concurring) (cleaned up); *see, e.g.*, *Raich*, 545 U.S. 1; *Wickard*, 317 U.S. 111. This holds particularly true with respect to the "aggregation principle," which "has no stopping point." *Lopez*, 514 U.S. at 600 (Thomas, J., concurring). *Cf. NSBU*, 721 F. Supp. 3d at 1287 (noting "Government's failure to articulate limiting principles for its Commerce Clause arguments"); *id.* at 1282.

This judicial gloss should not be further expanded to bless the CTA and thereby take yet another step toward granting the federal government the general police power the Constitution reserves to the States. U.S. Const. amend X; *see Lopez*, 514 U.S. at 599–602 (Thomas, J., concurring); *see also* Add. A52–A53, A72.

## V.    This Court Should Enforce the Constitution's Original Public Meaning to the Maximum Extent Permissible Under Precedent.

Courts "enforce the 'outer limits' of Congress' Commerce Clause authority not for their own sake, but to protect historic spheres of state sovereignty from excessive federal encroachment and thereby to maintain the distribution of power fundamental to our federalist system[.]" *Raich*, 545 U.S. at 42 (O'Connor, J., dissenting) (citations omitted). And "constitutional limits on governmental power

do not enforce themselves. They require vigilant—and diligent—enforcement." *Seekins*, 52 F.4th at 989 (Ho, J., dissenting from denial of rehearing en banc).

"Admittedly, the Supreme Court has taken us a long way from the Commerce Clause's original meaning." *Allen*, 86 F.4th at 311 (Murphy, J., concurring). But "the Constitution's original meaning is law, absent binding precedent to the contrary." *Rife*, 33 F.4th at 843–44. "That should mean that [judges] decide every case faithful to the text and original understanding of the Constitution, to the maximum extent permitted by a faithful reading of binding precedent." *Texas v. Rettig*, 993 F.3d 408, 409 (5th Cir. 2021) (Ho, J., dissenting from denial of rehearing en banc).

## CONCLUSION

This Court should deny the government's stay motion.

Respectfully submitted,

/s/ Michael Pepson
Michael Pepson
AMERICANS FOR PROSPERITY FOUNDATION
4201 Wilson Blvd., Ste. 1000
Arlington, VA 22203
571.329.4529
mpepson@afphq.org

**CERTIFICATE OF COMPLIANCE**

This brief contains 3,711 words. This brief complies with the typeface and type-style requirements of FRAP 32(a)(5)-(6) because it was prepared using Microsoft Word 2013 in Times New Roman 14-point font.


/s/ Michael Pepson
Michael Pepson

Dated: December 17, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2024, I electronically filed the above Brief of Amicus Curiae Americans for Prosperity Foundation in Support of Plaintiffs-Appellees with the Clerk of the Court by using the appellate CM/ECF system. I further certify that service will be accomplished by the appellate CM/ECF system.


/s/ Michael Pepson
Michael Pepson

Dated: December 17, 2024