In the
United States Court of Appeals
for the Fifth Circuit

**TEXAS TOP COP SHOP, INC, et al.,**

*Plaintiffs-Appellees*,

**v.**

**MERRICK GARLAND, ATTORNEY GENERAL OF THE UNITED STATES, et al.,**

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Eastern District of Texas
————————

**Response of the Small Business Association of Michigan and the Chaldean American Chamber of Commerce as *Amici Curiae* in Support of Appellees and in Opposition to the Appellants' Emergency Motion to Stay Pending Appeal**

————————

Stephen J. van Stempvoort
D. Andrew Portinga
Amanda L. Rauh-Bieri
MILLER JOHNSON
45 Ottawa Avenue SW, Suite 1100
Grand Rapids, MI 49503
(616) 831-1765
vanstempvoorts@millerjohnson.com
*Counsel for Amici Curiae*

# Certificate of Interested Persons and Corporate Disclosure

## *Texas Top Cop Shop, Inc. et al. v. Garland et al.*, No. 24-40792

Counsel of record certifies that the following listed persons and entities described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges may evaluate possible disqualification or recusal.

## *Plaintiffs-Appellees and Counsel*

Texas Top Cop Shop, Inc.,
Russell Straayer,
Mustardseed Livestock, LLC,
Libertarian Party of Mississippi,
National Federation of Independent Business, Inc.,
Data Comm for Business, Inc.

> Caleb Kruckenberg
> Center for Individual Rights
> Suite 620
> 1100 Connecticut Avenue, N.W.
> Washington, DC 20036
>
> John Clay Sullivan
> SL Law, P.L.L.C.
> Suite 2000
> 610 Uptown Boulevard
> Cedar Hill, TX 75104
>
> Beth Milito
> Rob Smith
> National Federation of Independent Business
> 555 12th Street, NW
> Washington, D.C. 20004

Andrew Grossman
Baker Hostetler
1050 Connecticut Ave, NW Suite 1100
Washington, D.C. 20036


### *Defendants-Appellants and Counsel*

Merrick Garland, in his official capacity as U.S. Attorney General
U.S. Department of Treasury
Andrea Gacki, in her official capacity as Director, Financial Crimes
    Enforcement Network
U.S. Financial Crimes Enforcement Network
Janet Yellen, in her official capacity as Secretary, U.S. Department of
    Treasury

    Daniel Bentele Hahs Tenny
    U.S. Department of Justice
    Civil Division
    1100 L Street, N.W.
    Poc Agostinho, Jean
    Washington, DC 20530

    Steven H. Hazel
    U.S. Department of Justice
    Civil Division
    Suite 7216
    950 Pennsylvania Avenue, N.W.
    Washington, DC 20530

    Faith E. Lowry
    U.S. Department of Justice
    Civil Division, Federal Programs Branch
    1100 L Street, N.W.
    Washington, DC 20005

    Sophia Shams
    U.S. Department of Justice

Civil Division, Appellate Section
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

Stuart Robinson
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005

## *Amici and Counsel*

The Small Business Association of Michigan
Chaldean American Chamber of Commerce

Stephen J. van Stempvoort
D. Andrew Portinga
Amanda L. Rauh-Bieri
Miller Johnson
45 Ottawa Avenue SW, Suite 1100
Grand Rapids, MI 49503

The State of Texas

Christina Cella
Office of the Texas Attorney General
300 W. 15th Street, Sixth Floor
Austin, TX 78701

Eagle Forum Education and Legal Defense Fund

Andrew L. Schlafly
Attorney at Law
939 Old Chester Road
Far Hills, New Jersey 07931

These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

Under Federal Rule of Appellate Procedure 26.1, the Small Business Association of Michigan and the Chaldean American Chamber of Commerce disclose that (1) none of the amici are a publicly held corporation or other publicly held entity, (2) none of the amici have any parent corporations, and that (3) no publicly held corporation or other publicly held entity owns 10% or more of the stock of any of the amici.

Dated: December 17, 2024

/s/ Stephen J. van Stempvoort

*Counsel of Record for Amici Curiae*

# Table of Contents

Certificate of Interested Persons and Corporate Disclosure......................i

Table of Contents ................................................................. v

Index of Authorities............................................................vii

Interest of *Amici Curiae*.........................................................1

Introduction.......................................................................3

Argument..........................................................................4

I.   Millions of small businesses will be significantly
     harmed if the January 1, 2025 compliance deadline is
     reinstated. .....................................................................5

     A.   The CTA is a novel statute that suffers from
          significant constitutional defects............................................5

     B.   Snapping the January 1, 2025 deadline back into
          place would require more than twenty million
          small businesses to report to FinCEN over the
          course of only a few days.....................................................7

     C.   Requiring twenty million companies to comply
          with the CTA would collectively cost small
          businesses approximately $14 billion. ......................................9

II.  The government's interest in enforcing a January 1,
     2025 reporting deadline is low. ...............................................10

     A.   The CTA envisioned that existing companies
          would have up to two years to report to FinCEN,
          not twelve months. ........................................................10

     B.   The Government has extended the reporting
          deadline for thousands of businesses already. .....................11

# Table of Contents
## (continued)

C.     The district court's nationwide injunction imposes much needed uniformity—and staying it would cause mass confusion. ............................................................ 13

Conclusion ............................................................................. 14

Certificate of Compliance .......................................................... 1

Certificate of Service ............................................................... 1

# Index of Authorities

## Cases

*Burgess v. Fed. Deposit Ins. Corp.*,
  871 F.3d 297 (5th Cir. 2017) ............................................................ 4

*Career Colleges & Sch. of Texas v. United States Dep't of
  Educ.*,
  98 F.4th 220 (5th Cir. 2024) .............................................................. 14

*Community Assocs. Inst. v. Dep't of Treasury*,
  No. 24-2118 (4th Cir.) ...................................................................... 5, 6

*Firestone et al. v. Yellen et al.*,
  No. 24-6979 (9th Cir.) ........................................................................ 6

*National Small Business United (NSBU) v. Yellen*,
  No. 5:22-CV-1448-LCB, 2024 WL 899372 (N.D. Ala. Mar.
  1, 2024) .............................................................................................. 12

*NSBU v. Yellen*,
  No. 24-10736 (11th Cir.) ...................................................................... 6

*Small Bus. Assoc. of Mich. et al. v. Yellen et al.*,
  No. 1:24-cv-00314 (W.D. Mich.) ........................................................ 2, 6

## Statutes

5 U.S.C. § 705 ........................................................................................ 14

31 U.S.C. § 5336(b)(1)(B) ....................................................................... 11

31 U.S.C. § 5336(b)(1)(F)(iii) ................................................................... 9

31 U.S.C. § 5336(h) ................................................................................. 8

31 U.S.C. § 5336(h)(1), (3) ...................................................................... 5

Index of Authorities
(continued)

Page

**Other Authorities**

31 C.F.R. § 1010.380(d)(1)(i)(D) ....................................................... 7

Alert: Impact of Ongoing Litigation – Deadline State –
Voluntary Submission Only, https://www.fincen.gov/boi ....... 8, 11, 13

Beneficial Ownership Information Reporting Requirements
for Financial Crimes Enforcement Network (FinCEN), 87
Fed. Reg. 59498, 59573 (Jan. 1, 2024), available at
https://www.federalregister.gov/d/2022-21020/p-958 ............ 2, 10, 11

Fed. R. App. P. 29(a)(4)(E) ........................................................ 1

https://www.fincen.gov/sites/default/files/shared/FinCEN-
BOI-Notice-Helene-508FINAL.pd f................................................... 12

Matthew F. Erskine, *Court Blocks Corporate Transparency
Act-A Win For Federalism? Updated* Forbes, (Dec. 4, 2024,
8:52am),
https://www.forbes.com/sites/matthewerskine/2024/12/04/
court-blocks-corporate-transparency-act-a-win-for-
federalism/ ................................................................. 9

Nate Raymond, *Texas judge blocks anti-money laundering
law's enforcement nationwide*, Reuters (Dec. 4, 2024,
12:39pm),
https://www.reuters.com/legal/government/texas-judge-
blocks-anti-money-laundering-laws-enforcement-
nationwide-2024-12-04/ ................................................... 9

Nicholas Brown, *FinCEN, BOI, CTA: What Does Any of This
Stuff Mean?*, NC State Extension (Updated Dec. 9, 2024),
https://farmlaw.ces.ncsu.edu/2024/10/fincen-boi-cta-what-
does-any-of-this-stuff-mean ................................................ 7

<u>Interest of *Amici Curiae*</u>[1]

The Small Business Association of Michigan ("SBAM") is a statewide organization for small business owners in Michigan, with over 32,000 members. SBAM's mission is the success of Michigan's small businesses, and it frequently advocates on public policy issues affecting small business owners.

The Chaldean American Chamber of Commerce (the "Chaldean Chamber") advocates and promotes small businesses and economic opportunities, particularly for businesses and individuals who are affiliated with the Chaldean American community. Chaldeans are Aramaic-speaking, Eastern Rite Catholics indigenous to Iraq. More than 4,000 businesses are members of the Chaldean Chamber.

Amici's interest in this case arises from their concerns regarding the Corporate Transparency Act's impact on small businesses. The CTA requires millions of law-abiding Americans, including SBAM's and the

---

[1] No party's counsel authored this brief in whole or in part, no party or party's counsel contributed money intended to fund this brief, and no person other than amici and their members contributed money to fund this brief. Fed. R. App. P. 29(a)(4)(E). All parties have consented to the filing of this brief.

Chaldean Chamber's members, to report sensitive, private information to law enforcement without any suspicion of wrongdoing.

The CTA will substantially impact amici's members. FinCEN estimates that each reporting company's cost of filing the initial beneficiary ownership interest report will range from $85.14 to $2,614.87.[2] Based on those estimates, the total cost of compliance for SBAM's 32,000 members will be between roughly $2.5 million and $78.4 million, and the total cost of compliance for the Chaldean Chamber's 4,000 members will be between approximately $340,000 and $10.5 million. On a national scale, FinCEN estimates that the cost of compliance will be about $21.7 billion in 2024 and around $3.3 billion each year afterward.[3]

Because of these and other concerns, amici and other plaintiffs filed a constitutional challenge to the CTA in the U.S. District Court for the Western District of Michigan, which remains pending (*SBAM v. Yellen*, No. 24-cv-00314).

---

[2] *See* Beneficial Ownership Information Reporting Requirements for Financial Crimes Enforcement Network (FinCEN), 87 Fed. Reg. 59498, 59573 (Jan. 1, 2024), available at https://www.federalregister.gov/d/2022-21020/p-958.

[3] *See id*.

## Introduction

Despite telling small businesses that they need not comply with the Corporate Transparency Act ("CTA") while the district court's nationwide injunction is in effect, the government asks this Court to subject more than twenty million small businesses to a January 1, 2025 reporting deadline, with only a handful of business days before compliance is due. The potential harm to small businesses is off the charts. The CTA imposes criminal penalties for noncompliance, and there is no chance that the twenty million companies that have not yet reported will be able to do so by December 31. And using FinCEN's own estimates, the collective compliance costs for those twenty million small businesses will be approximately $14 billion.

On the other end of the scale, the government has already extended the reporting deadline by six months for thousands of entities, including businesses in states affected by various hurricanes. The government fails to demonstrate a pressing need for it to subject millions of entities to a virtually immediate reporting deadline, especially when the government has extended that deadline for numerous small businesses already. In fact, the CTA contemplated that existing entities would have up to two

years after the effective date of FinCEN's final regulations in which to comply with the CTA—that is, until January 1, 2026. The government fails to explain why it has a compelling interest in requiring compliance a full year earlier than Congress believed necessary.

Instead of requiring millions of Americans to spend their holidays trying to avoid criminal liability by complying with the CTA's overzealous requirements, this Court should deny the government's motion.

## Argument

The burden is on the government to demonstrate that a stay of the district court's order is appropriate. The government must demonstrate (1) a likelihood of success on the merits; (2) that irreparable harm would occur if a stay is not granted; (3) that the potential harm to the movant outweighs the harm to the opposing party if a stay is not granted; and (4) that granting of the stay would serve the public interest. *Burgess v. Fed. Deposit Ins. Corp.*, 871 F.3d 297, 300 (5th Cir. 2017).

Although amici believe that the CTA suffers from numerous constitutional defects, amici focus for purposes of this brief on the balance of the harms, which tilts decisively against the government's request to

subject twenty million companies to a reporting deadline only a few days before compliance is due.

## I. Millions of small businesses will be significantly harmed if the January 1, 2025 compliance deadline is reinstated.

### A. The CTA is a novel statute that suffers from significant constitutional defects.

The CTA reflects the government's attempt to collect information about American citizens in a way that has never been tried before. The statute requires ordinary citizens to provide their personal, private information directly to the Financial Crimes Enforcement Network ("FinCEN"), without any individualized suspicion and without any of the procedural safeguards that the Fourth Amendment ordinarily requires. FinCEN then uses this private information to create a database that law enforcement officers can rummage through to search for evidence of potential criminality. The CTA also allows FinCEN to share that information with other federal and state law enforcement agencies and even foreign intelligence services, usually without court oversight. *See generally* Amicus Brief of SBAM and the Chaldean Chamber, *Community Assocs. Inst. v. Dep't of Treasury*, No. 24-2118 (4th Cir., filed Nov. 19, 2024). It is a federal felony for a small business to willfully fail to comply with the CTA. *See* 31 U.S.C. § 5336(h)(1), (3).

Because of these and other constitutional defects in the CTA, the CTA has been subject to numerous legal challenges and broad public criticism. Challenges are pending in the Fourth, Ninth, and Eleventh Circuits, as well as in several district courts. *See Community Assocs. Inst. v. Dep't of Treasury*, No. 24-2118 (4th Cir.); *Firestone et al. v. Yellen et al.*, No. 24-6979, (9th Cir.); *NSBU v. Yellen*, No. 24-10736 (11th Cir.); *Small Bus. Assoc. of Mich. et al. v. Yellen et al.*, No. 1:24-cv-00314 (W.D. Mich.).

In several of these cases, the CTA challengers have attracted broad amicus support. Amici in the pending Eleventh Circuit appeal, for example, include twenty-two states, who emphasized their sensitivity "to the ways burdensome legislation (and its implementing regulations) hurt our residents and small businesses." (Dkt. 57, p. 11). Many public interest groups filed amicus briefs, too, including the Project for Privacy and Surveillance Accountability, Inc. (Dkt. 82), the Hamilton Lincoln Law Institute (Dkt. 50), Community Associations Institute (Dkt. 94), Americans for Prosperity Foundation (Dkt. 39), The Cato Institute (Dkt. 43), National Federation of Independent Business Legal Center (Dkt. 48), the National Taxpayers Union Foundation (Dkt. 52), Advancing

American Freedom (Dkt. 54), among other organizations.[4] These organizations represent the interests of hundreds of thousands, if not millions, of Americans.

**B.     Snapping the January 1, 2025 deadline back into place would require more than twenty million small businesses to report to FinCEN over the course of only a few days.**

Widespread confusion has been a feature of the CTA since its inception. Many reporting entities—all of which are small businesses or entities, and many of which have varying levels of sophistication and access to legal advice—are not even aware of the act.  And other entities remain in the dark about who must report. *See, e.g.*, Nicholas Brown, *FinCEN, BOI, CTA: What Does Any of This Stuff Mean?*, NC State Extension (Updated Dec. 9, 2024).[5] FinCen's regulations do little to help. For example, they explain that a "beneficial owner" must report, that a "beneficial owner" includes someone who has "substantial control" over an entity, and that "substantial control" means—tautologically— "substantial control." *See* 31 C.F.R. § 1010.380(d)(1) (i)(D).

---

[4]     Amici also filed an amicus brief in the Eleventh Circuit (Dkt. 51).
[5]     https://farmlaw.ces.ncsu.edu/2024/10/fincen-boi-cta-what-does-any-of-this-stuff-mean/

The CTA's reporting requirements have been so poorly understood that—as the government admits—despite 14 million hits on FinCEN's online guidance and after fielding over 200,000 inquiries through its Beneficial Ownership Contact Center, more than *two-thirds* of the CTA-reporting entities had not filed their required reports with less than one month left before the deadline. (A87-A88, Gacki Dec. ¶¶ 12, 15). As of December 3, 2024, only ten million out of 32.6 million companies had filed their reports. (A88, Gacki Dec. ¶ 15).

There is no way that the remaining small businesses will be able to comply in the last few days of December, over the holidays. And because the CTA imposes criminal penalties for noncompliance, *see* 31 U.S.C. § 5336(h), reinstating the January 1, 2025 deadline at this late stage threatens to impose criminal liability on millions of American small business owners and entrepreneurs.

Changing the status quo yet again would only escalate the confusion caused by the shifting status of the CTA. After the district court enjoined the CTA nationwide, FinCEN issued an alert, directing small business owners that they are not obligated to file reports due to the injunction. *See* Alert: Impact of Ongoing Litigation – Deadline State –

Voluntary Submission Only, https://www.fincen.gov/boi . News outlets have likewise reported that the court enjoined the CTA. *See, e.g.*, Nate Raymond, *Texas judge blocks anti-money laundering law's enforcement nationwide*, Reuters (Dec. 4, 2024, 12:39pm);[6] Matthew F. Erskine, *Court Blocks Corporate Transparency Act—A Win For Federalism? Updated* Forbes, (Dec. 4, 2024, 8:52am).[7] Changing the rules again—in the middle of the holiday season—would only exacerbate the confusion that already exists.

### C. Requiring twenty million companies to comply with the CTA would collectively cost small businesses approximately $14 billion.

The CTA requires FinCEN to "minimize burdens on reporting companies associated with the collection of [beneficial ownership' information." 31 U.S.C. § 5336(b)(1)(F)(iii). That task is not facilitated by reopening the floodgates to millions of reports only a few days before compliance is due.

---

[6]     https://www.reuters.com/legal/government/texas-judge-blocks-anti-money-laundering-laws-enforcement-nationwide-2024-12-04/
[7]     https://www.forbes.com/sites/matthewerskine/2024/12/04/court-blocks-corporate-transparency-act-a-win-for-federalism/

The cost of compliance is significant. FinCEN estimates that the cost of each initial report "ranges from $85.14 to $2,614.87" and that the "aggregate cost to all existing reporting companies is approximately $21.7 billion for Year 1."[8] Given that fewer than a third of entities had reported by December 3, 2024, it would cost the remaining twenty million reporting companies roughly $14 billion, collectively, to comply with the CTA. Those costs dwarf—by a factor of more than 3,000—the $4.3 million that FinCEN has spent on its "expansive public service announcement campaign." (A87-A99, Gacki Dec. ¶¶ 14, 15).

## II. The government's interest in enforcing a January 1, 2025 reporting deadline is low.

### A. The CTA envisioned that existing companies would have up to two years to report to FinCEN, not twelve months.

On the flip side, the government contends only that it has an interest in enforcing the CTA; it does not point to any specific interest that it has in enforcing a January 1, 2025 reporting deadline.

---

[8] *See* Beneficial Ownership Information Reporting Requirements for Financial Crimes Enforcement Network (FinCEN), 87 Fed. Reg. 59498, 59573 (Jan. 1, 2024) (to be codified at 31 C.F.R. pt. 1010), available at https://www.federalregister.gov/d/2022-21020/p-958.

Nothing in the CTA itself mandates such a deadline. The CTA was enacted nearly four years ago, and for entities pre-dating FinCEN's final rulemaking, the CTA envisioned a period of up to two years "after the effective date of the regulations" for reporting entities to submit reports. *See* 31 U.S.C. § 5336(b)(1)(B). FinCEN's regulations became effective on January 1, 2024.[9] The government does not explain why it has a compelling need for a one-year reporting period instead of the two-year period that the CTA itself allows for.

**B.      The Government has extended the reporting deadline for thousands of businesses already.**

The government's assertion that it has a paramount interest in resurrecting a January 1, 2025 deadline is also belied by its own actions.

FinCEN has issued five different notices extending the reporting deadline in areas affected by Hurricanes Beryl, Debby, Francine, Helene, and Milton. *See* https://fincen.gov/boi. Each of these notices covers different geographical areas and imposes different deadlines. *See, e.g.* FinCEN Provides Beneficial Ownership Information Reporting Relief to

---

[9] *See* Beneficial Ownership Information Reporting Requirements for Financial Crimes Enforcement Network (FinCEN), 87 Fed. Reg. 59498, 59573 (Jan. 1, 2024) (to be codified at 31 C.F.R. pt. 1010), available at https://www.federalregister.gov/d/2022-21020/p-958.

Victims of Hurricane Helene; Certain Filing Deadlines in Affected Areas Extended Six Months (Oct. 29, 2024).[10]

Thousands of other small businesses are also exempt from the CTA's reporting requirements. On March 1, 2024, the Northern District of Alabama in, *National Small Business United (NSBU) v. Yellen*, No. 5:22-CV-1448-LCB, 2024 WL 899372, (N.D. Ala. Mar. 1, 2024), enjoined FinCEN and the Department of Treasury from enforcing the CTA against the named plaintiffs and the members of the National Small Business Association. *Id.* The government did not move to stay the district court's order in that case, and the Eleventh Circuit has not yet ruled in that appeal. The government does not explain why some small businesses must comply with a January 1, 2025 deadline when others don't.

In this case, too, the government has not exhibited haste. The district court entered the nationwide injunction on December 3, 2024. (Mem. Op. & Order, Dkt. 30). The government did not move to stay the district court's order for more than a week. (Mot. to Stay, Dkt. 35). It then filed a motion to stay in this Court but requested a briefing schedule that

---

[10] https://www.fincen.gov/sites/default/files/shared/FinCEN-BOI-Notice-Helene-508FINAL.pdf

extended briefing until December 23, 2024. (Mot. to Stay, 5th Cir. Dkt. 21, p. 2). Meanwhile, FinCEN advised small businesses that they need not file reports while the nationwide injunction was pending. *See* Alert: Impact of Ongoing Litigation – Deadline State – Voluntary Submission Only, [https://www.fincen.gov/boi](https://www.fincen.gov/boi). These actions suggest that the government itself views the January 1, 2025 as an arbitrary deadline, rather than an immovable date certain.

## C. The district court's nationwide injunction imposes much needed uniformity—and staying it would cause mass confusion.

For small businesses around the country, the district court's nationwide injunction brings crucial uniformity to the CTA's reporting deadlines. Because the CTA implicates millions of Americans—many of whom don't know about the CTA's requirements—the district court's nationwide injunction should remain undisturbed pending appeal. The injunction provides clarity and consistency to entities who have yet to report while federal courts address the CTA's constitutional issues.

Although nationwide injunctions may be viewed with skepticism in other contexts, nationwide relief is appropriate in challenges brought under the Administrative Procedures Act. Federal regulations have

nationwide effect. The government's "protests against nationwide relief are incoherent in light of its use of the [challenged regulations] to prescribe uniform federal standards." *Career Colleges & Sch. of Texas v. United States Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024).

## Conclusion

The Court should deny the government's motion to stay the district court's preliminary injunction pending the resolution of this appeal.[11]

/s/ Stephen J. van Stempvoort
Stephen J. van Stempvoort
D. Andrew Portinga
Amanda L. Rauh-Bieri
Miller Johnson
45 Ottawa Ave SW, Suite 1100
Grand Rapids, MI 49503
*Counsel for Amici Curiae*

---

[11] Alternatively, the Court should extend the nationwide reporting deadline by six months, just as FinCEN previously extended the deadline by six months to entities in states affected by natural disasters. This Court has the authority to "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion" of the government's appeal. 5 U.S.C. § 705; *Career Colleges & Sch. of Texas v. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024). Extending the nationwide reporting deadline by at least six months would provide additional time for the remaining twenty million entities to clarify their reporting obligations and would create parity by establishing a single reporting deadline for all entities.

## Certificate of Compliance

This amicus filing opposing appellant's motion contains 2,598 words, excluding the parts of the motion exempted by rule. This filing complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 31(a)(6) because it has been prepared in proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word.

/s/ Stephen J. van Stempvoort
Stephen J. van Stempvoort
D. Andrew Portinga
Amanda L. Rauh-Bieri
Miller Johnson
45 Ottawa Ave SW, Suite 1100
Grand Rapids, MI 49503
*Counsel for Amici Curiae*

## Certificate of Service

I hereby certify that on December 17, 2024, the foregoing was filed through the Court's Electronic Filing System, which will send notice to all counsel appearing in this matter.

/s/ Stephen J. van Stempvoort
Stephen J. van Stempvoort
D. Andrew Portinga
Amanda L. Rauh-Bieri
Miller Johnson
45 Ottawa Ave SW, Suite 1100
Grand Rapids, MI 49503
*Counsel for Amici Curiae*