No. 24-40792

_____

United States Court of Appeals for the Fifth Circuit

_____

TEXAS TOP COP SHOP, INC., *et al.*,

Plaintiffs-Appellees,

v.

MERRICK GARLAND, ATTORNEY GENERAL OF THE UNITED STATES, *et al.*,

Defendants-Appellants.

_____

On Appeal from the United States District Court
for the Eastern District of Texas
(Hon. Amos L. Mazzant, III)

_____

**BRIEF OF PACIFIC LEGAL FOUNDATION AS
*AMICUS CURIAE* IN SUPPORT OF
PLAINTIFFS-APPELLEES AND
DENIAL OF DEFENDANTS-APPELLANTS' EMERGENCY
MOTION FOR STAY PENDING APPEAL**

_____

JOSHUA M. ROBBINS
PACIFIC LEGAL FOUNDATION
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
Telephone: (202) 945-9524
JRobbins@pacificlegal.org

*Counsel for Amicus Curiae
Pacific Legal Foundation*

## SUPPLEMENTAL STATEMENT OF INTERESTED PERSONS

Pursuant to Fifth Circuit Rule 29.2, the undersigned counsel of record certifies that the following listed persons are entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

- Pacific Legal Foundation, *Amicus Curiae*

- Joshua M. Robbins, *Counsel for Amicus Curiae Pacific Legal Foundation*

DATED: December 18, 2024.

s/ *Joshua M. Robbins*
JOSHUA M. ROBBINS
*Counsel for Amicus Curiae Pacific Legal Foundation*

## CORPORATE DISCLOSURE STATEMENT

Amicus Curiae Pacific Legal Foundation, a nonprofit corporation organized under the laws of California, states it has no parent companies, subsidiaries, or affiliates that have issued shares to the public.

# TABLE OF CONTENTS

SUPPLEMENTAL STATEMENT OF INTERESTED PERSONS............i

CORPORATE DISCLOSURE STATEMENT...........................................ii

TABLE OF AUTHORITIES....................................................................iv

STATEMENT OF IDENTIFICATION ....................................................1

STATEMENT OF AUTHORSHIP AND FUNDING ...............................3

ARGUMENT ........................................................................................4

   I.  IMPLEMENTATION OF THE CTA WILL CAUSE IRREPARABLE INJURY.....5

   II. THE EQUITIES FAVOR A PRELIMINARY INJUNCTION ..........................10

CONCLUSION .....................................................................................13

CERTIFICATE OF COMPLIANCE ......................................................14

CERTIFICATE OF SERVICE...............................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*,
594 U.S. 758 (2021) ........................................................................ 10–12

*ATS Tree Servs., LLC v. FTC*,
No. 24-1743, 2024 WL 3511630
(E.D. Pa. July 23, 2024) ...................................................................... 2

*Bond v. United States*,
564 U.S. 211 (2011) ...................................................................... 5, 10

*BST Holdings, L.L.C. v. OSHA*,
17 F.4th 604 (5th Cir. 2021) ............................................................... 9

*Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*,
441 F.2d 560 (5th Cir. 1971) ............................................................. 12

*Leachco, Inc. v. CPSC*,
103 F.4th 748 (10th Cir. 2024) ........................................................... 1

*Lofstad v. Raimondo*,
117 F.4th 493 (3d Cir. 2024) .............................................................. 1

*Louisiana v. Biden*,
55 F.4th 1017 (5th Cir. 2022) .......................................................... 6–7

*Manis v. USDA*,
No. 24-1367 (4th Cir.) ........................................................................ 1

*Mayfield v. U.S. Dep't. of Labor*,
117 F.4th 611 (5th Cir. 2024) ............................................................. 1

*Miranda v. Garland*,
34 F.4th 338 (4th Cir. 2022) ............................................................. 10

*NFIB v. OSHA*,
595 U.S. 109 (2022) ..................................................................... 10–11

*Nken v. Holder,*
    556 U.S. 418 (2009) ..................................................... 4, 10

*Ohio v. EPA,*
    603 U.S. 279 (2024) ........................................................ 7

*Properties of the Villages, Inc., v. FTC,*
    No. 5:24-CV-316, 2024 WL 3870380
    (M.D. Fla. Aug. 15, 2024) ............................................... 8

*Rest. L. Ctr. v. U.S. Dep't of Lab.,*
    66 F.4th 593 (5th Cir. 2023) .......................................... 6–7

*Ryan LLC v. FTC,*
    --- F.Supp.3d ---, 2024 WL 3297524
    (N.D. Tex. July 3, 2024) ................................................. 8

*Sackett v. EPA,*
    598 U.S. 651 (2023) ........................................................ 1

*Tennessee v. Dep't of Educ.,*
    104 F.4th 577 (6th Cir. 2024) ........................................... 7

*Texas Top Cop Shop, Inc. v. Garland,*
    --- F.Supp.3d ---, 2024 WL 5049220
    (E.D. Tex. Dec. 5, 2024) ................................................. 9

*Texas v. EPA,*
    829 F.3d 405 (5th Cir. 2016) ............................................ 7

## Statutes

5 U.S.C. § 702 .................................................................. 6

5 U.S.C. § 705 ................................................................. 12

31 U.S.C. § 5336(b)(1) ....................................................... 12

## Other Authority

87 Fed. Reg. 59,498 (Sept. 30, 2022) .................................. 6, 12

## STATEMENT OF IDENTIFICATION

Founded in 1973, Pacific Legal Foundation ("PLF") is a nonprofit, tax-exempt California corporation established for the purpose of litigating matters affecting the public interest. PLF provides a voice in the courts for limited constitutional government, private property rights, and individual freedom. PLF is the most experienced public-interest legal organization defending the constitutional principle of separation of powers in the arena of administrative law. *See, e.g.*, *Sackett v. EPA*, 598 U.S. 651 (2023) (interpreting "waters of the United States" in the Clean Water Act); *Leachco, Inc. v. CPSC*, 103 F.4th 748 (10th Cir. 2024) (removal power, Article III, Due Process of Law, Seventh Amendment); *Manis v. USDA*, No. 24-1367 (4th Cir.) (Appointments Clause and Seventh Amendment).

PLF regularly files challenges to federal statutes and regulations on behalf of adversely affected clients on the grounds that they are unlawful or unconstitutional. *See, e.g.*, *Lofstad v. Raimondo*, 117 F.4th 493 (3d Cir. 2024); *Mayfield v. U.S. Dep't. of Labor*, 117 F.4th 611 (5th Cir. 2024); *ATS Tree Services, LLC v. FTC*, No. 24-1743 (E.D. Pa.). As part of those challenges, PLF sometimes seeks preliminary relief to

prevent its clients from suffering irreparable harm while the lawfulness of the rule or statute is adjudicated. *See, e.g.*, *ATS Tree Servs., LLC v. FTC*, No. 24-1743, 2024 WL 3511630 (E.D. Pa. July 23, 2024). This experience informs PLF's discussion of the application of the preliminary injunction factors in this constitutional challenge to the Corporate Transparency Act's reporting requirements. [1]

---

[1] Counsel for PLF conferred with counsel for the parties. The Plaintiffs-Appellees consent to the filing of this brief and the Defendants-Appellants consent if the brief is filed "by midday Wednesday." PLF also moved for leave to file this brief.

## STATEMENT OF AUTHORSHIP AND FUNDING

This amicus brief was not authored in whole or in part by counsel for any party. No party or counsel for a party, and no person other than Amicus or its counsel, contributed money to fund this brief's preparation or submission.

## ARGUMENT

The request by Attorney General Merrick Garland; the U.S. Department of the Treasury and its Secretary, Janet Yellen; and the Financial Crimes Enforcement Network ("FinCEN") and its Director, Andrea Gacki (collectively, the "Government Defendants") to stay the district court's preliminary injunction of the Corporate Transparency Act ("CTA") days before its effective date is unreasonable and should be denied. The district court is correct that the CTA's reporting requirements are unconstitutional. But even if this Court needs time to review the district court's extensive analysis on the merits, the irreparable harm and the equities weigh heavily in favor of maintaining the preliminary injunction while the appeal is pending.

Like a preliminary injunction, the entry of a stay pending appeal depends on "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Nken v. Holder*, 556 U.S. 418, 426 (2009). Here, the Plaintiffs-Appellees will be irreparably injured if the

preliminary injunction is lifted by being subjected to an unconstitutional requirement to report sensitive personal information—a compelled disclosure that cannot be undone—and by expending unrecoverable funds in compliance with that requirement. The equities and public interest also favor maintaining the preliminary injunction because the Government Defendants have no interest in pursuing a new and unconstitutional mandate that *departs* from the status quo, especially when they are *choosing* to demand that covered entities comply over the two weeks including Christmas and New Years Day.

## I.    IMPLEMENTATION OF THE CTA WILL CAUSE IRREPARABLE INJURY

If the CTA is allowed to go into effect, the Plaintiffs-Appellees and all state-registered corporate entities, *not* the Government Defendants, will suffer irreparable harm. The CTA will cause irreparable harm in at least two ways. First, there are unrecoverable costs to complying with the CTA's reporting requirements that covered entities will have to pay if the new law goes into effect. Second, the Plaintiffs-Appellees are suffering individualized harm from Congress's violation of the Constitution's structural protections through the CTA. *See Bond v. United States*, 564 U.S. 211, 222 (2011).

**A.** It is well established in the Fifth Circuit that "the nonrecoverable costs of complying with a putatively invalid regulation typically constitute irreparable harm." *Rest. L. Ctr. v. U.S. Dep't of Lab.*, 66 F.4th 593, 597 (5th Cir. 2023). The Government Defendants have effectively conceded in the implementing regulations for the CTA that there will be unrecoverable compliance costs. 87 Fed. Reg. 59,498, 59,585–86 (Sept. 30, 2022). "FinCEN estimate[d] that the total cost of filing [] reports is approximately $22.7 billion in the first year and $5.6 billion in the years after." *Id.* Further, no damages are available if the CTA is later found to be unconstitutional. *See Rest. L. Ctr.*, 66 F.4th at 598; 5 U.S.C. § 702 (allowing only relief "other than money damages"). When supported by declarations from the Plaintiffs, the Government Defendants cannot avoid their concession that the CTA will generate compliance costs that impose irreparable harm. *Rest. L. Ctr.*, 66 F.4th at 597–98; *see also Louisiana v. Biden*, 55 F.4th 1017, 1034–35 (5th Cir. 2022) (relying on the government's estimate of employee departures from federal contractors resulting from a COVID-19 vaccine requirement).

In fact, just this year, the Supreme Court confirmed that compliance costs can constitute a "strong argument[]" in favor of a

preliminary injunction. *Ohio v. EPA*, 603 U.S. 279, 292 (2024). In *Ohio*, a challenge to an EPA plan to control ozone pollution, the states and private challengers "stress[ed] that complying with" the EPA's plan "during the pendency of th[e] litigation would require them to incur 'hundreds of millions[,] if not billions of dollars.'" *Id.* at 283, 291–92. The Supreme Court considered the challengers to have presented sufficiently persuasive evidence of irreparable harm, including the compliance costs, that it focused on the merits of the challenge in granting the requested stay of the EPA's plan. *Id.* at 292, 300. It bears noting that the benefits of this analysis do not go exclusively to states and large entities who can demonstrate harm of a similar magnitude to that in *Ohio*. In the Fifth Circuit, "[w]hen determining whether injury is irreparable, it is not so much the magnitude but the irreparability that counts." *Louisiana*, 55 F.4th at 1034 (cleaned up).

More broadly, courts regularly find irreparable harm in challenges to new rules that impose significant legal changes with far-reaching effects on regulated parties. *Rest. L. Ctr.*, 66 F.4th at 597–600; *Louisiana*, 55 F.4th at 1034–35; *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016); *Tennessee v. Dep't of Educ.*, 104 F.4th 577, 613 (6th Cir. 2024). Indeed,

just this past summer, two district courts entered preliminary injunctions of the Federal Trade Commission's currently defunct ban on virtually all non-compete agreements (the "Non-Compete Rule"). *Ryan LLC v. FTC*, --- F.Supp.3d ---, 2024 WL 3297524, at \*12–14 (N.D. Tex. July 3, 2024); *Properties of the Villages, Inc., v. FTC*, No. 5:24-CV-316, 2024 WL 3870380, at \*10 (M.D. Fla. Aug. 15, 2024). *Ryan* concluded the Non-Compete Rule would cause irreparable harm through the cost of the rule's requirement for employers to notify workers subject to non-compete clauses that those clauses were no longer effective. 2024 WL 3297524, at \*13. The *Villages* court summed up its irreparable harm finding by observing that "it just makes common sense that there are going to be [compliance] costs." 2024 WL 3870380, at \*10. It also found that "the business disruptions caused by having to comply with the new rule while its efficacy is being litigated . . . feeds into a finding of irreparable harm." *Id.* These conclusions are equally applicable to the CTA's new and unprecedented reporting requirements.

**B.** Deprivations of the structural protections of the Constitution, including statutory requirements enacted in excess of Congress's enumerated powers, also constitute irreparable injury in the Fifth

Circuit. "[T]he loss of constitutional freedoms for even minimal periods of time . . . unquestionably constitutes irreparable injury." *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) (cleaned up). In *BST Holdings*, this Court stayed the Occupational Safety and Health Administration's ("OSHA") COVID-19 vaccine mandate. *Id.* at 619. In doing so, the Court explained that the OSHA vaccine mandate "likely exceed[ed] the federal government's authority under the Commerce Clause" and was of doubtful validity given the Constitution's separation of powers. *Id.* at 617–18. While the Court did not definitively decide these constitutional questions, the individual petitioners nevertheless demonstrated irreparable injury because the "[m]andate threaten[ed] to substantially burden the liberty interests of reluctant individual[s]." *Id.* at 618. The same analysis applies here where the Plaintiffs-Appellees are being forced to turn over to the federal government private, sensitive identifying information pursuant to a new statute that the Commerce Clause does not permit Congress to enact. *Texas Top Cop Shop, Inc. v. Garland*, --- F.Supp.3d ---, 2024 WL 5049220, at *11–25 (E.D. Tex. Dec. 5, 2024).

The Fourth Circuit takes a similar approach to irreparable injury with respect to structural constitutional violations. There, "deprivation[s] of a constitutional right, 'for even minimal periods of time, unquestionably constitute[] irreparable injury.'" *Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022). In *Miranda*, the Fourth Circuit applied that principle in a due process clause challenge to the detention hearing process for aliens prior to their removal hearing. *Id.* at 345, 365. Both the Constitution's due process protections and the limitations on Congress's enumerated powers serve as structural safeguards that individuals have an interest in upholding because violations cause individual harm. *See Bond*, 564 U.S. at 222–23 ("The structural principles secured by the separation of powers protect the individual as well.").

## II. THE EQUITIES FAVOR A PRELIMINARY INJUNCTION

The merged factors of the equities and public interest also favor denying the Government Defendants' motion for a stay pending appeal. *Nken*, 556 U.S. at 435. In recent years, the Supreme Court has refused to evaluate the benefits of a federal policy when it was enacted unlawfully. *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021); *NFIB v. OSHA*, 595 U.S. 109, 120 (2022). When the Supreme

Court struck down the Centers for Disease Control and Prevention's ("CDC") nationwide eviction moratorium, it explained that "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors*, 594 U.S. at 766. It also rejected the "role" of "weigh[ing] . . . tradeoffs" between the harms to regulated parties and the benefits of a policy when it stayed OSHA's COVID-19 vaccine mandate. *NFIB*, 595 U.S. at 120. Here, where the Plaintiffs-Appellees have demonstrated that they are likely to succeed on the merits of their constitutional challenges to the CTA, both the equities and public interest favor maintaining the preliminary injunction. *Ala. Ass'n of Realtors*, 594 U.S. at 766; *NFIB*, 595 U.S. at 120.

Additionally, the financial harm that the Plaintiffs-Appellees, and all covered entities, will suffer from compliance with the CTA also weighs in favor of maintaining the preliminary injunction. *See Ala. Ass'n of Realtors*, 594 U.S. at 765. In *Alabama Association of Realtors*, the Supreme Court found that the significant "financial cost" the CDC's eviction moratorium imposed on landlords favored maintaining a district court injunction. *Id.* The same analysis applies here.

Finally, a stay of the preliminary injunction does not make practical sense at this point. The effective date of this new reporting requirement was left up to FinCEN. 31 U.S.C. § 5336(b)(1). FinCEN picked January 1, 2025, as the effective date when it promulgated the implementing regulations in September 2022. 87 Fed. Reg. at 59,592. Having lost a preliminary challenge to the constitutionality of the CTA a month before its January 1, 2025, deadline, FinCEN now unreasonably demands that covered entities still be required to meet this deadline over the two weeks including Christmas and New Years Day. Agencies have the authority to postpone their requirements, *see* 5 U.S.C. § 705 ("When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review."), which they certainly do. And FinCEN has had months to prepare for the prospect that the district court might enjoin the implementation of the CTA, decreasing its interest in a stay. *See Ala. Ass'n of Realtors*, 594 U.S. at 765–66. A few months delay of the new reporting requirement while the constitutional challenges in this case are resolved will not substantially harm the government and will maintain the longstanding status quo in the meantime. *Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 441 F.2d 560, 561 (5th Cir. 1971)

("The purpose of a preliminary injunction is to preserve the status quo and thus prevent irreparable harm.").

## CONCLUSION

For all the foregoing reasons, this Court should DENY the Government Defendants' motion for a stay pending appeal of the district court's preliminary injunction.

DATED: December 18, 2024.

Respectfully submitted,

s/ Joshua M. Robbins
JOSHUA M. ROBBINS
PACIFIC LEGAL FOUNDATION
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
Telephone: (202) 945-9524
JRobbins@pacificlegal.org

Counsel for Amicus Curiae
Pacific Legal Foundation

## CERTIFICATE OF COMPLIANCE

While there are no rules specifically governing amicus briefs on a motion for a stay pending appeal, this motion attempts to comply with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) because it contains 2,175 words, half the words permitted for a motion or response in Federal Rule of Appellate Procedure 27(d)(2)(A), excluding the parts exempt by Federal Rule of Appellate Procedure 32(f).

This motion complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

DATED: December 18, 2024.

s/ *Joshua M. Robbins*
JOSHUA M. ROBBINS
*Counsel for Amicus Curiae*
*Pacific Legal Foundation*

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2024, I submitted the foregoing to the Clerk of the Court of the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF, which will send notice of this submission to all registered counsel of record.

I hereby certify that on December 18, 2024, the undersigned has served the foregoing upon the parties to this action via mail:

Ms. Faith E. Lowry
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, N.W.
Washington, DC 20005

s/ *Joshua M. Robbins*
JOSHUA M. ROBBINS