No. 24-40792

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

Texas Top Copy Shop, et al.,
*Plaintiffs-Appellees*,

v.

Merrick Garland, Attorney General of the United States et al.,
*Defendants-Appellants.*

ON INTERLOCUTORY APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, CASE
NO. 4:24-CV-478

## BRIEF OF THE NATIONAL RETAIL FEDERATION, NATIONAL ASSOCIATION OF CONVENIENCE STORES, AND RESTAURANT LAW CENTER AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLEES' OPPOSITION TO THE GOVERNMENT'S EMERGENCY MOTION TO STAY

Stephanie A. Martz, *General Counsel*
National Retail Federation
1101 New York Avenue, NW #1200
Washington, DC 20005

Doug Kantor, *General Counsel*
National Association of Convenience
Stores
1600 Duke Street, 7th Floor
Alexandria, VA 22314

Angelo I. Amador, *Executive Director*
Restaurant Law Center
2500 L Street, NW, Suite 700
Washington, D.C. 20036

Brett Bartlett
Seyfarth Shaw LLP
1075 Peachtree Street, NE
Suite 2500
Atlanta, GA 30309-3962
(404) 885-1500
bbartlett@seyfarth.com

*Attorneys for National Retail
Federation, National Association of
Convenience Stores, and Restaurant
Law Center - Amici*

# CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fifth Circuit Rule 29.2, the undersigned counsel of record certifies that, in addition to those already listed in the parties' motion papers, the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order for the judges of this court to evaluate possible disqualification or recusal.

*Amici*: National Retail Federation, National Association of Convenience Stores, and Restaurant Law Center

***Counsel for Amici***: Brett Bartlett, Seyfarth Shaw LLP

*/s/ Brett Bartlett*
Brett Bartlett

*Attorney for National Retail Federation, National Association of Convenience Stores, and Restaurant Law Center -Amici*

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ................................................... i

TABLE OF CONTENTS ................................................................................ ii

TABLE OF AUTHORITIES ......................................................................... iii

STATEMENT OF *AMICI CURIAE* ............................................................. 1

SUMMARY OF ARGUMENT ....................................................................... 3

ARGUMENT ................................................................................................. 3

    I.    THE GOVERNMENT IS UNLIKELY TO SUCCEED ON THE MERITS OF ITS APPEAL ..................................................................... 4

    II.   THE GOVERNMENT CANNOT DEMONSTRATE IRREPARABLE HARM IF THE INJUNCTION IS NOT STAYED ............................................................................................. 6

    III.  IMMEDIATE, IRREPARABLE HARM TO APPELLEES AND THE PUBLIC IS AT STAKE IF THE INJUNCTION IS STAYED ............................................................................................. 7

    IV.  A NATIONWIDE INJUNCTION SERVES THE PUBLIC'S INTEREST TO PRESERVE THE STATUS QUO AND PREVENT NATIONWIDE CONFUSION ........................................ 15

CONCLUSION ............................................................................................. 16

CERTIFICATE OF COMPLIANCE ............................................................. 17

CERTIFICATE OF SERVICE ...................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.T.N. Indus., Inc. v. Gross,*
  632 F. App'x 185 (5th Cir. 2015) .......................................................... 5

*Barber v. Bryant,*
  833 F.3d 510 (5th Cir. 2016) ................................................................ 4

*Career Colleges & Sch. of Texas v. United States Dep't of Educ.,*
  98 F.4th 220 (5th Cir. 2024) .............................................................. 11

*Deerfield Med. Ctr. v. City of Deerfield Beach,*
  661 F.2d 328 (5th Cir. 1981) ................................................................ 4

*Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.,*
  441 F.2d 560 (5th Cir. 1971) .............................................................. 15

*Exxon Corp. v. Berwick Bay Real Est. Partners,*
  748 F.2d 937 (5th Cir. 1984) ................................................................ 4

*Louisiana by & through Murrill v. United States Dep't of Educ.,*
  No. 24-30399, 2024 WL 3452887 (5th Cir. July 17, 2024) .............. 6, 8

*Louisiana v. Biden,*
  55 F. 4th 1017 (5th Cir. 2022) ............................................................. 8

*Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco,
  Firearms & Explosives,*
  728 F. Supp. 3d 394 (N.D. Tex. 2024) ............................................... 12

*Texas v. United States,*
  809 F.3d 134 (5th Cir. 2015) .............................................................. 15

*Wages & White Lion Invs., LLC v. FDA,*
  16 F.4th 1130 (5th Cir. 2021) ............................................................. 15

*X Corp. v. Media Matters for Am.,*
  120 F.4th 190 (5th Cir. 2024) .............................................................. 4

**Statutes**

31 U.S.C. § 5336.................................................................*passim*

**Other Authorities**

31 C.F.R. § 1010.380.........................................................*passim*

87 Fed. Reg..................................................................................... 8

First Amendment..................................................................... 13, 14

Fourth Amendment ................................................................. 13, 14

Federal Rules of Appellate Procedure Rule .............................. 3

## STATEMENT OF *AMICI CURIAE*

The National Retail Federation (the "NRF") is the world's largest retail trade association, representing discount and department stores, home goods and specialty stores, Main Street merchants, grocers, wholesalers, chain restaurants, and internet retailers from the United States and more than 45 countries. The NRF empowers the industry that powers the economy. Retailers represent the nation's largest private sector employer, contributing $5.3 trillion to the annual GDP and supporting more than one in four U.S. jobs – 55 million working Americans. For over a century, NRF has been a voice for every retailer and every retail job, educating and communicating the powerful impact retail has on local communities and global economies.

The National Association of Convenience Stores (the "NACS") is an international trade association that represents both the convenience and fuel retailing industries with more than 1,300 retail and 1,600 supplier company members. The United States convenience industry has more than 152,000 stores across the country, employs 2.74 million people, and had more than $859 billion in sales in 2023 ($532 billion of which were fuel sales). The industry, however, is truly an industry of small

businesses with more than 60 percent of convenience stores having single-store operators and more than 95% of the industry operating as independent businesses.

The Restaurant Law Center ("Law Center") is the only independent public policy organization created specifically to represent the interests of the food service industry in the courts. This labor-intensive industry is comprised of over one million restaurants and other foodservice outlets employing nearly 16 million people—approximately 10 percent of the U.S. workforce. Restaurants and other foodservice providers are the second largest private sector employers in the United States. The Law Center provides courts with perspectives on legal issues that have the potential to significantly impact its members and their industry.

While the NRF, NACS, and the Law Center are tax-exempt organizations under section 501(c) of the International Revenue Code and are exempt from the Corporate Transparency Act ("CTA" or the "Act") and the corresponding Reporting Rule, a large portion of their members (the "Members") will be required to comply with the Act if deemed constitutional and enforceable. The Members would be required to meet their reporting obligations by January 1, 2025, if the

Government's Motion is granted. The Members therefore have an interest in this matter and in particular, supporting denial of the Government's Motion in favor of the District Court's preliminary injunction.[1]

## SUMMARY OF ARGUMENT

This Court should affirm the District Court's order granting a preliminary injunction (enjoining the CTA, 31 U.S.C. § 5336 and the Reporting Rule, 31 C.F.R. § 1010.380 and staying the compliance deadline of January 1, 2025) and deny Appellants' emergency motion to stay the preliminary injunction because Appellees satisfied the conditions to warrant preliminary injunctive relief and staying the injunction would have irreversible negative repercussions for small businesses throughout the nation.

## ARGUMENT

A stay is treated as an "intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of

---

[1] No party to this filing has a parent corporation, and no publicly held corporation owns 10% or more of the stock of any of the parties to this filing. The NRF, NACS, and Law Center file this brief pursuant to Rule 29(a) of the Federal Rules of Appellate Procedure and all parties to the appeal have consented to the filing of this brief. No counsel for any party authored this brief in whole or in part and no entity or person, aside from amici curiae, their members, or its counsel, made any monetary contribution intended to fund the preparation or submission of this brief.

right, even if irreparable injury might otherwise result to the appellant."

*Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016). To justify a stay, a movant must show that "(1) it is likely to succeed on the merits of its appeal, (2) it will be irreparably injured if the injunction is not stayed, (3) the stay would not substantially harm [the appellee(s)], and (4) granting the stay would serve the public interest." *Exxon Corp. v. Berwick Bay Real Est. Partners*, 748 F.2d 937, 939 (5th Cir. 1984). Because the Government cannot satisfy these requirements, its Motion to Stay should be denied.

## I.  THE GOVERNMENT IS UNLIKELY TO SUCCEED ON THE MERITS OF ITS APPEAL

In its 80-page opinion granting Appellees' Motion for Preliminary Injunction, the District Court thoughtfully examined the arguments of both sides, ultimately determining that Appellees had met their burden to support granting a preliminary injunction. As a threshold matter, the District Court examined the legal standing of each Plaintiff, concluding that each Plaintiff met its Article III standing requirements. (Opinion and Order at 22.) The District Court proceeded to evaluate the four fundamental elements for obtaining injunctive relief: the threat of harm from the CTA (*id.* at 23 – 32), the likelihood of Plaintiffs' success on the

merits (*id.* at 32 − 73), whether the threatened harm outweighed any damage from an injunction (i.e., balancing the equities) (*id.* at 73 − 74), and if such relief would harm the public (*id.*). *See A.T.N. Indus., Inc. v. Gross*, 632 F. App'x 185, 191 (5th Cir. 2015) ("A preliminary injunction may be granted if the plaintiff establishes the following rote elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest.").

In the course of its analysis, the District Court gave the Government every benefit of the doubt and considered the likely outcome "even if" any given argument favored the Government. To wit, the "Court open[ed] each door" but concluded the "CTA finds no solace behind any door." (Doc. 21 at 55). The court correctly concluded that the facts and case law overwhelmingly supported Appellees' position that the CTA is likely unconstitutional and that a preliminary injunction is warranted. Given the District Court's well-reasoned opinion and finding that

Plaintiffs demonstrated a likelihood of success on the merits, the Government is not likely to prevail on its appeal.

## II. THE GOVERNMENT CANNOT DEMONSTRATE IRREPARABLE HARM IF THE INJUNCTION IS NOT STAYED

The Government will not suffer irremediable harm absent a stay. Government enforcement authorities are not being denied any information it has previously had access to by way of the injunction. Nor is it being deprived of its existing tools and resources to combat financial crime. *See, e.g., Louisiana by & through Murrill v. United States Dep't of Educ.*, No. 24-30399, 2024 WL 3452887, at *3 (5th Cir. July 17, 2024) (finding that the injunction pending appeal did not prevent the government from enforcing existing or longstanding regulations to prevent the conduct covered by the agency's enjoined rule). At most, if the District Court ultimately determined the CTA was constitutional and dissolved the injunction, FinCEN would simply have access to the ownership information at a later date—beyond the arbitrary January 1, 2025 date. *See id.* (concluding that the government "can hardly be said to be injured by putting off the enforcement of a Rule it took three years

to promulgate after multiple delays"). There is therefore no true "disruption" to the Government.

## III. IMMEDIATE, IRREPARABLE HARM TO APPELLEES AND THE PUBLIC IS AT STAKE IF THE INJUNCTION IS STAYED

Eliminating the Court's preliminary injunction would result in consequences to *amici's* members that cannot be reversed. The public faces a compliance deadline of January 1, 2025—a mere two weeks away—which the District Court suspended through its granting of Appellants' Motion for Preliminary Injunction. Given that imminent deadline, which businesses across the nation no longer think applies to them, the practical implications of Appellants' demand to stay the injunction is severe. If the Government's Motion is granted, Appellees and the public subject to the CTA and Reporting Rule will be required to comply with the reporting obligations by January 1st or face the potential civil penalties up to $10,000 or imprisonment up to two years. Small businesses who have deferred their compliance obligations in light of the injunction could therefore be confronted with potential imprisonment in the new year.

The Act itself creates new obligations to reporting companies that come at a cost. Such costs include the financial burden and time to prepare the requisite beneficial ownership information ("BOI") submission and the retention of professional advice to aid in the submission, to which Appellees attested in their respective Declarations. Even if Appellants prevailed on the merits of their action, those would be sunk costs never to be repaid. *See Louisiana v. Biden*, 55 F. 4th 1017, 1034 (5th Cir. 2022) ("[C]omplying with a regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs[.]") (citation omitted); *see also Murrill*, 2024 WL 3452887, at *2 ("Irreparable harm is demonstrable by significant, unrecoverable compliance costs."). The Government acknowledges these expected time expenditures, compliance costs, and legal expenses, but maintains such costs are minimal. (Doc. 21 at 16.) Yet, the legislative record demonstrates that by FinCEN's own estimation, the financial impact of the Act is significant. *See* 87 Fed. Reg. at 59585-86 ("FinCEN estimates that the total cost of filing BOI reports is approximately $22.7 billion in the first year and $5.6 billion in the years after.").

Like Appellees, Members will also suffer immediate harm if the injunction is stayed as they would be forced to satisfy the reporting requirements by January 1, 2025, or be deemed noncompliant. This is a tall ask, especially for small businesses with limited personnel and resources. There are a number of steps involved to meet compliance before Members (individually, "Company") even reach preparing and filing BOI reports, including but not limited to:

1. Identify individuals to monitor CTA regulations and notify Company management of any relevant changes.

2. Adopt Company policy regarding CTA compliance.

3. Develop CTA-related training.

4. Review Company's organization chart and other records to ensure they are up to date.

5. Determine whether the Company is a "reporting company".

6. Determine if any exemptions apply and memorialize exemption analysis.

7. Collect reporting information on the reporting companies.

8. Determine all reportable beneficial owners for reporting companies.

9. Collect reporting information on beneficial owners; obtain FinCEN Identifier number for each reportable beneficial owner.

10. Identify Company Applicants for reporting companies and collect reporting information on them; obtain FinCEN ID numbers.

11. Request all reportable beneficial owners (including control persons) and Company Applicants obtain FinCEN Identifiers (FinCEN ID).

Each of the foregoing steps takes considerable time and attention. For example, Members need to determine who is the "applicant", the individual responsible for filing the organizing documents with the state, and obtain the applicant's personal information. *See* 31 U.S.C. §§ 5336(a)(2), (b)(2)(a). The Company also may have to obtain a FinCEN ID number for the applicant, which involves a separate process of creating an account and submitting personal information to FinCEN in order for FinCEN to issue a number. *Id.* § (a)(6). As another example, Members must make a determination as to who qualifies as a beneficial owner, gathering the requisite personal information as to each one. This determination is not straight-forward because it is not self-evident who a beneficial owner is, as it includes, for example, those who exercise "substantial control" over the Company. *See* 31 C.F.R. § 1010.380(d)(1)(i).

Compliance with the CTA is also not a one-time exercise. After filing a BOI report, Members are expected to implement a compliance process to monitor and report any changes or inaccuracies in BOI reports. They are required to file updates if any information about the reporting company or beneficial owners and control persons changes after the initial BOI filing is made. Likewise, they are required to file a corrected report if the Company discovers any inaccuracy. And if an exemption applies, Members must continue to monitor that such exemption continues to apply, because it must file a BOI report within 30 calendar days after the date the exemption no longer applies. Just the same, any reporting company that becomes exempt must update its BOI report within 30 calendar days of the date it meets the exemption criteria. These additional recordkeeping obligations further illustrate the harm Members face. *Career Colleges & Sch. of Texas v. United States Dep't of Educ.*, 98 F.4th 220, 235 (5th Cir. 2024) (recognizing "enhanced recordkeeping requirements inflict a kind of irreparable harm that warrants the issuance of a preliminary injunction").

The CTA also impacts Members' best practices for data security and general company operations. In light of the BOI data, Members must

develop a secure process for collecting and storing personal information of beneficial owners and company applicants. Relatedly, they have to review applicable privacy policies to confirm whether disclosure to comply with law is permitted and amend policies as necessary. Members also have to consider all existing company documents, agreements, and policies to determine whether CTA provisions need to be added (e.g., Shareholders Agreements, Director and Officer Agreements). The compliance work continues well after the BOI is first reported.

Critically, noncompliance is not without risk because failures to satisfy reporting obligations may result in a civil penalty or imprisonment. 31 U.S.C. §§ (h)(1) – (3). Failing to meet the January 1, 2025 deadline could result in a civil fine of up to $500 a day, totaling up to $10,000 and criminal penalties of imprisonment for up to two (2) years. 31 U.S.C. § 5336(h)(1) – (3). This potential outcome serves as another basis for the injunctive relief granted by the District Court. *See, e.g., Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 728 F. Supp. 3d 394, 410 (N.D. Tex. 2024) (finding that "members facing criminal penalties and fines for noncompliance during

the pendency of this lawsuit" satisfied the irreparable harm requirement).

Compliance with the CTA also comes at the cost of Appellees' and Members' constitutional rights. Appellees challenge the constitutionality of the Act on three grounds: (i) it exceeds Congress' enumerated powers; (ii) it violates Appellees' First Amendment rights; and (iii) it violates Appellees' Fourth Amendment rights. (Doc. 21, A140 – A158 (Plaintiffs' Motion for Preliminary Injunction)), the second and third considerations of which give rise to irreversible harm.

If Appellees and Members are required to comply by January 1, 2025, they will be required to reveal private information about their respective companies. Such information includes the identity of each "beneficial owner", including legal name, date of birth, residential or business address, and identifying number from an acceptable identification document (e.g., passport). 31 U.S.C. §§ 5336(b)(1)(A), (b)(2)(A). FinCEN can retain the information for at least five years after the reporting company terminates. *Id.,* §§ 5336(c)(1), (2)(B). FinCEN may also disclose the information to other Federal agencies and foreign entities under certain circumstances. *Id.,* § (c)(2)(B). This is significant

because the preliminary injunction is the only measure to insulate unnecessary disclosure of Members' beneficial ownership information to not only FinCEN (for an extended period) but also third parties.

Like the Appellees, Members have a protected interest in any intended anonymity of their beneficial owners. Demanding such information infringes Members' right to free, and anonymous, speech and association under the First Amendment. *See X Corp. v. Media Matters for Am.*, 120 F.4th 190, 196 (5th Cir. 2024) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury… [and] the public interest is better served by avoiding even the risk of a chilling effect on association.") (quotations omitted). Likewise, demanding such information violates Members' Fourth Amendment rights to privacy. *See Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) (explaining how the "right of privacy must be carefully guarded for once an infringement has occurred it cannot be undone by monetary relief"). Without the preliminary injunction, Members' constitutional rights are threatened.

**IV. A NATIONWIDE INJUNCTION SERVES THE PUBLIC'S INTEREST TO PRESERVE THE STATUS QUO AND PREVENT NATIONWIDE CONFUSION**

The crux of an injunctive relief is to preserve the status quo. *See Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 441 F.2d 560, 561 (5th Cir. 1971) ("The purpose of a preliminary injunction is to preserve the status quo and thus prevent irreparable harm until the respective rights of the parties can be ascertained…"). The nationwide injunction serves that purpose, as opposed to a selective result that varies arbitrarily by venue. *See Texas v. United States*, 809 F.3d 134, 188 (5th Cir. 2015), as revised (Nov. 25, 2015) ("It is not beyond the power of a court, in appropriate circumstances, to issue a nationwide injunction.") (collecting cases). The status quo here is simply a pre-CTA era, which is history as we all know it. *See Wages & White Lion Invs., LLC v. FDA*, 16 F.4th 1130, 1144 (5th Cir. 2021) (explaining courts can grant "interim relief" to "preserve the status quo *ante*"). That is, the company-ownership information FinCEN seeks by way of the CTA and that Appellees and the Members desire to maintain confidential are preserved as such, while eliminating the significant time and cost of compliance until final adjudication by the Court.

## CONCLUSION

For all the foregoing reasons, this Court should affirm the District Court's grant of a preliminary injunction and deny Appellants' request for a stay.

Dated:  December 18, 2024       Respectfully submitted,

*/s/ Brett Bartlett*

Brett Bartlett
Seyfarth Shaw LLP
1075 Peachtree Street, NE
Suite 2500
Atlanta, GA 30309-3962
(404) 885-1500
bbartlett@seyfarth.com

*Attorneys for National Retail
Federation, National Association
of Convenience Stores, and
Restaurant Law Center -Amici*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7) and includes 2,881 words, excluding the parts of the brief exempt by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook, size 14 font. Pursuant to 5th Cir. R. 32.1, the footnotes have been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook, size 12 font.

Dated: December 18, 2024      Respectfully,

*/s/ Brett Bartlett*
Brett Bartlett

## CERTIFICATE OF SERVICE

I hereby certify that I e-filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system on December 18, 2024. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I hereby certify that on December 18, 2024, the undersigned also mailed the foregoing to:

Faith E. Lowry
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, N.W.
Washington, D.C. 20005

Dated: December 18, 2024

*/s/ Brett Bartlett*
Brett Bartlett

*Attorney for National Retail Federation, National Association of Convenience Stores, and Restaurant Law Center - Amici*