No. 24-40792

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

TEXAS TOP COP SHOP, INC., et al.,

*Plaintiffs-Appellees,*

v.

MERRICK GARLAND, ATTORNEY GENERAL OF THE UNITED STATES, et al.,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Eastern District of Texas, Sherman Division
(No. 4:24-cv-478, Hon. Amos L. Mazzant)

**BRIEF OF *AMICUS CURIAE* ASSOCIATED GENERAL CONTRACTORS OF AMERICA, INC., ASSOCIATED GENERAL CONTRACTORS OF NEW YORK STATE, LLC, and THE BUSINESS COUNCIL OF NEW YORK STATE, INC. IN SUPPORT OF PLAINTIFFS-APPELLEES' OPPOSITION TO DEFENDANTS-APPELLANTS' EMERGENCY MOTION FOR STAY PENDING APPEAL**

Murphy J. Foster, III, Esq. (La. Bar No. 5779)
Breazeale, Sachse & Wilson, L.L.P.
One American Place
301 Main Street, Suite 2300
Baton Rouge, Louisiana 70801
murphy.foster@bswllp.com

5184459.v1

Joel M. Howard, III, Esq.
Charles G. Carluccio, Esq.
Couch White, LLP
540 Broadway, P.O. Box 22222
Albany, New York 12201
Telephone: (518) 426-4600
jhoward@couchwhite.com
ccarluccio@couchwhite.com

December 18, 2024
*Attorneys for Amici Curiae*
*Associated General Contractors of America, Inc., Associated General Contractors of New York State, LLC, and The Business Council of New York State, Inc.*

# CERTIFICATE OF INTERESTED PERSONS

Pursuant to this Court's Rule 29.2 and Federal Rule of Appellate Procedure 26.1, *amici curiae* Associated General Contractors of America, Inc., Associated General Contractors of New York State, LLC, and The Business Council of New York State, Inc. submit this certificate of interested persons to fully disclose all those with an interest in this brief and provide the required information as to their corporate status and affiliations.

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case, in addition to those listed in the briefs of the parties. These representations are made in order that the judges of this Court may evaluate potential disqualification or recusal.

A. *Amicus Curiae* Associated General Contractors of America, Inc. has no parent corporation, but it does have two subsidiary corporations, Project Modeling, LLC and ConsensusDocs, LLC. No publicly traded company owns 10% or more of Associated General Contractors of America, Inc. of its subsidiaries.

B. *Amicus Curiae* Associated General Contractors of New York State, LLC is a private, non-profit trade association that is the New York State affiliate of the Associated General Contractors of America, Inc. No publicly traded company owns 10% or more of Associated General Contractors of New York State, LLC.

i

C.  *Amicus Curiae* The Business Council of New York State, Inc. has no parent corporation and no publicly traded company owns 10% or more of The Business Council of New York State, Inc.

D.  The above-listed *amici curiae* are represented by Murphy J. Foster, III, Esq. of Breazeale, Sachse & Wilson, L.L.P. and Joel M. Howard, III, Esq. and Charles G. Carluccio, Esq. of Couch White, LLP.

/s/ *Murphy J. Foster, III*
Murphy J. Foster, III, Esq. (La. Bar No. 5779)
Breazeale, Sachse & Wilson, L.L.P.
One American Place
301 Main Street, Suite 2300
Baton Rouge, Louisiana 70801
murphy.foster@bswllp.com

Joel M. Howard, III, Esq.
Charles G. Carluccio, Esq.
*Counsel for Amicus Curiae Associated General Contractors of America, Inc. and Associated General Contractors of New York State, LLC and The Business Council of New York State, Inc.*
540 Broadway, P.O. Box 22222
Albany, New York 12201-2222
Telephone: (518) 426-4600
Facsimile: (518) 426-0376
jhoward@couchwhite.com
ccarluccio@couchwhite.com

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ........................................................... i

TABLE OF CONTENTS ................................................................................................ iii

TABLE OF AUTHORITIES ......................................................................................... iv

INTEREST OF THE AMICI CURIAE ........................................................................ 1

PRELIMINARY STATEMENT ................................................................................... 3

LEGAL ARGUMENT .................................................................................................... 5

    I.        Defendants-Appellants Fail to Show that a Stay Will Not Substantially Injure the Other Parties or Serve the Public Interest ................................................................................................. 5

CONCLUSION ............................................................................................................... 11

CERTIFICATE OF COMPLIANCE ......................................................................... 13

CERTIFICATE OF SERVICE .................................................................................... 14

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Nken v. Holder*,
  556 U.S. 418 (2009) .................................................................................. 5

*Rest. Law Ctr. V. United States DOL*,
  66 F.4th 593 (5th Cir. 2023) ...................................................................... 6

**STATUTES AND RULES**

31 C.F.R. § 1010.380 .................................................................................... 4

31 U.S.C. § 5336 ....................................................................................... 3, 4

87 Fed. Reg. 59550 ................................................................................... 5, 6

87 Fed. Reg. 95974 ....................................................................................... 8

Federal Rule of Appellate Procedure 26.1 ..................................................... i

Federal Rule of Appellate Procedure 29 ..................................................... 13

Federal Rule of Appellate Procedure 32 ..................................................... 13

Rule 28.2.1 ..................................................................................................... i

Rule 29.2 ........................................................................................................ i

# INTEREST OF THE AMICI CURIAE[1]

The Associated General Contractors of America, Inc. (AGC of America) is the nation's largest and most diverse trade association in the commercial construction industry, now representing more than 28,000 member companies, which include general contractors, specialty contractors, and service providers and suppliers to the industry through a nationwide network of chapters in all 50 states, the District of Columbia, and Puerto Rico. AGC of America represents both union and open-shop employers engaged in building, heavy, civil, industrial, utility, and other construction for both public and private property owners and developers. AGC of America works to ensure the continued success of the commercial construction industry by advocating for federal, state, and local measures that support the industry; providing education and training for member firms; and connecting member firms with resources needed to be successful businesses and responsible corporate citizens. AGC of America represents the interest of its members in matters before Congress, the Executive Branch, and the courts.

---

[1] This brief was not authored in whole or in part by counsel for a party, and no other than *amici curiae* or their counsel made a monetary contribution to the preparation or submission of the brief. The *amici curiae* and its counsel have not represented the parties to this appeal in another proceeding involving similar issues. AGC of America has, however, along with other business groups coordinated by the National Federation of Independent Business Legal Center jointly filed an *amicus* brief in the Eleventh Circuit in support of small business plaintiffs in the *National Small Business Association* case, arguing that the CTA is unconstitutional because it regulates beyond Congress' legislative powers.

1

Associated General Contractors of New York State, LLC ("AGC NYS", together with AGC of America, "AGC") is a chapter of AGC of America, which represents over 28,000 general contractors, subcontractors, and specialty contractors in the construction industry. AGC NYS is a private, non-profit trade association representing approximately 250 construction managers and general contractors, running the gamut, from massive entities to local 'Mom-and-Pop' businesses, as well as 85 subcontractors and 300 associate members conducting business throughout the State of New York.

AGC NYS members are responsible for performing the majority of this State's private-and-public-sector contracts for the construction of highways, buildings, and heavy industrial and municipal utility facilities.

AGC's activities for its members encompass government representation, legal advocacy, education, workforce development and training relating to the construction industry. As part of its legal advocacy, AGC regularly participates as *amicus curiae* in both state and federal jurisdictions throughout the country in support of its members and affiliates where the issues for consideration are of national and statewide significance to the construction industry. This is such a case, as the Government Appellant's application for a stay of the Amended Memorandum Opinion and Order of the United States District Court for the Eastern District of Texas, Sherman Division, will create administrative chaos and uncertainty on

construction contractors and subcontractors in the United States, to the detriment of the construction workforce, public owners, and taxpayers alike.

The Business Council of New York State, Inc. ("TBC"), is the leading business organization in New York State, representing the interests of large and small firms throughout the state. TBC's membership is made up of more than 3,000 member companies, local chambers of commerce and professional and trade associations. Though 76 percent of TBC's members are small businesses, it also represents some of the largest and most important corporations in the world. Combined, TBC members employ more than 1.2 million New Yorkers.

TBC serves as an advocate for employers in the state's political and policy-making arenas, working for a healthier business climate, economic growth, and jobs. TBC also helps its members cut costs and provides important benefits to their employees with group insurance programs that offer competitive costs and high-quality service. TBC's team also serves as an information resource center for its members, providing an array of news and updates, webinars, seminars, networking, and individualized regulatory and legislative assistance.

## PRELIMINARY STATEMENT

On January 1, 2021, Congress enacted the Corporate Transparency Act ("CTA"), 31 U.S.C. § 5336, which was a federal attempt to regulate in an area of traditional state control. The CTA mandated that any "reporting company" file with

the Financial Crimes Enforcement Network ("FinCEN") reports of all its "beneficial ownership information." 31 U.S.C. § 5336(b)(1)(A). The CTA defines the term "beneficial owner" as "an individual who, directly or indirectly, through any contract, arrangement, understanding, relationship, or otherwise, exercise substantial control over the entity." 31 U.S.C. § 5336(a)(3)(A). While the CTA itself does not define "substantial control," the final rule implementing the CTA, the "Reporting Rule", does under 31 C.F.R. § 1010.380(d)(1).

Plaintiffs-Appellees herein commenced an action in the United States District Court for the Eastern District of Texas, Sherman Division (the "District Court"), seeking an injunction prohibiting Defendants-Appellants from enforcing the CTA and its accompanying Reporting Rule and a declaratory judgment invalidating the CTA and the Reporting Rule.

On or about December 5, 2024, the District Court granted Plaintiffs-Appellees' motion for a preliminary injunction (the "Amended Memorandum Opinion and Order"). Now, Defendants-Appellants have moved for an emergency motion for stay pending appeal.

This *amicus* brief focuses on the third and fourth prongs that Defendants-Appellants must satisfy to obtain a stay pending appeal: (3) that a stay will not substantially injure the other parties; and (4) that a stay serves the public interest.

4

For the reasons set forth below, Defendants-Appellants have not satisfied either requirement.

## LEGAL ARGUMENT

**I.     Defendants-Appellants Fail to Show that a Stay Will Not Substantially Injure the Other Parties or Serve the Public Interest**

To obtain a stay pending appeal, Defendants-Appellants must (1) make a strong showing that it is likely to succeed on the merits, (2) that they will be irreparably injured absent a stay, (3) that a stay will not substantially injure the other parties, and (4) that a stay serves the public interest. *Nken v. Holder*, 556 U.S. 418, 426 (2009).

In their moving papers, Defendants-Appellants significantly downplay the compliance costs associated with complying with the CTA and claim such costs are "minimal." To the contrary, as FinCEN recognized, the CTA and its Reporting Rule "will have a significant economic impact on a substantial number of small entities." Beneficial Ownership Information Reporting Requirements, 87 Fed. Reg. 59550. Specifically, "FinCEN estimates that there will be approximately 32.6 million existing reporting companies and 5 million new reporting companies formed each year." *Id.* at 59585. "Assuming that all reporting companies are small businesses, the burden hours for filing [beneficial ownership information] reports would be 126.3 million in the first year of the reporting requirement (as existing small businesses come into compliance with the rule) and 35 million in the years after.

5

FinCEN estimates that the total cost of filing [beneficial ownership information] reports is approximately $22.7 billion in the first year and $5.6 billion in the years after." *Id.* at 59585-86. These costs arise for filing initial reports, reviewing information, and complying with ongoing duties to update them when information changes *Id.*

Were the Court to grant Defendants-Appellants application for a stay, it would require all businesses, including the members of AGC and TBC, to comply with the CTA and the Reporting Rules. These costs would be nonrecoverable if the CTA were to later be deemed unconstitutional. As the Court is aware, "the nonrecoverable costs of complying with a putatively invalid regulation typically constitute irreparable harm." *Rest. Law Ctr. V. United States DOL*, 66 F.4th 593, 597 (5th Cir. 2023). Based upon this fact alone, Defendants-Appellants fail to satisfy the third *Nken* prong, since a stay would require businesses to pay these unrecoverable costs to comply, even if the CTA is later deemed unconstitutional. Conversely, even though the burden is not on Plaintiffs-Appellees, there is no harm in maintaining the status quo until this determination is made in connection with the CTA's constitutionality.

If the CTA is later found to be unconstitutional, another nonrecoverable harm associated with granting the Defendants-Appellants application for a stay is the data submitted to FinCEN itself. As AGC of America noted in its comment letter to

FinCEN during the rulemaking process[2], while AGC expects FinCEN to take precautions to ensure that its database of BOI is secure, any database—especially one that can be accessed by nearly 18,000 distinct jurisdictions—will face security vulnerabilities. In recent years, high profile breaches of sensitive federal databases, such as the 2015 exfiltration of personnel files from the Office of Personnel Management, the 2020 "SolarWinds" hack of multiple federal Department and Agencies, and the high profile—and unlawful—release of thousands of Suspicious Activity Reports from FinCEN itself[3], reinforce the view that no database is fully secure, and that the BOI database will become a prime target of hackers and/or government employees "blinded by [their] own apparent sense of self-righteousness[4]" as the Department of Justice said in its sentencing motion of Natalie Mayflower Sours Edwards, who unlawfully disclosed the Suspicious Activity Reports collected by FinCEN.

In addition to these nonrecoverable costs, the administrative burden created by the CTA and the impending deadline to file will create institutional chaos. Complying with the CTA is not as simple as providing "readily accessible" information as Defendants-Appellants suggest. As described above, there is

---

[2] https://www.regulations.gov/comment/FINCEN-2021-0005-0404
[3] https://www.fincen.gov/news/news-releases/statement-fincen-regarding-unlawfully-disclosed-suspicious-activity-reports
[4] https://www.documentcloud.org/documents/20694929-82-main/

7

considerable ambiguity with regard to the identification of "beneficial owners" and the analysis requires expertise from both attorneys and accountants. This determination takes time and money and is a significant undertaking for all of the estimated 32.6 million small entities like Plaintiffs-Appellees and the members of AGC and TBC. This fact is even acknowledged by FinCEN, who recognizes that entities face different regulatory burdens depending on their beneficial ownership structure, with "simple," "intermediate" and "complex" structures facing differing obligations, with the burden on each filer to file initial reports as $85.14, $1,350, and $2,614.87 respectively, and the burden to update the reports for each filer as $37.84, $299.33, and $560.81. 87 Fed. Reg. at 95974, 95976.

The implications for non-compliance must also be addressed. The willful failure to report complete or updated beneficial ownership information to FinCEN, or the willful provision of or attempt to provide false or fraudulent beneficial ownership information, may result in civil and criminal penalties. When the CTA was passed, it provided for civil penalties of up to $500 for each day that the violation continues. As of 2024, the civil penalty has been adjusted to up to $591 per day to account for inflation and will continue to be adjusted for inflation each year pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990. In addition, the CTA also provides for criminal penalties of imprisonment for up to two years and/or a fine of up to $10,000.

Both individuals and corporate entities can be held liable for willful violations including actually filing (or attempting to file) false information with FinCEN, providing the filer with false information to report, or willfully failing to report complete or updated beneficial ownership information.

Individuals who may be subject to civil and/or criminal penalties include individuals who willfully file a false or fraudulent beneficial ownership report on a company's behalf, senior officers of an entity that fails to file a required beneficial ownership information report and individuals who willfully cause a reporting company's failure to submit complete or updated beneficial ownership information to FinCEN.

Accordingly, the public interest strongly favors denying Defendants-Appellants' application for a stay due to the significant administrative burden, non-recoverable costs, and the potentially significant financial and criminal penalties associated with the implementation of the CTA. A stay would impose immediate and irreparable harm on millions of businesses, particularly small businesses, forcing them to expend considerable resources on compliance efforts with uncertain legal outcomes. These costs, including legal fees and the time invested in gathering and verifying information, are non-recoverable, representing a significant waste of resources if the CTA is eventually overturned. Furthermore, the substantial daily penalties for non-compliance create a chilling effect, potentially stifling economic

activity and disproportionately affecting vulnerable businesses. Forcing businesses to comply with an uncertain and challenged law will undermine public confidence and hinder the ability of businesses to plan effectively, thus harming the overall economic climate. The public interest is served by denying the stay and maintaining the status quo until the CTA's constitutionality is decided, preventing the unnecessary expenditure of resources and mitigating the potential for widespread harm.

Finally, reinstating the reporting deadline on such short notice would impose a significant and undue burden on businesses. Following the court injunction, both FinCEN's own guidance and subsequent news reports indicated that the filing deadline was no longer in effect. The government's failure to seek a stay of the injunction for more than a week further solidified this understanding, leading many businesses to reasonably conclude that there was no immediate obligation to file. As a result, a substantial number of businesses have not yet submitted their reports.

Reviving the filing deadline with only a few business days remaining in the year will trigger a chaotic rush for compliance. Businesses that rely on professional legal or accounting assistance to navigate the reporting process would face particular difficulty, as they will likely struggle to secure the necessary help on such short notice during a holiday period. This last-minute scramble would not only strain businesses operationally but also exponentially amplify the compliance burden,

especially for smaller companies that lack in-house expertise or resources. The abrupt shift risks widespread confusion and noncompliance, undermining the goal of orderly and efficient reporting. Accordingly, Defendants-Appellants' application for a stay pending appeal should be denied.

## CONCLUSION

Respectfully, given the foregoing, this Court should deny Defendants-Appellants' application seeking a stay of the Amended Memorandum Opinion and Order.

| | | |
|---|---|---|
| Dated: | December 18, 2024<br>Baton Rouge, Louisiana | Respectfully submitted,<br><br>BREAZEALE, SACHSE & WILSON, L.L.P<br><br>/s/ *Murphy J. Foster, III*<br>Murphy J. Foster, III, Esq. (La. Bar No. 5779)<br>*Counsel for Amicus Curiae*<br>*Associated General Contractors of America, Inc. and Associated General Contractors of New York State, LLC and The Business Council of New York State, Inc.*<br>One American Place<br>301 Main Street, Suite 2300<br>Baton Rouge, Louisiana 70801<br>murphy.foster@bswllp.com |

COUCH WHITE, LLP

/s/ *Charles G. Carluccio*
Joel M. Howard, III, Esq.
Charles G. Carluccio, Esq.
*Counsel for Amicus Curiae*
*Associated General Contractors of*
*America, Inc. and Associated General*
*Contractors of New York State, LLC*
*and The Business Council of*
*New York State, Inc.*
540 Broadway, P.O. Box 22222
Albany, New York 12201-2222
Telephone: (518) 426-4600
Facsimile: (518) 426-0376
jhoward@couchwhite.com
ccarluccio@couchwhite.com

# CERTIFICATE OF COMPLIANCE

This brief contains 2,165 words. The brief complies with the typeface and type-style requirements of FRAP 29(a)(5) and 32(a)(7)(B) because it was prepared using Microsoft Word 2016 in Times New Roman 14-point font.

*/s/ Murphy J. Foster, III*
Murphy J. Foster, III

Dated: December 18, 2024

# CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2024, I electronically filed the above Brief of Amicus of Associated General Contractors of America, Inc., Associated General Contractors of New York State, LLC, and The Business Council of New York State, Inc. in support of Plaintiffs-Appellees' opposition to Defendants-Appellants' Emergency Motion For Stay Pending Appeal with the Clerk of the Court for the U.S. Court of Appeals for the Fifth Circuit by using the Appellate CM/ECF system. Participants in the case are registered CM/ECF users will be served by the CM/ECF system.

Dated: December 18, 2024

/s/ *Murphy J. Foster, III*
Murphy J. Foster, III

14

5184459.v1