**No. 24-40792**

___

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

___

TEXAS TOP COP SHOP, et al.,

Plaintiffs-Appellees,

v.

MERRICK GARLAND, ATTORNEY
GENERAL OF THE UNITED STATES et al.,

Defendants-Appellants.

___

On Appeal from the United States District Court
for the Eastern District of Texas Sherman Division

___

## AMICUS BRIEF OF COMMUNITY ASSOCIATIONS INSTITUTE
## IN SUPPORT OF PLAINTIFFS-APPELLEES

___

Gregg S. Weinberg
Roberts Markel
Weinberg Butler Hailey PC
Williams Tower
2800 Post Oak Blvd., Suite 5777
Houston, TX 77056
gweinberg@rmwbh.com
713-780-4135

Edmund A. Allcock
John M. Mullen
Allcock Marcus LLC
10 Forbes Rd, 420W
Braintree MA, 0284
ed@amcondolaw.com
john@amcondolaw.com
781-884-1600

Brendan P. Bunn
Chadwick, Washington
Moriarty, Elmore & Bunn PC
Three Flint Hill
3201 Jermantown Road
Fairfax, VA 22030
bpbunn@chadwickwashington.com
703-352-1900

## MOTION FOR LEAVE TO FILE AMICI BRIEF

Pursuant to Federal Rule of Appellate Procedure 29(a) and Fifth Circuit Rule 29.1, Amici Community Associations Institute ("CAI") moves the Court for leave to file the attached Brief Amici Curiae in support of Plaintiff-Appellee's Brief. The proposed brief is attached to this Motion. In support of this Motion, CAI states as follows:

1.      Community Associations Institute is an international organization dedicated to providing information, education, resources, and advocacy for community association leaders, members, and professionals with the intent of promoting successful communities through effective, responsible governance and management. CAI's more than 49,000 members include homeowners, board members, association managers, community management firms, and other professionals who provide services to community associations. CAI is the largest organization of its kind, serving more than 75.5 million homeowners who live in more than 365,000 community associations in the United States.

2.      CAI and its members recognize that the sustained health of the community association form of ownership in the United States depends in large part upon the willingness of owners to continue to serve on volunteer boards to make their homes and communities better places to live. Community Associations were not given one of the twenty-three (23) exemptions under the Corporate

Transparency Act.[1] CAI believes that this was an oversight. CAI respectfully submits that homeowner associations are not "hotbeds" of financial crimes or terrorist activity by anonymous players using shell corporations to disguise their activities, which is the stated purpose of the Corporate Transparency Act ("CTA").

3.    Leave to file a brief as amici curiae should be granted when "the amici have an 'interest in the case,' and it appears that their brief is 'relevant' and 'desirable,'" such as when "it alerts the merits panel to possible implications of appeal." *Neonatology Assocs., P.A. v. C.I.R.*, 293 F.3d 128, 133 (3rd Cir. 2002) (Alito J.) (quoting Fed. R. App. P. 29(a)(3)); *see also id.* At 132 ("The criterion of desirability set out in Rule 29(b)(2) is open-ended, but a broad reading is prudent.").

4.    CAI submits that there experience in representing and supporting community associations both in the United States and internationally and understand the make and needs of the various community associations in the United States. CAI states that it can provide an important perspective concerning how the CTA will adversely impact community associations without furthering the stated purpose of the CTA.

---

[1]  A small number may be exempt as 501(c)(4) organizations, however, that is the exception to the norm.

5.      Pursuant to Federal Rule of Appellate Procedure 29(a)(6) and Fifth Circuit Rule 29.1, amicus curiae briefs are due "no later than 7 days after the principal brief of the party being supported is filed." CAI's Motion and Brief has been timely submitted on December 18, 2024.

For these reasons, Amici respectfully request that the Court grant this Motion for Leave to File a Brief Amici Curiae and accept the attached brief for filing.

Respectfully submitted,

Gregg S. Weinberg
Roberts Markel
Weinberg Butler Hailey PC
Williams Tower
2800 Post Oak Blvd., Suite 5777
Houston, TX 77056

Edmund A. Allcock
John M. Mullen
Allcock Marcus LLC
10 Forbes Road, 420 W
Braintree, MA 02184

Brendan P. Bunn
Chadwick, Washington,
Moriarty, Elmore & Bunn PC
Three Flint Hill
3201 Jermantown Road
Fairfax, VA 22030

Dated: December 18, 2024

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

———————————

TEXAS TOP COP SHOP, et al.,

Plaintiffs-Appellees,

v.

MERRICK GARLAND, ATTORNEY
GENERAL OF THE UNITED STATES et al.,

Defendants-Appellants.

———————————

On Appeal from the United States District Court
for the Eastern District of Texas Sherman Division

———————————

## AMICUS BRIEF OF COMMUNITY ASSOCIATIONS INSTITUTE
## IN SUPPORT OF PLAINTIFFS-APPELLEES

———————————

| | | |
|---|---|---|
| Gregg S. Weinberg | Edmund A. Allcock | Brendan P. Bunn |
| Roberts Markel | John M. Mullen | Chadwick, Washington |
| Weinberg Butler Hailey PC | Allcock Marcus LLC | Moriarty, Elmore & Bunn PC |
| Williams Tower | 10 Forbes Rd, 420W | Three Flint Hill |
| 2800 Post Oak Blvd., Suite 5777 | Braintree MA, 0284 | 3201 Jermantown Road |
| Houston, TX 77056 | ed@amcondolaw.com | Fairfax, VA 22030 |
| gweinberg@rmwbh.com | john@amcondolaw.com | bpbunn@chadwickwashington.com |
| 713-780-4135 | 781-884-1600 | 703-352-1900 |

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

| | |
|---|---|
| _____ | ) |
| TEXAS TOP COP SHOP, et al., | ) |
| | ) |
| Plaintiffs-Appellees, | ) |
| | ) |
| v. | ) |
| | ) |
| MERRICK GARLAND, ATTORNEY GENERAL OF THE UNITED STATES, et al. | ) ) ) |
| | ) |
| Defendants-Appellant, | ) |
| | ) |
| _____ | ) |

## CERTIFICATE OF INTERESTED PERSONS

*Amicus Curiae* Community Associations Institute submits this Certificate of Interested Persons and Corporate Disclosure Statement. See Fed. R. App. P. 26.1; 5TH CIR. R. 28.2.1. In addition to the individuals set forth in the Appellants' Brief, Appelles' Brief, and Briefs of other Amici Curiea, the following entities and individuals have an interest in the matter:

1. **Community Associations Institute**, *Amicus Curiae*, in support of Plaintiffs-Appellees;

2. **Allcock, Edmund**, counsel for *Amicus*;

3. **Bunn, Brendan P.**, counsel for *Amicus*;

1

4. **Weinberg, Gregg**, counsel for *Amicus*

5. **Mullen, John M.**, counsel for *Amicus*

## CORPORATE DISCLOSURE STATEMENT

*Amicus Curiae* Community Associations Institute has no parent corporation and no publicly traded corporation owns more than 10% of Community Associations Institute.

Respectfully submitted,

Gregg S. Weinberg
Roberts Markel
Weinberg Butler Hailey PC
Williams Tower
2800 Post Oak Blvd., Suite 5777
Houston, TX 77056

Dated: December 18, 2024

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... ii

I.     IDENTITY AND INTEREST OF AMICUS CURAIE .................................. 1

II.    DECLARATION OF AMICUS ...................................................................... 6

III.   STAYING THE DISTRICT COURT'S PRELIMINARY
INJUNCTION WILL CREATE IRREPARABLE HARM TO
COMMUNITY ASSOCIATIONS, PARTICULARLY TO THEIR
VOLUNTEER HOMEOWNER BOARD MEMBERS ................................. 7

    A. The CTA Was Already Unduly Burdensome as to
       Community Associations, Creating Substantial Compliance
       Costs to These Non-Profit Entities and Their Volunteers ......................... 8

    B. Staying the Injunction at This Late Date Will Cause
       Irreparable Harm to Community Associations Nationwide,
       Further Damaging the Community Association Industry .......................... 10

CERTIFICATE OF COMPLIANCE ........................................................................ 13

# TABLE OF AUTHORITIES

**STATUTES**

U.S.C. § 139 (1997) ....................................................................................4

**RULES**

Fed. R. App. P. 29........................................................................................6

**OTHER AUTHORITIES**

William M. (Mac) Thornberry National Defense Authorization Act for
    Fiscal Year 2021, Pub. L. No. 116-283, 134 Stat. 3388.........................7

# I.    IDENTITY AND INTEREST OF AMICUS CURIAE.

The Community Associations Institute ("CAI") is an international nonprofit research and education organization formed in 1973 by the Urban Land Institute, the National Association of Home Builders, and the United States Counsel of Mayors to provide the most effective guidance for the creation and operation of condominiums, cooperatives, and homeowners associations. CAI is dedicated to providing information, education, resources, and advocacy for community association leaders, members, and professionals with the intent of promoting successful communities through effective, responsible governance and management. CAI's more than 49,000 members include homeowners, board members, association managers, community management firms, and other professionals who provide services to community associations. CAI is the largest organization of its kind, serving more than 75.5 million homeowners who live in more than 365,000 community associations in the United States. These residents constitute roughly 30% of the population of the United States.

Community associations are property developments in which a developer, or declarant, has willingly submitted an interest in real property to some form of community association regime. The regimes include, among others, condominiums, homeowners associations, and co-operatives. The community association presents a unique form of ownership where responsibility for the

submitted property is shared between the individual owner or member, on the one hand, and an association, trust, or corporation, on the other.  To that end, many commentators have suggested that community associations make up and comprise the last bastion of affordable housing in the United States.

All community associations are governed by nonprofit organizations led initially by the developer or declarant and eventually by a group of volunteer homeowners elected by their fellow homeowners.  Depending on the locality, community associations are formed as a nonprofit corporation, trust, or, less frequently, unincorporated associations.  The primary role of community associations is to manage the common areas of the community, i.e. fix the roofs, maintain the lawns, shovel the snow, insure the buildings, etc.  The elected board of volunteer homeowners take on or oversee these tasks free of charge.  Volunteer board members of community associations cycle on and off their boards frequently, at least annually through the election process, and sometimes more frequently because of relocation, resignation, death and/or removal.

CAI submits this amicus brief on behalf of its members who recognize that the sustained health of the community association form of ownership in the United States depends in large part upon the willingness of owners to continue to serve on

their associations' volunteer boards to make their homes and communities better places to live.[1]

Community associations were not given one of the twenty-three (23) exemptions under the Corporate Transparency Act ("CTA").[2] CAI believes that this was an oversight. CAI respectfully submits that community associations are not "hotbeds" of financial crimes or terrorist activity by anonymous players using shell corporations to disguise their activities, which is the stated purpose of the CTA. First, community associations are anything but anonymous. Their owners are on public record with local registries of deeds when they buy property in a community. Community associations also record the identities of their volunteer board members with the local registry or secretary of state's office annually. Second, given that community association boards are made up of volunteer homeowners who ensure the lawns are cut, roofs are repaired, and the swimming pools are maintained in affordable housing across America, they are as far from a terrorist or financial threat as could be. They are the backbone of America, homeowners living in and volunteering to make their communities better.

---

[1] CAI has also filed an amicus brief regarding the Corporate Transparency Act in *National Small Business United, et al. v. U.S. Department of the Treasury, et al.*, No. 24-10736, 11th Cir., as well as been party to an action in *Community Associations Institute, et al. v U.S. Department of the Treasury, et al.,* Case No. 1:24-cv-1597, E.D. Va.

[2] A small number may be exempt as 501(c)(4) organizations, however, that is the exception to the norm.

Notwithstanding this, the Financial Crimes Enforcement Network ("FinCEN") and the Department of the Treasury (collectively the "Government") have specifically refused to grant community associations an exemption from reporting under the CTA. This could be because they recognize that community associations make up 25% of the United States population and because an underlying goal of the Government is to create as large of a facial recognition database as possible. However, CAI respectfully submits that requiring community associations and their volunteer homeowner leaders to comply with the beneficial ownership reporting requirements will chill volunteer participation going forward and is contrary to other express legislative intent in promoting volunteerism in nonprofit organizations.

The CTA contradicts Congress's prior express intent in encouraging and providing immunity for volunteers of nonprofit entities. The Federal Volunteer Immunity Act of 1997, 42 U.S.C. § 139 (1997), expressly provides immunity for negligent acts of volunteers with nonprofit entities. In enacting this legislation, Congress specifically found that "the willingness of volunteers to offer their services is deterred by the potential for liability actions against them and the withdrawal of volunteers has had an adverse effect on organizations." Yet the CTA subjects volunteer homeowners to imprisonment and civil fines if they don't

upload their driver's license to a government website the moment they begin their service, undermining prior legislation and prior stated legislative intent.

Volunteerism is the backbone of every community association. Board members are not paid for their service. CAI respectfully submits that volunteer homeowners will be less likely to serve in that capacity if they are required to file a beneficial ownership report with the Government, proving their sensitive personal information including their driver's license and photo identification and then to amend their filings each time their board brings on new board members or obtain new state issued driver's licenses. This is especially true where failure to comply brings with it $500.00 per day fines and the possibility of imprisonment.

It's horrifying to imagine that a homeowner could be subject to imprisonment in the United States of America because they purchased a home and volunteered to serve on the board of directors for their community association but failed to upload a photograph of their state issued driver's license to a federal database. Homeowners will no doubt be reluctant to volunteer in light of the potential Orwellian consequences imposed by the CTA.

CAI submits that the CTA will have a devastating and unintended consequence on community associations and their operations throughout the United States. CAI respectfully submits that the CTA exceeds the power of Congress to regulate activity that is governed entirely by the states in which the

community associations are located. The CTA's application to community associations and their volunteer homeowners but <u>not</u> to business corporations that have more than $5,000,000.00 in profits per year demonstrates the absurdity of its reach and the reality that it is not in furtherance of its stated purpose. Moreover, as detailed herein, the CTA is constitutionally vague and its application to community associations is like attempting to fit a square peg into a round hole.

In keeping with CAI's long-standing interest in promoting understanding regarding the operation and governance of community associations, CAI urges this Court to deny the Government's Motion, leaving the Preliminary Injunction in force.

## II.    <u>DECLARATION OF AMICUS</u>

Pursuant to Fed. R. App. P. 29, CAI makes the following declarations:

1.      This brief was not authored in whole or in part by counsel for any of the parties to this case.

2.      Neither the parties to this case nor their counsel contributed money that was intended to fund preparing or submitting this brief.

3.      The amicus curiae and its counsel have not represented the parties to this appeal in another proceeding involving similar issues.

**III. STAYING THE DISTRICT COURT'S PRELIMINARY INJUNCTION WILL CREATE IRREPARABLE HARM TO COMMUNITY ASSOCIATIONS, PARTICLARLY TO THEIR VOLUNTEER HOMEOWNER BOARD MEMBERS.**

### Introduction

The CTA was enacted on January 1, 2021 with a stated purpose of combating money laundering and terrorism financing by cracking down on the use of anonymous "shell companies."[3] While there may be laudable purposes in requiring that persons behind "shell companies" report personal information, the CTA has unfortunately caught homeowners' and condominium associations and housing cooperatives ("community associations") in its wide and expansive net. Community associations are hardly "shell companies" with anonymous or nefarious ownership; these non-profit associations are run by volunteers who openly own homes in their residential communities.

The CTA, as implemented, would require every U.S. homeowner who volunteers to serve on their community association board to report personal information to FinCEN,[4] despite the dubious connection between the purposes of CTA and requiring these volunteers to provide their information to FinCEN.

---

[3] William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, 134 Stat. 3388.

[4] If a volunteer homeowner becomes a board member, they are required to file a beneficial ownership report with FinCEN or be subject to penalties. However, that same board member is further required to amend their beneficial ownership report with FinCen within thirty (30) days if they change their e-mail address or renew their driver's license.

Nonetheless, community association volunteers nationwide have been ramping up to fulfill the CTA's reporting requirements, expending substantial resources to achieve compliance, only to be told to "stand down" per the effect of the District Court's Preliminary Injunction. Now the Government insists on re-implementing the CTA reporting deadline in two short weeks, hardly an emergency in the larger picture of the purposes of the CTA. Worse, to suddenly reverse course and effectively require volunteers to scramble to report their information in the last week of December would be devastating and result in irreparable harm to community associations throughout the Nation. Accordingly, the Government's Motion should be denied, leaving the Preliminary Injunction in force.

**A. The CTA Was Already Unduly Burdensome as to Community Associations, Creating Substantial Compliance Costs to These Non-Profit Entities and Their Volunteers.**

As noted above, the CTA reporting requirements already operate to discourage volunteer service on community association boards. If homeowner volunteers fail to file or amend their beneficial ownership report timely, they will be subject to penalties or imprisonment.[5] The CTA is also unclear on the

---

[5] Application of the CTA to community associations is already having a chilling effect on volunteerism within communities. Many people are uncomfortable providing personal information for inclusion in FinCEN's database. Additionally, the penalties for noncompliance are so severe as to discourage individuals from volunteering to serve their neighbors on their association's board of directors. Why would someone volunteer for a position that provides no compensation when they are subjected to potential fines of up to $250,000.00 and two years in jail if the person fails to provide their personal information to FinCEN?

consequences if one volunteer fails to file their beneficial ownership report with FinCEN. Does that subject other members to penalties? Are volunteer board members now required to police the other volunteers' CTA reporting?

Due to these potential penalties, community associations and their volunteers throughout the United States have been working in "overdrive" during the last several months to find a way to comply with FinCEN's reporting requirements. Some associations hire vendors at substantial expense (particularly given that these nonprofit entities have "no-frills" budgets) to help secure information from the board volunteers. Others turned to lawyers or CPAs to shepherd them through the FinCEN reporting process, made even more challenging due to reluctance by some volunteers to provide such information.

All of these compliance efforts were oriented around the January 1, 2025 deadline. When the District Court entered the Preliminary Injunction staying enforcement of the CTA nationwide, most community associations stood down their efforts to collect data from their volunteers pending the outcome of this case. While this did not reverse the harm and costs already imposed on community associations by the CTA, it "stopped the bleeding" at least until the District Court can enter a final order and rule on the merits.

**B. Staying the Injunction at This Late Date Will Cause Irreparable Harm to Community Associations Nationwide, Further Damaging the Community Association Industry.**

The Government now demands that the Preliminary Injunction be stayed by December 27, 2024. The effect of entering a stay will be that community association volunteers subject to the BOI reporting requirement will have <u>just two business days</u> to file their reports with FinCEN, with those days falling in the midst of the holiday season and other year-end family activities. It is difficult for community associations to find volunteers to serve under the best of circumstances, and a legally-mandated mad scramble for volunteers to file reports in late December will only exacerbate the situation and harm community associations nationwide.

It should be recalled that failing to meet the January 1, 2025 deadline could result in substantial civil and criminal penalties for these volunteers and the associations they serve, consequences wildly disproportionate given that these homeowners simply volunteered to help out their local community by serving on their board of directors. Exposing these volunteers to such penalties under the tight deadline implicated by staying the Injunction is exactly the kind of irreparable harm the Court should consider in balancing the relative harms and determining whether a stay is merited under these unusual circumstances.

The Government argues that _it_ will suffer irreparable harm if the Preliminary Injunction is not stayed. Nothing could be further from the truth. What is the harm to the Government arising from a slight delay in the reporting deadline while the District Court reaches a final determination on the merits as to the constitutionality of the CTA? None. Yet, the CTA's penalty provisions – particularly when levied against volunteer board members in a homeowners' association – are sufficiently substantial that they could very well devastate an industry that relies wholly on volunteerism to fuel its governance structure.

In sum, for these volunteers to be advised on one day that the CTA reporting requirement deadline has been stayed, followed by a sudden reversal and a shockingly sudden deadline to comply, will do nothing but set up community associations for failure, especially given the challenges of the season and the volunteer-driven structure of this industry. Such a result would be both inequitable and reeking with irreparable harm. Delivering potential civil and criminal penalties upon community volunteers is hardly in keeping with the spirit of equitable jurisprudence and, accordingly, the Government's motion to stay the Preliminary Injunction should be denied.

## CONCLUSION

For the reasons as set forth above, CAI states that this Court should deny the Government's Motion to Stay the Preliminary Injunction.

Respectfully submitted,

Gregg S. Weinberg
Roberts Markel
Weinberg Butler Hailey PC
Williams Tower
2800 Post Oak Blvd., Suite 5777
Houston, TX 77056

Edmund A. Allcock
John M. Mullen
Allcock Marcus LLC
10 Forbes Road, 420 W
Braintree, MA 02184

Brendan P. Bunn
Chadwick, Washington,
Moriarty, Elmore & Bunn PC
Three Flint Hill
3201 Jermantown Road
Fairfax, VA 22030

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) as the text consists of 2,418 words as counted by Word for Microsoft 365 programming program used to generate this brief. This brief also complies with the type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) - (6) as it was prepared using Word for Microsoft 365 in 14-point font.

Dated: December 18, 2024

_Counsel for Community Associations Institute_