No. 24-40792

# In the United States Court of Appeals for the Fifth Circuit

TEXAS TOP COP SHOP, INC. ET AL.,

*Plaintiffs-Appellees*,

v.

MERRICK GARLAND, ET AL.,

*Defendants-Appellants*.

**On Appeal from the United States District Court for the
Eastern District of Texas, Austin No. 0540-4 : 4:24-CV-478**

**BRIEF OF AMICI CURIAE ADVANCING AMERICAN FREEDOM; AMERICAN SECURITIES ASSOCIATION; FRONTIERS OF FREEDOM; FRONTLINE POLICY COUNCIL; CHARLIE GEROW; INTERNATIONAL CONFERENCE OF EVANGELICAL CHAPLAIN ENDORSERS; INTERNATIONAL ORGANIZATION FOR THE FAMILY; JCCWATCH.ORG; TIM JONES, FORMER SPEAKER, MISSOURI HOUSE, CHAIRMAN, MISSOURI CENTER-RIGHT COALITION; MOUNTAIN STATES POLICY CENTER; NORTH CAROLINA INSTITUTE FOR CONSTITUTIONAL LAW; NSIC INSTITUTE; SETTING THINGS RIGHT; STAND FOR GEORGIA VALUES ACTION; TEA PARTY PATRIOTS ACTION, INC.; THE JUSTICE FOUNDATION; TRADITION, FAMILY, PROPERTY, INC.; YANKEE INSTITUTE; YOUNG AMERICA'S FOUNDATION; AND YOUNG CONSERVATIVES OF TEXAS IN SUPPORT OF PLAINTIFFS-APPELLEES AND AFFIRMANCE**

J. MARC WHEAT
  *Counsel of Record*
Timothy Harper (Admitted in DC)
ADVANCING AMERICAN FREEDOM, INC.
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 780-4848
MWheat@advancingamericanfreedom.com
*Counsel for Amici Curiae*

December 20, 2024

**STATEMENT OF INTERESTED PERSONS**
**FIFTH CIRCUIT RULE 29.2**

The undersigned counsel certifies that the following persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal. J. Marc Wheat, General Counsel for Advancing American Freedom, Amicus Curiae. The undersigned counsel also certifies that Amici Curiae, Advancing American Freedom; American Securities Association; Frontiers of Freedom; Frontline Policy Council; Charlie Gerow; International Conference of Evangelical Chaplain Endorsers; International Organization for the Family; JCCWatch.org; Tim Jones, Former Speaker, Missouri House, Chairman, Missouri Center-Right Coalition; Mountain States Policy Center; North Carolina Institute for Constitutional Law; NSIC Institute; Setting Things Right; Stand for Georgia Values Action; Tea Party Patriots Action, Inc.; The Justice Foundation; Tradition, Family, Property, Inc.; Yankee Institute; Young America's Foundation; and Young Conservatives of Texas are nonprofit corporations that have no parent corporations, are not publicly held corporations, and do not issue stock.

DATED: December 20, 2024      /s/ J. Marc Wheat
                              J. Marc Wheat
                              General Counsel for Advancing American Freedom

# TABLE OF CONTENTS

STATEMENT OF INTERESTED PERSONS ........................................................... i

TABLE OF AUTHORITIES ................................................................................. iii

STATEMENT OF INTEREST OF AMICI CURIAE .............................................. 1

INTRODUCTION ................................................................................................. 2

ARGUMENT ....................................................................................................... 3

    I.    The Commerce Clause is a Limited Enumeration of Power,
           not a Grant of a General Police Power .................................................. 3

           A.    The text of the Commerce Clause, understood as it was
                 by the ratifying public at the time of its adoption,
                 grants to Congress only the ability to regulate
                 interjurisdictional trade ............................................... 4

    II.    The CTA is Not a Necessary and Proper Exercise of
           Congress's Commerce Clause Power .................................................... 7

    III.    The Collection of Data Invites Hacking and Abuse as
           Demonstrated Over and Over Again by Both Private and
           Government Information Databases .................................................... 9

CONCLUSION ................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Gonzales v. Raich*,
 545 U.S. 1 (2005)......................................................................4, 5

*Marbury v. Madison*,
 5 U.S. 137 (1803)..........................................................................4

*McCulloch v. Maryland*,
 17 U.S. 316 (1819)......................................................................7, 8

*Texas Top Cop Shop, Inc. v. Garland*,
 4:24-cv-00478-ALM (E.D. Tex. Dec. 5, 2024)...............................2

*United States v. Comstock*,
 560 U.S. 126 (2010)....................................................................7, 8

*United States v. Lopez*,
 514 U.S. 549 (1995)....................................................................4, 5

**Statutes & Other Authorities:**

U.S. Const. art. I, § 8, cl. 3 ..............................................................3, 4

U.S. Const. art. I, § 8, cl. 18 ................................................................7

31 U.S.C. § 5336(b)(1)..........................................................................2

31 U.S.C. § 5336(b)(2)..........................................................................2

Randy Barnett, *New Evidence of the Original Meaning of the Commerce Clause*, 55 Ark. L. Rev. 847 (2003)...........................................4, 5

Randy Barnett, *The Original Meaning of the Commerce Clause*,
 68 U. Chi. L. Rev. 101 (2001) ......................................................5

Amir Bibawy, *SEC reveals 2016 hack that breached its filing system*,
 Associated Press (Sep. 20, 2017 11:37 PM)....................................9

Paul Bischoff, *A recent history of US Government Breaches – can you trust them with your data?*, Comparitech (Nov. 28, 2023) ...........10

Thomas Brewster, *191 Million US Voter Registration Records Leaked In Mystery Database*, Forbes (Dec. 28, 2015 8:50 AM) ...................11

David DiMolfetta, *The Pentagon is notifying individuals affected by 2023 email data breach*, Government Executive (Feb. 15, 2024) ........................10

The Federalist No. 17 .................................................................................6

The Federalist No. 45 (James Madison) ......................................................6

Edwin J. Feulner, Jr, *Conservatives Stalk the House: The Story of the Republican Study Committee* (Green Hill Publishers, Inc. 1983) ...................1

Jim Forsyth, *Records of 4.9 mln stolen from car in Texas data breach*, Reuters (Sep. 29, 2011 6:00 PM) .................................................................10

Jon Haworth and Luke Barr, *AT&T says hacker stole some data from 'nearly all' wireless customers*, ABC News (Jul. 12, 2024 12:24 PM) ..............................................................................11

Bill Hutchinson, *Chelsea Manning speaks of solitary confinement during New Year's Day poetry event*, ABC News (Jan. 2, 2024 4:29 PM)..............10

Mary Kay Mallonee, *Hackers publish contact info of 20,000 FBI employees*, CNN (Feb. 8, 2016 8:34 PM) ....................................................10

Craig A. Newman, *A Closer Look: SEC's Edgar Hacking Case*, Patterson Belknap Data Security Law Blog (Feb. 12, 2019) ........................................10

Aimee Picchi, *Hackers may have stolen the Social Security numbers of many Americans. Here's what to know.*, CBS News (Aug. 15, 2024 6:15 PM)..............................................................................11

U.S. Const. art. I, § 8 cl. 3.........................................................................3

31 U.S.C. § 5336(b)(1)..............................................................................2

31 U.S.C. § 5336(b)(2)..............................................................................2

iv

**STATEMENT OF INTEREST OF AMICI CURIAE**[1]

Advancing American Freedom (AAF) is a nonprofit organization that promotes and defends policies that elevate traditional American values, including the uniquely American idea that all people are created equal and endowed by their Creator with unalienable rights to life, liberty, and the pursuit of happiness. AAF "will continue to serve as a beacon for conservative ideas, a reminder to all branches of government of their responsibilities to the nation,"[2] and believes that the governmental structures established by the Constitution are necessary for the preservation of the liberty of the people. Advancing American Freedom files this brief on behalf of its 7,967 members in Texas and its 10,483 members in the Fifth Circuit.

Amici American Securities Association; Frontiers of Freedom; Frontline Policy Council; Charlie Gerow; International Conference of Evangelical Chaplain Endorsers; International Organization for the Family; JCCWatch.org; Tim Jones, Former Speaker, Missouri House, Chairman, Missouri Center-Right Coalition;

---

[1] Plaintiffs-Appellees consented to the filing of this amicus brief. Counsel for Defendants-Appellants rejected AAF's request for consent. No counsel for a party authored this brief in whole or in part. No person other than Amicus Curiae and its counsel made any monetary contribution intended to fund the preparation or submission of this brief.

[2] Edwin J. Feulner, Jr, *Conservatives Stalk the House: The Story of the Republican Study Committee* 212 (Green Hill Publishers, Inc. 1983).

1

Mountain States Policy Center; North Carolina Institute for Constitutional Law; NSIC Institute; Setting Things Right; Stand for Georgia Values Action; Tea Party Patriots Action, Inc.; The Justice Foundation; Tradition, Family, Property, Inc.; Yankee Institute; Young America's Foundation; and Young Conservatives of Texas believe, as did America's Founders, that compliance with the Constitution's limits on government power is essential for the preservation of American freedom.

## INTRODUCTION

The Corporate Transparency Act ("CTA"), which "requires a vast array of companies to disclose otherwise private stakeholder information to [the Financial Crimes Enforcement Network (FinCEN)]," *Texas Top Cop Shop, Inc. v. Garland*, 4:24-cv-00478-ALM at 4 (E.D. Tex. Dec. 5, 2024) (citing 31 U.S.C. § 5336(b)(1)). The information submitted must identify "each beneficial owner of . . . the reporting company . . . by full legal name, date of birth, current . . . residential or business street address, and [a] unique identifying number from an acceptable identification document or FinCen identifier." *Id*. at 6 (alteration in original) (quoting 31 U.S.C. § 5336(b)(2)). A beneficial owner, with some exceptions, is "an individual who, directly or indirectly, through any contract, arrangement, understanding, relationship, or otherwise, exercises substantial control over the entity; or who owns or controls not less than [twenty-five] percent of the ownership interests of the entity." *Id*. (alteration in original) (quoting 31 U.S.C. § 5336(b)(2)). This massive

collection and storage of private information is not within the ambit of congressional power and is therefore unconstitutional.

The Constitution only confers limited and enumerated powers on the federal government. One of those powers is to regulate commerce among the states. The original meaning of the clause is clear. Commerce meant trade and among the states meant—well—among the states. A broader reading turns much of the rest of the Constitution, including the Tenth Amendment, on its head. Similarly, the original meaning of the Necessary and Proper Clause conveys to Congress only the power to carry out the powers already granted to it. Because no enumerated power supports the statute at issue in this case, Plaintiffs-Appellees are likely to prevail on the merits and the district court's preliminary injunction should be upheld.

## ARGUMENT

### I.     The Commerce Clause is a Limited Enumeration of Power, not a Grant of a General Police Power.

The CTA regulates the non-commercial, wholly intrastate activity of incorporating under state law. The Commerce Clause, which delegates to Congress power to "regulate Commerce . . . among the several States," as well as with foreign nations and Indian tribes. U.S. Const. art. I, § 8 cl. 3. The district court rightly found that Appellees are likely to prevail on their claim that the CTA goes beyond the power the Supreme Court has found the Commerce Clause grants Congress in cases

like *Gonzales v. Raich*, 545 U.S. 1 (2005). More fundamentally, the CTA is beyond the power granted to Congress by Commerce Clause as understood at the time of the founding. While the application of this narrower meaning is not determinative in this case, courts' "duty to . . . say what the law is," *Marbury v. Madison*, 5 U.S. 137, 177 (1803), requires attention to the Constitution's original meaning.

A. *The text of the Commerce Clause, understood as it was by the ratifying public at the time of its adoption, grants to Congress only the ability to regulate interjurisdictional trade.*

The Commerce Clause grants Congress the power to "regulate Commerce . . . among the several States," as well as with foreign nations and Indian tribes. U.S. Const. art. I, § 8 cl. 3. "[T]he Commerce Clause empowers Congress to regulate the buying and selling of goods and services trafficked across state lines." *Gonzales*, 545 U.S. at 57 (Thomas, J., dissenting) (citing *United States v. Lopez*, 514 U.S. 549, 586-89 (1995) (Thomas, J., concurring)). This understanding of "commerce" as trade was common not only to the drafters of the Constitution but to the general public including those who ratified it. *Id.* (citing Randy Barnett, *New Evidence of the Original Meaning of the Commerce Clause*, 55 Ark. L. Rev. 847, 857-862 (2003)). Commerce did not include, on the other hand, agriculture and manufacturing, which were wholly intrastate activities. *Gonzales*, 545 U.S. at 58 (Thomas, J., dissenting) ("Commerce, or trade, stood in contrast to the productive

activities like manufacturing and agriculture."). In fact, "the term 'commerce' was used in contradistinction to" such "productive activities." *Lopez*, 514 U.S. at 586.

"Throughout founding-era dictionaries, Madison's notes from the Constitutional Convention, the Federalist Papers, and the ratification debates, the term 'commerce' is consistently used to mean trade or exchange—not all economic or gainful activity that has some attenuated connection to trade or exchange." *Gonzales*, 545 U.S. at 58 (Thomas, J., dissenting) (citing *Lopez*, 514 U.S. at 586-87 (Thomas, J., concurring); (quoting Randy Barnett, *The Original Meaning of the Commerce Clause*, 68 U. Chi. L. Rev. 101, 112-125 (2001)). For example, "In none of the sixty-three appearances of the term 'commerce' in *The Federalist Papers* is it ever used to unambiguously refer to any activity beyond trade or exchange."[3] "[C]ommerce" also had the meaning of "trade" in common usage.[4] Thus, whether used in relation to the drafting and ratification of the Constitution or for public consumption, the word "commerce" was understood at the time of the Founding to refer to "trade," not all things that today would constitute commercial activity. Thus,

---

[3] Randy Barnett, *The Original Meaning of the Commerce Clause*, 68 U. Chi. L. Rev. 101, 116 (2001).

[4] *See, e.g.*, Randy Barnett, *New Evidence of the Original Meaning of the Commerce Clause*, 55 Ark. L. Rev. 847, 857-60 (2003).

there is overwhelming evidence that the power originally granted by the Commerce Clause was the power to regulate interjurisdictional trade.

Not only is the evidence supporting the narrow meaning of the term "commerce" overwhelming, but the historical and constitutional context also demand a narrow interpretation of the power granted by the Clause. The purpose of the federal government was national unity, not national uniformity. "The powers delegated by the proposed constitution to the federal government are few and defined. Those which are to remain in the state governments are numerous and indefinite."[5] The Founding generation understood that the powers delegated to the federal government "will be exercised principally on external objects, as war, peace, negotiation, and foreign commerce."[6] Hamilton assured the public that "the supervision of *agriculture* and of other concerns of a similar nature, all those things in short which are proper to be provided for by local legislation, can *never* be desirable cares of a general jurisdiction."[7] Because the CTA regulates wholly intrastate, noncommercial activity, it is not a legitimate exercise of the power granted to Congress by the Commerce Clause.

_____

[5] The Federalist No. 45, at 241 (James Madison) (George W. Carey and James McClellan, eds., The Liberty Fund 2001).

[6] *Id.*

[7] The Federalist No. 17 at 80-81 (Alexander Hamilton) (George W. Carey and James McClellan, eds., The Liberty Fund 2001) (emphasis added).

## II. The CTA is Not a Necessary and Proper Exercise of Congress's Commerce Clause Power.

The CTA is neither necessary to, nor a proper means of the implementation of Congress's power to regulate interstate trade. The Necessary and Proper clause gives Congress the authority "[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States." U.S. Const. art. 1, § 8, cl. 18. As Justice Thomas has explained, *McCulloch* created a two-part test for compliance with the Necessary and Proper Clause:

> First, the law must be directed toward a "legitimate" end, which *McCulloch* defines as one "within the scope of the [C]onstitution"— that is, the powers expressly delegated to the Federal Government by some provision in the Constitution . . . Second, there must be a necessary and proper fit between the "means" (the federal law) and the "end" (the enumerated power or powers) it is designed to serve . . . The means Congress selects will be deemed "necessary" if they are "appropriate" and "plainly adapted" to the exercise of an enumerated power, and "proper" if they are not otherwise "prohibited" by the Constitution and not "[in]consistent" with its "letter and spirit."

*United States v. Comstock*, 560 U.S. 126, 160-61 (2010) (Thomas, J., dissenting) (alteration in original) (quoting *McCulloch v. Maryland*, 17 U.S. 316, 421 (1819)).

First, the CTA is not "'within the scope of the [C]onstitution'—that is, the powers expressly delegated to the Federal Government by some provision in the Constitution." *Id*. at 160 (Thomas, J., dissenting) (alteration in original) (quoting

*McCulloch*, 17 U.S. at 421). As noted in Section I above, Congress was not authorized to enact the CTA under the Commerce Clause.

Second, "[t]he means Congress selects will be deemed 'necessary' if they are 'appropriate' and 'plainly adapted' to the exercise of an enumerated power, and 'proper' if they are not otherwise 'prohibited' by the Constitution and not '[in]consistent' with its 'letter and spirit.'" *Comstock*, 560 U.S. at 160-61 (Thomas, J., dissenting) (alteration in original) (quoting *McCulloch*, 17 U.S. at 421). As noted above, the CTA is not "'plainly adapted' to the exercise of an enumerated power," *Id*, because it regulates pre-commercial, wholly intrastate activity.

Similarly, as noted in Section I, the Constitution was intended to create unity, not uniformity among the states. Thus, national policies like the CTA that seek to create uniform standards for activities that take place within individual states do not comport with the spirit of the Constitution.

Further, the CTA violates the letter of the Constitution, namely the First and Fourth Amendments, by requiring potentially millions of Americans to disclose their personal information without suspicion or a warrant. This undermines the freedom to associate anonymously, an American tradition that is essential to the freedoms of speech and assembly protected by the First Amendment. It also directly violates the

protection against unreasonable seizure of the papers and effects protected under the Fourth Amendment.

For all of these reasons, the Plaintiff-Appellees are likely to prevail on the merits in this case and the district court's decision should be upheld.

### III. The Collection of Data Invites Hacking and Abuse as Demonstrated Over and Over Again by Both Private and Government Information Databases.

The government has no authority to demand the information it does in the CTA. The prudence of that limitation is demonstrated in part by the repeated security failures of large databases in both the public and private sectors.

The Securities and Exchange Commission's Electronic Data Gathering, Analysis, and Retrieval system (EDGAR),[8] which processes over 1.7 million electronic filings annually, was not immune to this threat. In 2016, hackers broke into the Securities and Exchange Commission's Electronic Data Gathering, Analysis, and Retrieval system (EDGAR), which processes over 1.7 million electronic filings annually, and "traded on at least nonpublic 157 earnings releases," enriching themselves by over $4 million.[9] In 2018, a hacker breached 60

---

[8] Amir Bibawy, *SEC reveals 2016 hack that breached its filing system*, Associated Press (Sep. 20, 2017 11:37 PM) https://apnews.com/article/d81daf569c75472bbcba22d2f5ba0f34.
[9] Craig A. Newman, *A Closer Look: SEC's Edgar Hacking Case*, Patterson Belknap Data Security Law Blog (Feb. 12, 2019) https://www.pbwt.com/data-security-law-blog/a-closer-look-secs-edgar-hacking-case.

million records of US Postal Service user account details even after being warned a year prior.[10] Hackers stole the personal information of 21.5 million current and former federal government employees from Office of Personnel Management files in 2015.[11] 26,000 current and former Defense Intelligence Agency employees experienced a breach of personally identifiable information (PII) in 2023.[12] A British teenager published the contact information of 20,000 FBI agents in 2016.[13] United States Army soldier Chelsea Manning infamously handed over 750,000 classified documents to WikiLeaks.[14] The healthcare information of 4.6 million active duty servicemembers, veterans, and their family members was compromised in a 2011 Tricare breach.[15] GovPayNow.com, which is used by thousands of state

---

[10] Paul Bischoff, *A recent history of US Government Breaches – can you trust them with your data?*, Comparitech (Nov. 28, 2023) https://www.comparitech.com/blog/vpn-privacy/us-government-breaches/.

[11] *Id.*

[12] David DiMolfetta, *The Pentagon is notifying individuals affected by 2023 email data breach*, Government Executive (Feb. 15, 2024) https://www.govexec.com/technology/2024/02/pentagon-notifying-individuals-affected-2023-email-data-breach/394184/.

[13] Mary Kay Mallonee, *Hackers publish contact info of 20,000 FBI employees*, CNN (Feb. 8, 2016 8:34 PM) https://edition.cnn.com/2016/02/08/politics/hackers-fbi-employee-info/index.html.

[14] Bill Hutchinson, *Chelsea Manning speaks of solitary confinement during New Year's Day poetry event*, ABC News (Jan. 2, 2024 4:29 PM) https://abcnews.go.com/US/chelsea-manning-speaks-solitary-confinement-new-years-day/story?id=106043233.

[15] Jim Forsyth, *Records of 4.9 mln stolen from car in Texas data breach*, Reuters (Sep. 29, 2011 6:00 PM) https://www.reuters.com/article/us-data-breach-texas-idUSTRE78S5JG20110929/.

and local governments, leaked 14 million records in 2018, including addresses, phone numbers and partial credit card numbers.[16] Additionally, a hacker exposed 191 million records from a database of American voters in 2015.[17]

The private sector has experienced massive breaches as well. On July 12, 2024, AT&T announced that someone illegally obtained records of phone calls and text messages from almost all its wireless customers, [18] and an April 2024 nationalpublicdata.com breach exposed 2.7 billion records, including names, addresses, dates of birth, phone numbers, and even Social Security numbers.[19] The CTA's potential to cause harm is massive. The courts should have the chance to hear this case to completion before Americans are forced to divulge their personal information for bureaucratic convenience.

---

[16] Bischoff, *supra* note 11.

[17] Thomas Brewster, *191 Million US Voter Registration Records Leaked In Mystery Database*, Forbes (Dec. 28, 2015 8:50 AM) https://www.forbes.com/sites/thomasbrewster/2015/12/28/us-voter-database-leak/.

[18] Jon Haworth and Luke Barr, *AT&T says hacker stole some data from 'nearly all' wireless customers*, ABC News (Jul. 12, 2024 12:24 PM) https://abcnews.go.com/US/att-hacker-stole-data-wireless-customers/story?id=111874118.

[19] Aimee Picchi, *Hackers may have stolen the Social Security numbers of many Americans. Here's what to know.*, CBS News (Aug. 15, 2024 6:15 PM) https://www.cbsnews.com/news/social-security-number-leak-npd-breach-what-to-know/.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court and rule for Plaintiffs-Appellees.

/s/ J. Marc Wheat
J. MARC WHEAT
  *Counsel of Record*
ADVANCING AMERICAN FREEDOM, INC.
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 780-4848
MWheat@advancingamericanfreedom.com

*Counsel for Amici Curiae*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 20, 2024, a true and correct copy of the foregoing Brief of Amici Curiae was served via electronic filing with the Clerk of Court and all registered ECF users.

Dated: December 20, 2024

/s/ J. Marc Wheat
J. MARC WHEAT

**CERTIFICATE OF COMPLIANCE**

This brief has been prepared using 14-point, proportionately spaced, serif typeface, in Microsoft Word. Excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this brief contains 2500 words.

/s/ J. Marc Wheat
J. MARC WHEAT