No. 24-40792

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

Texas Top Cop Shop, Inc., *et al.*,

*Plaintiffs-Appellees*,

v.

Merrick Garland, Attorney General of the United States, *et al.*,

*Defendants-Appellants*.

---

On Interlocutory Appeal from the United States District Court
for the Eastern District of Texas, Sherman Division
No. 4:24-CV-478, The Honorable Amos L. Mazzant, Judge Presiding

---

***AMICUS CURIAE* BRIEF OF EAGLE FORUM EDUCATION & LEGAL DEFENSE FUND IN SUPPORT OF PLAINTIFFS-APPELLEES AND IN SUPPORT OF THEIR EMERGENCY PETITION FOR REHEARING EN BANC AND EMERGENCY MOTION TO EXPEDITE RULING**

Andrew L. Schlafly
Attorney at Law
939 Old Chester Rd.
Far Hills, NJ 07931
(908) 719-8608
(908) 934-9207 (fax)
aschlafly@aol.com

Counsel for *Amicus Curiae*
Eagle Forum Education & Legal Defense Fund

# CERTIFICATE OF INTERESTED PERSONS

The case number here is No. 24-40792, *Texas Top Cop Shop v. Garland.*

*Amicus Curiae* Eagle Forum Education & Legal Defense Fund is a non-profit corporation that has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

Pursuant to the fourth sentence of Circuit Rule 28.2.1, the undersigned counsel of record certifies that the parties' and *amici*'s list of persons and entities having an interest in the outcome of this case is complete, to the best of the undersigned counsel's knowledge.

These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Dated: December 26, 2024

/s/ Andrew L. Schlafly
Andrew L. Schlafly
*Counsel for Eagle Forum Education & Legal Defense Fund*

# TABLE OF CONTENTS

**Pages**

Certificate of Interested Persons ................................................................................ ii

Table of Contents ....................................................................................................... iii

Table of Authorities ...................................................................................................iv

Identity, Interest and Authority to File .......................................................................1

Argument.....................................................................................................................1

I. The CTA Infringes on First Amendment Associative Rights, for which a Broad Nationwide Injunction Is Appropriate, and There Is No Presumption of Irreparable Harm to the Government. ..........................4

II. Fourth Amendment Precedent Prohibits Sweeping Law Enforcement Demands for Identification for the Exercise of First Amendment Rights, which Is What CTA Requires. ...............................6

III. No Judicial Deference Is Due to Boilerplate, Conclusory Assertions of Federal Goals like Stopping Terrorism, and Aspirations about Foreign Law Do Not Justify Expansions in Federal Power. ..........................9

IV. The CTA Has the Effect of a Gun Control Statute, by Imposing a Possible Two-Year Prison Sentence, which Triggers One of the Most Commonly Enforced Gun Control Statutes, 18 U.S.C. § 922(g)(1). ...........11

Conclusion ................................................................................................................11

Certificate of Service ................................................................................................12

Certificate of Compliance .........................................................................................12

# TABLE OF AUTHORITIES

**Cases**                                                             **Pages**

*Book People, Inc. v. Wong*, 91 F.4th 318 (5th Cir. 2024)..........5

*Brown v. Texas*, 443 U.S. 47 (1979) ................ 6-7

*Cal. Bankers Ass'n v. Shultz*, 416 U.S. 21 (1974) ................ 8-9

*Elhady v. Kable*, 993 F.3d 208 (4th Cir. 2021) ................9

*Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201 (5th Cir. 2010).......10

*Maryland v. King*, 567 U.S. 1301 (2012) (Roberts, C.J., in chambers).................3, 5

*Trump v. Mazars USA*, 591 U.S. 848 (2020)................2

*United States v. Alvarez*, 40 F.4th 339 (5th Cir. 2022)................7

*United States v. Lopez*, 514 U.S. 549 (1995) ................9

*United States v. Morrison*, 529 U.S. 598 (2000) ................1

*Valentine v. Collier,* 956 F.3d 797 (5th Cir. 2020)................6

**Statutes, Rules, and Legislative History**

18 U.S.C. § 922(g)(1)................ iii, 3, 11

31 U.S.C. § 5336(b)(2)(A)(iii)................6

Violence Against Women Act of 1994, § 40302, 108 Stat. 1941-1942................1

31 C.F.R. § 1010.380(b)(1)(ii)(C) ................6

"Beneficial Ownership Information Reporting Requirements,"
    87 Fed. Reg. 59498 (Sept. 30, 2022)
    (codified at 31 C.F.R. pt. 1010)................6

Customer Due Diligence (CDD) Rule,
    81 Fed. Reg. 29398 (May 11, 2016)................10, 11

FED. R. APP. P. 29(a)(4)(E) ................1

108 Cong. Rec. 17666 (1962) (daily ed. Aug. 27, 1962)................7

**Other**

Holland & Knight, https://tinyurl.com/yjdbnh2v ................10

Alexis de Tocqueville, *Democracy in America* (London: 1835)
      https://gutenberg.org/files/815/815-h/815-h.htm ................5

# IDENTITY, INTEREST AND AUTHORITY TO FILE[1]

*Amicus curiae* Eagle Forum Education & Legal Defense Fund ("Eagle Forum ELDF") was founded in 1981 by Phyllis Schlafly, and for more than two decades has filed many appellate briefs in federal and state courts. Eagle Forum ELDF has long advocated against power grabs by the federal government at the expense of individual rights, and the sovereign authority of states. For example, Eagle Forum ELDF as represented by Phyllis Schlafly filed an *amicus* brief in the landmark case of *United States v. Morrison*, 529 U.S. 598 (2000), successfully urging the U.S. Supreme Court to invalidate a provision in the Violence Against Women Act of 1994, § 40302, 108 Stat. 1941-1942, as beyond congressional authority. Eagle Forum ELDF has a strong interest in opposing overreach by the federal government infringing on individual rights as presented here.

# ARGUMENT

The Corporate Transparency Act (CTA) and its implementing regulation infringe on First and Fourth Amendment rights, causing irreparable harm as found by the district court below. It is impossible to unring this bell once Americans are

---

[1] All parties' counsel stated that they do not oppose the filing of this brief by *Amicus curiae* Eagle Forum ELDF. Pursuant to FED. R. APP. P. 29(a)(4)(E), undersigned counsel certifies that: counsel for the *Amicus* Eagle Forum ELDF authored this brief in whole; no counsel for a party authored this brief in any respect; and no person or entity – other than *Amicus* Eagle Forum ELDF, its members, and its counsel – contributed monetarily to this brief's preparation or submission.

compelled, by threat of two years' incarceration, to report to the federal government their personal information including their home addresses, birth dates, and driver's license numbers (with photo). At stake here is the First Amendment right to associate at a local level for political, religious, civic, educational, or other lawful purposes without having to submit to new federal monitoring and data-gathering of personal information. The CTA and its regulation burden this freedom of association, without the required tailoring to a legitimate goal.

The motions panel relied on the government's stated goal "to push other countries to reform their anti-money laundering and counterterrorism regimes," Panel Op. 6-7, which takes the often-criticized reliance on foreign law to a new level. Aside from being speculative and implausible, this goal overlooks that our constitutional rights and federalism are unlike any other country. The motions panel further accepted without scrutiny the government's argument that the CTA is necessary "to address the most fundamental gap in our own regime," *id.* at 7, which is belied by the government's own 4-year delay in implementing the CTA for most Americans. The government's pretextual reasons for expanding federal power were rejected by the Supreme Court on a House of Representatives subpoena for Trump family banking records in Trump v. Mazars USA, 591 U.S. 848 (2020).

The district court expressly found irreparable harm to First and Fourth Amendment rights, but the motions panel missed this and erroneously declared "the

CTA infringing those rights is immaterial to our stay analysis." (Panel Op. 6 n.6) The motions panel also mistakenly thought that a mere chambers opinion by only one Justice was precedential decision by the Supreme Court, when it was not. The motions panel's citation to "*Maryland v. King*, 567 U.S. 1301, 1303 (2012)" (Panel Op. 5) is not to a Supreme Court decision, but merely to a non-precedential statement of a Justice acting in his limited capacity as a solitary Circuit Justice. In the First Amendment context presented here, it would be unprecedented and unjustified to presume the government suffers irreparable harm from the injunction. George Orwell and the Framers of our Constitution would be appalled by the federal power grab here.

The infringement on the Fourth Amendment by the CTA likewise requires reinstating the preliminary injunction. For solely law enforcement purposes, the federal government demands that everyone turn over the equivalent of their ID in order to participate in a local organization. The Supreme Court rejected an analogous police power to demand identification in public. Yet the CTA imposes a conceptually identical identification requirement, not for the benefit of local law enforcement but for a new federal police power.

The roughly 100 million Americans who cherish their Second Amendment rights are deterred by the CTA from associating locally, because a CTA reporting violation can cause a loss in Second Amendment rights. A frequently prosecuted statute is 18 U.S.C. § 922(g)(1), which renders gun possession unlawful by anyone

convicted of a crime punishable by imprisonment for more than one year, as the CTA imposes. FinCEN, or merely a teenage computer hacker, could easily compare the CTA-generated database to the public information in each state about who are directors of small local organizations, and the millions of Americans who do not report to FinCEN are suddenly exposed as criminals under the CTA. The burden of CTA compliance is not merely time and money, but the greater cost of being branded a criminal to be deprived of gun rights. Fewer will volunteer locally amid that risk.

**I. The CTA Infringes on First Amendment Associative Rights, for which a Broad Nationwide Injunction Is Appropriate, and There Is No Presumption of Irreparable Harm to the Government.**

The First Amendment freedom of association requires protecting the rights of others to associate with a plaintiff who asserts this right. A plaintiff cannot exercise his freedom to associate without others having the freedom to associate with him. Ruling in favor of merely a plaintiff's right to associate would be like ruling in favor an audience's right to applause as long as they use only one of their hands to do so.

The district court properly enjoined the CTA to preserve the status quo during this litigation. The injunction below is expressly based on its finding of irreparable harm to First and Fourth Amendment rights:

> Absent injunctive relief, come January 2, 2025, Plaintiffs would have disclosed the information they seek to keep private under the First and Fourth Amendments …. Independent of the specter of compliance costs on the horizon,

4

> Plaintiffs have met their burden to show the threat of irreparable harm because the CTA and Reporting Rule substantially threaten their constitutional rights.

(Pet. Attachment C, 31-32). The district court cited this Court's First Amendment precedent in *Book People, Inc. v. Wong*, 91 F.4th 318, 340 (5th Cir. 2024).

The government never contested this holding or distinguished this precedent, and thus the government waived this central, dispositive point. But rather than acknowledge the government's waiver, the panel decision instead ignored the above-quoted ruling by the district court. Associations have been a foundation of American prosperity and happiness since at least the days of Alexis de Tocqueville, who observed that "[i]n no country in the world has the principle of association been more successfully used, or more unsparingly applied to a multitude of different objects, than in America." Alexis de Tocqueville, *Democracy in America*, Chapter XII (London: 1835).[2]

The mere chambers opinion in *Maryland v. King*, *supra*, by Chief Justice Roberts on which the panel decision relied while citing it as though it were a Supreme Court decision, was not in a First Amendment case. Moreover, Chief Justice Roberts' chambers opinion relied on another mere chambers decision without any Supreme Court precedent.

---

[2] https://gutenberg.org/files/815/815-h/815-h.htm (viewed Dec. 25, 2024).

In *Valentine v. Collier,* this Court stayed an injunction that replaced a Texas statute with a set of judicially created rules for prisons during Covid. 956 F.3d 797 (5th Cir. 2020). The rationale there was that "it is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons." *Id.* at 803 (inner quotations omitted). This same rationale is against FinCEN's interference with state sovereignty over incorporating local entities.

## II. Fourth Amendment Precedent Prohibits Sweeping Law Enforcement Demands for Identification for the Exercise of First Amendment Rights, which Is What CTA Requires.

The CTA unjustifiably treats every American involved in local associations like a criminal suspect by requiring disclosure of highly personal information for the purpose of law enforcement, without any reasonable basis or a warrant. The FinCEN regulation, the "Beneficial Ownership Information Reporting Requirements," 87 Fed. Reg. 59498 (Sept. 30, 2022) (codified at 31 C.F.R. pt. 1010), goes even further than the CTA requires, by compelling disclosure of **home** addresses to FinCEN. *Compare* 31 C.F.R. § 1010.380(b)(1)(ii)(C) *with* 31 U.S.C. § 5336(b)(2)(A)(iii).

The Supreme Court held in *Brown v. Texas* against allowing a generalized demand for identification, which is conceptually identical to the FinCEN requirement:

6

> Even assuming that [a valid] purpose is served to some degree by stopping and demanding identification from an individual without any specific basis for believing he is involved in criminal activity, the guarantees of the Fourth Amendment do not allow it.

443 U.S. 47, 52 (1979) (case arising from Texas). This *Brown* decision has been repeatedly applied by this Circuit to protect against Fourth Amendment infringements. *See, e.g.*, *United States v. Alvarez*, 40 F.4th 339, 343 (5th Cir. 2022).

The CTA requires what *Brown* prohibits: a broad demand for personal identification, for federal law enforcement purposes, of Americans who have done nothing wrong.

In the current political climate of swatting and even the assassination of a private citizen, such as the United Healthcare CEO, having to disclose one's home address is a deterrent for controversial or outspoken Americans as a condition of volunteering with local organizations. Even slight burdens can deter volunteer activities, and even the slightest of poll taxes is unconstitutional. *See, e.g.*, 108 Cong. Rec. 17666 (1962) (daily ed. Aug. 27, 1962) ("While the amount of the poll tax now required is small, there should not be any price tag or any kind of tax on the right to vote.") (statement Representative Edward Boland of Massachusetts about the 24th Amendment, as echoed by other congressmen).

The federal obligation for banks to report information about large cash transactions was upheld by the Supreme Court in a decision easily distinguishable

7

here. *Cal. Bankers Ass'n v. Shultz*, 416 U.S. 21 (1974). The obligation in *Shultz* was upheld against banks, not individuals, and was narrowly tailored to certain transactional information having a "***high degree*** of usefulness in criminal, tax, or regulatory investigations or proceedings." *Shultz*, 416 U.S. at 26 (emphasis added). In addition to three blistering dissents, the concurrence by Justice Powell in *Shultz*, joined by Blackmun, stated their opposition to a broader reporting requirement:

> A significant extension of the regulations' reporting requirements, however, would pose substantial and difficult constitutional questions for me. … At some point, governmental intrusion upon these areas would implicate legitimate expectations of privacy. Moreover, the potential for abuse is particularly acute where, as here, the legislative scheme permits access to this information without invocation of the judicial process. In such instances, the important responsibility for balancing societal and individual interests is left to unreviewed executive discretion, rather than the scrutiny of a neutral magistrate.

*Cal. Bankers Ass'n v. Shultz*, 416 U.S. 21, 78-79 (Powell, J., concurring).

The CTA extends far broader and demands more intrusive reporting obligations by ordinary law-abiding Americans about their local associative, sometimes political or religious, entities without a "high degree of usefulness" for any legitimate law enforcement by government or the protection by a neutral magistrate. As Justice Douglas dissented in *Shultz*, "Where fundamental personal rights are involved – as is true when as here the Government gets large access to one's beliefs, ideas, politics, religion, cultural concerns, and the like – the Act

8

should be 'narrowly drawn' to meet the precise evil." *Shultz*, 416 U.S. at 85-86

(Douglas, J., dissenting, citation omitted). The CTA is not narrowly tailored.

### III. No Judicial Deference Is Due to Boilerplate, Conclusory Assertions of Federal Goals like Stopping Terrorism, and Aspirations about Foreign Law Do Not Justify Expansions in Federal Power.

Virtually all foreign countries have a federal police power, while the U.S. Supreme Court has prohibited the assertion of such a power domestically. *United States v. Lopez*, 514 U.S. 549, 564 (1995) (rejecting a "general federal police power"). Accordingly, in the context of this case it is particularly inappropriate to rely on aspirations about foreign law to justify an expansion in federal law enforcement.

One of the worst-kept secrets in D.C. is to insert purported national security concerns, such as supposedly combatting terrorism, as a pretextual justification for expanding federal prosecutorial power. As observed by the U.S. Court of Appeals for the Fourth Circuit:

> ***Of course***, courts must not uncritically defer to such national security claims. Otherwise, national security will become a talisman summoned by the government to avoid scrutiny of infringements of constitutional rights. … The very breadth of the term "national security" can make it an unduly tempting explanation for dubious actions that have little or no connection to national security at all.

*Elhady v. Kable*, 993 F.3d 208, 228 (4th Cir. 2021) (emphasis added).

Yet the government here relies on boilerplate, conclusory assertions about money laundering and terrorism that would not survive a motion to dismiss under the standard of review for allegations in a complaint. "We do not accept as true conclusory

9

allegations, unwarranted factual inferences, or legal conclusions." *Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010) (inner quotations omitted). When the congressional justifications for a vast increase in federal power are no more substantive than what could have been written by Capitol Hill summer intern or generated by an AI program, then judicial deference is unwarranted to the superficial statements. The motions panel decision is based on conclusory, even implausible, assertions about how foreign nations may feel if the district court injunction remains intact. (Panel Op. 6-7)

The federal government has long had the tools it needs to track financial transfers that might constitute money laundering or the financing of terrorism, and the CTA adds nothing to advance these pretextual goals. The existing Customer Due Diligence (CDD) regulation, 81 Fed. Reg. 29398 (May 11, 2016), requires those who process financial transactions to collect all the information the government legitimately needs: "With respect to the information that the CDD and the CTA collect about entities, the information ***is generally the same, with minor variances***."[3]

The government's only examples of possibly beneficial applications of the CTA to reduce crime are to Russian and Iranian nationals who could simply be

---

[3] Holland & Knight, https://tinyurl.com/yjdbnh2v (emphasis added, viewed Dec. 25, 2024).

prohibited from setting up companies in the United States, or tracked through the CDD. It is unjustified to burden, punish, and infringe on the constitutional rights of 32.6 law-abiding million American citizens to address isolated foreigner misconduct.

### IV. The CTA Has the Effect of a Gun Control Statute, by Imposing a Possible Two-Year Prison Sentence, which Triggers One of the Most Commonly Enforced Gun Control Statutes, 18 U.S.C. § 922(g)(1).

The federal government seeks to disarm Americans, and one of its most frequently used statutes for prosecutions is 18 U.S.C. § 922(g)(1), which makes it illegal with very harsh penalties for anyone to own possess a gun "who has been convicted in any court of, a crime *punishable* by imprisonment for a term exceeding one year" (emphasis added). The CTA is punishable by two years' incarceration.

Unless the CTA is stayed, 10 million or so Americans would risk losing their Second Amendment right to bear arms. By comparing the FinCEN database to states' publicly posted corporation data, these Americans would be subjected to this federal gun control based on violating the CTA.

## CONCLUSION

The Plaintiffs-Appellees' emergency petition and motion should be granted, and the stay vacated.

Respectfully submitted,

/s/ Andrew L. Schlafly

Andrew L. Schlafly
Attorney at Law
939 Old Chester Rd.
Far Hills, NJ 07931
Phone: (908) 719-8608
Fax: (908) 934-9207
Email: aschlafly@aol.com

Dated: December 26, 2024                *Counsel for Amicus Curiae Eagle Forum Education & Legal Defense Fund*

## CERTIFICATE OF SERVICE

I hereby certify that, on December 26, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the Fifth Circuit by using the CM/ECF system, which I understand serves all the counsel of record.

/s/ Andrew L. Schlafly
Andrew L. Schlafly

## CERTIFICATE OF COMPLIANCE

1. This brief has been prepared using Times New Roman 14-point, proportionately spaced, serif typeface, in Microsoft Word. This brief complies with FED. R. APP. P. 29(b)(4) because it contains a total of 2,600 words, excluding material not counted under Rule 32(f).

Dated: December 26, 2024        /s/ Andrew L. Schlafly
Andrew L. Schlafly
*Counsel for Amicus Curiae Eagle Forum Education & Legal Defense Fund*