No. 24-40792

# In the United States Court of Appeals for the Fifth Circuit

---

TEXAS TOP COP SHOP, INC., *et al.*,
*Plaintiffs-Appellees,*

v.

PAMELA BONDI, *U.S. Attorney General, et al.*,
*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the Eastern District of Texas

---

**BRIEF OF SENATORS SHELDON WHITEHOUSE, RON WYDEN, ELIZABETH WARREN, JACK REED, AND REPRESENTATIVE MAXINE WATERS AS *AMICI CURIAE* IN SUPPORT OF DEFENDANTS-APPELLANTS**

---

Kristen P. Miller
Robin F. Thurston
Sarah R. Goetz
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
kmiller@democracyforward.org
rthurston@democracyforward.org
sgoetz@democracyforward.org

*Counsel for* Amici Curiae

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that, in addition to the persons and entities identified in the certificates filed by the parties and prior *amici*, the following listed persons as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

*Amici* are:

- Senator Sheldon Whitehouse
- Senator Ron Wyden
- Senator Elizabeth Warren
- Senator Jack Reed
- Representative Maxine Waters

*Amici* are individuals. None has a parent company, and no publicly held company has any ownership interest of any kind in any of *Amici*.

**Counsel for**          Kristen P. Miller
*amici curiae*:          Robin F. Thurston
                         Sarah R. Goetz
                         DEMOCRACY FORWARD FOUNDATION
                         P.O. Box 34553
                         Washington, DC 20043
                         (202) 448-9090
                         kmiller@democracyforward.org
                         rthurston@democracyforward.org
                         sgoetz@democracyforward.org

                         *Counsel for* Amici Curiae

                         */s/ Kristen P. Miller*
                         _____

                         Kristen P. Miller

                         Dated: February 14, 2025

**TABLE OF CONTENTS**

Table of Authorities ................................................................ iv

Interest of *Amici Curiae* ........................................................ 1

Introduction and Summary of Argument ................................. 1

Argument ................................................................................. 2

    I.    Congress Has Robust Article I Authorities. ............................ 2

    II.    The Corporate Transparency Act Is a Legitimate Exercise of Congress's Authorities. ..................................................... 4

        A.    National Security and Foreign Affairs ......................... 8

        B.    Interstate and Foreign Commerce ............................. 13

        C.    Tax .............................................................................. 16

Conclusion ............................................................................. 17

# TABLE OF AUTHORITIES

## Cases

*907 Whitehead St. Inc. v. Gipson*,
  701 F.3d 1345 (11th Cir. 2012) ........................................... 15

*Gonzales v. Raich*,
  545 U.S. 1 (2005) ........................................................ 3, 15

*Hernandez v. Mesa*,
  589 U.S. 93 (2020) .......................................................... 2

*Holder v. Humanitarian L. Project*,
  561 U.S. 1 (2010) ........................................................ 4, 13

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
  567 U.S. 519 (2012) ......................................................... 3

*Nixon v. Shrink Mo. Gov't PAC*,
  528 U.S. 377 (2000) ......................................................... 4

*Perez v. United States*,
  402 U.S. 146 (1971) ........................................................ 15

*TikTok Inc. v. Garland*,
  145 S. Ct. 57 (2025) ....................................................... 13

*Turner Broad. Sys. v. FCC*,
  520 U.S. 180 (1997) ...................................................... 3, 4

*United States v. Comstock*,
  560 U.S. 126 (2010) ......................................................... 3

*United States v. Hill*,
  927 F.3d 188 (4th Cir. 2019) .............................................. 15

*United States v. Orito*,
  413 U.S. 139 (1973) ........................................................ 15

*Walters v. Nat'l Ass'n of Radiation Survivors*,
  473 U.S. 305 (1985) ......................................................... 7

*Ziglar v. Abbasi*,
  582 U.S. 120 (2017) ......................................................... 2

**Constitutional Provisions**

U.S. Const. art. I, § 8 ....................................................... 2, 3, 16

**Statutes**

Nat'l Def. Auth. Act for FY 2021,
    Pub. L. 116-283, 134 Stat. 3388 (2021) ....................................... 8, 9, 13

**Other Authorities**

166 Cong. Rec. S7296 (daily ed. Dec. 9, 2020) ............................... passim

*Combating Illicit Financing by Anonymous Shell Companies
    Through the Collection of Beneficial Ownership Information:
    Hrg., S. Comm. on Banking, Hous., & Urb. Affs.*, 116th Cong.
    (2019) ................................................................................ 5

Combating Kleptocracy with Incorporation Transparency:
    Hrg., Comm. on Sec. & Coop. in Eur., 115th Cong. (2017) ................. 5

Combating Kleptocracy: Beneficial Ownership, Money
    Laundering, and Other Reforms Type: Hrg., S. Comm.
    on the Judiciary, 116th Cong. (2019) ........................................ passim

*Corruption, Violent Extremism, Kleptocracy, and the
    Dangers of Failing Governance: Hrg., S. Comm. on Foreign
    Rels.*, 114th Cong. (2016) ....................................................... 5

Craig Shirley, *We Need the Corporate Transparency Act to
    Stop Our Adversaries*, RealClearDefense (July 19, 2024),
    https://tinyurl.com/4359kjft ................................................... 11

Dep't of Treasury, *2024 National Proliferation Financing
    Risk Assessment* (2024), https://tinyurl.com/mrxs6zbu ..................... 8

Elaine Dezenski, Testimony, *Opaque Shell Companies:
    A Risk to Nat'l Security, Public Health, and Rule of Law: Hrg.,
    S. Caucus on Int'l Narcotics Control* (Apr. 9, 2024),
    https://tinyurl.com/fvd98akb .................................................. 10

Erica Hanichak, Testimony, Senate Caucus on International
    Narcotics Control, "Opaque Shell Companies: A Risk to
    National Security, Public Health, and Rule of Law"
    3 (Apr. 9, 2024), https://tinyurl.com/mr9wdjcy ............................. 9

H.R. Rep. No. 116-227 (2019) .......................................... 5, 6, 12

John Cassara, *Corporate Transparency Act Necessary to Help Law Enforcement Follow the Dirty Money Trails*, Townhall (Aug. 26, 2024), https://tinyurl.com/4ct3yfmr .................... 11

*Keeping Foreign Corruption Out of the United States: Four Case Histories: Hrg., Permanent Subcomm. on Investigations, S. Comm. on Homeland Sec. & Gov't Affs.,* 111th Cong. (2010) .......... 5

Letter from Bipartisan Grp. of 91 Nat'l Sec. Experts to Comm. on Fin. Servs. (June 30, 2020), https://tinyurl.com/y8see9kc ............... 6

Letter from Chamber of Com. to U.S. Senate (June 30, 2020), https://tinyurl.com/mrurjnmm ............................................. 6

Main Street All., Main Street Alliance Sends Letter in Support of the Anti-Money Laundering Act of 2020 (June 26, 2020), https://tinyurl.com/yrhv7v2f ...................................... 5

Nat'l Foreign Trade Council et al., *Business Organizations Back Illicit Cash Act (S. 2563),* FACT Coal. (June 17, 2020), https://tinyurl.com/2ncd275t ...................................... 6

Nate Sibley, *A Key Tool to Fight Terrorists and Criminals,* Wall St. J. (Jan. 9, 2025) ...................................................... 11

Off. of Mgmt. & Budget, *Statement of Administration Policy* (Oct. 22, 2019), https://tinyurl.com/mrnx8tzk ...................................... 11

*Outside Perspectives on the Collection of Beneficial Ownership Information: Hrg., S. Comm. on Banking, Hous., & Urb. Affs.,* 116th Cong. (2019) ...................................................... 5, 6, 8

*President's FY 2019 Budget: Hrg., S. Comm. on Fin.,* 115th Cong. (2018) ................................................... 5, 14, 16

Promoting Corporate Transparency: Hrg., Subcomm. on Nat'l Sec., Int'l Dev. & Monetary Pol'y of the H. Comm. on Fin. Servs., 116th Cong. (2019) .................... 6, 10, 12, 14

Small Bus. Majority, Small Business Majority Voices Support for the Anti-Money Laundering Act of 2020 (June 29, 2020), https://tinyurl.com/ytafj9h9 ...................................... 5

Staff Report: The Art Industry and U.S. Policies That
    Undermine Sanctions, Permanent Subcomm. on Investigations,
    S. Comm. on Homeland Sec. & Gov't Affs., 116th Cong. (2020) .........10

Tools of Transnational Repression: Hrg., Comm. on
    Sec. & Coop. in Eur., 116th Cong. (2019) ...............................................6

U.S. Dep't of the Treasury, Fin. Crimes Enf't Network,
    *Beneficial Ownership Reporting Outreach and
    Education Toolkit*, https://tinyurl.com/j5whfkat
    (last visited Feb. 13, 2025) .....................................................................11

U.S. Dep't of Treasury, Remarks by Secretary of Treasury
    Janet L. Yellen at the Summit for Democracy
    (Dec. 9, 2021), https://tinyurl.com/34zysnx4 .........................................9

United Nations Off. on Drugs & Crime, Money Laundering,
    https://tinyurl.com/4w5ud7r8 (last visited Feb. 13, 2025) ....................9

## INTEREST OF *AMICI CURIAE*[1]

*Amici* are members of the U.S. Senate and the House of Representatives. *Amici* include sponsors of the law in this case, the Corporate Transparency Act, and its predecessor legislation, who can speak authoritatively on the Act's legislative history and intent. More generally, as legislators, *Amici* have deep experience formulating federal policy to combat money laundering and corruption and regulating the financial industry, issues that span state and international boundaries.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Anonymous shell corporations harm the United States' national security, foreign affairs, foreign and interstate commerce, and tax interests. Such shell companies often operate in multiple layers to hide their true owners and violations of key sanctions, money-laundering, and tax laws. Allowing illicit money to be hidden through corporate forms also undermines public safety and law enforcement efficacy on a national and international scale.

---

[1] No party's counsel authored this brief in whole or in part, no party or party's counsel contributed money intended to fund this brief, and no person other than *Amici*, their members, and their counsel contributed money to fund this brief. All parties consent to the filing of this brief.

Responding to these dangers, Congress passed the Corporate Transparency Act ("CTA"), after it determined that requiring disclosure of beneficial ownership of legal entities, including shell companies, is crucial to combat money laundering and international crime, and attendant national security and law enforcement risks. The CTA is a garden-variety, valid exercise of Congress's core Article I authorities, supported by extensive congressional factfinding and a robust legislative record. The district court's decision below rests on a cramped reading of Congress's Article I authority, contravenes decades of precedent, and ignores Congress's copious factual findings. It should be reversed.

## ARGUMENT

### I. Congress Has Robust Article I Authorities.

The CTA represents a routine exercise of core authorities enumerated in Article I of the Constitution. "National-security policy is the prerogative of the Congress and President." *Ziglar v. Abbasi*, 582 U.S. 120, 142 (2017) (citing U.S. Const. art. I, § 8). So too is the regulation of foreign affairs. *Hernandez v. Mesa*, 589 U.S. 93, 103-104 (2020). Congress also has "broad authority" under the Commerce Clause to regulate people and things in interstate commerce, as well as activities that substantially affect interstate commerce. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567

U.S. 519, 549 (2012). Finally, Congress is authorized to "lay and collect Taxes," U.S. Const. art. I, § 8, cl. 1.

"[T]he Necessary and Proper Clause makes clear that the Constitution's grants of specific federal legislative authority are accompanied by broad power to enact laws that are 'convenient, or useful' or 'conducive' to the authority's 'beneficial exercise.'" *United States v. Comstock*, 560 U.S. 126, 133-134 (2010). Accordingly, Congress may legislate in these areas so long as its legislative choices are "rationally related" to such enumerated powers. *Id.*; *see Gonzales v. Raich*, 545 U.S. 1, 22 (2005) ("In assessing the scope of Congress' authority under the Commerce Clause, we stress that the task before us is a modest one. We need not determine whether [the regulated] activities, taken in the aggregate, substantially affect interstate commerce in fact, but only whether a 'rational basis' exists for so concluding.").

When making this determination, courts "must accord substantial deference to the predictive judgments of Congress." *Turner Broad. Sys. v. FCC*, 520 U.S. 180, 195 (1997). Congress's considered judgments must not be disturbed if Congress "has drawn reasonable inferences based on substantial evidence." *Id.* (citation omitted); *see also Nixon v. Shrink Mo.*

*Gov't PAC*, 528 U.S. 377, 402 (2000) (Breyer, J. concurring) (explaining that a reviewing court "defers to empirical legislative judgements" where "a legislature has significantly greater institutional expertise"). Further, in the sensitive area of national security and foreign affairs, courts "lack . . . competence" in collecting evidence and drawing factual inferences. *Holder v. Humanitarian L. Project*, 561 U.S. 1, 34 (2010) (citation omitted). When the political branches have "adequately substantiated their determination" that regulating conduct is necessary to meet identified national security needs, courts give "significant weight" to the determination. *Id.* at 36.

## II.    The Corporate Transparency Act Is a Legitimate Exercise of Congress's Authorities.

In enacting the CTA, Congress "amass[ed] and evaluate[d] … vast amounts of data," *Turner*, 520 U.S. at 195, considering testimony, reports, and interests of various stakeholders—ranging from law

enforcement,[2] the Executive Branch,[3] foreign governments,[4] intergovernmental expert bodies,[5] journalists,[6] small businesses,[7]

---

[2] *See, e.g.*, 166 Cong. Rec. S7296, S7309 (daily ed. Dec. 9, 2020) (Sheriff Burke of Toledo, Lucas Cnty. Sheriff, and U.S. Marshal Pete Elliott of Cleveland of the N. Dist.); H.R. Rep. No. 116-227, at 11-12 (2019) (FBI, Nat'l Dist. Attorneys Ass'n, Fraternal Order of Police, Nat'l Sheriff's Ass'n, Nat'l Ass'n of Asst. U.S. Attorneys); *Outside Perspectives on the Collection of Beneficial Ownership Information: Hrg., S. Comm. on Banking, Hous., & Urb. Affs.*, 116th Cong. 1 (2019) (Sen. Crapo, Chairman) ("[T]he Committee heard from witnesses from law enforcement and a banking regulator about what steps the U.S. should take to modernize its beneficial ownership regime and strengthen its enforcement.").

[3] *See, e.g.*, *President's FY 2019 Budget: Hrg., S. Comm. on Fin.*, 115th Cong. 20 (2018) (testimony from Department of the Treasury); *Combating Illicit Financing by Anonymous Shell Companies Through the Collection of Beneficial Ownership Information: Hrg., S. Comm. on Banking, Hous., & Urb. Affs.*, 116th Cong. 36 (2019) (statements from the FBI and Financial Crimes Enforcement Network); *Corruption, Violent Extremism, Kleptocracy, and the Dangers of Failing Governance: Hrg., S. Comm. on Foreign Rels.*, 114th Cong. 5-13 (2016) (statements from the Departments of State and Justice and United States Agency for International Development); *Keeping Foreign Corruption Out of the United States: Four Case Histories: Hrg., Permanent Subcomm. on Investigations, S. Comm. on Homeland Sec. & Gov't Affs.*, 111th Cong. 540 (2010) (testimonies of the Departments of Homeland Security and the Treasury).

[4] *Combating Kleptocracy with Incorporation Transparency: Hrg., Comm. on Sec. & Coop. in Eur.*, 115th Cong. 7-9 (2017) (testimony from Delegation of the European Union); id. at 30 (noting transparency laws in the United Kingdom).

[5] *See, e.g.*, H.R. Rep. No. 116-227, at 11 (2019) (Financial Action Task Force); *The Annual Testimony: Hrg., H. Comm. on Fin. Servs.*, 115th Cong. 16 (2017) (same).

[6] *See, e.g.*, 166 Cong. Rec. at S7310 ("These exposures of abuses in our system by dedicated journalists and national and international transparency organizations have highlighted problems involving human trafficking, drug trafficking, terrorism, money laundering, fraud, tax evasion, and other crimes involving illicit finance.").

[7] *See, e.g.*, Small Bus. Majority, *Small Business Majority Voices Support for the Anti-Money Laundering Act of 2020* (June 29, 2020), https://tinyurl.com/ytafj9h9 ("Scientific opinion polling conducted on behalf of Small Business Majority found small business owners nationwide overwhelmingly believe Congress should pass legislation requiring businesses to list their true identity when forming."); Main Street All., *Main Street Alliance Sends Letter in Support of the Anti-Money Laundering Act of 2020* (June 26, 2020), https://tinyurl.com/yrhv7v2f ("Requiring

multinational corporations,[8] the U.S. Chamber of Commerce,[9] national security experts,[10] international transparency organizations, the financial services industry, and many others.[11] Several committees and subcommittees held hearings.[12] One of the bill's lead sponsors repeatedly made the case that the United States was in a "clash of civilizations" between rule of law and criminality and kleptocracy, and was endangered in that clash by financial secrecy.[13]

---

secretive businesses to come out from the shadows will benefit small businesses in several ways.").

[8] *See, e.g.*, Nat'l Foreign Trade Council et al., *Business Organizations Back Illicit Cash Act (S. 2563)*, FACT Coal. (June 17, 2020), https://tinyurl.com/2ncd275t.

[9] *See* Letter from Chamber of Com. to U.S. Senate, at 2 (June 30, 2020), https://tinyurl.com/mrurjnmm ("The Chamber values efforts by the sponsors of S. 2563 to address possible negative impacts that beneficial ownership disclosure could have on certain businesses.").

[10] Letter from Bipartisan Grp. of 91 Nat'l Sec. Experts to Comm. on Fin. Servs. (June 30, 2020), https://tinyurl.com/y8see9kc (urging lawmakers to end anonymous companies).

[11] *See, e.g.*, H.R. Rep. No. 116-227, at 12 (presenting views of 91 national security experts, human rights organizations, financial industry representatives, and real estate organizations).

[12] *See, e.g.*, *Promoting Corporate Transparency: Hrg., Subcomm. on Nat'l Sec., Int'l Dev. & Monetary Pol'y of the H. Comm. on Fin. Servs.*, 116th Cong. 16 (2019); *Combating Kleptocracy: Beneficial Ownership, Money Laundering, and Other Reforms Type: Hrg., S. Comm. on the Judiciary*, 116th Cong. (2019); *Outside Perspectives on the Collection of Beneficial Ownership Information: Hrg., S. Comm. on Banking, Hous., & Urb. Affs.*, *supra* note 2, at 87.

[13] *See Tools of Transnational Repression: Hrg., Comm. on Sec. & Coop. in Eur.*, 116th Cong. 5 (2019).

Congress relied on this extensive record to conclude that collecting beneficial ownership information is necessary to protect national security and promote U.S. interests abroad, regulate interstate and international commerce, and facilitate tax collection. The district court nevertheless concluded that Congress does not have authority to require disclosure of such information by mischaracterizing the CTA as merely regulating "an entity's *existence*." Am. Dist. Ct. Op. & Order 43. But it identified nothing in the record that contradicts, or provides any reason for overriding, Congress's findings on the link between anonymous shell corporations and illicit international and interstate activity harming United States' interests. Given Congress's extensive findings, coupled with the lack of contrary record evidence, the district court's ruling should be reversed. *See Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 330 n.12 (1985) ("When Congress makes findings on essentially factual issues such as these, those findings are of course entitled to a great deal of deference, inasmuch as Congress is an institution better equipped to amass and evaluate the vast amounts of data bearing on such an issue.").

## A. National Security and Foreign Affairs

This is a national security law. Congress compiled a voluminous record supporting its conclusion that the United States' failure to require incorporated companies to disclose their true beneficial owners threatens our national security and public safety. Previously, "most or all States d[id] not require information about the beneficial owners of the corporations, limited liability companies, or other similar entities formed under the laws of the State." Nat'l Def. Auth. Act for FY 2021, Pub. L. 116-283 § 6402(2), 134 Stat. 3388, 4604 (2021). This opacity empowered "malign actors" to "facilitate illicit activity, including money laundering, the financing of terrorism, proliferation financing,[14] serious tax fraud, human and drug trafficking, counterfeiting, piracy, securities fraud, financial fraud, and acts of foreign corruption, harming the national security interests of the United States and allies of the United States." *Id.* § 6402(3). These bad actors would "intentionally conduct transactions

---

[14] Proliferation financing encompasses "raising, storing, moving, and using funds, financial assets, or other economic resources in connection with the proliferation of weapons of mass destruction." *See* Dep't of Treasury, *2024 National Proliferation Financing Risk Assessment* (2024), https://tinyurl.com/mrxs6zbu; *see also, e.g.*, *Outside Perspectives on the Collection of Beneficial Ownership Information: Hrg., S. Comm. on Banking, Hous., & Urb. Affs. supra* note 2, at 1 (Additional Material Supplied for The Record) ("Financial Networks of Mass Destruction").

through corporate structures in order to evade detection" and "layer such structures . . . across various secretive jurisdictions such that each time an investigator obtains ownership records for a domestic or foreign entity, the newly identified entity is yet another corporate entity, necessitating a repeat of the same process." *Id.* § 6402(4). Such dirty money snaked its way into the United States because American rule of law "actually protect[ed]" the money.[15]

According to Treasury Secretary Yellen, "there's a good argument that . . . the best place to hide and launder ill-gotten gains is actually the United States."[16] The legislative record supporting the CTA backs up that statement. Anonymous LLCs impeded New York City's ability to trace the terrorism financing scheme that funded the September 11th

---

[15] *Combating Kleptocracy: Beneficial Ownership, Money Laundering, and Other Reforms Type: Hrg., S. Comm. on the Judiciary, supra* note 12, at 30:24-30:40 (Sen. Graham, Chairman).

[16] U.S. Dep't of Treasury, *Remarks by Secretary of Treasury Janet L. Yellen at the Summit for Democracy* (Dec. 9, 2021), https://tinyurl.com/34zysnx4. Between $800 billion and $2 trillion are laundered each year. United Nations Off. on Drugs & Crime, *Money Laundering*, https://tinyurl.com/4w5ud7r8. Regrettably, an industry of U.S. professionals—realtors, lawyers, yacht and art brokers, non-bank financiers—often facilitate the shell entities in this dark economy, providing these enablers a lucrative living. *See* Erica Hanichak, Testimony, *Senate Caucus on International Narcotics Control, "Opaque Shell Companies: A Risk to National Security, Public Health, and Rule of Law"* 3 (Apr. 9, 2024), https://tinyurl.com/mr9wdjcy.

attacks.[17] Two Russian oligarchs used shell companies to engage in "over $91 million in transactions" in the U.S., violating U.S. sanctions.[18] Law enforcement struggled to halt international drug cartels' "direct line to the opioid crisis in Ohio" due to a lack of basic information about relevant accounts.[19] And malign foreign money interferes with American elections, degrading democracy and the rule of law.[20] Given the problem's severity, Congress concluded that pre-CTA laws were insufficient.

The clear and uniform ownership information the CTA requires is a rational response to this record of national security dangers, which create domestic law enforcement impacts.[21] The reporting burden for most filers is minimal; indeed, "[f]or companies with simple ownership

---

[17] *Promoting Corporate Transparency: Hrg., Subcomm. on Nat'l Sec., Int'l Dev. & Monetary Pol'y of the H. Comm. on Fin. Servs.*, *supra* note 12, at 16 (Rep. Maloney).

[18] Staff Report: The Art Industry and U.S. Policies That Undermine Sanctions, Permanent Subcomm. on Investigations, S. Comm. on Homeland Sec. & Gov't Affs., 116th Cong. 9 (2020).

[19] 166 Cong. Rec. at S7310 (Sen. Brown).

[20] *Combating Kleptocracy: Beneficial Ownership, Money Laundering, and Other Reforms Type: Hrg., S. Comm. on the Judiciary*, *supra* note 12, at 27:37-28:58 (Sen. Whitehouse); *id.* at 21:20-22:19 (Sen. Feinstein, Ranking Member).

[21] 166 Cong. Rec. at S7311 ("Without these reforms, criminals, terrorists and even rogue nations could continue to use layer upon layer of shell companies to disguise and launder illicit funds."). *See also* Elaine Dezenski, Testimony, *Opaque Shell Companies: A Risk to Nat'l Security, Public Health, and Rule of Law: Hrg., S. Caucus on Int'l Narcotics Control* 1 (Apr. 9, 2024), https://tinyurl.com/fvd98akb ("No financial tool has aided the drug cartels, the corrupt oligarchs, and the enemies of America more than the anonymous shell company. . . . [B]eneficial ownership information is vital to addressing the drug epidemic and other dangers to the homeland.").

structures, filing may take less than 20 minutes."[22] The resulting information prevents law enforcement from wasting "precious time and resources issuing subpoenas and chasing down leads—sometimes jumping from anonymous shell company to anonymous shell company— to secure basic information about who actually owns a company."[23] The Executive Branch "commend[ed]" the bipartisan "measure that will help prevent malign actors from leveraging anonymity to exploit these entities for criminal gain."[24] Experts continue to tout the law's necessity.[25]

Congress found that the United States' foreign affairs and diplomatic interests necessitate the passage of the CTA.[26] While the

---

[22] U.S. Dep't of the Treasury, Fin. Crimes Enf't Network, *Beneficial Ownership Reporting Outreach and Education Toolkit*, https://tinyurl.com/j5whfkat.

[23] 166 Cong. Reg. at S7310.

[24] *See* Off. of Mgmt. & Budget, *Statement of Administration Policy* (Oct. 22, 2019), https://tinyurl.com/mrnx8tzk.

[25] *See, e.g.*, Nate Sibley, *A Key Tool to Fight Terrorists and Criminals*, Wall St. J. (Jan. 9, 2025); John Cassara, *Corporate Transparency Act Necessary to Help Law Enforcement Follow the Dirty Money Trails*, Townhall (Aug. 26, 2024), https://tinyurl.com/4ct3yfmr; Craig Shirley, *We Need the Corporate Transparency Act to Stop Our Adversaries*, RealClearDefense (July 19, 2024), https://tinyurl.com/4359kjft.

[26] The district court found that "the CTA is in no way connected to whatever authority over foreign affairs Congress might have," and that "[i]t regulates a domestic issue: anonymous existence of companies registered to do business in a U.S. state and their potential conduct." Am. Op. & Order 59-60. Its dismissal of Congress's findings as making a mere "passing mention to an international impact," *id.* at 65, is a mischaracterization of Congress's findings—which are owed substantial deference and grounded in robust record evidence—that the CTA is necessary to address actual threats to national security.

United States has led the way in most areas of reform and transparency, "on this issue of anonymous shell companies[, the United States has] long lagged behind other nations, and failed to require uniform and clear ownership information for firms at the time of their incorporation in the states."[27] Secretary Mnuchin testified that the nondisclosure of true beneficial owners "is not . . . just a U.S. issue, but our European partners are concerned as they make progress in this area and we don't."[28] The record reveals concern that these advances would push bad corporate actors to "new dark homes, and America must not become that new dark home."[29] Accordingly, Congress reasonably concluded that the CTA is necessary to align with international standards[30] and preserve "the United States' global position as an international leader in free and fair markets."[31] Where, as here, a "law arises in a context in which 'national security and foreign policy concerns arise in connection with efforts to

---

[27] 166 Cong. Rec. at S7310.

[28] *The Annual Testimony: Hrg., H. Comm. on Fin. Servs.*, *supra* note 5, at 17.

[29] *Combating Kleptocracy: Beneficial Ownership, Money Laundering, and Other Reforms Type: Hrg., S. Comm. on the Judiciary*, *supra* note 12, at 29:14-29:41 (2019) (Sen. Whitehouse).

[30] H.R. Rep. No. 116-227, at 11.

[31] *Promoting Corporate Transparency: Hrg., Subcomm. on Nat'l Sec., Int'l Dev. & Monetary Pol'y of the H. Comm. on Fin. Servs.*, *supra* note 12, at 1 (Rep. Cleaver, Chairman).

confront evolving threats in an area where information can be difficult to obtain and the impact of certain conduct difficult to assess,'" courts must afford Congress's "'informed judgment' substantial respect." *TikTok Inc. v. Garland*, 145 S. Ct. 57, 70 (2025) (quoting *Holder*, 561 U.S. at 34).

## B.  Interstate and Foreign Commerce

Congress, after intensive factfinding and the compilation of a voluminous record, also rationally concluded that anonymous shell corporations injure the integrity of the American financial system, placing the CTA squarely within Congress's Commerce Powers. "[M]ore than 2,000,000 corporations and limited liability companies are being formed under the laws of the States each year"; "money launderers and others involved in commercial activity intentionally conduct transactions through corporate structures in order to evade detection, and may layer such structures . . . across various secretive jurisdictions"; and legislation requiring the collection of beneficial ownership information "is needed to . . . protect interstate and foreign commerce[.]" Pub. L. 116-283 §§ 6402(1), (4)-(5).

Pre-CTA laws allowed anonymous shell companies to abuse the American financial and tax systems.[32] Such behaviors abounded. A foreign arms dealer formed 12 legal entities in the United States to carry out illegal arms dealing.[33] Fraudsters laundered eight million dollars of Medicare profits by creating a series of shell companies.[34] Narcotics kingpins created multiple LLCs in Florida to hold real estate and other assets.[35] The financial costs of these transactions are significant—for example, Medicare fraud "cost the taxpayers $2.6 billion, . . . tarnish[ing] the reputation of . . . [the] lifeline for seniors."[36]

Congress's response, the CTA, is grounded in its considered judgment that beneficial ownership information enables enforcement against anonymous legal entities that use incorporation laws to exploit the American financial system to reap unlawful profits.[37] Such regulation of economic activity with obvious interstate and international

---

[32] *See, e.g.*, *Promoting Corporate Transparency: Hrg., Subcomm. on Nat'l Sec., Int'l Dev. & Monetary Pol'y of the H. Comm. on Fin. Servs.*, *supra* note 12, at 3-4 (Rep. Stivers, Rep. Waters).

[33] *President's FY 2019 Budget*, *supra* note 3, at 46 (Sec'y Mnuchin, Dep't of Treasury).

[34] *Id.*

[35] *Id.*

[36] 166 Cong. Rec. at S7310.

[37] *See id.*

implications falls squarely within the heartland of Congress's Commerce authority. *See Raich*, 545 U.S. at 17 (citations omitted) ("When Congress decides that the 'total incidence' of a practice poses a threat to a national market, it may regulate the entire class."); *Perez v. United States*, 402 U.S. 146, 154-55 (1971) ("Extortionate credit transactions, though purely intrastate, may in the judgment of Congress affect interstate commerce."); *United States v. Orito*, 413 U.S. 139, 144 (1973) (Congress may impose "relevant conditions and requirements on those who use the channels of interstate commerce in order that those channels will not become the *means* of promoting or spreading evil, whether of a physical, moral or economic nature" (internal quotation omitted)). This nexus far surpasses the bar set in other Commerce Clause cases. *See, e.g.*, *Raich*, 545 U.S. at 5-10 (small amounts of marijuana grown for personal reasons); *United States v. Hill*, 927 F.3d 188, 202-203 (4th Cir. 2019) (physical assault of coworker); *907 Whitehead St. Inc. v. Gipson*, 701 F.3d 1345, 1350-51 (11th Cir. 2012) (cats living in local museum).

The district court mischaracterizes the CTA as regulating "an entity's existence," rather than activity. Am. Op. & Order 43. That is incorrect. Rather, as the government ably argues, the CTA regulates the

anonymous ownership and operation of corporations and similar entities, *see* Appellants' Br. 18-19, 23-25, in order to abate national security risks and prevent economic crimes in interstate and foreign commerce.

## C. Tax

The CTA's disclosure requirements will facilitate the federal government's ability to crack down on tax evasion, making the law an appropriate exercise of Congress's power to "lay and collect Taxes." U.S. Const. art. I, § 8, cl. 1.[38] Congress found that, without mandatory disclosure of beneficial ownership information, shell companies could "conceal their beneficial owners and hinder government agencies or others in making legitimate determinations of ownership assets and income."[39] Indeed, Congress's record shows that a foreign law firm used thousands of shell companies to evade taxes.[40] The CTA is a rational exercise of Congress's tax authority in response.

---

[38] *See also* 166 Cong. Rec. at S7310.

[39] *President's FY 2019 Budget*, *supra* note 3, at 46 (Sec'y Mnuchin, Dep't of Treasury) ("Treasury's ability to combat tax evasion and to detect, deter, and disrupt money laundering and terrorist financing would be greatly enhanced through reporting of beneficial ownership information at the time of company formation.").

[40] *See Combating Kleptocracy: Beneficial Ownership, Money Laundering, and Other Reforms Type: Hrg., S. Comm. on the Judiciary*, *supra* note 12 (testimony of Adam J. Szubin).

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's grant of Plaintiffs' motion for preliminary injunction.

Respectfully submitted,

s/ *Kristen P. Miller*

Kristen P. Miller
Robin F. Thurston
Sarah R. Goetz
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
kmiller@democracyforward.org
rthurston@democracyforward.org
sgoetz@democracyforward.org

*Counsel for* Amici Curiae

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts exempted by Fed. R. App. P. 32(f), it contains 3,688 words.

This filing also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Fifth Circuit Rule 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Century Schoolbook font, with 12-point font for footnotes.

*/s/ Kristen P. Miller*

Kristen P. Miller
    *Counsel of Record*

Dated: February 14, 2025

# CERTIFICATE OF SERVICE

I, Kristen P. Miller, counsel for *Amici*, certify that on February 14, 2025, a copy of the foregoing brief was filed electronically through the appellate CM/ECF system with the Clerk of the Court. I further certify that all parties required to be served have been served.

/s/ *Kristen P. Miller*
_____

Kristen P. Miller
*Counsel of Record*

Dated: February 14, 2025