# United States Court of Appeals
## *for the*
## Fifth Circuit

---

Case No. 24-40792

TEXAS TOP COP SHOP, INCORPORATED; RUSSELL STRAAYER; MUSTARDSEED LIVESTOCK, L.L.C.; LIBERTARIAN PARTY OF MISSISSIPPI; NATIONAL FEDERATION OF INDEPENDENT BUSINESS, INCORPORATED; DATA COMM FOR BUSINESS, INCORPORATED,

*Plaintiffs-Appellees,*

v.

PAMELA BONDI, U.S. Attorney General; TREASURY DEPARTMENT; DIRECTOR FINCEN ANDREA GACKI, Director of the Financial Crimes Enforcement Network; FINANCIAL CRIMES ENFORCEMENT NETWORK; SCOTT BESSENT, Secretary, U.S. Department of Treasury,

*Defendants-Appellants.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN IN CASE NO. 4:24-CV-478, AMOS L. MAZZANT, U.S. DISTRICT JUDGE

---

**BRIEF OF *AMICI CURIAE* ADVANCING AMERICAN FREEDOM; AMERICAN ASSOCIATION OF SENIOR CITIZENS; AMERICAN SECURITIES ASSOCIATION; AMERICANS FOR LIMITED GOVERNMENT; CENTER FOR A FREE ECONOMY; CENTER FOR INDEPENDENT THOUGHT; CENTER FOR POLITICAL RENEWAL; COMPETITIVE ENTERPRISE INSTITUTE; EAGLE FORUM; EAGLE FORUM OF GEORGIA; JOANN FLEMING, EXECUTIVE DIRECTOR, GRASSROOTS AMERICA - WE THE PEOPLE PAC; FRONTIERS OF FREEDOM; FRONTLINE POLICY COUNCIL; CHARLIE GEROW; JAY D. HOMNICK, SENIOR FELLOW, PROJECT SENTINEL; INTERNATIONAL CONFERENCE OF EVANGELICAL CHAPLAIN ENDORSERS; INTERNATIONAL ORGANIZATION FOR THE FAMILY; JCCWATCH.ORG; TIM JONES, FORMER SPEAKER, MISSOURI HOUSE, CHAIRMAN, MISSOURI CENTER-RIGHT COALITION; MOUNTAIN STATES POLICY CENTER; MICHAEL MUNGER, PFIZER/PRATT UNIVERSITY PROFESSOR OF POLITICAL SCIENCE, DUKE UNIVERSITY; NATIONAL RELIGIOUS BROADCASTERS; NEW JERSEY FAMILY POLICY CENTER; NOAH WEBSTER EDUCATIONAL FOUNDATION; NORTH CAROLINA INSTITUTE FOR CONSTITUTIONAL LAW; NSIC INSTITUTE; OKLAHOMA COUNCIL OF**

**PUBLIC AFFAIRS; ORTHODOX JEWISH CHAMBER OF COMMERCE; MELISSA ORTIZ, PRINCIPAL & FOUNDER, CAPABILITY CONSULTING; PENNSYLVANIA EAGLE FORUM; PROJECT 21 BLACK LEADERSHIP NETWORK; RIO GRANDE FOUNDATION; SETTING THINGS RIGHT; JOHN SHADEGG, MEMBER OF CONGRESS, 1995-2010; 60 PLUS ASSOCIATION; STAND FOR GEORGIA VALUES ACTION; TEA PARTY PATRIOTS ACTION, INC.; THE JUSTICE FOUNDATION; TRADITION, FAMILY, PROPERTY, INC.; UPPER MIDWEST LAW CENTER; RICHARD VIGUERIE, CHAIRMAN, CONSERVATIVEHQ.COM; YANKEE INSTITUTE; YOUNG AMERICA'S FOUNDATION; AND YOUNG CONSERVATIVES OF TEXAS IN SUPPORT OF PLAINTIFFS-APPELLEES**

J. MARC WHEAT
TIMOTHY HARPER
  (*Admitted in Washington, DC*)
ADVANCING AMERICAN FREEDOM, INC.
*Counsel for Amici Curiae*
801 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 780-4848
mwheat@advancingamericanfreedom.com

CP COUNSEL PRESS   (800) 4-APPEAL • (131001)

# STATEMENT OF INTERESTED PERSONS
# FIFTH CIRCUIT RULE 29.2

The undersigned counsel certifies that the following persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal. J. Marc Wheat, General Counsel for Advancing American Freedom, Amicus Curiae. The undersigned counsel also certifies that Amici Curiae, Advancing American Freedom; American Securities Association; Frontiers of Freedom; Frontline Policy Council; Charlie Gerow; International Conference of Evangelical Chaplain Endorsers; International Organization for the Family; JCCWatch.org; Tim Jones, Former Speaker, Missouri House, Chairman, Missouri Center-Right Coalition; Mountain States Policy Center; North Carolina Institute for Constitutional Law; NSIC Institute; Setting Things Right; Stand for Georgia Values Action; Tea Party Patriots Action, Inc.; The Justice Foundation; Tradition, Family, Property, Inc.; Yankee Institute; Young America's Foundation; and Young Conservatives of Texas are nonprofit corporations that have no parent corporations, are not publicly held corporations, and do not issue stock.

DATED: February 24, 2025    /s/ J. Marc Wheat
                                              J. Marc Wheat
                                              General Counsel for Advancing American Freedom

## TABLE OF CONTENTS

Page

STATEMENT OF INTERESTED PERSONS ........................................................i

TABLE OF AUTHORITIES ............................................................................. iii

STATEMENT OF INTEREST OF AMICI CURIAE..............................................1

INTRODUCTION .................................................................................................2

ARGUMENT

I.   The Commerce Clause is a Limited Enumeration of Power, not a Grant of a General Police Power ..................................................................4

II.  The CTA is Not a Necessary and Proper Exercise of Congress's Commerce Clause Power............................................................................7

III. The Collection of Data Invites Hacking and Abuse as Demonstrated Over and Over Again by Both Private and Government Information Databases ....................................................................................................9

CONCLUSION.....................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Gonzales v. Raich*,
  545 U.S. 1 (2005).................................................................................4, 5

*Marbury v. Madison*,
  5 U.S. 137 (1803)......................................................................................4

*McCulloch v. Maryland*,
  17 U.S. 316 (1819)....................................................................................8

*Texas Top Cop Shop, Inc. v. Garland*,
  4:24-cv-00478-ALM (E.D. Tex. Dec. 5, 2024) ................................... 2-3

*United States v. Comstock*,
  560 U.S. 126 (2010)..................................................................................8

*United States v. Lopez*,
  514 U.S. 549 (1995)..................................................................................5

**Statutes & Other Authorities:**

U.S. Const. art. I, § 8, cl. 3................................................................................3, 4

U.S. Const. art. I, § 8, cl. 18...............................................................................7

31 U.S.C. § 5336(b)(1)........................................................................................2

31 U.S.C. § 5336(b)(2)........................................................................................2

Aimee Picchi, *Hackers may have stolen the Social Security numbers of
  many Americans. Here's what to know.*, CBS News (Aug. 15, 2024).................11

Amir Bibawy, *SEC reveals 2016 hack that breached its filing system*,
  Associated Press (Sep. 20, 2017).......................................................................10

Bill Hutchinson, *Chelsea Manning speaks of solitary confinement during
  New Year's Day poetry event*, ABC News (Jan. 2, 2024) ............................. 10-11

Craig A. Newman, *A Closer Look: SEC's Edgar Hacking Case*, Patterson
  Belknap Data Security Law Blog (Feb. 12, 2019)................................................10

David DiMolfetta, *The Pentagon is notifying individuals affected by 2023
  email data breach*, Government Executive (Feb. 15, 2024) ................................10

Edwin J. Feulner, Jr, *Conservatives Stalk the House: The Story of the Republican Study Committee* 212 (Green Hill Publishers, Inc. 1983) ...................1

The Federalist No. 17 (Alexander Hamilton) (George W. Carey and James McClellan, eds., The Liberty Fund 2001)..............................................................7

The Federalist No. 45 (James Madison) (George W. Carey and James McClellan, eds., The Liberty Fund 2001)..............................................................6

Jim Forsyth, *Records of 4.9 mln stolen from car in Texas data breach*, Reuters (Sep. 29, 2011 ....................................................................................11

Jon Haworth and Luke Barr, *AT&T says hacker stole some data from 'nearly all' wireless customers*, ABC News (Jul. 12, 2024) ..................................11

Mary Kay Mallonee, *Hackers publish contact info of 20,000 FBI employees*, CNN (Feb. 8, 2016).........................................................................10

Paul Bischoff, *A recent history of US Government Breaches – can you trust them with your data?*, Comparitech (Nov. 28, 2023)..............................10, 11

Randy Barnett, *New Evidence of the Original Meaning of the Commerce Clause*, 55 Ark. L. Rev. 847 (2003) .......................................................................5

Randy Barnett, *The Original Meaning of the Commerce Clause*, 68 U. Chi. L. Rev. 101 (2001) .......................................................................................5

Raphael Satter and A.J. Vicens, *US Treasury says Chinese hackers stole documents in 'major incident'*, Reuters (Dec. 31, 2024)..................................9, 10

Thomas Brewster, *191 Million US Voter Registration Records Leaked In Mystery Database*, Forbes (Dec. 28, 2015) .........................................................11

## STATEMENT OF INTEREST OF AMICI CURIAE[1]

Advancing American Freedom (AAF) is a nonprofit organization that promotes and defends policies that elevate traditional American values, including the uniquely American idea that all people are created equal and endowed by their Creator with unalienable rights to life, liberty, and the pursuit of happiness. AAF "will continue to serve as a beacon for conservative ideas, a reminder to all branches of government of their responsibilities to the nation,"[2] and believes that the governmental structures established by the Constitution are necessary for the preservation of the liberty of the people. Advancing American Freedom files this brief on behalf of its 7,967 members in Texas and its 10,483 members in the Fifth Circuit.

Amici American Association of Senior Citizens; American Securities Association; Americans for Limited Government; Center for a Free Economy; Center for Independent Thought; Center for Political Renewal; Competitive Enterprise Institute; Eagle Forum; Eagle Forum of Georgia; JoAnn Fleming, Executive Director, Grassroots America - We the People PAC; Frontiers of Freedom; Frontline Policy Council; Charlie Gerow; Jay D. Homnick, Senior Fellow, Project

---

[1] All parties have consented to the filing of this amicus brief. No counsel for a party authored this brief in whole or in part. No person other than Amicus Curiae and its counsel made any monetary contribution intended to fund the preparation or submission of this brief.

[2] Edwin J. Feulner, Jr, *Conservatives Stalk the House: The Story of the Republican Study Committee* 212 (Green Hill Publishers, Inc. 1983).

Sentinel; International Conference of Evangelical Chaplain Endorsers; International Organization for the Family; JCCWatch.org; Tim Jones, Former Speaker, Missouri House, Chairman, Missouri Center-Right Coalition; Mountain States Policy Center; Michael Munger, Pfizer/Pratt University Professor of Political Science, Duke University; National Religious Broadcasters; New Jersey Family Policy Center; Noah Webster Educational Foundation; North Carolina Institute for Constitutional Law; NSIC Institute; Oklahoma Council of Public Affairs; Orthodox Jewish Chamber of Commerce; Melissa Ortiz, Principal & Founder, Capability Consulting; Pennsylvania Eagle Forum; Project 21 Black Leadership Network; Rio Grande Foundation; Setting Things Right; John Shadegg, Member of Congress, 1995-2010; 60 Plus Association; Stand for Georgia Values Action; Tea Party Patriots Action, Inc.; The Justice Foundation; Tradition, Family, Property, Inc.; Upper Midwest Law Center; Richard Viguerie, Chairman, ConservativeHQ.com; Yankee Institute; Young America's Foundation; and Young Conservatives of Texas believe, as did America's Founders, that compliance with the Constitution's limits on government power is essential for the preservation of American freedom.

## INTRODUCTION

The Corporate Transparency Act ("CTA"), which "requires a vast array of companies to disclose otherwise private stakeholder information to [the Financial Crimes Enforcement Network (FinCEN)]," *Texas Top Cop Shop, Inc. v. Garland*,

2

4:24-cv-00478-ALM at 4 (E.D. Tex. Dec. 5, 2024) (citing 31 U.S.C. § 5336(b)(1)), is beyond the power of Congress to enact and thus is unconstitutional. The information submitted must identify "each beneficial owner of . . . the reporting company . . . by full legal name, date of birth, current . . . residential or business street address, and [a] unique identifying number from an acceptable identification document or FinCEN identifier." *Id*. at 6 (alteration in original) (quoting 31 U.S.C. § 5336(b)(2)). A beneficial owner, with some exceptions, is "an individual who, directly or indirectly, through any contract, arrangement, understanding, relationship, or otherwise, exercises substantial control over the entity; or who owns or controls not less than [twenty-five] percent of the ownership interests of the entity." *Id*. (alteration in original) (quoting 31 U.S.C. § 5336(b)(2)). This massive collection and storage of private information is not within the ambit of congressional power and is therefore unconstitutional.

The Constitution only confers limited and enumerated powers on the federal government. One of those powers is to "regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3. The original meaning of the clause is clear. Commerce meant trade and among the states meant—well—among the states. A broader reading turns much of the rest of the Constitution, including the Tenth Amendment, on its head. Similarly, the original meaning of the Necessary and Proper Clause confers on Congress only the power to carry out the powers already

granted to it. Because no enumerated power supports the statute at issue in this case, Plaintiffs-Appellees are likely to prevail on the merits and the injunction should be upheld.

## ARGUMENT

**I. The Commerce Clause is a Limited Enumeration of Power, not a Grant of a General Police Power.**

The CTA is unconstitutional and thus the district court rightly found that Plaintiffs-Appellees are likely to prevail on their claim that the act goes beyond the power the Supreme Court has found the Commerce Clause grants Congress in cases like *Gonzales v. Raich*, 545 U.S. 1 (2005). More fundamentally, the CTA is beyond the power granted to Congress by the Commerce Clause as understood at the time of the founding. While the application of this narrower, original meaning is not determinative in this case, courts' "duty to . . . say what the law is," *Marbury v. Madison*, 5 U.S. 137, 177 (1803), calls for attention to the Constitution's original meaning.

The text of the Commerce Clause, understood as it was by the ratifying public at the time of its adoption, grants Congress only the ability to regulate interjurisdictional trade. The Commerce Clause grants Congress the power to "regulate Commerce . . . among the several States," as well as with foreign nations and Indian tribes. U.S. Const. art. I, § 8 cl. 3. "[T]he Commerce Clause empowers Congress to regulate the buying and selling of goods and services trafficked across

4

state lines." *Gonzales*, 545 U.S. at 57 (Thomas, J., dissenting) (citing *United States v. Lopez*, 514 U.S. 549, 586-89 (1995) (Thomas, J., concurring)). This understanding of "commerce" as trade was common not only to the drafters of the Constitution but to the general public including those who ratified it. *Id*. (citing Randy Barnett, *New Evidence of the Original Meaning of the Commerce Clause*, 55 Ark. L. Rev. 847, 857-862 (2003)). On the other hand, commerce did not include the wholly intrastate activities of agriculture and manufacturing. *Gonzales*, 545 U.S. at 58 (Thomas, J., dissenting) ("Commerce, or trade, stood in contrast to the productive activities like manufacturing and agriculture."). In fact, "the term 'commerce' was used in contradistinction to" such "productive activities." *Lopez*, 514 U.S. at 586.

Whether used in relation to the drafting and ratification of the Constitution or for public consumption, the word "commerce" was understood at the time of the Founding to refer to "trade," not all things that today would constitute commercial activity. "Throughout founding-era dictionaries, Madison's notes from the Constitutional Convention, the Federalist Papers, and the ratification debates, the term 'commerce' is consistently used to mean trade or exchange—not all economic or gainful activity that has some attenuated connection to trade or exchange." *Gonzales*, 545 U.S. at 58 (Thomas, J., dissenting) (citing *Lopez*, 514 U.S. at 586-87 (Thomas, J., concurring); (quoting Randy Barnett, *The Original Meaning of the Commerce Clause*, 68 U. Chi. L. Rev. 101, 112-125 (2001)). For example, "In none

5

of the sixty-three appearances of the term 'commerce' in *The Federalist Papers* is it ever used to unambiguously refer to any activity beyond trade or exchange."[3] "[C]ommerce" also had the meaning of "trade" in common usage.[4] Thus, there is compelling evidence that the power originally granted by the Commerce Clause was the power to regulate interjurisdictional trade.

Not only is the evidence supporting the narrow meaning of "commerce" compelling, but the historical and constitutional context also demand a narrow interpretation of the power granted by the Clause. The purpose of the federal government was national unity, not national uniformity. "The powers delegated by the proposed constitution to the federal government are few and defined. Those which are to remain in the state governments are numerous and indefinite."[5] The founding generation understood that the powers delegated to the federal government "will be exercised principally on external objects, as war, peace, negotiation, and foreign commerce."[6] Hamilton assured the public that "the supervision of *agriculture* and of other concerns of a similar nature, all those things in short which

---

[3] Randy Barnett, *The Original Meaning of the Commerce Clause*, 68 U. Chi. L. Rev. 101, 116 (2001).

[4] *See, e.g.*, Randy Barnett, *New Evidence of the Original Meaning of the Commerce Clause*, 55 Ark. L. Rev. 847, 857-60 (2003).

[5] The Federalist No. 45, at 241 (James Madison) (George W. Carey and James McClellan, eds., The Liberty Fund 2001).

[6] *Id.*

are proper to be provided for by local legislation, can *never* be desirable cares of a general jurisdiction."⁷ Because the CTA regulates wholly intrastate, noncommercial activity, it is not a legitimate exercise of the power granted to Congress by the Commerce Clause.

## II. The CTA is Not a Necessary and Proper Exercise of Congress's Commerce Clause Power.

The CTA is neither necessary to, nor a proper means of implementing Congress's power to regulate interstate trade. The Necessary and Proper clause gives Congress the authority "[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States." U.S. Const. art. 1, § 8, cl. 18. As Justice Thomas has explained, *McCulloch* created a two-part test for compliance with the Necessary and Proper Clause:

> First, the law must be directed toward a "legitimate" end, which *McCulloch* defines as one "within the scope of the [C]onstitution"— that is, the powers expressly delegated to the Federal Government by some provision in the Constitution . . . Second, there must be a necessary and proper fit between the "means" (the federal law) and the "end" (the enumerated power or powers) it is designed to serve . . . The means Congress selects will be deemed "necessary" if they are "appropriate" and "plainly adapted" to the exercise of an enumerated power, and "proper" if they are not otherwise "prohibited" by the Constitution and not "[in]consistent" with its "letter and spirit."

---

⁷ The Federalist No. 17, at 80-81 (Alexander Hamilton) (George W. Carey and James McClellan, eds., The Liberty Fund 2001) (emphasis added).

7

*United States v. Comstock*, 560 U.S. 126, 160-61 (2010) (Thomas, J., dissenting) (alteration in original) (quoting *McCulloch v. Maryland*, 17 U.S. 316, 421 (1819)).

First, the CTA is not "'within the scope of the [C]onstitution'—that is, the powers expressly delegated to the Federal Government by some provision in the Constitution." *Id*. at 160 (Thomas, J., dissenting) (alteration in original) (quoting *McCulloch*, 17 U.S. at 421). As noted in Section I above, Congress was not authorized to enact the CTA under the Commerce Clause.

Second, "[t]he means Congress selects will be deemed 'necessary' if they are 'appropriate' and 'plainly adapted' to the exercise of an enumerated power, and 'proper' if they are not otherwise 'prohibited' by the Constitution and not '[in]consistent' with its 'letter and spirit.'" *Comstock*, 560 U.S. at 160-61 (Thomas, J., dissenting) (alteration in original) (quoting *McCulloch*, 17 U.S. at 421). As noted above, the CTA is not "'plainly adapted' to the exercise of an enumerated power," *id*., because it regulates pre-commercial, wholly intrastate activity.

The Constitution was intended to create unity, not uniformity among the states. Thus, national policies like the CTA that seek to create uniform standards for activities that take place within individual states do not comport with the spirit of the Constitution.

Further, the CTA violates the letter of the Constitution, namely the First and Fourth Amendments, by requiring potentially millions of Americans to disclose their personal information absent a warrant or even any suspicion of criminal activity. This undermines the freedom to associate anonymously, an American tradition that is essential to the freedoms of speech and assembly protected by the First Amendment. It also violates the protection against unreasonable seizure of the papers and effects protected under the Fourth Amendment.

For all of these reasons, the Court should uphold the district court's injunction.

### III. The Collection of Data Invites Hacking and Abuse as Demonstrated Over and Over Again by Both Private and Government Information Databases.

The government has no authority to demand the information it does in the CTA. The prudence of that limitation is demonstrated in part by the repeated security failures of large databases in both the public and private sectors.

In December of 2024, "Chinese state-sponsored hackers breached the U.S. Treasury Department's computer security guardrails" stealing "documents in what Treasury called a 'major incident.'"[8] The "hackers compromised third-party cybersecurity service provider BeyondTrust and were able to access unclassified

---

[8] Raphael Satter and A.J. Vicens, *US Treasury says Chinese hackers stole documents in 'major incident'*, Reuters (Dec. 31, 2024, 2:27 PM) https://www.reuters.com/technology/cybersecurity/us-treasurys-workstations-hacked-cyberattack-by-china-afp-reports-2024-12-30/.

9

documents."[9] Similarly, In 2016, hackers broke into the Securities and Exchange Commission's Electronic Data Gathering, Analysis, and Retrieval system (EDGAR).[10] EDGAR processes over 1.7 million electronic filings annually, and "traded on at least nonpublic 157 earnings releases," enriching themselves by over $4 million.[11] In 2018, a hacker breached 60 million records of US Postal Service user account details even after being warned a year prior.[12] Hackers stole the personal information of 21.5 million current and former federal government employees from Office of Personnel Management files in 2015.[13] 26,000 current and former Defense Intelligence Agency employees experienced a breach of personally identifiable information in 2023.[14] A British teenager published the contact information of 20,000 FBI agents in 2016.[15] United States Army soldier Chelsea Manning infamously handed over 750,000 classified documents to WikiLeaks.[16] The

---

[9] *Id.*

[10] Amir Bibawy, *SEC reveals 2016 hack that breached its filing system*, Associated Press (Sep. 20, 2017, 11:37 PM) https://apnews.com/article/d81daf569c75472bbcba22d2f5ba0f34.

[11] Craig A. Newman, *A Closer Look: SEC's Edgar Hacking Case*, Patterson Belknap Data Security Law Blog (Feb. 12, 2019) https://www.pbwt.com/data-security-law-blog/a-closer-look-secs-edgar-hacking-case.

[12] Paul Bischoff, *A recent history of US Government Breaches – can you trust them with your data?*, Comparitech (Nov. 28, 2023) https://www.comparitech.com/blog/vpn-privacy/us-government-breaches/.

[13] *Id.*

[14] David DiMolfetta, *The Pentagon is notifying individuals affected by 2023 email data breach*, Government Executive (Feb. 15, 2024) https://www.govexec.com/technology/2024/02/pentagon-notifying-individuals-affected-2023-email-data-breach/394184/.

[15] Mary Kay Mallonee, *Hackers publish contact info of 20,000 FBI employees*, CNN (Feb. 8, 2016, 8:34 PM) https://edition.cnn.com/2016/02/08/politics/hackers-fbi-employee-info/index.html.

[16] Bill Hutchinson, *Chelsea Manning speaks of solitary confinement during New Year's Day*

healthcare information of 4.6 million active duty servicemembers, veterans, and their family members was compromised in a 2011 Tricare breach.[17] GovPayNow.com, which is used by thousands of state and local governments, leaked 14 million records in 2018, including addresses, phone numbers and partial credit card numbers.[18] Additionally, a hacker exposed 191 million records from a database of American voters in 2015.[19]

The private sector has experienced massive breaches as well. On July 12, 2024, AT&T announced that someone illegally obtained records of phone calls and text messages from almost all its wireless customers,[20] and an April 2024 nationalpublicdata.com breach exposed 2.7 billion records, including names, addresses, dates of birth, phone numbers, and even Social Security numbers.[21]

Because neither private nor public databases are reliably secure, the CTA's mass collection of data is unavoidably dangerous. The courts should have the chance

---

*poetry event*, ABC News (Jan. 2, 2024, 4:29 PM) https://abcnews.go.com/US/chelsea-manning-speaks-solitary-confinement-new-years-day/story?id=106043233.
[17] Jim Forsyth, *Records of 4.9 mln stolen from car in Texas data breach*, Reuters (Sep. 29, 2011, 6:00 PM) https://www.reuters.com/article/us-data-breach-texas-idUSTRE78S5JG20110929/.
[18] Bischoff, *supra* note 11.
[19] Thomas Brewster, *191 Million US Voter Registration Records Leaked In Mystery Database*, Forbes (Dec. 28, 2015, 8:50 AM) https://www.forbes.com/sites/thomasbrewster/2015/12/28/us-voter-database-leak/.
[20] Jon Haworth and Luke Barr, *AT&T says hacker stole some data from 'nearly all' wireless customers*, ABC News (Jul. 12, 2024, 12:24 PM) https://abcnews.go.com/US/att-hacker-stole-data-wireless-customers/story?id=111874118.
[21] Aimee Picchi, *Hackers may have stolen the Social Security numbers of many Americans. Here's what to know.*, CBS News (Aug. 15, 2024, 6:15 PM) https://www.cbsnews.com/news/social-security-number-leak-npd-breach-what-to-know/.

to hear this case to completion before Americans are forced to divulge their personal information for bureaucratic convenience.

## CONCLUSION

For the foregoing reasons, this Court should uphold the district court's injunction.

/s/ J. Marc Wheat
J. MARC WHEAT
  *Counsel of Record*
ADVANCING AMERICAN FREEDOM, INC.
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 780-4848
MWheat@advancingamericanfreedom.com

*Counsel for Amici Curiae*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 24, 2025, a true and correct copy of the foregoing Brief for Amici Curiae was served via electronic filing with the Clerk of Court and all registered ECF users.

Dated: February 24, 2025

/s/ J. Marc Wheat
J. MARC WHEAT

## CERTIFICATE OF COMPLIANCE

This brief has been prepared using 14-point, proportionately spaced, serif typeface, in Microsoft Word. Excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this brief contains 2615 words.

/s/ J. Marc Wheat
J. MARC WHEAT
