No. 24-40792

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

TEXAS TOP COP SHOP, ET AL.,

                                                                                                                   Plaintiffs-Appellants,

v.

PAMELA BONDI, ATTORNEY GENERAL OF THE UNITED STATES, ET AL.,

                                                                                                                       Defendants.

---

On Appeal from the United States District Court for the Eastern
District of Texas No. 4:24-CV-478 (Hon. Amos L. Mazzant)

---

**BRIEF AMICI CURIAE OF LIBERTY JUSTICE CENTER
IN SUPPORT OF PLAINTIFFS**

---

                                          Reilly Stephens
                                             *Counsel of Record*
                                          Duncan Crim
                                          LIBERTY JUSTICE CENTER
                                          7500 Rialto Blvd.
                                          Suite 1-250
                                          Austin, TX 78735
                                          (512) 481-4400
                                          rstephens@ljc.org
                                          *Attorneys for Amicus Curiae*
                                          *Liberty Justice Center*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record for amicus curiae certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1, in addition to those listed in the Petitioner's Certificate of Interested Persons, have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

*Amicus Curiae*: The Liberty Justice Center is a not-for-profit corporation exempt from income tax under section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3). It does not have a parent corporation and no publicly held company has a 10% or greater ownership interest.

Date: March 4, 2025

Reilly Stephens
    *Counsel of Record*
Duncan Crim
Liberty Justice Center
7500 Rialto Blvd.
Suite 1-250
Austin, TX 78735
(512)481-4400
rstephens@ljc.org

i

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ............................................................. i

TABLE OF CONTENTS .................................................................................................. ii

TABLE OF AUTHORITIES ........................................................................................... iii

INTEREST OF THE AMICUS CURIAE ........................................................................ 1

INTRODUCTION AND SUMMARY OF THE ARGUMENT ..................................... 2

ARGUMENT ..................................................................................................................... 3

 I. The Commerce Clause does not empower Congress to pass the CTA, which regulates entirely noneconomic activity. ................................................................ 3

CONCLUSION ............................................................................................................... 10

CERTIFIFCATE OF COMPLIANCE .......................................................................... 11

CERTIFICATE OF SERVICE ...................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Gonzales v. Raich,*
   545 U.S. 1 (2005) .................................................................... 3, 4, 5, 6

*Janus v. AFSCME,*
   138 S. Ct. 2448 (2018) ........................................................................ 1

*United States v. Lopez,*
   514 U.S. 549 (1995) ....................................................................... 4, 6

*Nat'l Fed'n of Indep. Bus. v. Sebelius,*
   567 U.S. 519 (2012) ............................................................................ 2

*NLRB v. Jones & Laughlin Steel Corp.,*
   301 U.S. 1 (1937) ................................................................................ 3

*Perez v. United States,*
   402 U.S. 146 (1971) ............................................................................ 3

*United States v. Morrison,*
   529 U.S. 598 (2000) .................................................................. 3, 5, 6, 7

**Statutes**

31 U.S.C. § 5336(b)(2) .................................................................................. 4, 7
31 U.S.C. 5336(a)(11)(A). ................................................................................ 8
31 U.S.C. 5336(a)(3)(A) ................................................................................... 7
31 U.S.C. 5336(a)(3)(B) ................................................................................... 7
AMLA § 6002(5), 134 Stat. 4547 .................................................................... 9
CTA § 6402(3)-(5), 134 Stat. 4604 .................................................................. 9

**Rules**

31 C.F.R. 1010.380(a)(1) .................................................................................. 8
Rule 29(a) of the Federal Rules of Appellate Procedure ............................. 1

**Constitutional Provisions**

U.S. Const. Art. I, § 8, Cl. 3 ............................................................................. 3

## INTEREST OF THE AMICUS CURIAE

The Liberty Justice Center is a nonprofit, nonpartisan public-interest litigation center that seeks to protect economic liberty, private property rights, free speech, and other fundamental rights. The Liberty Justice Center pursues its goals through strategic, precedent-setting litigation to revitalize constitutional restraints on government power and protections for individual rights. See, e.g. *Janus v. AFSCME*, 138 S. Ct. 2448 (2018).

This case interests amicus because constant vigilance is necessary to protect individual liberties from the abuses of government overreach.

The Liberty Justice Center files this brief pursuant to Rule 29(a) of the Federal Rules of Appellate Procedure, and all parties to the appeal have consented to the filing of this brief. No counsel for any party authored any part of this brief, and no person or entity other than amicus funded its preparation or submission.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

The Corporate Transparency Act ("CTA") regulates noneconomic activity. As the district court below explained, "[t]he fact that a company is a company does not knight Congress with some supreme power to regulate them in all aspects—especially through the CTA, which does not facially regulate commerce**.**" Opinion below at *52, 4:24-CV-478 (ECF No. 33). Yet Defendants' essential claim is that the very existence of a commercial entity inherently brings it under the purview of the Commerce Clause's substantial effects doctrine. That argument falls short because the Commerce Clause is a power to regulate *commerce*, and as the Supreme Court has made clear, existence is not commerce. *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 556-7 (2012).

Nothing in the challenged portion of the CTA regulates production, consumption, or distribution of any product or service. Although reporting companies might be commercial enterprises, their very existence is not itself a commercial activity subject to regulation under the Commerce Clause.

Plaintiffs successfully demonstrated that the CTA is not a valid exercise of Congress's Commerce Clause power, and this Court should therefore affirm the district court and hold the CTA unconstitutional.

## ARGUMENT

### I. The Commerce Clause does not empower Congress to pass the CTA, which regulates entirely noneconomic activity.

The Commerce Clause grants Congress the power to "regulate Commerce with foreign Nations, and among the several States." U.S. Const. Art. I, § 8, Cl. 3. Courts have interpreted this clause to find that Congress may regulate within three areas : (1) the use of the channels of interstate commerce; (2) the instrumentalities of interstate commerce, or persons or things in interstate commerce; and (3) activities which substantially affect interstate commerce. *Gonzales v. Raich*, 545 U.S. 1, 16 (2005); *United States v. Morrison*, 529 U.S. 598 (2000); *Perez v. United States*, 402 U.S. 146, 150 (1971); *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 37 (1937).

The CTA requires a "reporting company" to submit to the Financial Crimes Enforcement Network ("FinCEN") a report that "indentif[ies] each beneficial owner of . . . the reporting company . . . by full legal name,

3

date of birth, current . . . residential or business street address, and [a] unique identifying number from an acceptable identification document or FinCEN identifier." 31 U.S.C. § 5336(b)(2). The CTA is therefore not a regulation of the use of the channels of interstate commerce—i.e., a regulation of the pathways through which interstate commerce occurs, such as highways, railways, airways, and waterways. *See United States v. Lopez*, 514 U.S. 549, 558-599 (1995); *Gonzales*, at 16.

The CTA is also not a regulation of the instrumentalities of interstate commerce, or persons or things in interstate commerce—i.e., of the entities and objects that are directly involved in or facilitate interstate commerce. Such instrumentalities, persons, and things include, but are not limited to, vehicles, machinery, and infrastructure used for transportation, as well as the goods and people that move across state lines. *Gonzales*, at 16. Although the CTA disclosure requirements will apply to reporting companies that are in the business of facilitating interstate commerce, many of the companies covered by the CTA will have nothing to do with the instrumentalities of interstate commerce.

The CTA also does not fall under the last area of regulation allowed by the Commerce Clause: activities which substantially effect interstate

commerce. The Supreme Court has held that, under the Commerce Clause, Congress "has the power to regulate activities that substantially affect interstate commerce." *Id*. When the substantial effects doctrine is used to uphold "federal regulation of intrastate activity based upon the activity's substantial effects on interstate commerce, the activity in questions has been some sort of economic endeavor." *Morrison*, at 611.

The Supreme Court has repeatedly highlighted that the economic nature of a regulated activity plays a crucial role in Commerce Clause analysis. *See Gonzales,* at 610-11; *Lopez*, at 561. "Economics," as the Supreme Court explains, refers generally to "the production, distribution, and consumption of commodities." *Gonzales*, at 25 (quoting Webster's Third New International Dictionary 720 (1966)). Whether an activity is economic hinges on whether it "arise[s] out of or [is] connected with a commercial transaction." *Lopez*, at 561. The delineation between economic and non-economic activity can be seen in *Lopez, Gonzales,* and *Morrison*.

*Lopez* stated that "[t]he Court has never declared that Congress may use a relatively trivial impact on commerce as an excuse for broad general regulation of state or private activities." *Lopez*, at 557. The

5

statute which criminalized certain types of firearm possession had "nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." *Id.* at 561. The regulation in question was "not an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated. It [could not], therefore, be sustained under [the Court's] cases upholding regulations of activities that arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affects interstate commerce." *Id.*

In contrast, in *Gonzales*, the Court found that federal regulation of cannabis did fall under the Commerce Clause's grant of power because the purpose of the statute was "to control the supply and demand of controlled substances in both lawful and unlawful drug markets." *Gonzales*, at 19. The Court found that "production of the commodity meant for home consumption, be it wheat or marijuana, has a substantial effect on supply and demand in the national market for that commodity."

Or as the court put it in *Morrison* "those cases where we have sustained federal regulation of intrastate activity based upon the activity's substantial effects on interstate commerce, the activity in

question has been some sort of economic *endeavor*." *Morrison*, at 611 (emphasis added). Taken together, these cases demonstrate that, under the Supreme Court's Commerce Clause doctrine, whether federal government can regulate under the substantial effects doctrine rests on whether the regulation ultimately affects some sort of transaction or production of goods, as in an actual activity of economic production.

The disclosure provision of the CTA plainly does not regulate economic activity. The CTA requires a "reporting company" to submit to FinCEN a report that "indentif[ies] each beneficial owner of . . . the reporting company . . . by full legal name, date of birth, current . . . residential or business street address, and [a] unique identifying number from an acceptable identification document or FinCEN identifier." 31 U.S.C. § 5336(b)(2). A beneficial owner is an individual who "(i) exercises substantial control over the entity; or (ii) owns or controls not less than 25 percent of the ownership interests of the entity." 31 U.S.C. 5336(a)(3)(A); *See* 31 U.S.C. 5336(a)(3)(B) (establishing certain exceptions). A "reporting company" is defined to include any "corporation, limited liability company, or other similar entity" that is created (or, in the case of a foreign entity, registered to do business) "by the filing of a

7

document with a secretary of state or a similar office under the law of a State or Indian Tribe." 31 U.S.C. 5336(a)(11)(A).

The rule provides that entities created or registered before 2024 must comply by January 1, 2025; entities created or registered during 2024 must comply within 90 days after formation or registration; and entities created or registered after 2024 must comply within 30 days after formation or registration. *See* 31 C.F.R. 1010.380(a)(1).

These impositions cannot be sustained under the Commerce Clause because, rather than focusing on economic activity or its effects, this statute simply compels disclosure of information, which is not an economic activity, and regardless of whether an entity engages in economic activity. The mere existence and ownership of a company is not an economic endeavor in and of itself. No money or goods exchange hands and no transaction is made. Rather, the federal government wants to collect this information for *other* policy purposes.

The CTA forms part of the Anti-Money Laundering Act ("AMLA"), a statute that (as its name suggests) establishes a regulatory framework for countering money laundering. The CTA's reporting requirements allegedly facilitate Congress's broader efforts to counter money

laundering by enabling investigators to trace the flow of illicit funds and by discouraging the use of shell corporations to conceal transactions. *See* AMLA § 6002(5), 134 Stat. 4547. The CTA's "formal findings" assert that "malign actors seek to conceal their ownership" of corporations and similar entities; that "money launderers and others involved in commercial activity intentionally conduct transactions through corporate structures in order to evade detection"; and that "legislation providing for the collection of beneficial ownership information…is needed to…protect interstate and foreign commerce." CTA § 6402(3)-(5), 134 Stat. 4604. It is unclear, however, how the disclosure requirement is "essential" to this scheme of regulation, nor how the disclosure requirement's overturning would undercut the larger regulatory scheme.

    The disclosure requirement itself is not essential—or even all that related—to stopping the flow of illicit funds. Disclosure of such information as, "date of birth, current . . . residential or business street address, and a unique identifying number from an acceptable identification document or FinCEN identifier" is far more expansive than necessary to cut off illegal transactions. The majority of such information is publicly available, or obtainable from a warrant. It is unclear how

9

proactively obtaining this information would assist investigators in preventing money laundering. And overturning the disclosure requirement would not undercut the larger regulatory scheme because, again, the information investigators need to stop money laundering and the flow of illicit funds is available through other means readily accessible to the government.

The CTA does not regulate economic activity, is not essential to the scheme of regulation, and would not undercut the larger regulatory scheme if it was overturned. the CTA cannot be justified under the Commerce Clause.

## CONCLUSION

For the foregoing reasons, this Court should find in favor of Plaintiffs.

Respectfully submitted,　　　　　　　　　　March 04, 2025

　　　　　　　　　　　　　　　　　　　　Reilly Stephens
　　　　　　　　　　　　　　　　　　　　　*Counsel of Record*
　　　　　　　　　　　　　　　　　　　　Duncan Crim
　　　　　　　　　　　　　　　　　　　　LIBERTY JUSTICE CENTER
　　　　　　　　　　　　　　　　　　　　7500 Rialto Blvd.
　　　　　　　　　　　　　　　　　　　　Suite 1-250
　　　　　　　　　　　　　　　　　　　　Austin, TX 78735
　　　　　　　　　　　　　　　　　　　　(512) 481-4400
　　　　　　　　　　　　　　　　　　　　rstephens@ljc.org
　　　　　　　　　　　　　　　　　　　　*Attorneys for Amicus Curiae*
　　　　　　　　　　　　　　　　　　　　*Liberty Justice Center*

## CERTIFIFCATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7) because the brief contains 1,786 words, excluding the parts of the brief exempt by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word Version 16.62 in 14-point Century Schoolbook font.

/s/Reilly Stephens
Attorney for amicus curiae Liberty Justice Center

Date: March 04, 2024

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system on December 18, 2024.

<u>/s/Reilly Stephens</u>
Attorney for amicus curiae Liberty Justice Center

Date: March 4, 2025