

March 17, 2025

Lyle W. Cayce, Clerk of Court
United States Court of Appeals for the Fifth Circuit
Via CM/ECF

Re: **March 2, 2025, Announcement,** *Texas Top Cop Shop, Inc., et al., v. Bondi, et al.*, **No. 24-40792**

Dear Mr. Cayce:

Pursuant to the Court's March 12, 2025, order, Appellees file this supplemental brief on the effect of the government's stated intent to not enforce the Corporate Transparency Act's regulatory deadlines. The new policy vitiates the government's claims that *immediate* enforcement of the CTA is necessary to prevent irreparable injury to itself or to ensure that the CTA works as an essential element of federal law combatting money laundering. That said, the new policy does not affect justiciability or the irreparable harms facing Appellees.

**I. Background**

On February 18, 2025, FinCEN announced that the CTA's "reporting requirements" "are once again back in effect" and set a reporting deadline of March 21, 2025. FIN-2025-CTA1, at 2. FinCEN also said that it "intends to initiate a process this year to revise the BOI reporting rule to reduce burden for lower-risk entities, including many U.S. small businesses." *Id.* at 1. Further, "FinCEN will provide an update before [March, 21st] of any further modification of this deadline, recognizing that reporting companies may need additional time to comply with their BOI reporting obligations once this update is provided." *Id.* The notice concluded by stating that "subject to any applicable court orders, *BOI reporting is now mandatory*." *Id.* at 2 (emphasis added).

On February 27, 2025, FinCEN "announced that it will not issue any fines or penalties or take any other enforcement actions against any companies based on any failure to file or update beneficial ownership information (BOI) reports pursuant to the Corporate Transparency Act by the current deadlines. No fines or penalties will be issued, and no enforcement actions will be taken, until a forthcoming interim final rule becomes effective and the new relevant due dates in the interim final rule have passed." FIN-2025-CTA2, at 1. The notice indicated FinCEN would issue an interim final rule



extending BOI reporting deadlines "[n]o later than March 21, 2025." *Id.* It also promised a second rulemaking "anticipated to be issued later this year," that would address existing reporting requirements, after a period of "public comment." *Id.*

On March 2, 2025, the U.S. Treasury Department issued a press release stating that "with respect to the Corporate Transparency Act, not only will it not enforce any penalties or fines associated with the beneficial ownership information reporting rule under the existing regulatory deadlines, but it will further not enforce any penalties or fines against U.S. citizens or domestic reporting companies or their beneficial owners after the forthcoming rule changes take effect either. The Treasury Department will further be issuing a proposed rulemaking that will narrow the scope of the rule to foreign reporting companies only." Press Release: *Treasury Department Announces Suspension of Enforcement of Corporate Transparency Act Against U.S. Citizens and Domestic Reporting Companies* (Mar. 2, 2025) https://home.treasury.gov/news/press-releases/sb0038. FinCEN provided no statement in response to Treasury's press release.

## II. The New Policy Proves That Delaying the CTA Does Not Harm Any Vital Government Interest

The new enforcement policy undermines the government's insistence that delaying the CTA's implementation would cause it irreparable harm. *See e.g.,* Gov. Br. at 39-41; *accord* Gov. Reply Br. at 13. Indeed, FinCEN's February 27th announcement that it would take no enforcement action "until a forthcoming interim final rule becomes effective and the new relevant due dates in the interim final rule have passed," proves otherwise. *See* FIN-2025-CTA2.

Relatedly, the government has defended the CTA as an essential part of a larger "regulatory scheme" targeting "harmful forms of economic activity." Gov. Br. at 13, 22. Specifically, it defends the CTA as within Congress' power "to regulate purely local activity as part of a broader regulatory scheme" targeting money laundering. *Id.* at 13. This pretense crumbles by the agency's own delay in enforcement, anticipated postponement of the compliance deadlines, and, if the agency press release is accurate, its eventual goal of exempting *all* domestic entities.

## III. This Case Continues to Present a Live Controversy

The "doctrine of mootness," not standing, "addresses whether an intervening circumstance has deprived the plaintiff of a personal stake in the outcome of the



lawsuit." *West Virginia v. EPA*, 597 U.S. 697, 719 (2022) (cleaned up). Mootness exists only where subsequent events eradicate standing *entirely*—A case becomes moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emp. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012). If "parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Ellis v. Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Exp. & Station Emps.*, 466 U.S. 435, 442 (1984).

"[T]he Government, not [the plaintiffs], bears the burden to establish that a once-live case has become moot." *West Virginia*, 597 U.S. at 719. "In general, a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice, even in cases in which injunctive relief is sought." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 328 (5th Cir. 2020) (citations omitted). "That general rule is not absolute, but '[v]oluntary cessation of challenged conduct' moots a case 'only if it is *absolutely* clear that the allegedly wrongful behavior could not be reasonably expected to recur.'" *Id.* (quoting *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000)).

Both the Supreme Court and this Court have routinely faced governmental efforts to alter a challenged policy during litigation and rejected suggestions of mootness. *See, e.g.*, *West Virginia*, 597 U.S. at 719 (rejecting "the Government's mootness argument," which "boils down to its representation that EPA has no intention of enforcing the Clean Power Plan prior to promulgating a new Section 111(d) rule"); *Tucker v. Gaddis*, 40 F.4th 289, 292-93 (5th Cir. 2022) (state agency "change in policy" during appeal failed to meet the "heavy burden" of proving mootness). When a government changes course, it "bears the 'heavy' burden of demonstrating mootness." *Tucker*, 40 F.4th at 292 (quoting *Pederson v. La. State Univ.*, 213 F.3d 858, 874 (5th Cir. 2000)). This Court has long recognized that a "case is not rendered moot simply because there is a possibility, or even a probability, that the outcome of a separate administrative proceeding may provide the litigant with similar relief." *Id.* (quoting *El Paso Elec. Co. v. FERC*, 667 F.2d 462, 467 (5th Cir. 1982)). Thus, a policy change won't moot a case if it either lacks "assurance that [the government] will *permanently* cease engaging in the very conduct that [a plaintiff] challenges" in his complaint, or if the change in policy doesn't provide *complete* relief. *Id.* at 292-93.

This case is not moot for three reasons.

**1.** *First,* **the Government has not made it "absolutely clear" it will never enforce the CTA.** The government has never yet claimed this case is moot, which is



significant because the inquiry turns heavily on the government's representations to the public. After all, changes in policy typically demand the government's "assurance[s]" of "permanent" and complete relief. *See Tucker*, 40 F.4th at 292-93. Treasury's March 2nd press release was issued before the government filed its reply, yet the government never asserted mootness. In fact, the government's reply insisted that any rule changes would *not affect* this Court's jurisdiction, arguing that its "efforts to implement the CTA in a calibrated way" as set out in the February 18th notice, "do not justify plaintiffs' request for an injunction stripping the government of authority to implement the statute at all." Gov. Br. at 2. And indeed, FinCEN's website continues to inform the public that "[b]eneficial ownership information reporting requirements are now back in effect, with a new deadline of March 21, 2025, for most companies." https://www.fincen.gov/ (last visited Mar. 17, 2025).

The assurances in the February 28th notice and March 2nd press release don't amount to much. Without formal action, the agency merely promises that it will "not enforce any penalties or fines associated with the beneficial ownership information reporting rule under the existing regulatory deadlines, but it will further not enforce any penalties or fines against U.S. citizens or domestic reporting companies or their beneficial owners after the forthcoming rule changes take effect either." *See* Press Release; FIN-2025-CTA2. Whatever form the "proposed rulemaking" might take, without any concrete timeline or details about its scope, the public has little to go on. *See id.* These statements are indistinguishable from the government's insufficient promise in *West Virginia v. EPA*, that it "ha[d] no intention of enforcing" a challenged rule "prior to promulgating a new … rule," because the government had not promised to "reimpose" such a rule in the future, and instead "vigorously defends the legality" of its challenged policy. *See* 597 U.S. 719. Here too, the government defends the *legality* of its policy. Its assurances of temporary enforcement restraint and future rulemaking does not moot this case.

**2.** *Second***, any rulemaking changes to the scope of BOI reporting will be far off.** The prospect of future regulatory changes does not moot this case. For starters, FinCEN *still* says that "[b]eneficial ownership information reporting requirements are *now back in effect*," so the plaintiffs' interests haven't changed. *See* FIN-2025-CTA1, at 2. Hinting at *future* relief or looking to the "possibility, or even a probability, that the outcome of a separate administrative proceeding may provide the litigant with similar relief," doesn't moot a case. *Tucker*, 40 F.4th at 292-93. The only *immediate* consequences for the plaintiffs are the subsequent promise of discretionary relief from "enforc[ing] any penalties or fines associated with the beneficial ownership information reporting



rule under the existing regulatory deadlines." *See* Press Release; FIN-2025-CTA2. That is not a statement that compliance is *optional*—just one that certain consequences will not be immediately applied. And FinCEN's ability to delay isn't complete or permanent anyway, since the agency *must* implement the statute in a finite time period, and issue formal rules accordingly. *See* 31 U.S.C. § 5336(b)(1)(B).

**3.** *Third*, **any rule changes would afford incomplete relief.** Even if the government limited the CTA to certain entities, this case would not be moot because that solves only some of the plaintiffs' problems. Mootness only arises "when it is *impossible* for a court to grant any effectual relief *whatever* to the prevailing party." *Knox*, 567 U.S. at 307 (emphasis added). Here, the plaintiffs have sought and been awarded injunctive relief that is broader than the scope of any anticipated rule changes. *See* Gov. Br. at 2. After all, the plaintiffs primarily challenged the *CTA* as unconstitutional, with FinCEN's rules merely effectuating the statute. *See, e.g.*, Plaintiffs' Compl., ¶ 163. A rule cannot address the statute's defects. Moreover, even if a new rule altered the compliance requirements or affected some of the plaintiffs that may have already complied, the government has maintained that "notwithstanding recent and forthcoming regulatory actions by the Treasury Department—that compliance would not moot this case, as the statute imposes continuing obligations." *See* Gov. Br. at 17. Relief from this Court remains not only *possible* but desperately needed.[1]

Respectfully,

*/s/ Caleb Kruckenberg*
**Caleb Kruckenberg**
**Christian Clase**
CENTER FOR INDIVIDUAL RIGHTS
Counsel for Appellees

---

[1] As a matter of fact, even if FinCEN were to immediately narrow the reporting requirement to "foreign entities only," it is likely that multiple plaintiffs would still be forced to comply. While appellate issues are rarely decided outside the record, mootness is, by definition, one such exception. *See West Virginia*, 597 U.S. at 719 (mootness arises from "intervening circumstances" after suit is filed); *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1331 n.6 (11th Cir. 2001) (jurisdictional questions must be assessed "regardless of the stage of the proceedings," and "facts outside of the pleadings may be considered as part of that determination").