

April 8, 2025

Lyle W. Cayce
United States Court of Appeals for the Fifth Circuit
Office of the Clerk
F. Edward Hebert Building
600 S. Maestri Place
New Orleans, LA 70130-3408
Via CM/ECF

**Re:** *Texas Top Cop Shop, Inc., et al., v. Bondi, et al.*, **No. 24-40792**

Dear Mr. Cayce:

Pursuant to the Court's March 24, 2025, order, Appellees file this supplemental brief on the impact of the government's Interim Final Rule (IFR), *Beneficial Ownership Information Reporting Requirement Revision and Deadline Extension*, 90 Fed. Reg. 13688 (Mar. 26, 2025).

As explained below, the government appropriately concedes that this case "is not moot" as a result of the IFR. It speculates that the case might become moot as to certain plaintiffs when a final rule is issued, but that renders the "interim" rule irrelevant to this appeal, which is solely to resolve the government's claim that the district court erred in determining that plaintiffs will likely prevail on their constitutional challenge and were *then* deserving of a preliminary injunction on December 3, 2024. Even assuming that ruling was made today, nothing has changed regarding the irreparable harm looming over the plaintiffs (besides a short reprieve on enforcement) while the government's claim of harm has been utterly negated by its own action.

I. **The New Policy Confirms That Court Intervention Won't Harm Any Vital Government Interests**

The most striking aspect of the IFR is how thoroughly it dismantles the government's past insistence that any delay in fully implanting the CTA would irreparably harm vital national interests, and thus the district court's supposed error in issuing an injunction.

Recall that the government filed an emergency application with the Supreme Court on December 31st, claiming that "the district court's injunction harms the government by prohibiting the enforcement of a statute that seeks to protect national security." *See* Stay Application at 27. The government noted that "in a declaration filed in the district court,

FinCEN's Director explained that the Act furnishes 'essential information to the intelligence and national security professionals who work to prevent terrorists and other illicit actors from raising, hiding, or moving money in the United States through anonymous shell or front companies.'" *Id.* at 26-27 (citations omitted). It went on to argue that "the collection of information about beneficial owners is crucial to identifying linkages between potential illicit actors and opaque business entities," and "a lack of uniform beneficial ownership information reporting requirements hinders the ability of law enforcement to swiftly investigate entities created and used to hide ownership for illicit purposes." *Id.* at 27. As evidence, the government relied on "specific examples" of past offenses that all involved "U.S. shell companies." *Id.*

Treasury now sees things quite differently. The IFR "exempt[s] domestic reporting companies and their beneficial owners from the reporting requirements imposed through the Reporting Rule," after the "Secretary … considered" the extent "that failure to require BOI reporting by domestic reporting companies could result in illicit finance risks." 90 Fed. Reg. at 13692. The Secretary also considered "the burdens such collection imposes on the public, and the public interest," and the "alternative sources of information to mitigate risks," before making his conclusion. 90 Fed. Reg. at 13692. But as the agency has calculated, the now-paused Reporting Rule applied to an estimated 36,581,506 existing domestic companies and 5,616,362 new companies annually thereafter. *See Beneficial Ownership Information Reporting Requirements*, 87 Fed. Reg. 59498, 59565 (Sept 2022). This number is for "both domestic and foreign entities," and only a tiny fraction of these involve foreign entities. *Id.* Indeed, "an overall estimate of 70,933 foreign entities operating in the United States [] may be subject to BOI reporting requirements," and "an estimate of 10,890 new foreign entities subject to the reporting companies per year after 2024." *Id.* In other words, the IFR concludes that because domestic entities pose such a small risk of illicit finance, it is necessary to exempt at least 99.8% of existing and newly-formed entities that the agency previously ordered to comply. *See id.*

## II. The *Interim* Relief Provided by the IFR Doesn't Moot this Case

The government has agreed that the IFR does not moot this case because it cannot provide *any* guarantees to *any* of the plaintiffs that they will not be forced to comply with the CTA after January 1, 2026. The agency's temporary reprieve merely provides an opportunity for this Court to intervene before such harm is yet again imminent.

"Voluntary cessation of challenged conduct moots a case only if it is *absolutely* clear that the allegedly wrongful behavior could not be reasonably expected to recur." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 328 (5th Cir. 2020) (cleaned up). Thus, formally repealing a challenged policy can sometimes moot a case, because this Court "assume[s] that

formally announced changes to official government policy are not mere litigation posturing." *U.S. Navy Seals 1-26 v. Biden*, 72 F.4th 666, 674 (5th Cir. 2023). The repeal must be "formal[]," however, such that the Court has assurances that the government won't "resum[e] the challenged conduct as soon as the courts were done." *Id.*; *see also Bell v. City of Boise*, 709 F.3d 890, 901 (9th Cir. 2013) ("Defendants have failed to establish with the clarity [necessary] that the new policy is the kind of permanent change that proves voluntary cessation," because it "could be easily abandoned or altered in the future.").

Furthermore, "[w]hen a challenged rule is replaced with a new rule, the case is moot so long as the change gives 'the precise relief that petitioners requested.'" *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 374 (5th Cir. 2022) (quoting *N.Y. State Rifle & Pistol Ass'n v. City of N.Y.*, 590 U.S. 336, 338-339 (2020)). To the extent that there is a mismatch between the relief sought and the change in policy, however, those aspects of a case remain live. In *Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville*, for example, the Supreme Court refused to dismiss an appeal as moot after a city had entirely repealed and replaced a challenged ordinance because the replacement ordinance disadvantaged plaintiffs only "to a lesser degree" than the original one. 508 U.S. 656, 662-63 (1993).

Thus, while "[i]t is true that a case can become moot if the defendant ceases the allegedly unlawful conduct—including when a challenged statute, executive order, local ordinance, or regulation expires or is repealed," even still "the burden rests with the defendant to demonstrate that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Franciscan Alliance*, 47 F.4th at 376.

The IFR does not moot this case, first, because it is explicitly short-lived. As an *interim* measure, the IFR took effect on March 26, 2025, and cannot extend past December 31, 2025. The IFR explains that the "CTA provides FinCEN discretion to extend the BOI reporting deadlines for most reporting companies until two years after the January 1, 2024, effective date of the Reporting Rule—as far out as January 1, 2026. The exemption for domestic reporting companies provided in this interim final rule therefore serves to suspend any reporting requirements within this statutorily authorized period while the rule is finalized during that period." 90 Fed. Reg. at 13693; *see also* 31 U.S.C. § 5336(b)(1)(B) ("any reporting company that has been formed or registered before the effective date of the regulations" FinCEN, "shall, in a timely manner, and not later than 2 years after the effective date of the regulations prescribed under this subsection, submit to FinCEN a report" containing BOI).

FinCEN has made no promises about what it will do after January 1st, however. At present, "FinCEN invites interested parties to submit comments on the issues raised in

this interim final rule within 60 days of its publication to the extent that public comment is needed to inform whether domestic reporting companies and U.S. persons who are beneficial owners of foreign reporting companies should be exempted from the BOI reporting requirements. Comments submitted in response to this interim final rule will be considered and addressed when a final rule, with changes if warranted, is issued." 90 Fed. Reg. at 13693.

Thus, the government has already represented to this Court that these "regulatory changes … do not render this case moot," because no one yet knows what rules will govern after January 1, 2026. *See* Gov. Supp. Br. at 3; *accord* Gov. Supplemental Authority Letter, at 2, *Firestone, et al. v. Bessent, et al.*, No. 24-6979 (9th Cir.) ("Depending on the content of the final rule adopted later this year, the case may also become moot.").

Meanwhile, as this Court is all too aware, given the extraordinary interests involved and staggering breadth of the CTA, it is perhaps doubtful that review of the district court's injunction could be completed by then. Not only must this Court decide the issues involved, but its decision must be automatically stayed to give the government up to 60 days to seek further review. *See McHenry v. Texas Top Cop Shop, Incorporated, et al.*, No. 24A653, at 1 (2025).

This means that Plaintiffs face virtually the same looming threat of irreparable burdens absent the injunction that they did when the district court issued its injunction in December. *See* Appellees' Br. at 10-11. Then, of course, the plaintiffs were less than a month away from the compliance deadline, but they had sought the preliminary injunction approximately six months earlier. Today, fewer than eight months before the statutory cutoff for the IFR's postponement, Plaintiffs have no protection against whatever is coming next. Yet the burdens of compliance, including the extraordinarily complex legal burdens involved with simply *keeping up* with the rules (not to mention following them), impact the plaintiffs long before they are forced to file anything. *See id.*

There is a "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). And this concept is reflected in the Court's historical recognition that when a "case involves governmental action, we must ponder the broader consideration whether the short-term nature of that action makes the issues presented here 'capable of repetition, yet evading review,' so that petitioners are adversely affected by government 'without a chance of redress.'" *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974) (quoting *Southern Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911)). In such cases, an individual plaintiff's remedy "is not the most important object of this

litigation." *Southern Pacific*, 219 U.S. at 515. Thus, a federal court *should* promptly decide cases to decide the lawfulness of challenged policy's "continuing and brooding presence, [which] casts what may well be a substantial adverse effect on the interests of the petitioning parties," before such cases have an opportunity to become moot. *See Super Tire Eng'g Co.*, 416 U.S. at 122.

Nor may this Court speculate about what may (or may not) be likely to occur next. The government must prove "it is absolutely clear" that none of the plaintiffs will be forced to comply with the CTA when the forthcoming final rule is issued. *See Franciscan Alliance, Inc.*, 47 F.4th at 376. As that decision hasn't been made yet, nothing is clear. *See, e.g.*, *West Virginia v. EPA*, 597 U.S. 697, 719 (2022) (rejecting "the Government's mootness argument," which "boils down to its representation that EPA has no intention of enforcing the Clean Power Plan prior to promulgating a new Section 111(d) rule"); *Tucker v. Gaddis*, 40 F.4th 289, 292-93 (5th Cir. 2022) (state agency "change in policy" during appeal failed to meet the "heavy burden" of proving mootness).

Finally, as the government has also recognized, the rules *implementing* the CTA are only one aspect of the larger legal challenge to the CTA. *See* Gov. Supp. Br. ("In any event, the district court's relief extends beyond plaintiffs and to foreign companies, and thus would continue to have effect even if a narrowing of the reporting rule were made permanent."). The agency's temporary narrowing of the CTA's reach says nothing about Plaintiffs' larger constitutional challenge, nor their First and Fourth Amendment challenges to FinCEN's data collection.[1]

                                            Respectfully,

                                            */s/ Caleb Kruckenberg*
                                            **Caleb Kruckenberg**
                                            CENTER FOR INDIVIDUAL RIGHTS
                                            1100 Conn. Ave. N.W., Suite 625
                                            Washington, D.C., 20036

---

[1] If one or more aspect of this case were to eventually become moot, this would not mean that any aspect of the district court's opinion should then be subject to vacatur. *See Franciscan All., Inc.*, 47 F.4th at 375-376 (declining to vacate now-moot district court injunction of vacated rule). "Permitting important agency rules to flicker in and out of existence is detrimental to the rule of law," and so government litigants in such circumstances are not necessarily "entitled to the equitable remedy of vacatur." *Id.*