**No. 24-40792**

**IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT**

TEXAS TOP COP SHOP, INCORPORATED; RUSSELL STRAAYER; MUSTARDSEED LIVESTOCK, L.L.C.; LIBERTARIAN PARTY OF MISSISSIPPI; NATIONAL FEDERATION OF INDEPENDENT BUSINESS, INCORPORATED; DATA COMM FOR BUSINESS, INCORPORATED,

*Plaintiffs-Appellees*,

v.

TODD WALLACE BLANCHE, U.S. ATTORNEY GENERAL; TREASURY DEPARTMENT; DIRECTOR FINCEN ANDREA GACKI, DIRECTOR OF THE FINANCIAL CRIMES ENFORCEMENT NETWORK; FINANCIAL CRIMES ENFORCEMENT NETWORK; SCOTT BESSENT, SECRETARY, U.S. DEPARTMENT OF TREASURY,

*Defendants-Appellants*.

# DEFENDANTS-APPELLANTS' OPPOSED MOTION TO VACATE THE DISTICT COURT'S PRELIMINARY INJUNCTION AND REMAND

BRETT A. SHUMATE
*Assistant Attorney General*

DANIEL TENNY
STEVEN H. HAZEL
MAXWELL BALDI
SOPHIA SHAMS
*Attorneys, Appellate Staff*
*Civil Division, Room 7213*
*U.S. Department of Justice*
*950 Pennsylvania Ave., NW*
*Washington, DC 20530*
*202-514-2495*
*sophia.shams@usdoj.gov*

# TABLE OF CONTENTS

INTRODUCTION .......... 1

STATEMENT .......... 2

ARGUMENT .......... 8

I. In Light Of The Final Rule, Plaintiffs' Underlying Claims Are Moot .......... 8

II. The Preliminary Injunction Should Be Vacated .......... 13

CONCLUSION .......... 17

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

ADDENDUM

## INTRODUCTION

This case arises from a challenge to the Corporate Transparency Act (CTA), which imposes certain reporting obligations on domestic and foreign corporations, and its implementing rule. Plaintiffs challenged both the statute and the rule on the basis that the statute was unconstitutional in its application to domestic entities such as plaintiffs. The district court issued a universal preliminary injunction on that basis, and the government appealed.

After briefing in the case was completed but prior to the scheduled oral argument in the case, the Department of the Treasury (Treasury) issued an Interim Final Rule exempting all domestic entities, including plaintiffs, from the CTA's reporting requirements. The case was accordingly placed in abeyance pending final rulemaking. On August 14, 2026, Treasury issued a Final Rule largely adopting the Interim Final Rule and relieving plaintiffs of the reporting obligations from which they originally sought relief in district court.

In light of the Final Rule, the government seeks vacatur of the district court's universal preliminary injunction and remand of the case. Because plaintiffs are no longer subject to the reporting obligations from which they originally sought a preliminary injunction, plaintiffs' claims are moot. While plaintiffs' underlying claims are moot, the government still requires relief from the district court's universal preliminary injunction, which extends beyond the parties in this case and enjoins the government from effectuating the CTA in any respect. Vacatur is thus warranted, as

plaintiffs no longer have standing to seek any relief but the injunction, if left in place, will continue to have legal consequences on the government and public at large. Moreover, that the universal nature of the preliminary injunction violates traditional principles of equity and the Supreme Court's decision in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), independently warrants vacatur.

The government has contacted counsel for plaintiffs in this case, and counsel has represented that plaintiffs oppose this motion.

## STATEMENT

1. In January 2021, Congress enacted the CTA, Pub. L. No. 116-283, div. F, tit. LXIV, 134 Stat. 4604, as part of a broader regulatory scheme for "moderniz[ing]" federal "anti-money laundering and countering the financing of terrorism laws." Anti-Money Laundering Act of 2020, Pub. L. No. 116-283, div. F, § 6002(2), 134 Stat. 4547, 4547 (2021). The CTA requires certain companies to report "beneficial ownership information"—roughly, the identities of the individuals who own or control the company—to FinCEN. The Act imposes this disclosure requirement on "reporting compan[ies]," 31 U.S.C. § 5336(b)(1)(A), which generally include any "corporation, limited liability company, or other similar entity that is" either "created by the filing of a document with a secretary of state or a similar office under the law of a State or Indian Tribe," or "formed under the law of a foreign country and registered to do business in the United States by the filing of a document with a secretary of state or a similar office under the laws of a State or Indian Tribe," *id.*

§ 5336(a)(11)(A). The CTA excludes from that general definition, however, specified categories of businesses, and allows the government to exempt any other "entity or class of entities" for which "requiring beneficial ownership information" would not "serve the public interest" and "would not be highly useful" in "efforts to detect, prevent, or prosecute money laundering, the financing of terrorism, ... or other crimes." *Id.* § 5336(a)(11)(B)(xxiv). The CTA directs FinCEN to implement certain aspects of the statute by regulation, *see id.* § 5336(b)(5), and FinCEN accordingly issued a final rule in September 2022 implementing the CTA's reporting requirements, *see Beneficial Ownership Information Reporting Requirements*, 87 Fed. Reg. 59498 (Sep. 30, 2022) (codified at 31 C.F.R. § 1010.380), as amended by *Beneficial Ownership Information Reporting Deadline Extension for Reporting Companies Created or Registered in 2024*, 88 Fed. Reg. 83499 (Nov. 30, 2023).

2. Plaintiffs are five corporations that were subject to the CTA's reporting requirements and original implementing regulation, as well as one organization, the National Federation of Independent Business (NFIB), that is suing on behalf of its member corporations. ROA.14-15. Relevant here, plaintiffs argued that the CTA exceeds Congress's enumerated powers and requested a preliminary injunction "preventing the government from enforcing the CTA and its implementing regulation." ROA.90. The district court granted plaintiffs' motion for a preliminary injunction and issued a nationwide injunction. Specifically, the court ordered that "the CTA, 31 U.S.C. § 5336 is hereby enjoined" and that "[e]nforcement of the

Reporting Rule, 31 C.F.R. 1010.380 is also hereby enjoined." ROA.525. The court further stayed the January 1, 2025, compliance deadline under § 705 of the Administrative Procedure Act. ROA.525.

The government appealed and sought a stay pending appeal, which a motions panel of this Court granted on December 23, 2024. *Texas Top Cop Shop, Inc. v. Garland*, No. 24-40792, 2024 WL 5203138, at *3 (5th Cir. Dec. 23, 2024) (per curiam). Shortly after the plaintiffs sought rehearing en banc, the merits panel vacated the stay order and expedited the case. *Texas Top Cop Shop, Inc. v. Garland*, No. 24-40792, 2024 WL 5224138, at *1 (5th Cir. Dec. 26, 2024). The government then applied to the Supreme Court for a stay of the preliminary injunction. Application for Stay at 1, 36-38, *McHenry v. Texas Top Cop Shop, Inc.*, No. 24A653 (U.S. Dec. 31, 2024). The Supreme Court stayed the district court's order in its entirety pending the disposition of this appeal and of any petition for writ of certiorari filed in this case. *McHenry v. Texas Top Cop Shop, Inc.*, 145 S. Ct. 1 (2025).[1]

---

[1] Another substantively identical case is also pending before this Court. *Smith v. U.S. Dep't of Treasury*, No. 25-40071 (5th Cir. filed Feb. 13, 2025). There, the district court similarly issued a preliminary injunction enjoining the government from enforcing the CTA and staying the effective date of the reporting rule. The government appealed the preliminary injunction and, in light of the Supreme Court's order in *Texas Top Cop Shop*, the district court stayed its preliminary injunction pending disposition of the appeal. As in this case, the government is moving to vacate the preliminary injunction in *Smith*.

The case then proceeded to merits briefing, which concluded on March 7, 2025. The Court scheduled oral argument in the case for April 1, 2025. Dkt. Entry (Feb. 11, 2025).

3. On March 26, 2025, following the end of briefing but prior to oral argument in this case, Treasury engaged "in a reassessment of the balance struck by the Reporting Rule." *See Beneficial Ownership Information Reporting Requirement Revision and Deadline Extension*, 90 Fed. Reg. 13,688, 13,691 (Mar. 26, 2025) (Interim Final Rule). In particular, Treasury "reassessed the balance between the usefulness of collecting [beneficial ownership information] and the regulatory burdens imposed by the scope of the Reporting Rule." *Id*.

In light of that reassessment, FinCEN published the Interim Final Rule which, pursuant to FinCEN's statutory authority to exempt "class[es] of entities" from the reporting requirements, 31 U.S.C. § 5336(a)(11)(B)(xxiv), exempted "all domestic reporting companies, and their beneficial owners," 90 Fed. Reg. at 13690. At the same time, the Interim Final Rule recognized that foreign reporting companies "present heightened national security and illicit finance risks" and required those companies to continue "to report their [beneficial ownership information], except with respect to U.S. person beneficial owners." *Id*. at 13692. FinCEN announced it that was "accepting comments on this interim final rule," would "assess the exemptions, as appropriate, in light of those comments," and "intend[ed] to issue a final rule" later that year. *Id*. at 13690.

Following the issuance of the Interim Final Rule, the Court postponed argument in this case, noting that the case would be rescheduled for a later, unspecified date. Letter from Lyle W. Cayce, Clerk, U.S. Court of Appeals for the Fifth Circuit, to Counsel (Mar. 22, 2025). Two days later, the Court issued a directive requesting supplemental letter briefs addressing the impact of the Interim Final Rule on the appeal, Minute Order (Mar. 24, 2025), which the parties submitted on April 8, 2025, Appellants' Suppl. Br.; Appellees' Suppl. Br. The parties agreed that the issuance of the Interim Final Rule did not itself render the case moot, Appellants' Suppl. Br. 3; Appellees' Suppl. Br 1. The government further explained in its supplemental letter brief that if, upon reviewing comments and assessing the relevant exemptions, Treasury issues a "final rule exempting domestic companies from the reporting requirements, any requests for relief by those companies would likely be moot." Appellants' Suppl. Br. 3. The government's appeal, however, would not necessarily be moot "because the district court's preliminary injunction extends beyond plaintiffs to foreign companies and thus would continue to have effect even if the narrowing of the reporting rule is reaffirmed by the final rule." *Id.*

On August 5, 2025, this Court issued an order holding the government's appeal in abeyance pending issuance of a final rule. The Court explained that while the Interim Final Rule did not render the appeal moot, "formally issuing a final rule could well moot this appeal" if the government chooses "to permanently withdraw the challenged portions of the implementing rule." Order 2-3.

4. On August 14, 2026, FinCEN issued a Final Rule largely adopting the Interim Final Rule issued on March 26, 2025, and amending the reporting requirements. *Beneficial Ownership Information Reporting Requirement Revision*, 91 Fed. Reg. 52,508, 52,511, 52,516 (Aug. 14, 2026) (Final Rule). Like the Interim Final Rule, the Final Rule "exempt[s] domestic reporting companies from any [beneficial ownership information] reporting requirements." *Id.* at 52,511. And like the Interim Final Rule, the Final Rule exempts reporting companies from "having to report the [beneficial ownership information] of any U.S. person who is a beneficial owner" as well as "U.S. persons from having to provide such information to a reporting company for which the U.S. person is a beneficial owner." *Id.* The Final Rule further "expands" these exemptions "to include not only U.S. person beneficial owners but also U.S. person company applicants." *Id.* In response to comments on the Interim Final Rule, the Final Rule "eliminate[s] the requirement for any U.S. person to update or correct information that the U.S. person provided in order to obtain a FinCEN ID, whether as beneficial owner or company applicant," *id.*, and FinCEN also announced that it "intends to implement a process to remove" from its database "[beneficial ownership information] of U.S. companies and U.S. persons who are now exempt from the Reporting Rule by virtue of the [Interim Final Rule] and this final rule." *Id.* at 52518.

## ARGUMENT

### A. In Light Of The Final Rule, Plaintiffs' Underlying Claims Are Likely Moot

1. As the Supreme Court has recognized, a case becomes moot when it "no longer present[s] a case or controversy under Article III, § 2, of the Constitution." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate." *Id.* (quotation marks omitted). Because the mootness doctrine "ensures federal courts are only deciding live cases or controversies," *Spell v. Edwards*, 962 F.3d 175, 178-79 (5th Cir. 2020), "[i]f a dispute ceases mid-litigation, so does [the Court's] jurisdiction," *U.S. Navy SEALs 1-26 v. Biden*, 72 F.4th 666, 672 (5th Cir. 2023).

As relevant here, a case is moot where the "the parties lack a legally cognizable interest in [its] outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quotation marks omitted). That is true if an intervening event "makes it impossible for the court to grant any effectual relief whatever to a prevailing party." *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992) (quotation marks omitted). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Already*, 568 U.S. at 91 (quotation marks omitted).

Applying the above principles, plaintiffs' underlying claims are moot. As explained, *see supra* p. 3, plaintiffs filed suit challenging the original reporting rule, which did not exempt domestic entities from the CTA's reporting obligations. It was on that premise that plaintiffs sought, and the district court granted, a preliminary injunction, which is forward-looking relief designed to address an ongoing injury. But the newly issued Final Rule, which exempts domestic entities and U.S. beneficial owners and applicants from the CTA's reporting requirements, absolves plaintiffs of their asserted injuries (the requirement to report beneficial ownership information to the government). There is thus no longer a live controversy warranting the district court's preliminary injunction.

That plaintiffs' claims no longer present a live controversy is exemplified by plaintiffs' own complaint and the district court's opinion. The three named company-plaintiffs in the operative complaint are all domestic entities and thus exempt from the CTA's reporting requirements under the Final Rule. *See* ROA.14. The named individual plaintiff "resid[es]" in Texas and is thus likewise exempt from the CTA's reporting requirements. ROA.14. And while the Libertarian Party of Mississippi and the NFIB are organization-plaintiffs in this case, the complaint lacks any allegations suggesting that any member of either of the groups would be subject to the CTA's reporting requirements under the Final Rule. *See* ROA.14. Put simply, plaintiffs' complaint fails to establish that any of the plaintiffs are subject to the CTA's reporting requirements and thus require injunctive relief. Given the complete

absence of evidence, or even allegations, that plaintiffs remain subject to the statutory or regulatory requirements of which they complain, plaintiffs no longer have a "legally cognizable interest in the outcome" of this case. *Already*, 568 U.S. at 91 (quotation marks omitted).

Counsel for plaintiffs has suggested to the government that some plaintiffs may have ongoing reporting obligations under the narrowed rule. But there is nothing in the record to demonstrate as much, and there has been no litigation on that theory. To the contrary, the district court's preliminary injunction is premised on the court's understanding that the CTA's reporting requirements would apply to domestic entities; the court did not analyze whether plaintiffs would be entitled to such an injunction based on the statute's application to only foreign entities. *See, e.g.*, ROA.498, 505-08.

There is no basis for this Court to address, in the first instance, whether plaintiffs would be able to amend their complaint to cure the jurisdictional defect in their existing complaint, and whether that complaint, as amended, would allow for injunctive relief against the government. Those matters, instead, can be resolved by the district court in the first instance should plaintiffs seek to continue to proceed with this case despite the elimination of the reporting requirements of every entity that has been identified to date. *See New York State Rifle & Pistol Ass'n v. City of New York*, 590 U.S. 336, 339 (2020) (per curiam) (explaining that "in instances where the mootness is attributable to a change in the legal framework governing the

case, and where the plaintiff may have some residual claim under the new framework that was understandably not asserted previously, [the Supreme Court's] practice is to vacate the judgment and remand for further proceedings in which the parties may, if necessary, amend their pleadings or develop the record more fully" (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 482 (1990))).

2. None of the exceptions to the mootness doctrine apply here. As this Court has explained, a court may continue exercising jurisdiction over a case even when the challenged conduct has ceased where (1) the defendant's voluntary cessation of challenged conduct may not moot a case, or (2) the dispute at issue may be "capable of repetition yet evading review." *U.S. Navy SEALs*, 72 F.4th at 673. Neither of these exceptions is implicated here.

i. Under the voluntary-cessation doctrine, a court will "evaluate[] the risk that a defendant is engaging in 'litigation posturing' to avoid judicial review." *U.S. Navy SEALs*, 72 F.4th at 673. While it "must be absolutely clear that the defendant's challenged conduct could not reasonably be expected to recur to divest [the Court] of jurisdiction," the government bears a notably "lighter burden in proving that the challenged conduct will not recur once the suit is dismissed as moot" as courts generally "presume that state actors, as public representatives, act in good faith." *Id.* at 673-74 (alteration adopted and quotation marks omitted). Thus, absent contrary evidence, this Court "assume[s] that formally announced changes to official

government policy are not mere litigation posturing" and thus do not implicate the voluntary-cessation exception. *Id.* at 674 (quotation marks omitted).

FinCEN's issuance of the Final Rule in no way warrants application of the voluntary-cessation exception. As the agency has explained, the Final Rule was promulgated in part due to the change in priorities following the change in administration and the agency's "reassessment of the balance struck in the original Reporting Rule between collecting information that is 'highly useful' for law enforcement and minimizing burdens on reporting companies." 91 Fed. Reg. at 52513. And the very notion that a rule issued after notice and comment constitutes mere "litigation posturing," *U.S. Navy SEALs*, 72 F.4th at 674 (quotation marks omitted), is extraordinary.

ii. Nor is this dispute subject to the exception from mootness for cases that are capable of repetition yet evading review. That doctrine applies only in exceptional circumstances where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *U.S. Navy SEALs*, 72 F.4th at 675 (alterations and quotation marks omitted).

Neither of these conditions are met here. First, there is no reasonable expectation that plaintiffs will be subject to the same challenged action again. FinCEN has issued a Final Rule, through which the agency underwent more than a year of rulemaking, including notice and comment. Second, and in any event, there

is nothing to suggest that the nature of the challenged action is too short in duration to be fully litigated prior to cessation or expiration. The CTA imposes ongoing reporting obligations on covered entities. There would thus be plenty of time for plaintiffs to challenge a later rule should the agency change in its assessment of the exemptions to the CTA in the future.

### B. The Preliminary Injunction Should Be Vacated And The Case Remanded

Although plaintiffs' underlying claims are now moot, the government's appeal is not moot as the government is still harmed by the preliminary injunction. That is because the preliminary injunction goes beyond the plaintiffs and their particular claims. The district court enjoined not only the reporting rule but also the CTA itself. And the court did so not only as to the parties in this case but on a nationwide basis. Thus, rather than dismiss the appeal, which remains live as the government continues to face harm from the overbroad preliminary injunction, this Court should vacate the preliminary injunction and remand the case.

Equitable principles compel vacatur. For one, the preliminary injunction is overbroad, extending beyond the parties and specific facts of this case. And there is no need for such injunctive relief now that the Final Rule has absolved plaintiffs of their asserted injury by exempting them, along with all domestic corporations, from the CTA's reporting requirements. Moreover, the universal preliminary injunction violates the Supreme Court's recent decision in *Trump v. CASA, Inc.*, 606 U.S. 831

(2025), which independently warrants vacatur. The preliminary injunction should accordingly be vacated, and the case should be remanded for the district court to assess in the first instance whether any of plaintiffs' claims remain justiciable and, if so, whether any relief remains warranted.

1. As the Supreme Court has explained, it is "established practice" to vacate a judgment where "[n]o live dispute remains between the parties." *United States v. Microsoft Corp.*, 584 U.S. 236, 240 (2018) (per curiam); *see also United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950). This practice serves "to prevent an unreviewable decision from spawning any legal consequences, so that no party is harmed by … a 'preliminary' adjudication." *Camreta v. Greene*, 563 U.S. 692, 713 (2011) (quotation marks omitted). The doctrine is "flexible," *Alvarez v. Smith*, 558 U.S. 87, 94 (2009), and allows a court to select the outcome "most consonant to justice" in light of the specific facts of a given case, *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 24 (1994) (quotation marks omitted). Thus, this Court has instructed courts to "look at the equities of the individual case" when considering vacatur. *See Staley v. Harris County*, 485 F.3d 305, 312 (5th Cir. 2007) (en banc).

Courts of appeals have accordingly vacated district court preliminary injunctions where the underlying claims have become moot and there is thus no ongoing injury to the plaintiff justifying a preliminary injunction. The Seventh Circuit, for example, recently vacated a district court preliminary injunction and

dismissed an appeal where the plaintiffs had "sought forward-looking injunctive relief, rather than damages for past harms," and intervening events rendered plaintiffs' claims moot and thus "no case or controversy remained for the district court to resolve." *Chicago Headline Club v. Noem*, 168 F.4th 1033, 1039 (7th Cir. 2026) (per curiam). And the Supreme Court has likewise vacated a court of appeals' judgment and remanded the case with instructions to direct the district court to vacate as moot its preliminary injunction where the government had ended the challenged policy. *Mayorkas v. Innovation L. Lab*, 141 S. Ct. 2842 (2021); *see also Trump v. International Refugee Assistance*, 583 U.S. 912 (2017) (describing the Court's "established practice" where the "appeal no longer presents a live case or controversy" as vacating the judgment and remanding the case to the court of appeals (quotation marks omitted)). And as relevant here, this Court has recognized that vacatur where the claims have become moot on appeal is appropriate where "the district court judgment had a greater effect on non-parties to the litigation." *Staley*, 485 F.3d at 312-13 (collecting cases); *see also Chicago Headline Club*, 168 F.4th at 1040 (vacating the district court's "overbroad, constitutionally suspect injunction" where the underlying claims had come moot).

Here, equitable considerations warrant vacatur of the preliminary injunction. As noted, the injunction continues to affect the government's ability to enforce an Act of Congress. On the other side of the ledger, the preliminary injunction is no longer warranted given that plaintiffs are no longer subject to the CTA's reporting

requirements. Where there is no longer a basis for affirming the preliminary injunction, and the injunction continues to harm the government and public interest, vacatur is warranted.

Vacatur is especially appropriate considering the nature of preliminary injunctions. "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *University of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). There is no need for such preservation where, as here, the party seeking such an injunction has received complete relief and allowing the injunction to remain in place would spawn adverse "legal consequences." *Camreta*, 563 U.S. at 713 (quotation marks omitted).

2. That the district court's preliminary injunction is overbroad and violates traditional principles of equity further compels vacatur. In *CASA*, the Supreme Court stayed three universal preliminary injunctions on the basis that such injunctions likely "fall[] outside the bounds of a federal court's equitable authority under the Judiciary Act." 606 U.S. at 847. Instead, the Court recognized that equitable relief should be fashioned to provide "complete relief" to the parties before it. *Id.* at 851-52; *see also Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) ("[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs."). In light of *CASA*, courts of appeals have vacated universal injunctions to the extent they afford relief to nonparties on the basis that such injunctions exceed the judiciary's equitable authority. *See, e.g.*, *Scott v. City of Daytona Beach*, --- F.4th

----, 2026 WL 1830927, at *18 (11th Cir. June 25, 2026); *Talbott v. United States*, 176 F.4th 720, 750 (D.C. Cir. 2026); *Los Angeles Press Club v. Noem*, 171 F.4th 1179, 1191-92 (9th Cir. 2026).

The district court's preliminary injunction violates the Supreme Court's holding in *CASA* and thus can be vacated on that ground alone. As explained, *see supra* pp. 3-4, 13, the district court purported to enjoin the CTA itself. The court did not limit its injunction to the parties in the case; instead, the court "determine[d] that the injunction should apply nationwide." ROA.523. In so doing, the Court violated its equitable authority, as recognized by the Supreme Court's decision in *CASA*. Because the district court lacked authority to issue such broad relief, the preliminary injunction should be vacated.

## CONCLUSION

For the foregoing reasons, the preliminary injunction should be vacated and the case remanded.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

DANIEL TENNY
STEVEN H. HAZEL
MAXWELL BALDI

/s/ *Sophia Shams*
SOPHIA SHAMS
*Attorneys, Appellate Staff*
*Civil Division, Room 7213*
*U.S. Department of Justice*

*950 Pennsylvania Ave., NW*
*Washington, DC 20530*
*202-514-2495*
*sophia.shams@usdoj.gov*

SEPTEMBER 2026

## CERTIFICATE OF SERVICE

I hereby certify that, on September 4, 2026, I electronically filed the foregoing motion with the Clerk of the Court by using the appellate CM/ECF system. I further certify that the participants in the case are CM/ECF users and that service will be accomplished by using the appellate CM/ECF system.

*/s/ Sophia Shams*
Sophia Shams
Counsel for Appellants

## 27(d) CERTIFICATE OF COMPLIANCE

I hereby certify that this motion complies with the requirements of Federal Rule of Appellate Procedure 27(d) because it has been prepared in 14-point Times New Roman, a proportionally spaced font. I further certify that this motion complies with the type- volume limitation of Federal Rule of Appellate Procedure 27(d)(2) because it contains 4,135 words according to the count of Microsoft Word.

*/s/ Sophia Shams*
Sophia Shams
Counsel for Appellants