**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 24-40792

TEXAS TOP COP SHOP, INC., *ET AL.*,

PLAINTIFFS-APPELLEES,

V.

TODD BLANCHE, ATTORNEY GENERAL OF THE UNITED STATES, *ET AL.*,

DEFENDANTS-APPELLANTS.

---

# PLAINTIFFS-APPELLEES' RESPONSE IN OPPOSITION TO DEFENDANTS-APPELLANTS' MOTION TO VACATE THE DISTRICT COURT OPINION AND REMAND

ON INTERLOCUTORY APPEAL FROM
THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
4:24-CV-478
HON. AMOS L. MAZZANT

September 28, 2026

CALEB KRUCKENBERG
TODD F. GAZIANO
Center for Individual Rights
1100 Conn. Ave. N.W., Suite 625
Washington D.C. 20036

ANDREW M. GROSSMAN
KRISTIN A. SHAPIRO
Baker Hostetler
Washington Square, 1050 Conn. Ave. N.W., Suite 1100
Washington D.C. 20036

Counsel for Plaintiffs-Appellees

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

**Plaintiffs-Appellees and Counsel:**

Texas Top Cop Shop, Inc.,
Russell Straayer
Mustardseed Livestock, LLC,
Libertarian Party of Mississippi
National Federation of Independent Business, Inc.,
Data Comm for Business, Inc.
Elizabeth Milito

Caleb Kruckenberg
Todd Gaziano
Christian Clase
Center for Individual Rights
1100 Connecticut Avenue, NW Suite 625
Washington, D.C. 20036

Andrew Grossman
Kristin Shapiro
Baker Hostetler
1050 Connecticut Ave, NW Suite 1100
Washington, D.C. 20036

John Clay Sullivan
S|L Law PLLC

610 Uptown Boulevard, Suite 2000
Cedar Hil, TX 75104

**Defendants-Appellants and Counsel**

United States Department of Treasury
Financial Crimes Enforcement Network
Pamela Bondi, United States Attorney General
David Lebryk, Acting Secretary of Treasury
Scott Bessent, United States Secretary of Trasury
Janet Yellen, United States Secretary of Treasury
Andrea Gacki, Director of Financial Crimes Enforcement Network
James R. McHenry III, Acting U.S. Attorney General
Merrick Garland, United States Attorney General

Faith Lowry
Stuart Robinson
Daniel Bentele Hahs Tenny
Steven H. Hazel
Sophia Shams
Steven Andrew Myers
Daniel Bentele Hahs Tenny
Maxwell A. Baldi
Brett A. Shumate

U.S. Department of Justice
950 Penn. Ave., N.W.
Washington D.C. 20530

***Amici* and Counsel**

**The State of Texas**
Christina Cella
Office of the Texas Attorney General
300 W. 15th Street, Sixth Floor
Austin, TX 78701

**Eagle Forum Education and Legal Defense Fund**

Andrew L. Schlafly
Attorney at Law
939 Old Chester Road
Far Hills, New Jersey 07931

**Private Investor Coalition, Incorporated**
John C. Neiman, Jr., Esq.
Direct: 205-254-1000
Email: jneiman@maynardnexsen.com
Fax: 205-254-1999
Maynard Nexsen, P.C., Suite 1700
1901 6th Avenue, N.
Birmingham, AL 35203

**Community Associations Institute**
Gregg Sandler Weinberg
Direct: 713-840-1666
Email: gweinberg@rmwbh.com
Roberts Markel Weinberg Butler Hailey, P.C.
57th Floor
2800 Post Oak Boulevard
Houston, TX 77056

**Competitive Enterprise Institute**
Charles Devin Watkins
Direct: 503-753-8104
Email: devin.watkins@cei.org
Competitive Enterprise Institute
7th Floor
1310 L Street, N.W.
Washington, DC 20005

**The Buckeye Institute**
Robert Alt
Direct: 614-224-4422
Email: robert@buckeyeinstitute.org
Buckeye Institute
Suite 1300

88 E. Broad Street
Columbus, OH 43215

**Americans for Prosperity Foundation**
Michael David Pepson
Direct: 571-329-4529
Email: mpepson@afphq.org]
Americans for Prosperity Foundation, Suite 1000
4201 Wilson Boulevard
Arlington, VA 22203

**S Corporation Association**
John C. Neiman, Jr., Esq.
Direct: 205-254-1000
(see above)

**Thomas Zawistowski**
Walter M. Weber
Direct: 202-546-8890
Email: wmweber@aclj-dc.org
Fax: 202-544-5172
American Center for Law & Justice
201 Maryland Avenue, N.E.
Washington, DC 20002-5703

**National Association of Wholesaler-Distributors**
Grady Block
Direct: 303-292-2021
Email: gblock@mslegal.org
Fax: 877-349-7074
Mountain States Legal Foundation
2596 S. Lewis Way
Lakewood, CO 80227

**The Small Business Association of Michigan**
Stephen J. Van Stempvoort
Direct: 616-831-1700
Email: vanstempvoorts@millerjohnson.com

Miller Johnson
Suite 1100
45 Ottawa Avenue, S.W.
Grand Rapids, MI 49503

**Pacific Legal Foundation**
Joshua Martin Robbins
Direct: 202-945-9524
Email: jrobbins@pacificlegal.org
Pacific Legal Foundation, Suite 1000
3100 Clarendon Boulevard
Arlington, VA 22201

**We the People Convention**
Walter M. Weber
Direct: 202-546-8890
(see above)

**Job Creators Network Foundation**
Grady Block
Direct: 303-292-2021
(see above)

**Chaldean American Chamber of Commerce**
Stephen J. Van Stempvoort
Direct: 616-831-1700
(see above)

**Hamilton Lincoln Law Institute**
Neville S. Hedley
Direct: 312-342-6008
Email: ned.hedley@hlli.org
Hamilton Lincoln Law Institute, Suite 300
1629 K Street, N.W.
Washington, DC 20006

**Liberty Justice Center**
Reilly Stephens

Direct: 512-481-4400
Email: rstephens@ljc.org
Liberty Justice Center
Suite 1-250
7500 Rialto Boulevard
Austin, TX 78735

**New Civil Liberties Alliance**
Sheng Tao Li
Direct: 202-869-5210
Email: sheng.li@ncla.legal
New Civil Liberties Alliance
Suite 300
4250 N. Fairfax Drive
Ballston, VA 22203

**Advancing American Freedom**
John Marc Wheat, General Counsel
Direct: 202-780-4848
Email: mwheat@advancingamericanfreedom.com
Advancing American Freedom, Incorporated
Suite 930
801 Pennsylvania Ave., N.W.
Washington, DC 20004

**National Retail Federation**
Brett Christopher Bartlett, Esq.
Direct: 404-888-1875
Email: bbartlett@seyfarth.com
Fax: 404-892-7056
Seyfarth Shaw, L.L.P.
Suite 2500
1075 Peachtree Street, N.E.
Atlanta, GA 30309-3962

**National Association of Convenience Stores**
Brett Christopher Bartlett, Esq.
Direct: 404-888-1875

(see above)

**Restaurant Law Center**
Brett Christopher Bartlett, Esq.
Direct: 404-888-1875
(see above)

**Associated General Contractors of America, Incorporated**
Murphy J. Foster, III, Esq.
Direct: 225-387-4000
Email: murphy.foster@bswllp.com
Fax: 225-387-5397
Breazeale, Sachse & Wilson, L.L.P.
23rd Floor
301 Main Street
1 American Place
Baton Rouge, LA 70801

**Associated General Contractors of New York State, LLC**
Murphy J. Foster, III, Esq.
Direct: 225-387-4000
(see above)

**Business Council of New York State, Incorporated**
Murphy J. Foster, III, Esq.
Direct: 225-387-4000
(see above)

**State of West Virginia**
Michael Ray Williams
Direct: 304-558-2021
Email: michael.r.williams@wvago.gov
Fax: 304-558-0140
Office of the Attorney General for the State of West Virginia
Building 1, Room 26E
1900 Kanawha Boulevard, E.
State Capitol
Charleston, WV 25305-0000

**State of Kansas**
Michael Ray Williams
Direct: 304-558-2021
(see above)

**State of South Carolina**
Michael Ray Williams
Direct: 304-558-2021
(see above)

**22 Other States**
Michael Ray Williams
Direct: 304-558-2021
(see above)

**Project for Privacy and Surveillance Accountability, Incorporated**
Gene C. Schaerr
Direct: 202-787-1060
Email: gschaerr@schaerr-jaffe.com
Fax: 202-776-0136
Schaerr Jaffe, L.L.P.
Suite 900
1717 K Street, N.W.
Washington, DC 20006

**Transparency International U.S.**
Scott Andrew Greytak
Direct: 614-668-0258
Email: greytak.1@gmail.com
Transparency International U.S.
Suite 800
1100 13th Street, N.W.
Washington, DC 20010

**Foundation of Defense of Democracies**
Scott Andrew Greytak

(see above)
**Nate Sibley**
Scott Andrew Greytak
(see above)

**John A. Cassara**
Scott Andrew Greytak
(see above)

**Debra LaPrevotte**
Scott Andrew Greytak
(see above)

**Albert Torres**
Scott Andrew Greytak
(see above)

**Senator Sheldon Whitehouse**
Kristen Paige Miller, Attorney
Direct: 202-701-1782
Email: kmiller@democracyforward.org
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043

**Sarah Goetz**
Direct: 202-383-0794
Email: sgoetz@democracyforward.org
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043

**Robin F. Thurston**
Direct: 202-448-9090
Email: rthurston@democracyforward.org
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043

**Senator Ron Wyden**
Kristen Paige Miller, Attorney
(see above)
Sarah Goetz
(see above)
Robin F. Thurston
(see above)

**Senator Elizabeth Warren**
Kristen Paige Miller, Attorney
(see above)
Sarah Goetz
(see above)
Robin F. Thurston
(see above)

**Senator Jack Reed**
Kristen Paige Miller, Attorney
(see above)
Sarah Goetz
(see above)
Robin F. Thurston
(see above)

**Representative Maxine Waters**
Kristen Paige Miller, Attorney
(see above)
Sarah Goetz
(see above)
Robin F. Thurston
(see above)

Respectfully,

*/s/ Caleb Kruckenberg*
**Caleb Kruckenberg**
Counsel for Plaintiffs-Appellees

# TABLE OF CONTENTS

Contents

CERTIFICATE OF INTERESTED PERSONS ........................................ ii
TABLE OF CONTENTS ........................................ xii
TABLE OF AUTHORITIES ........................................ xiii
INTRODUCTION ........................................ 1
I. Background ........................................ 3
II. Argument ........................................ 9
A. THIS CASE IS NOT MOOT BECAUSE AT LEAST ONE PLAINTIFF REMAINS SUBJECT TO THE ACT'S REPORTING OBLIGATIONS ........................................ 9
B. A MERE REGULATION CANNOT CURE THE ACT'S CONSTITUTIONAL DEFECTS ........................................ 12
C. THE GOVERNMENT'S VOLUNTARY NARROWING OF THE CTA'S IMPLEMENTATION DOES NOT MOOT THE CASE WHERE IT HAS MADE NO CONTROLLING STATEMENT OF ITS FUTURE INTENT ........................................ 14
D. EVEN MOOTNESS WOULD NOT JUSTIFY VACATUR OF THE DISTRICT COURT DECISION ........................................ 24
CONCLUSION ........................................ 27

# TABLE OF AUTHORITIES

## Cases

*Bond v. United States*, 564 U.S. 211 (2011) .......... 12
*Clark v. K-Mart Corp.*, 979 F.2d 965 (3d Cir. 1992) .......... 11, 12
*Ellis v. Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Exp. & Station Emps.*, 466 U.S. 435 (1984) .......... 10
*FBI v. Fikre*, 601 U.S. 234 (2024) .......... passim
*Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824 (5th Cir. 2023) .......... 24, 25, 26
*Knox v. Serv. Emp. Int'l Union, Loc. 1000*, 567 U.S. 298 (2012) .......... 10
*Koshland v. Helvering*, 298 U.S. 441 (1936) .......... 13
*Lowry v. Barnhart*, 329 F.3d 1019 (9th Cir. 2003) .......... 10, 12
*M Welles & Assocs., Inc. v. Edwell, Inc.*, 69 F.4th 723 (10th Cir. 2023) 11
*McHenry v. Texas Top Cop Shop, Incorporated, et al.*, No. 24A653, (2025) .......... 6
*Netflix, Inc. v. Babin*, 88 F.4th 1080 (5th Cir. 2023) .......... passim
*Ouachita Watch League v. Jacobs*, 463 F.3d 1163 (11th Cir. 2006) .......... 11
*Pinkhasov v. Vernikov*, No. 1:23-CV-3460, 2024 WL 2188356 (E.D.N.Y. May 15, 2024) .......... 16
*Rodriguez v. Dull*, 827 F. Supp. 3d 758 (E.D. Va. 2026) .......... 21
*Rosebrock v. Mathis*, 745 F.3d 963 (9th Cir. 2014) .......... 21
*Sossamon v. Lone Star State of Texas*, 560 F.3d 316 (5th Cir. 2009) .......... 15, 16
*Students for Fair Admissions, Inc. v. Univ. of Texas at Austin*, 142 F.4th 819 (5th Cir. 2025) .......... 16
*Teter v. Lopez*, 125 F.4th 1301 (9th Cir. 2025) .......... 16, 23
*Texas Top Cop Shop, Inc. v. Bondi*, No. 24-40792, 2025 WL 2609731 (5th Cir. Aug. 5, 2025) .......... 7
*Texas Top Cop Shop, Inc., v. Garland*, 758 F.Supp.3d 607 (E.D. Tex. 2024) .......... 5
*Tucker v. Gaddis*, 40 F.4th 289 (5th Cir. 2022) .......... 9, 15
*U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18 (1994) .......... 24
*U.S. Navy SEALs 1-26 v. Biden*, 72 F.4th 666 (5th Cir. 2023) .......... 15, 22
*Vital Pharms., Inc. v. Alfieri*, 23 F.4th 1282 (11th Cir. 2022) .......... 11

*West Virginia v. EPA*, 597 U.S. 697 (2022) .................................... passim
*Whitman v. American Trucking Ass'ns.*, 531 U.S. 457 (2001) ................ 13

**Statutes**

31 U.S.C. § 5336 .................................................................................. 3, 4

**Regulations**

*Beneficial Ownership Information Reporting Requirement Revision and Deadline Extension*, 90 Fed. Reg. 13688 ................................................ 6
*Beneficial Ownership Information Reporting Requirements*, 87 Fed. Reg. 59498 ........................................................................................... 4
*Beneficial Ownership Reporting Requirement Revision*, 91 Fed. Reg. 52508 ............................................................................... 7, 8, 18

## INTRODUCTION

This case is not moot, for three independent reasons. First, even as their application has been narrowed by regulation, the Corporate Transparency Act's ("CTA") reporting requirements continue to apply to at least one plaintiff. Second, a regulatory action cannot remedy the Corporate Transparency Act's fundamental constitutional defect. And third, the government's voluntary cessation of the Act's requirements to most (but not all) reporting entities falls far short of demonstrating that the challenged conduct will not recur.

The plaintiff-appellees, a group of small business entities and a nationwide membership organization, challenged the constitutionality of the CTA before it was set to take effect. The CTA mandated that tens of millions of small entities file intrusive reports about their ownership with federal regulators. It did so, in part, on the premise that business entities engage in interstate commerce merely because they exist. Shortly before the CTA's initial compliance date, the district court concluded that the CTA was likely unconstitutional because it exceeded Congress' enumerated powers. It also preliminarily enjoined the statute and its implementing regulations.

Since the district court's opinion, the government has, by regulation, narrowed the application of the CTA's reporting requirements. Under the regulation, only foreign entities need to comply with the statute's reporting requirements—at least, according to the current administration's current thinking.

The government now seeks to dismiss this case as moot, insisting that its voluntary narrowing of the CTA's implementing regulations defeats the plaintiffs' challenge to the constitutionality of the statute itself. The government even seeks vacatur of the district court's decision and injunction concerning the lawfulness of the statute.

This Court should reject the government's motion. First, at least one of the named plaintiffs has a continuing compliance obligation under the narrowed regulatory implementation. This ongoing burden from the CTA defeats any notion of mootness.

Second, plaintiffs' claims challenge the statute, and the statute remains unchanged. A mere regulation cannot rewrite the statutory text or somehow cure its constitutional invalidity.

Third, the government's voluntary narrowing of its implementation of the statute does not show mootness because the government remains

free to reinstate the reporting requirement at any time. Indeed, the government has refused to provide any controlling statement of its future intent, has never disavowed its arguments supporting the CTA, and remains unconstrained should it wish to broaden the CTA's implementation at any time.

Even were this case moot, the government would not be entitled to the extraordinary remedy of vacatur of the district court's opinion.

## I. Background

**A.** Enacted in January 2021, the Corporate Transparency Act generally mandates that any "reporting company" report its "beneficial ownership information" to the Financial Crimes Enforcement Network ("FinCEN"). 31 U.S.C. § 5336(b)(1)(A). The statute provides that its reporting obligations will come into force pursuant to "regulations prescribed by the Secretary of the Treasury." *Id.* at § 5336(b)(1).

A "reporting company" is an entity "created by the filing of a document with a secretary of state or a similar office under the law of a State or Indian Tribe" or "formed under the law of a foreign country and registered to do business in the United States [.]" *Id.* at § 5336(a)(11).

The "beneficial ownership information" (BOI) that companies must report to FinCEN consists of the identities of their "beneficial owners" and, for each beneficial owner, a full legal name, date of birth, current address, and "acceptable" photo identification. *Id.* at §§ 5336(b)(2), (a)(1). The term "beneficial owner" is defined broadly, to include every natural person who "directly or indirectly, through any contract, arrangement, understanding, relationship, or otherwise—(i) exercises substantial control over the entity; or (ii) owns or controls not less than 25 percent of the ownership interests of the entity[.]" *Id.* at § 5336(a)(3). Companies that have filed reports must file updates when their BOI changes. *Id.* at §§ 5336(a)(2), (b)(1)(D). Violations of the reporting mandate are subject to substantial civil and criminal penalties. *Id.* at § 5336(h)(3).

FinCEN issued its initial implementing regulations, known as the "Reporting Rule," on September 30, 2022. *Beneficial Ownership Information Reporting Requirements*, 87 Fed. Reg. 59498. The rule provided that existing companies would have to comply with the reporting mandate on January 1, 2025. *Id.* at 59592.

**B.** Plaintiffs are among those subject to the CTA's reporting obligations. Plaintiff National Federation of Independent Business, Inc.,

is a membership organization with nearly 300,000 member businesses. *See* Supp.ROA.77. While NFIB itself is exempt from the CTA, many of its members, including Plaintiffs Texas Top Cop Shop, Inc. and Data Comm For Business, Inc., must comply. *Id.* As relevant here, among the Plaintiffs is Russell Straayer, who is a "beneficial owner" of multiple reporting companies under the Act, including a foreign reporting company that is registered to do business in the United States. *See* Declaration, at 2-3.

Plaintiffs filed suit alleging that the CTA and Reporting Rule exceed the scope of enumerated federal powers, burden associational rights in violation of the First Amendment, and violate the Fourth Amendment by compelling disclosure of private information. The district court enjoined the CTA and Reporting Rule and stayed the Rule's compliance deadline under Section 705 of the Administrative Procedure Act. Supp.ROA.82. It determined that the "CTA is likely unconstitutional as outside of Congress's power. Because the Reporting Rule implements the CTA, it is likely unconstitutional for the same reasons." *See Texas Top Cop Shop, Inc., v. Garland*, 758 F.Supp.3d 607, 663 (E.D. Tex. 2024).

After the district court and appeals court denied the government's requests for stay of the injunction, the Supreme Court granted the government's stay request. *See McHenry v. Texas Top Cop Shop, Incorporated, et al.*, No. 24A653, at 1 (2025).

**C.** Despite the stay, the government did not immediately reinstate the CTA's reporting deadline. First, FinCEN delayed the deadline through March 21, 2025. Then, the agency issued an interim final rule delaying the CTA's effective date. *Beneficial Ownership Information Reporting Requirement Revision and Deadline Extension*, 90 Fed. Reg. 13688, 13688-89 (Mar. 26, 2025). The interim rule proposed "to exempt domestic reporting companies … from the BOI reporting requirements pending the receipt of comments and issuance of a final rule." *Id.* at 13690.

Meanwhile, this case proceeded to the merits briefing before this Court. In response to the interim final rule, this Court requested briefing on whether the rule mooted any aspect of the case. Both the government and Plaintiffs agreed that the case was not moot. This Court thus recognized that "the controversy remains live," but put the appeal in

abeyance "until the final rule is issued." *Texas Top Cop Shop, Inc. v. Bondi*, No. 24-40792, 2025 WL 2609731, at *1 (5th Cir. Aug. 5, 2025).

**D.** On August 14, 2026, FinCEN issued the final rule, *Beneficial Ownership Reporting Requirement Revision*, 91 Fed. Reg. 52508 ("Final Rule"). The Final Rule exempts domestic reporting companies from the CTA's beneficial ownership reporting requirements based on the determination that the "indiscriminate collection" of information from such entities "would not provide law enforcement with highly valuable information" and "is not in the public interest." *Id.* at 52511, 52513. The Final Rule does not concede that the Reporting Rule was unlawful, or that the CTA itself is unconstitutional. Instead, FinCEN insisted that it had merely "reassess[ed]" the usefulness of domestic reports when compared to their burdens. *Id.* at 52513.

At the same time, the Final Rule recognized that the government still considers the collection of such information to be valuable. *Id.* at 52514. It explained: "Treasury recognizes that there are numerous, varied, and compelling reasons to support broad reporting of legal entity BOI. Treasury has, in the past, made the case for such a reporting requirement, appealing to many of the same law enforcement, national

security, and international cooperation interests that commenters have cited." *Id.* at 52514.

The Final Rule "continue[s] to require reporting of BOI by foreign-based entities registered to do business in the United States[.]" *Id.* at 52511. That is, "Entities that are: (1) corporations, limited liability companies, or other entities; (2) formed under the law of a foreign country; and (3) registered to do business in any State or Tribal jurisdiction by the filing of a document with a secretary of state or any similar office under the laws of a State or Indian tribe," must still file beneficial ownership reports. *Id.* at 52525.

When foreign entities file beneficial ownership reports they must do so using a "company applicant." *Id.* at 52527. A company applicant may be a U.S. person, but if so, they are exempt from reporting their own beneficial ownership information to FinCEN. *Id.* at 52528. The company applicant must still file and certify the beneficial ownership reports of the foreign entity. *Id.* at 52527.

Foreign entities and their company applicants therefore continue to have significant reporting obligations. The "rule retains a reporting requirement on foreign reporting companies to file with FinCEN reports

that identify the entities' beneficial owners, and in certain cases, their company applicants." *Id.* at 52525. "The reporting company must certify that the report is true, correct, and complete. The rule also continues to require foreign reporting companies to update the information in these reports as needed, and correct any previous incorrectly reported information, within specific timeframes." *Id.*

**E.** On September 4, 2026, the government filed a motion to dismiss the appeal as moot, vacate the district court's preliminary injunction and remand for further proceedings.

## II. Argument

### A. THIS CASE IS NOT MOOT BECAUSE AT LEAST ONE PLAINTIFF REMAINS SUBJECT TO THE ACT'S REPORTING OBLIGATIONS

As a company applicant of a foreign reporting company still subject to the Act's reporting obligations, Plaintiff Russell Straayer's claims remain in controversy and are not moot.

"The doctrine of mootness arises from Article III of the Constitution, which provides federal courts with jurisdiction over a matter only if there is a live 'case' or 'controversy.'" *Tucker v. Gaddis*, 40 F.4th 289, 292 (5th Cir. 2022) (citations omitted). "It is the doctrine of

mootness, not standing, that addresses whether an intervening circumstance has deprived the plaintiff of a personal stake in the outcome of the lawsuit." *West Virginia v. EPA*, 597 U.S. 697, 719 (2022) (cleaned up). But a case is moot only if these subsequent events eradicate standing entirely. In other words, a case becomes moot "only when it is *impossible* for a court to grant any effectual relief *whatever* to the prevailing party." *Knox v. Serv. Emp. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012) (emphasis added). Thus, when "a complaining party manages to secure outside of litigation all the relief he might have won in it," the case is moot. *FBI v. Fikre*, 601 U.S. 234, 240 (2024). But "as long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Ellis v. Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Exp. & Station Emps.*, 466 U.S. 435, 442 (1984).

While appellate issues are rarely decided outside the record, mootness is, by definition, one such exception. *See West Virginia*, 597 U.S. at 719 (mootness arises from "intervening circumstances" after suit is filed); *Lowry v. Barnhart*, 329 F.3d 1019, 1024 (9th Cir. 2003) ("Consideration of new facts may even be mandatory ... when developments render a controversy moot and thus divest us of

jurisdiction."); *Clark v. K-Mart Corp.*, 979 F.2d 965, 967 (3d Cir. 1992) (similar). Thus, the Court has inherent authority to supplement the record on appeal to consider facts that illuminate questions of mootness. *Vital Pharms., Inc. v. Alfieri*, 23 F.4th 1282, 1288 (11th Cir. 2022); *accord M Welles & Assocs., Inc. v. Edwell, Inc.*, 69 F.4th 723, 729–30 (10th Cir. 2023); *Ouachita Watch League v. Jacobs*, 463 F.3d 1163, 1170–71 (11th Cir. 2006).

This case is not moot because at least one of the plaintiff-appellees still has an ongoing obligation to file reports with FinCEN based on the CTA. As set out in an attached declaration, Plaintiff Russell Straayer appears to have an ongoing reporting obligation under the Final Rule. *See* Declaration at 2-3. Mr. Straayer is an officer and director in a foreign corporate entity that is registered to do business in the United States. *Id.* at 2. That entity has more than one beneficial owner, including beneficial owners who are foreign nationals not residing in the United States. *Id.* at 2-3. Mr. Straayer is a company applicant for this foreign business entity, and therefore has an ongoing responsibility to file beneficial ownership reports about the foreign business entity. *Id.* at 3. Thus, Mr. Straayer remains obligated to file reports that comply with the CTA. *See*

*id.* As Mr. Straayer remains subject to the CTA's reporting requirement, he can no doubt challenge it as being beyond the federal government's enumerated powers. *See Bond v. United States*, 564 U.S. 211, 222 (2011).

Anticipating this fact, the government preemptively complains that these facts aren't in the complaint. *See* Gov. Mot. at 11-12. But these facts were not relevant to standing or any other issue at the time of the complaint, and only became so through the government's subsequent efforts to narrow the CTA's application. Mr. Straayer could have hardly known that he might still need to comply with a much narrower rule that was only issued in response to this litigation. Mr. Straayer's declaration is exactly the kind of new facts that may even be "mandatory" to consider when assessing mootness. *See Lowry*, 329 F.3d at 1024. "[O]therwise there would be no way to find out if an appeal has become moot." *See Clark*, 979 F.2d at 967.

### B. A MERE REGULATION CANNOT CURE THE ACT'S CONSTITUTIONAL DEFECTS

The government's mootness argument assumes that an agency may, by regulatory action, remedy a statute's wholesale violation of constitutional limitation. That assumption is dead wrong. The constitutional provisions at issue in this case—including the Commerce

Clause, Necessary and Proper Clause, First Amendment, and Fourth Amendment—establish the metes and bounds of congressional authority. And Congress purported to exercise that authority when it enacted the CTA. That action—enactment of the statute—is challenged by the Plaintiffs' claims. *See* (1-ER-7).

Whether that statute exceeds congressional authority "is a question for the courts, and an agency's voluntary self-denial has no bearing upon the answer." *Whitman v. American Trucking Ass'ns.*, 531 U.S. 457, 473 (2001). Nor does mere agency action remedy the injury directly imposed by the statute, because "there is no power to amend" a statute's terms "by regulation." *Koshland v. Helvering*, 298 U.S. 441, 447 (1936).

The government's regulatory suspension of the Act's primary application to domestic reporting companies—undertaken because of this and other constitutional challenges—is practically an admission of the Act's unconstitutionality. It is no basis to evade judicial review. Because the plaintiffs have not "secure[d] outside of litigation all the relief [they] might have won in it," the case is not moot. *See Fikre*, 601 U.S. at 240.

### C. THE GOVERNMENT'S VOLUNTARY NARROWING OF THE CTA'S IMPLEMENTATION DOES NOT MOOT THE CASE WHERE IT HAS MADE NO CONTROLLING STATEMENT OF ITS FUTURE INTENT

In any event, the government's actions fall far short of carrying its burden to establish mootness.

"The distinction [between standing and mootness] matters because the Government, not [the plaintiffs], bears the burden to establish that a once-live case has become moot." *West Virginia*, 597 U.S. at 719. This is a "formidable burden." *Fikre*, 601 U.S. at 241 (citation omitted). Thus, "a defendant's voluntary cessation of a challenged practice will moot a case only if the defendant can show that the practice cannot reasonably be expected to recur." *Id.* (cleaned up). This standard "holds for governmental defendants no less than for private ones." *Id.*

Both the Supreme Court and this Court have routinely faced governmental efforts to tinker with a challenged policy during litigation, and often rejected suggestions of mootness. *See, e.g.*, *Fikre*, 601 U.S. at 242-43 (rejecting mootness where government declaration represented it would not resume challenged behavior based on "currently available information"); *West Virginia*, 597 U.S. at 719 (rejecting "the Government's mootness argument," which "boils down to its

representation that EPA has no intention of enforcing the Clean Power Plan prior to promulgating a new Section 111(d) rule"); *Netflix, Inc. v. Babin*, 88 F.4th 1080, 1089–90 (5th Cir. 2023) (dismissal of indictment without prejudice and new non-prosecution policy failed to demonstrate mootness); *Tucker*, 40 F.4th at 292-93 (state agency "change in policy" during appeal failed to meet the "heavy burden" of proving mootness).

To be sure, prior panels of this Court have occasionally granted special solicitude when the government engages in voluntary cessation. *See, e.g.*, *U.S. Navy SEALs 1-26 v. Biden*, 72 F.4th 666, 673 (5th Cir. 2023) ("Governmental entities bear a lighter burden in proving that the challenged conduct will not recur once the suit is dismissed as moot.") (cleaned up); *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009). But the Supreme Court recently foreclosed further use of this special solicitude. *See Fikre*, 601 U.S. at 241 (the burden to overcome voluntary cessation "holds for governmental defendants no less than for private ones"). The burden of proving mootness following voluntary cessation remains "formidable" for the government and private parties alike. *Id.* at 243. And subsequent cases have even recognized that *Fikre* overruled the special government solicitude approach to voluntary

cessation. *See, e.g.*, *Pinkhasov v. Vernikov*, No. 1:23-CV-3460, 2024 WL 2188356, at *9 (E.D.N.Y. May 15, 2024) (The "Supreme Court has now clarified that, in the context of determining voluntary cessation, declarations from government officials … are given no more special solicitude or evidentiary weight than those of private parties and the burden remains equally heavy for all defendants."); *cf. Teter v. Lopez*, 125 F.4th 1301, 1318–20 (9th Cir. 2025) (Collins, J., dissent) (arguing that *Fikre* abrogated special solicitude to government actors); *Students for Fair Admissions, Inc. v. Univ. of Texas at Austin*, 142 F.4th 819, 826 n. 10 (5th Cir. 2025) (recognizing tension between *Fikre* and *Sossaman* but declining to rule on the issue); *Netflix*, 88 F.4th at 1090 n. 12 (declining to rule on the question but noting, "for the benefit of a future panel or en banc court, that the 'special solicitude' once afforded to states … with respect to justiciability doctrines like standing, seems to also be falling out of favor with the Supreme Court").

Moreover, even the governmental "presumption of good-faith cessation is defeated when, as here, there is no controlling statement of future intention, the change in conduct is suspiciously timed, and the defendant continues to defend the challenged behavior." *Netflix*, 88 F.4th

at 1089–90. "Such contingencies do not provide us the absolute clarity we would need to dismiss on mootness grounds." *Id.* at 1089.

In fact, even a repudiation of the prior conduct doesn't automatically moot a case. *Fikre*, 601 U.S. at 244. "What matters is not whether a defendant repudiates its past actions, but what repudiation can prove about its future conduct." *Id.* And, of course, when the government provides no such assurances at all, courts do not deem the case moot. *See West Virginia*, 597 U.S. at 719-20 ("[w]e do not dismiss a case as moot" when "the Government nowhere suggests that if this litigation is resolved in its favor it will not reimpose" the challenged rule).

This case is not moot because the government has given "no controlling statement of future intention." *See Netflix*, 88 F.4th at 1089. Neither the final rule nor the government's motion to dismiss have any statement of the government's future intention *at all*. The government nowhere suggests that it will never reimpose the CTA on domestic entities like the plaintiffs.

First, the rule does not concede that the prior rule was unlawful, or that the CTA itself is unconstitutional—FinCEN says only that it has "reassess[ed]" the usefulness of domestic reports when compared to their

burdens. Final Rule, 91 Fed. Reg. at 52513. That reassessment says nothing about the lawfulness of the past application of the CTA, and makes no assurances about future agency conduct. *See id.*

If anything, the rule leaves substantial uncertainty on this score. The agency acknowledges that between the Reporting Rule and the Final Rule the only pertinent change related to the agency's political priorities. The January 20, 2025 "change in presidential administrations" "resulted in a reassessment of the balance struck in the original Reporting Rule between collecting information that is 'highly useful' for law enforcement and minimizing burdens on reporting companies." *Id.* at 52513. And the agency doesn't foreclose future changes, instead it defends its prior advocacy of the "numerous, varied, and compelling reasons to support broad reporting of legal entity BOI." *Id.* at 52514. Thus, the rule carefully avoids either suggesting that the original rule was unlawful, or that the government is precluded from changing its position yet again.

The government's motion is no more reassuring. Indeed, the government's motion merely repeats the rationale given by FinCEN—that after a change in presidential administrations the agency "engaged in a reassessment of the balance struck by the Reporting Rule." Gov. Mot.

at 5 (cleaned up). The government does not say that its prior assessment was *wrong*, much less that it was illegal. *See id.* And the government's motion does not address the underlying constitutionality of the CTA, and certainly does not concede that the CTA exceeds the scope of the federal enumerated powers. *See id.*

The government makes no representations that it will never again make any reassessment of this balance, or that it will never again implement the CTA for domestic entities. *See generally id.* The government makes no representations *at all* about its future plans. *See id.* Indeed, the government has submitted no evidence at all, such as declarations from relevant decisionmakers. *See id.*

Not only has the government refused to disclaim the original application of the CTA, it has continued to "vigorously defend[] the legality" of its challenged policy. *See West Virginia*, 597 U.S. at 719. In fact, the government has continued to insist in court filings that the underlying "enumerated-powers challenge lacks merit." *See NSBU v. Bessent*, No. 25-1201, Opp. to Pet. for Cert., at 7. Further, it defends the constitutionality of the CTA itself, even now that it has been narrowed, as a valid exercise of the federal commerce power. *Id.* at 9. And the

government still clings to its argument that mere status as a business entity is "closely ambiguous" to commerce itself. *See id.* at 9, 14-15 ("Congress may require foreign entities to report information to the federal government, even if those entities do not engage in economic activity beyond registering to do business."). In other words, the government continues to argue that the CTA is constitutional, notwithstanding the district court's opinion in this case.

On this record, the Court has no reason to think that it's absolutely certain that the government will never implement the CTA against domestic entities like the plaintiffs. *See Netflix*, 88 F.4th at 1089-90. Instead, the government has committed itself to nothing—defending its past practice and leaving future policies up to administrative discretion. This is far short of the evidence that courts ordinarily require for allowing a defendant's voluntary cessation to moot a case. *See Fikre*, 601 U.S. at 242 ("the government's sparse declaration falls short of demonstrating that it cannot reasonably be expected to do again in the future what it is alleged to have done in the past").

Even if the government had given assurances, its freedom to change policies at will prevents a finding of mootness. While legislative repeals

of challenged laws might result in mootness, mere voluntary exercises of discretion leave too much uncertainty. *See Netflix*, 88 F.4th at 1089-90 (new non-prosecution policy failed to demonstrate mootness); *Rosebrock v. Mathis*, 745 F.3d 963, 971–72 (9th Cir. 2014) ("A case is not easily mooted where the government is otherwise unconstrained should it later desire to reenact the offending provision.") (cleaned up); *Rodriguez v. Dull*, 827 F. Supp. 3d 758, 771–72 (E.D. Va. 2026) ("When determining if a reasonable expectation remains that a governmental defendant may resume its offending conduct, this court has looked for a change in official policy or law, or some other external constraint on the defendant's action, such as a collateral court order."). "In the absence of such a constraint, when a defendant retains the authority and capacity to repeat an alleged harm, a plaintiff's claim should not be dismissed as moot." *Rodriguez*, 827 F. Supp. 3d at 772 (cleaned up). So too here, where FinCEN and the government both defend the lawfulness of the CTA and its implementation to domestic entities. *See* Final Rule, 91 Fed. Reg. at 52513-14; *NSBU v. Bessent*, No. 25-1201, Opp. to Pet. for Cert., at 9, 14-15.

The government's terse arguments concerning voluntary cessation are not convincing. First, the government embraces "a notably lighter burden in proving that the challenged conduct will not recur once the suit is dismissed as moot as courts generally presume that state actors, as public representatives, act in good faith." Gov. Mot. at 14 (citing *U.S. Navy SEALs*, 72 F.4th at 673-74). But as discussed, the Supreme Court has since clarified that the burden of demonstrating mootness "holds for governmental defendants no less than for private ones." *Fikre*, 601 U.S. at 241. Thus, rather than presuming the government's good faith, courts look for *evidence* that the government will not return to its old ways. *See id.* And this evidence must show that the government won't ever reinstate the challenged policy, either "immediately or later at some more propitious moment." *Id.* at 243. The government doesn't carry its burden with noncommittal statements that leave open the possibility of a return to the old policy. *See West Virginia*, 597 U.S. at 719-20.

Even if the Supreme Court had not overruled the former solicitous approach to government cessation, that presumption of good faith doesn't establish mootness here. A presumption of good faith only carries the government so far. Just as in *Netflix*, the "presumption of good-faith

cessation is defeated" here because "there is no controlling statement of future intention … and the defendant continues to defend the challenged behavior." *See* 88 F.4th at 1089–90. Moreover, while the presumption might justify a finding of mootness based on a legislative repeal, which "requir[es] coordinated action by" multiple entities, the presumption is not justified when an executive actor is unconstrained. *See Teter*, 125 F.4th at 1306–07; *id.* at 1318-20 (Collins, J., dissent). If nothing prevents a defendant from unilaterally returning to the challenged policy, a case is generally not moot. *See Netflix*, 88 F4th at 1090. Thus, even presuming the government's good faith in issuing the Final Rule, the government has never provided any assurances that it will never again implement the CTA domestically, and the Executive Branch remains free to rescind or alter the Final Rule unilaterally.

The only thing this Court is left with is the government's equivocation and simple observation that "the newly issued Final Rule, which exempts domestic entities and U.S. beneficial owners and applicants from the CTA's reporting requirements, absolves plaintiffs of their asserted injuries (the requirement to report beneficial ownership information to the government)." Gov. Mot. at 11. But that says *nothing*

of what the government plans to do in the future, even while the government's future conduct is the only relevant concern. *See Fikre*, 601 U.S. at 244. The government's refusal to commit itself to a "controlling statement of future intention," means this Court lacks the necessary assurances to find the government's voluntary cessation moots this case. *See Netflix*, 88 F.4th at 1089.

### D. EVEN MOOTNESS WOULD NOT JUSTIFY VACATUR OF THE DISTRICT COURT DECISION

Even if this Court concludes that the government's regulatory change moots the plaintiffs' underlying challenge to the CTA statute, the government has not met its burden of demonstrating that it is entitled to vacatur of the district court's decision.

When a case becomes moot on appeal, the government isn't *entitled* to vacatur of a district court's judgment. *Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 836 (5th Cir. 2023). Instead, the proper test "requires the party seeking relief from the status quo of the judgment to demonstrate equitable entitlement to the extraordinary remedy of vacatur." *Id.* (cleaned up, citing *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 26 (1994)). There are "two equitable considerations [] particularly relevant to the vacatur analysis. First, a

court must consider whether the party seeking relief from the judgment below caused the mootness by voluntary action. And second, as always when federal courts contemplate equitable relief, the holding must also take account of the public interest." *Id.* (cleaned up).

When a defendant has mooted a case by repealing a challenged law, it has caused the mootness by its own voluntary action, which weighs against vacatur. *Id.* at 837. Similarly, the public interest in a precedential ruling that a statute was unconstitutional also weighs against vacatur. *Id.*

The government has not met its burden to demonstrate that it is entitled to "the extraordinary remedy of vacatur" of the district court's decision and injunction. *See id.* For starters, it was the government who is responsible for causing any mootness through its voluntary narrowing of the CTA's scope in the Final Rule. At the same time, the public has a strong interest in the district court's analysis and legal conclusions that the CTA was likely unconstitutional. Both of these factors strongly counsel against vacatur. *See id.*

The government says it is entitled to vacatur, first, because "the injunction continues to affect the government's ability to enforce an Act

of Congress," despite the agency's narrowed regulatory implementation. Gov. Mot. at 15. This is a curious argument to make because it undermines the government's mootness argument. Indeed, one of the reasons this case isn't moot is that the plaintiffs challenged *the statute*, which the district court enjoined. The district court's decision and injunction should remain precisely because they prevent future implementation of the CTA.

The government also complains that the preliminary injunction is partly overbroad in that it applies beyond the plaintiffs. The government notes that "courts of appeals have vacated universal injunctions to the extent they afford relief to nonparties on the basis that such injunctions exceed the judiciary's equitable authority." Gov. Mot. at 16.

Rather than vacating the whole opinion below, if this case becomes moot this Court should simply remand with directions to narrow the scope of the preliminary injunction. This Court has been willing to vacate only "part of the district court's judgment" depending on the equities of the case. *Freedom From Religion Found.*, 58 F.4th at 837. Thus, for instance, it has refused to vacate an opinion holding a statute unconstitutional while dissolving a permanent injunction to a

subsequently-repealed law. *Id.* To the extent that the district court's preliminary injunction orders relief that is inconsistent with a court's equitable powers because it protects nonparties, this Court should direct that the district court narrow the injunction.

## CONCLUSION

This case presents a live controversy that this Court must resolve. The government's motion should be denied.

September 28, 2026

Respectfully,

*/s/ Caleb Kruckenberg*
**Caleb Kruckenberg**
**Todd F. Gaziano**
Center for Individual Rights
1100 Conn. Ave. N.W., Suite 625
Washington D.C. 20036

**Andrew M. Grossman**
**Kristin A. Shapiro**
Baker Hostetler
Washington Square, 1050 Conn. Ave.
N.W., Suite 1100
Washington D.C. 20036

Counsel for Plaintiffs-Appellees

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with Federal Rule of Appellate Procedure 27(d). It is printed in Century Schoolbook, a proportionately spaced font, and includes 5169 words, excluding items enumerated in Rule 32(f). I relied on my word processor, Microsoft Word, to obtain the count.

Respectfully,

*/s/ Caleb Kruckenberg*
**Caleb Kruckenberg**

## CERTIFICATE OF SERVICE

I hereby certify that, on September 28, 2026, this document was electronically filed using the Court's CM/ECF system, which sent notification of such filing to all counsel of record.

Respectfully,

*/s/ Caleb Kruckenberg*
**Caleb Kruckenberg**