**No. 24-40792**

---

**IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT**

---

TEXAS TOP COP SHOP, INCORPORATED; RUSSELL STRAAYER; MUSTARDSEED LIVESTOCK, L.L.C.; LIBERTARIAN PARTY OF MISSISSIPPI; NATIONAL FEDERATION OF INDEPENDENT BUSINESS, INCORPORATED; DATA COMM FOR BUSINESS, INCORPORATED,

*Plaintiffs-Appellees*,

v.

TODD WALLACE BLANCHE, U.S. ATTORNEY GENERAL; TREASURY DEPARTMENT; DIRECTOR FINCEN ANDREA GACKI, DIRECTOR OF THE FINANCIAL CRIMES ENFORCEMENT NETWORK; FINANCIAL CRIMES ENFORCEMENT NETWORK; SCOTT BESSENT, SECRETARY, U.S. DEPARTMENT OF TREASURY,

*Defendants-Appellants*.

---

# DEFENDANTS-APPELLANTS' REPLY IN SUPPORT OF MOTION TO VACATE THE DISTICT COURT'S PRELIMINARY INJUNCTION AND REMAND

---

BRETT A. SHUMATE
*Assistant Attorney General*

DANIEL TENNY
STEVEN H. HAZEL
MAXWELL BALDI
SOPHIA SHAMS
*Attorneys, Appellate Staff*
*Civil Division, Room 7213*
*U.S. Department of Justice*
*950 Pennsylvania Ave., NW*
*Washington, DC 20530*
*202-514-2495*
*sophia.shams@usdoj.gov*

# TABLE OF CONTENTS

INTRODUCTION....................1

ARGUMENT....................1

I. Plaintiffs' Attempts To Evade Mootness Are Unavailing....................1

II. Plaintiffs' Arguments Against Vacatur Lack Merit....................8

CONCLUSION....................11

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

## INTRODUCTION

There is no meaningful dispute that, in light of the Final Rule, plaintiffs' operative complaint does not establish standing to challenge the Corporate Transparency Act (CTA). Accordingly, the ordinary practice is to vacate the nationwide preliminary injunction and remand to the district court. Plaintiffs fail to establish any sound basis for deviating from that normal practice.

## ARGUMENT

### I. Plaintiffs' Attempts To Evade Mootness Are Unavailing

Plaintiffs do not contest, *see* Resp. 12, that the allegations of their operative complaint establish only their status as domestic entities and U.S. beneficial owners, which are no longer subject to the CTA's reporting requirements in light of the Final Rule. Nor do plaintiffs dispute that it was on that basis—the CTA's application to domestic entities and U.S. beneficial owners—that plaintiffs sought and obtained a preliminary injunction. Instead, plaintiffs try to circumvent mootness by attempting to amend their complaint on appeal in order to challenge the CTA under a distinct legal basis, and by invoking the voluntary-cessation exception. Both of these efforts fail.

**A.** The operative complaint has no allegations suggesting that plaintiffs would be subject to the CTA's reporting requirements under the Final Rule. Plaintiffs do not suggest otherwise. Instead, they attempt to supplement the appellate record with a declaration that they say demonstrates that Plaintiff Russell Straayer remains

subject to the CTA's reporting requirements. According to plaintiffs, Straayer "remains subject to the CTA's reporting requirement" because he is "a company applicant" for a "foreign corporate entity that is registered to do business in the United States," and "therefore has an ongoing responsibility to file beneficial ownership reports about the foreign business entity." Resp. 11-12.

Plaintiffs thus have no argument that the record before the district court supports the preliminary injunction. This Court should accordingly vacate the order and remand the case to the district court, where plaintiffs may then seek to amend their complaint and litigate any new legal theories in the first instance. In this respect, this case is on all fours with *New York State Rifle & Pistol Association v. City of New York*. 590 U.S. 336 (2020). There, the Supreme Court determined that the petitioners' Second Amendment claim against a rule was moot after the City amended the rule. *Id.* at 337-39. The Court rejected the petitioner's argument that, because the rule may still infringe their rights in certain respects, the case was not moot, explaining that "in instances where the mootness is attributable to a change in the legal framework governing the case, and where the plaintiff may have some residual claim under the new framework that was understandably not asserted previously, [the Court's] practice is to vacate the judgment and remand for further proceedings in which the parties may, if necessary, amend their pleadings or develop the record more fully." *Id.* at 339 (quotation marks omitted).

That disposition also follows from first principles. It is well established that courts of appeals are limited to the district-court record on appeal, which in this case lacks any evidence or allegation suggesting that plaintiffs are subject to the CTA's reporting requirements following the Final Rule. Plaintiffs argue that courts have "inherent authority to supplement the record on appeal to consider facts that illuminate questions of mootness," but none of the cases plaintiffs cite are remotely applicable here. Resp. 11. In one, the court denied the motion to supplement the record. *See M Welles & Assocs., Inc. v. Edwell, Inc.*, 69 F.4th 723, 730 (10th Cir. 2023). And in cases where courts have allowed supplementation of the appellate record, it was not in the way plaintiffs seek here: to allow a plaintiff to effectively amend their complaint after an intervening event has rendered their claims as originally pleaded and adjudicated in district court moot. *See Clark v. K-Mart Corp.*, 979 F.2d 965, 966-67 (3d Cir. 1992) (considering stipulated facts submitted while appeal was pending to determine whether employer's compliance with preliminary injunction rendered the case moot); *Vital Pharms., Inc. v. Alfieri*, 23 F.4th 1282, 1288-90 (11th Cir. 2022) (granting motion to supplement record on appeal to determine whether the plaintiff's claims were moot after portions of the preliminary injunction had expired). In fact, courts of appeals have overwhelmingly rejected such efforts to evade mootness. *See, e.g.*, *Holloway v. City of Virginia Beach*, 42 F.4th 266, 275-76 (4th Cir. 2022) (vacating district court's decisions and remanding because the plaintiffs' claims were moot, and noting that any new challenges that the

plaintiffs may raise "will present a different case"); *Teter v. Lopez*, 125 F.4th 1301, 1308-09 (9th Cir. 2025) (en banc) (determining that the plaintiff's challenge to a statute was moot even though "further factual development" before the district court may establish standing in some other respect).

So too here. Plaintiffs' challenged the CTA on the ground that Congress may not regulate domestic corporations in such a manner. The district court's injunction likewise rests on an analysis regarding the CTA's regulation of domestic corporations; the court did not meaningfully discuss the statute's application to foreign entities. *See, e.g.*, ROA.498, 505-08. Thus, the legal arguments that are before this Court have become moot following the Final Rule's exemption of domestic entities from the CTA's reporting requirements. That plaintiffs may have some "residual claim" does not negate mootness; instead, these new legal bases for challenging the CTA must be addressed in the first instance by the district court on remand.[1]

Plaintiffs' standing argument is also mistaken on the merits. The fact that a foreign corporate entity—which plaintiffs do not contend is a party in this case—is subject to the CTA's reporting requirements in no way establishes standing for

[1] These problems apply equally to amicus's contention that the case is not moot because of alleged injuries to entities that had already submitted data, in addition to the fact that claims raised only by amicus are not properly before the Court and that the preliminary injunction on appeal did not address the disposition of such data.

Straayer, who is a U.S. citizen and thus expressly exempt from the CTA's reporting requirements. 91 Fed. Reg. 52,508, 52,511 (Aug. 14, 2026). Moreover, that Straayer may file beneficial ownership reports on behalf of a foreign entity is a self-inflicted injury that cannot confer standing; the CTA does not require Straayer to file on behalf of a foreign entity, and plaintiffs even acknowledge that the foreign entity has "more than one beneficial owner" who could file such reports. Resp. 11. Put simply, plaintiffs cannot satisfy Article III standing based on an individual who is not himself subject to the CTA's reporting requirements but has chosen to file reports on behalf of a nonparty entity.

Plaintiffs' further attempt to evade mootness on the ground that they have challenged the constitutionality of the CTA itself, which the Final Rule does not amend, is likewise unavailing. *See* Resp. 12-13. Article III strictly limits the jurisdiction of federal courts to cases and controversies, and there is no longer any case or controversy now that plaintiffs are not subject to the CTA's reporting requirements. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90-91 (2013). Just as a plaintiff generally may not challenge in the first instance a statute for which there is no threat of enforcement against him, *see, e.g.*, *Allen v. Wright*, 468 U.S. 737, 754 (1984) ("This Court has repeatedly held that an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court."), a plaintiff may not continue to challenge a statute where there is no longer a threat of enforcement against him, *see U.S. Navy SEALs 1-*

*26 v. Biden*, 72 F.4th 666, 672 (5th Cir. 2023) ("If a dispute ceases mid-litigation, so does [the Court's] jurisdiction.").

**B.** Plaintiffs invocation of the voluntary-cessation exception to mootness fares no better. According to plaintiffs, this case is not moot because "the Court has no reason to think that it's absolutely certain that the government will never implement the CTA against domestic entities like the plaintiffs." Resp. 20. But the relevant standard asks only whether the "challenged conduct could not reasonably be expected to recur." *U.S. Navy SEALs*, 72 F.4th at 673 (quotation marks omitted). The government's issuance of the Final Rule through notice-and-comment rulemaking, which is entitled to a presumption of good faith, *see* Mot. 11-12, easily meets that standard.

Plaintiffs wrongly contend that the Supreme Court's decision in "[*FBI v.*] *Fikre* overruled" the presumption of good faith. Resp. 15-16. *Fikre* concerned the FBI's decision to remove the plaintiff from the No Fly List after he had filed suit in district court; the case did not involve notice-and-comment rulemaking. *See* 601 U.S. 234, 236-40 (2024). And while *Fikre* recognizes that governmental defendants and private defendants alike must show that there is "no reasonable expectation" that the challenged conduct will recur, *id.* at 241, it in no way rejects the presumption of good faith that courts of appeals overwhelmingly afford the government, especially when the government has undertaken notice-and-comment rulemaking. Accordingly, this Court has continued to apply the presumption of good faith after *Fikre*. *See*

*Association of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*, 103 F.4th 383, 396 (5th Cir. 2024) ("When governmental officials voluntarily cease potentially wrongful conduct, we presume that they, as public representatives, act in good faith." (alteration and quotation marks omitted)). And in any event, even without the presumption, the procedural safeguards of notice-and-comment rulemaking sufficiently show that the challenged conduct is unlikely to recur.

Plaintiffs also incorrectly argue that the government must provide a "controlling statement of future intention" or some other evidence that the challenged conduct is unlikely to recur. Resp. 16-17, 22-23. But the presumption of good faith means that, "without evidence to the contrary, [this Court] assume[s] that formally announced changes to official governmental policy are not mere litigation posturing." *Association of Am. Physicians & Surgeons Educ. Found.*, 103 F.4th at 395 (alteration and quotation marks omitted). While plaintiffs contend that this Court's decision in *Netflix, Inc. v. Babin* suggests otherwise, that case involved prosecutorial policies rather than notice-and-comment rulemaking, and the presumption of good faith was undermined by evidence of bad faith. 88 F.4th 1080, 1089-96 (5th Cir. 2023).

Here, plaintiffs have offered no evidence to meaningfully rebut the presumption of good faith. While plaintiffs contend that the government's decision to exempt domestic entities from the CTA's reporting requirement was "because of this and other constitutional challenges," Resp. 13, plaintiffs offer no support for that assertion beyond speculation. To the contrary, the Final Rule explains that it was

promulgated in part due to the change in administration and the agency's "reassessment of the balance struck in the original Reporting Rule between collecting information that is 'highly useful' for law enforcement and minimizing burdens on reporting companies." 91 Fed. Reg. at 52513. And it would be extraordinary to suggest that the government would engage in a full-blown notice-and-comment rule merely to evade litigation.

Plaintiffs are also wrong that "the [Final Rule] leaves substantial uncertainty." Resp. 18. The rule makes clear that domestic entities and U.S. beneficial owners are exempt from the CTA's reporting requirements. Plaintiffs' argument that the government may at some point in the future change its position, Resp. 23, is purely speculative and ignores the procedural requirements associated with such a change in policy—the Final Rule was issued through notice-and-comment rulemaking, and thus any change in the exemptions provided by the Final Rule would again require notice-and-comment rulemaking. Indeed, this Court expressly rejected the kind of speculation that plaintiffs posit here when it held that "the government's ability to reimplement the statute or regulation at issue is insufficient to prove the voluntary-cessation exception." *Assn of Am. Physicians & Surgeons Educ. Found.*, 103 F.4th at 395-96 (quotation marks omitted).

## II. Plaintiffs' Arguments Against Vacatur Lack Merit

Plaintiffs do not meaningfully contest vacatur, asserting only briefly that vacatur is inequitable here because the government "has caused the mootness by its

own voluntary action" and because there is a "public interest in a precedential ruling that a statute was unconstitutional." Resp. 25. But vacatur is the "established" practice when the underlying claims of a case become moot on appeal. *Camreta v. Greene*, 563 U.S. 692, 712 (2011). Indeed, the Supreme Court's decision in *United States v. Munsingwear, Inc.* dealt with this precise circumstance—a judgment appealed by the government where the case later became moot on appeal because of a change in government policy—and the Supreme Court made clear that the proper remedy would be to vacate the judgment. 340 U.S. 36, 37, 39 (1950). The Supreme Court has since reinforced that principle, routinely vacating lower-court judgments appealed by the government in which the underlying claims became moot as a result of the government's change in policy. *See, e.g.*, *Trump v. International Refugee Assistance*, 583 U.S. 912 (2017) (vacating judgment and remanding where the government had withdrawn the challenged policy); *Mayorkas v. Innovation L. Lab*, 141 S. Ct. 2842 (2021) (vacating judgment and remanding to the court of appeals "with instructions to direct the District Court to vacate as moot" the preliminary injunction); *Biden v. Feds for Med. Freedom*, 144 S. Ct. 480 (2023) (similar).

Plaintiffs largely do not engage with these cases. Plaintiffs only cite *United States Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18 (1994), which involved private settlements of litigation and in which the Supreme Court went out of its way to make clear that it was not addressing the sort of government policy change that was at issue in *Munsingwear*. *Bancorp*, 513 U.S. at 25 n.3 ("We express

no view on *Munsingwear*'s implicit conclusion that repeal of administrative regulations cannot fairly be attributed to the Executive Branch when it litigates in the name of the United States.").

Moreover, plaintiffs' contention that allowing the district court's preliminary injunction to remain in force would be in the "public interest" is surprising given that the Supreme Court has stayed the preliminary injunction in this case. *McHenry v. Texas Top Cop Shop, Inc.*, 145 S. Ct. 1 (2025). The public interest clearly weighs in favor of vacating the district court's preliminary injunction, which bars the government from enforcing an Act of Congress nationwide on the basis that the Act is unconstitutional. *See United States v. Raines*, 362 U.S. 17, 20 (1960) (declaring Act of Congress unconstitutional is "the gravest and most delicate duty that this Court is called on to perform" (quotation marks omitted)). Rather than contest the clear harm to the government, plaintiffs assert that this harm is at odds with the government's mootness argument. But as the government has explained, Mot. 1, 13, an intervening event may render a plaintiff's underlying claims moot if it provides plaintiffs complete relief, but not necessarily render the appeal moot if the order on appeal continues to harm the defendant. Given that plaintiffs' underlying claims are moot and the government continues to face harm from the district court's preliminary injunction, vacatur is the only equitable approach.

Finally, plaintiffs do not even attempt to defend the universal nature of the injunction, which clearly violates the Supreme Court's holding in *Trump v. CASA,*

*Inc.*, 606 U.S. 831 (2025), and thus independently supports vacatur, *see* Mot. 16-17. Plaintiffs' contention (Resp. 26-27) that this Court may simply narrow the preliminary injunction is misguided; because the Final Rule has provided plaintiffs complete relief, this Court lacks jurisdiction to affirm any aspect of the district court's preliminary injunction.

## CONCLUSION

For the foregoing reasons, the preliminary injunction should be vacated and the case remanded.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

DANIEL TENNY
STEVEN H. HAZEL
MAXWELL BALDI

/s/ *Sophia Shams*
SOPHIA SHAMS
*Attorneys, Appellate Staff*
*Civil Division, Room 7213*
*U.S. Department of Justice*
*950 Pennsylvania Ave., NW*
*Washington, DC 20530*
*202-514-2495*
*sophia.shams@usdoj.gov*

OCTOBER 2026

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 5, 2026, I electronically filed the foregoing motion with the Clerk of the Court by using the appellate CM/ECF system. I further certify that the participants in the case are CM/ECF users and that service will be accomplished by using the appellate CM/ECF system.

*/s/ Sophia Shams*
Sophia Shams

**27(d) CERTIFICATE OF COMPLIANCE**

I hereby certify that this motion complies with the requirements of Federal Rule of Appellate Procedure 27(d) because it has been prepared in 14-point Times New Roman, a proportionally spaced font. I further certify that this motion complies with the type- volume limitation of Federal Rule of Appellate Procedure 27(d)(2) because it contains 2,594 words according to the count of Microsoft Word.

*/s/ Sophia Shams*
Sophia Shams