CIR
THE CENTER FOR
INDIVIDUAL RIGHTS

Thomas B. Plunkett, Clerk of Court
United States Court of Appeals for the Fifth Circuit
F. Edward Hebert Building
600 S. Maestri Place
New Orleans, LA 70130-3408
Via CM/ECF

**Re: Rule 28(j) Notice of Supplemental Authority, *Texas Top Cop Shop, Inc., et al., v. Blanche, et al.*, No. 24-40792**

Dear Mr. Plunkett:

A new lawsuit filed by 21 states seeks vacatur of the final rule that Appellants contend moots this constitutional challenge to the Corporate Transparency Act (CTA). *See Oregon, et al. v. Bessent, et al.*, 6:26-cv-02359 (D. Or.); Attachment A (Complaint).

Plaintiffs-Appellees here challenge the CTA's constitutionality, contending that it exceeds Congress's enumerated powers and violates the First and Fourth Amendments. On August 14, 2026, the Financial Crimes Enforcement Network (FinCEN) issued a final rule, *Beneficial Ownership Reporting Requirement Revision*, 91 Fed. Reg. 52508, narrowing the CTA's application by exempting domestic companies from reporting information to the U.S. Treasury. Based on that regulation, the United States argues that this case is now moot. *See Gov. Mot.* at 11.

The new lawsuit seeks to invalidate the final rule, further confirming that this challenge to the statute itself is not moot. The State of Oregon leads a coalition of 21 states challenging the lawfulness of the rule exempting domestic entities from complying with the CTA. As the plaintiffs in that case assert, "If the states win, the court would throw out FinCEN's rule and require the agency to keep collecting and maintaining the ownership database for law enforcement." Press Release, *AG Rayfield Challenges Trump Administration's Gift to Fraudsters and Tax Cheats*, Oct. 27, 2026, *available at* https://www.doj.state.or.us/media-home/news-

media-releases/ag-rayfield-challenges-trump-administrations-gift-to-fraudsters-tax-cheats/. This is relevant to the question of whether it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur"—implementation of the CTA against Plaintiffs-Appellees. *See W. Virginia v. Env't Prot. Agency*, 597 U.S. 697, 720 (2022).

*/s/ Caleb Kruckenberg*
**Caleb Kruckenberg**
**Todd F. Gaziano**
Center for Individual Rights
1310 N. Courthouse Road, Suite 610
Arlington VA 22201

**Andrew M. Grossman**
**Kristin A. Shapiro**
Baker Hostetler
Washington Square, 1050 Conn. Ave. N.W., Suite 1100
Washington D.C. 20036

Counsel for Plaintiffs-Appellees

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with Federal Rule of Appellate Procedure 28(j). It is printed in Century Schoolbook, a proportionately spaced font, and includes 256 words, excluding items enumerated in Rule 32(f). I relied on my word processor, Microsoft Word, to obtain the count.

Respectfully,

*/s/ Caleb Kruckenberg*
**Caleb Kruckenberg**

## CERTIFICATE OF SERVICE

I hereby certify that, on October 29, 2026, this document was electronically filed using the Court's CM/ECF system, which sent notification of such filing to all counsel of record.

Respectfully,

*/s/ Caleb Kruckenberg*
**Caleb Kruckenberg**

DAN RAYFIELD
Attorney General
LEANNE HARTMANN #257503
BRIAN SIMMONDS MARSHALL #196129
NOAH STEIMEL, T26070601, DC Bar #1723832
TY BAIR #251894
Senior Assistant Attorneys General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email: Leanne.Hartmann@doj.oregon.gov
Brian.S.Marshall@doj.oregon.gov
Noah.Steimel@doj.oregon.gov
Ty.Bair@doj.oregon.gov

*Counsel for State of Oregon*
[Additional counsel to appear on signature page]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| STATE OF OREGON; STATE OF ILLINOIS; STATE OF ARIZONA, STATE OF CALIFORNIA, STATE OF COLORADO, SATE OF DELAWARE, DISTRICT OF COLUMBIA, STATE OF MAINE, STATE OF MARYLAND, COMMONWEALTH OF MASSACHUSETTS, STATE OF MICHIGAN, STATE OF MINNESOTA, STATE OF NEVADA, STATE OF NEW JERSEY, STATE OF NEW MEXICO, STATE OF NEW YORK, STATE OF NORTH CAROLINA, STATE OF RHODE ISLAND, COMMONWEALTH OF VIRGINIA, STATE OF WASHINGTON, STATE OF WISCONSIN,<br><br>Plaintiffs,<br>v.<br><br>SCOTT BESSENT, in his official capacity as Secretary of the Treasury; UNITED STATES DEPARTMENT OF THE TREASURY; JENNA CASANOVA, in her official capacity as Acting Director of the Financial Crimes Enforcement Network; FINANCIAL CRIMES ENFORCEMENT NETWORK; TODD BLANCHE, in his official capacity as Attorney General of the United States; and MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security,<br><br>Defendants. | Case No. 6:26-cv-2359<br><br>COMPLAINT |

## I. INTRODUCTION

1. The executive branch cannot repeal a law by rulemaking. That fundamental principle resolves this case. In 2021, Congress enacted the Corporate Transparency Act (CTA or Act) in response to a problem that has long plagued law enforcement and tax administration in the United States: the existence of secretive shell corporations, arranged in complex, layered structures designed to hide information about the individuals who own or control them, a category of information referred to as beneficial ownership information (BOI). Through the CTA, Congress required that both domestic and foreign companies report ownership information to the Treasury Department. *See* 31 U.S.C. § 5336(a)(11)(A). Now, ignoring Congress's judgment, the Treasury Department has promulgated a regulation that exempts from the law's ambit all domestic companies—over 99.9% of the entities originally required to report—effectively repealing the Act. Neither the Administrative Procedure Act nor the Constitution permits this lawless action.

2. Because malign actors can incorporate shell companies in U.S. jurisdictions that do not require them to disclose any ownership information, federal and state law enforcement officials cannot use incorporation information alone to identify individuals behind money laundering, tax evasion, and other illegal activities accomplished through shell companies. The Act addresses this problem by establishing the first comprehensive regime requiring corporate entities, domestic and foreign, to report their ownership information. *Id.* § 5336(b)(1)(A). The Act also recognizes the sensitivity of ownership information through 23 tailored exemptions for specific categories of companies, *id.* § 5336(a)(11)(B), and by shielding reported ownership information from the public and making it available only to authorized state and federal law enforcers and closely regulated financial institutions, *id.* § 5336(c)(2)(B).

3. The Act tasks the Financial Crimes Enforcement Network (FinCEN), a subagency within the Treasury Department, with collecting this information and making it available to state and federal regulators. In 2022, FinCEN issued a regulation implementing the Act, with a January 1, 2024, effective date. *See* Beneficial Ownership Information Reporting Requirements, 87 Fed.

Reg. 59498 (Sep. 30, 2022) (Reporting Rule). Throughout 2024, millions of corporate entities reported information about their owners through the system established by FinCEN.

4. Then, after the change in presidential administrations, the Treasury Department and FinCEN made a sudden about-face. On March 21, 2025, FinCEN issued an interim final rule that effectively eliminates the Act's carefully designed reporting system. *See* Beneficial Ownership Information Reporting Requirement Revision and Deadline Extension, 90 Fed. Reg. 13689 (Mar. 26, 2025) (Interim Exemptions Rule). FinCEN finalized the rule in August of this year. Beneficial Ownership Information Reporting Requirement Revision, 91 Fed. Reg. 52508 (Aug. 14, 2026) (Final Exemptions Rule). These rules created two entirely novel exemptions to the CTA's reporting requirements: first, they exempted all entities formed in the United States from reporting any ownership information; second, they exempted foreign entities from reporting any information about or from their U.S. owners.

5. According to the Final Exemptions Rule's own estimates, it carves out over 99.9% of the millions of entities that would otherwise be required to report their ownership under the Act. FinCEN accomplished this sweeping reduction in the law's coverage by literally copying statutory text for *covered* entities into a new regulatory provision for *exempted* entities. *Compare* 31 U.S.C. § 5336(a)(11)(A) (*including* any company "created by the filing of a document with a secretary of state or a similar office under the law of a State or Indian Tribe"); *with* 31 C.F.R. § 1010.380(c)(2)(xxiv) (*exempting* any company "[c]reated by the filing of a document with a secretary of state or any similar office under the law of a State or Indian tribe").

6. In addition, the Final Exemptions Rule, without any advance warning in the interim rule or any opportunity for public comment, announces that FinCEN will purge all existing ownership data for newly exempted entities by, at the latest, February 2027 (the "Data Purge").

7. Both the Interim and Final Exemptions Rules violate the Administrative Procedure Act (APA) multiple times over. Most fundamentally, defendants lack the authority to repeal an act of Congress by promulgating an exemption via rulemaking. *Cf. Clinton v. City of New York*, 524 U.S. 417, 438 (1998) ("There is no provision in the Constitution that authorizes the President to

enact, to amend, or to repeal statutes.”). The Exemptions Rules are therefore not justified by the statutory provisions on which Treasury relies. *See* 31 U.S.C. §§ 5336(a)(11)(B)(xxiv), 5318(a)(7). Congress did not grant FinCEN power to repeal the Act via exemption. Nor did Congress grant FinCEN authority to wipe existing reported data; on the contrary, the threatened Data Purge would violate multiple statutes requiring records retention, including the CTA itself.

8. The Exemptions Rules are also arbitrary and capricious under the APA. The Rules make conclusory assertions that the exemptions can be reconciled with the purposes of the Act but fail to provide sufficient evidentiary support for these assertions. The threadbare justifications that the Rules provide are based on misinterpretation of source material, fail to consider important aspects of the problem that the Act was designed to address, and offer explanations that run counter to the evidence that FinCEN had before it.

9. For these reasons, Plaintiff States are entitled to a judgment that declares unlawful and vacates the Interim Exemptions Rule and the Final Exemptions Rule, as well as immediate relief to prevent the impending destruction of the beneficial ownership information that Congress directed FinCEN to collect and preserve.

## II. JURISDICTION AND VENUE

10. The Court has subject matter jurisdiction under 28 U.S.C. § 1331. The Court has authority to grant declaratory, injunctive, and other relief pursuant to 28 U.S.C. §§ 2201–2202 and 5 U.S.C. §§ 702, 705, and 706.

11. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), (e)(1) and 5 U.S.C. § 703. Defendants include a United States officer sued in his official capacity. The State of Oregon, including the Oregon Department of Justice, resides in Marion County, and a substantial part of the events giving rise to this Complaint occurred and continue to occur within Marion County and the District of Oregon.

## III. PARTIES

### A. Plaintiffs

12. Plaintiff the State of Oregon is a sovereign state of the United States of America. Oregon is represented by Attorney General Dan Rayfield. The Attorney General is the chief legal officer of Oregon and is authorized to institute this action.

13. Plaintiff the State of Illinois is a sovereign State of the United States of America. Illinois is represented by Attorney General Kwame Raoul. The Attorney General is the chief legal officer of Illinois and is authorized to institute this action. *See* Ill. Const. art. V, § 15; 15 Ill. Comp. Stat. Ann. 205/4.

14. Plaintiff the State of Arizona is a sovereign state of the United States of America. Arizona is represented by and through its chief legal officer, Attorney General Kristin K. Mayes. *See* Ariz. Rev. Stat. § 41-192(A). Attorney General Mayes is authorized to pursue this action on behalf of the State of Arizona. *Id.*

15. Plaintiff the State of California is a sovereign State of the United States of America. California is represented by Attorney General Rob Bonta. The Attorney General is the chief legal officer of California and head of the California Department of Justice. He is authorized to pursue this action. Cal. Const., art. V, § 13; Cal. Gov't Code §§ 12510, 12511.

16. Plaintiff the State of Colorado is a sovereign state of the United States of America. Colorado is represented by Philip J. Weiser, the Attorney General of Colorado. The Attorney General acts as the chief legal representative of the state and is authorized by Colo. Rev. Stat. § 24-31-101 to pursue this action.

17. Plaintiff the State of Delaware is a sovereign state of the United States of America. Delaware is represented by and through its Attorney General, Kathleen Jennings. The Attorney General is Delaware's chief law enforcement officer and is authorized to pursue this action pursuant to Del. Code Ann. tit. 29, § 2504, on behalf of the State.

18. Plaintiff the District of Columbia is a municipal corporation organized under the Constitution of the United States. It is empowered to sue and be sued, and it is the local government

for the territory constituting the permanent seat of the federal government. The District is represented by and through its chief legal officer, Attorney General Brian L. Schwalb. The Attorney General has general charge and conduct of all legal business of the District and all suits initiated by and against the District and is responsible for upholding the public interest. D.C. Code. § 1-301.81.

19. Plaintiff the State of Maine is a sovereign state of the United States of America. Maine is represented by Aaron M. Frey, the Attorney General of Maine. The Attorney General is authorized to pursue this action pursuant to 5 Me. Rev. Stat. Ann. § 191.

20. Plaintiff the State of Maryland is a sovereign state of the United States of America. Maryland is represented by and through its chief legal officer, Attorney General Anthony G. Brown.

21. Plaintiff the Commonwealth of Massachusetts is a sovereign state of the United States of America. Massachusetts is represented by Attorney General Andrea Joy Campbell, the Commonwealth's chief legal officer.

22. Plaintiff the State of Michigan is a sovereign state of the United States of America. Michigan is represented by Attorney General Dana Nessel, who is the chief law enforcement officer for the State of Michigan.

23. Plaintiff the State of Minnesota is a sovereign state of the United States. Minnesota is represented by and through its chief legal officer, Minnesota Attorney General Keith Ellison, who has common law and statutory authority to sue on Minnesota's behalf.

24. Plaintiff the State of Nevada, represented by and through Attorney General Aaron D. Ford, is a sovereign State within the United States of America. The Attorney General is the chief law enforcement officer of the State of Nevada and is authorized to pursue this action under Nev. Rev. Stat. § 228.110 and Nev. Rev. Stat. § 228.170.

25. Plaintiff the State of New Mexico is a sovereign state in the United States of America. New Mexico is represented by Attorney General Raúl Torrez, who is the chief law

enforcement officer of New Mexico and is authorized to pursue this action under N.M. Stat. § 8-5-2(B).

26. Plaintiff the State of New York, represented by and through its Attorney General Letitia James, is a sovereign State of the United States of America. As the State's chief legal officer, the Attorney General is authorized to sue on the State's behalf.

27. Plaintiff the State of New Jersey is a sovereign state in the United States. New Jersey is represented by Attorney General Jennifer Davenport, who is the chief law enforcement officer of New Jersey and is authorized to institute this action.

28. Plaintiff the State of North Carolina is a sovereign state of the United States of America. North Carolina is represented by Attorney General Jeff Jackson, who is the chief law enforcement officer of North Carolina.

29. Plaintiff the State of Rhode Island, represented by and through its Attorney General, Peter F. Neronha, is a sovereign State in the United States of America. As the State's chief legal officer, the Attorney General is authorized to act on behalf of the State in this matter.

30. Plaintiff the Commonwealth of Virginia is a sovereign state of the United States of America. Virginia is represented by Attorney General Jay Jones, the chief executive officer of the Department of Law. Va. Code § 2.2-500. Attorney General Jones is authorized to represent the Commonwealth and its interests in controversies with the federal government. Va. Code § 2.2-513.

31. Plaintiff the State of Washington, represented by and through the Attorney General, is a sovereign state of the United States of America. Attorney General Nick Brown is Washington's chief law enforcement officer and is authorized under Wash. Rev. Code § 43.10.030 to pursue this action.

32. Plaintiff the State of Wisconsin is a sovereign state of the United States of America. Wisconsin is represented by its Attorney General, Joshua L. Kaul. The Attorney General is the chief legal officer of the State and has been authorized to institute this action. *See* Wis. Stat. § 165.25(1m).

### B. Defendants

33. Defendant Scott Bessent is the Secretary of the Treasury. He is sued in his official capacity.

34. Defendant the United States Department of the Treasury is an agency of the United States. *See* 5 U.S.C. § 701(b)(1).

35. Defendant Jenna Casanova is Acting Director of the Financial Crimes Enforcement Network. She is sued in her official capacity.

36. Defendant Financial Crimes Enforcement Network (FinCEN) is an agency of the United States within the Department of the Treasury. *See* 5 U.S.C. § 701(b)(1).

37. Defendant Todd Blanche is the United States Attorney General. He is sued in his official capacity.

38. Defendant Markwayne Mullin is the Secretary of Homeland Security. He is sued in his official capacity.

## IV. ALLEGATIONS

### A. The Corporate Transparency Act

39. A key money laundering vulnerability in any financial system are shell companies, which "have no physical presence other than a mailing address, employ no one, and produce nothing." U.S. Dep't of Treas. et al., *U.S. Money Laundering Threat Assessment* 47 (Dec. 2005), https://home.treasury.gov/system/files/246/mlta.pdf (*2005 Money Laundering Assessment*). Though some shell companies have legitimate business purposes, "their ability to hide ownership and mask financial details" makes them "popular tools for money launderers" facilitating the funding of terrorism, corruption, fraud, tax evasion, and other crimes. *Id.*

40. To address this vulnerability, the Financial Action Task Force (FATF)—the international anti-money laundering standard-setting body, of which the U.S. is a founding member—recommends enacting beneficial ownership reporting laws, which require corporate entities to disclose who actually controls them. FATF, *Guidance on Beneficial Ownership for Legal Persons* (2023), http://www.fatf-gafi.org/publications/FATFrecommendations/guidance-

beneficial-ownership-legal-persons.html. Reporting requirements prevent a bad actor from legally operating an anonymous shell company.

41. Unlike most developed democracies, however, the United States had not—until the Corporate Transparency Act—enacted reporting requirements at the federal level and had instead unsuccessfully encouraged the states to enact such requirements. *See* H.R. Rep. No. 116-457, at 44 (2020). As a result, "competition among certain states to attract legal entities to their jurisdictions [] created a 'race to the bottom'" in reporting requirements, making those states hubs for money laundering and tax evasion. *2005 Money Laundering Assessment* at 48; *see also* Jesse Drucker, *The World's Favorite New Tax Haven Is the United States*, Bloomberg Businessweek (Jan. 27, 2016, at 5:01 UTC), https://www.bloomberg.com/news/articles/2016-01-27/the-world-s-favorite-new-tax-haven-is-the-united-states. Congress enacted the Act in 2021 to end this race to the bottom. Pub. L. No. 116-283, §§ 6401–6403, 6509(b), 134 Stat. 3388, 4604–25, 4633 (2021).

42. The Act's Sense of Congress, which was enacted into law at Pub. L. No. 116-283, § 6402, begins by recognizing a fundamental problem in the United States: "more than 2,000,000 corporations and limited liability companies are being formed under the laws of the States each year," but "most or all States do not require information about the beneficial owners of the corporations, limited liability companies, or other similar entities formed under the laws of the State." *Id.* § 6402(1)–(2). By noting the millions of corporations formed "under the law of the States," Congress clearly emphasizes the domestic nature of this problem.

43. Into this void, the Sense of Congress continues, have stepped "malign actors," who "seek to conceal their ownership of corporations, limited liability companies, or other similar entities in the United States to facilitate illicit activity, including money laundering, the financing of terrorism, proliferation financing, serious tax fraud, human and drug trafficking, counterfeiting, piracy, securities fraud, financial fraud, and acts of foreign corruption." *Id.* § 6402(3). Congress emphasizes that these illegal activities constitute threats to both "interstate [i.e., domestic] and foreign commerce." *Id.* § 6402(5).

44. As the Sense of Congress explains, "money launderers" choose to "intentionally conduct transactions through corporate structures in order to evade detection, and may layer such structures, much like Russian nesting 'Matryoshka' dolls, across various secretive jurisdictions such that each time an investigator obtains ownership records for a domestic or foreign entity, the newly identified entity is yet another corporate entity, necessitating a repeat of the same process." *Id.* § 6402(4). Again, Congress specifies that these layers used to conceal illegal activity may include *domestic* entities.

45. Congress's solution is a federal scheme for "the collection of beneficial ownership information for corporations, limited liability companies, or other similar entities *formed under the laws of the States*," to "better enable critical national security, intelligence, and law enforcement efforts to counter money laundering." *Id.* § 6402(5) (emphasis added). But Congress also chose to balance the need for this collection with the sensitivity of the information at issue by making it "directly available only to authorized government authorities." *Id.* § 6402(6).

46. The Act's reporting requirements require both domestic and foreign "reporting companies" to submit their beneficial ownership information to FinCEN. *See* 31 U.S.C. § 5336(b)(1)–(2) (imposing reporting obligations). A reporting company must provide identifying information about each beneficial owner, including the owner's full legal name, date of birth, and address. *Id*.

47. The statute defines "reporting company" to include "a corporation, limited liability company, or other similar entity that is . . . created by the filing of a document with a secretary of state or similar office under the law of a State or Indian Tribe," *id*. § 5336(a)(11)(A)(i). In other words, the statutory definition for the reporting companies that must provide ownership information to FinCEN specifically includes domestic companies incorporated under state law. Such domestic companies are one of only two categories of "reporting company" under the statute, the other being companies "formed under the law of a foreign country and registered to do business in the United States." *Id.* § 5336(a)(11)(A)(ii).

48. From this broad definition of "reporting company," the Act exempts 23 specific classes of entities from BOI reporting requirements. *Id.* § 5336(a)(11)(B). Most are highly regulated entities such as banks, insurance companies, securities dealers, and other sorts of companies that are required to report ownership information under other federal laws.

49. Other exemptions reflect specific policy choices Congress made, such as the exemption for large companies that "employ more than 20 employees on a full-time basis in the United States," with more than $5,000,000 in gross receipts, and with "an operating presence at a physical office in the United States." *Id.* § 5336(a)(11)(B)(xxi). Congress concluded that such large companies were highly unlikely to be shell corporations formed solely to conceal the movement of funds and assets.

50. As another example, Congress generally exempted "pooled investment vehicles" formed by banks and securities firms. *Id.* § 5336(a)(11)(B)(xviii). But Congress required that *foreign* pooled investment vehicles disclose at least one individual with substantial control, *id.* § 5336(b)(2)(C), regardless of the nationality of that individual.[1]

51. In short, Congress finely tuned the categories of entities that, it believed, most needed to report ownership information, and the manner of that reporting.

52. The Act required the Treasury Secretary and FinCEN to issue regulations to effectuate the Act's reporting obligations. *Id.* § 5336(b)(4)–(5). Regulations promulgated under the Act must, "to the extent practicable, consistent with the purposes of [the Act]," accomplish two goals: "minimize burdens on reporting companies associated with the collection of beneficial ownership information" and "ensure the beneficial ownership information reported to FinCEN is accurate, complete, and highly useful." *Id.* § 5336(b)(4); *see also* Pub. L. No. 116-283, § 6402(8)(similarly specifying, in the Sense of the Congress, that implementing regulations both

[1] A "pooled investment vehicle" under the Act largely means the same thing as an "investment company" regulated by the Investment Company Act of 1940. 31 U.S.C. § 5336(a)(10); *see also* 15 U.S.C. § 80a-3(a)(1). Investment companies pool money from many investors and invest in securities; for example, mutual funds are typically investment companies.

"seek to minimize burdens" and result in "a database that is highly useful to national security, intelligence, and law enforcement agencies and Federal functional regulators").

53. The Act grants the Treasury Secretary a limited power, by regulation, to exempt additional classes of entities from the definition of "reporting company." 31 U.S.C. § 5336(a)(11)(B)(xxiv). The statute uses the same "highly useful" standard to circumscribe this exemption authority. The Treasury Secretary must conclude, "with the written concurrence of the Attorney General and the Secretary of Homeland Security," that reporting "would not serve the public interest" and "would not be *highly useful* in national security, intelligence, and law enforcement agency efforts to detect, prevent, or prosecute money laundering, the financing of terrorism, proliferation finance, serious tax fraud, or other crimes." *Id.* (emphasis added).

54. To facilitate the Act's reporting requirements, the Act also allows FinCEN to issue unique identifying numbers to individual owners upon request, to avoid the need to repeatedly submit their identifying information. *See id.* § 5336(b)(3)(A)(i); 31 C.F.R. § 1010.380(b)(4)(ii). Once an individual has obtained such a "FinCEN identifier," they must update their personal information, such as their street address, "in a timely manner" if the personal information changes. 31 U.S.C. § 5335(b)(2)(A)(iii), (3)(A)(ii).

55. Congress also restricted the destruction of records collected under the Act. Ownership information submitted to FinCEN under the Act's provisions must be "maintained by FinCEN for not fewer than 5 years after the date on which the reporting company terminates." 31 U.S.C. § 5336(c)(1). In addition, the Federal Records Act ("FRA") provides the "exclusive" procedures for disposal of government records. 44 U.S.C. § 3314. Those procedures require an agency to submit lists and schedules of documents proposed for destruction to the Archivist of the United States for approval by the Archivist. *Id.* §§ 3303, 3303a.

**B. The 2022 Reporting Rule**

56. On September 30, 2022, FinCEN published the Beneficial Ownership Information Reporting Requirements final rule implementing the Act's reporting requirements. 87 Fed. Reg. 59498 (Sep. 30, 2022) (Reporting Rule).

57. The Reporting Rule reproduced and codified the core definition of "reporting company" under the Act. The Act defines "reporting company" to mean either (i) a domestic company "created by the filing of a document with a secretary of state or a similar office under the law of a State or Indian Tribe" or (ii) a foreign company "formed under the law of a foreign country and registered to do business in the United States." 31 U.S.C. § 5336(a)(11)(A). The original regulation, as promulgated by the Reporting Rule, reproduced these definitions word-for-word, simply adding the defined terms "domestic reporting company" and "foreign reporting company" to describe the two main prongs of the statutory definition. *See* 87 Fed. Reg. at 59593 (formerly codified at 31 C.F.R. § 1010.380(c)(1)).

58. The Reporting Rule also reproduced and elaborated on the 23 statutory exemptions but did not add any new ones. *See* 87 Fed. Reg. at 59540, 59593–94.

59. The Reporting Rule required domestic reporting companies created before January 1, 2024, and foreign reporting companies registered before January 1, 2024, to report ownership information by January 1, 2025. *Id.* at 59592.

60. The Reporting Rule estimated that approximately 36.6 million total domestic and foreign entities existed in 2024. *Id.* at 59565. Of these, approximately 4 million were likely exempt under one or more statutory exemptions, meaning that approximately 32.6 million entities would meet the definition of "reporting company" as of 2024. *Id.* at 59568. FinCEN further estimated that about 5 million new covered entities would be formed each year. *Id.*

61. In adopting the Reporting Rule, FinCEN conducted a full notice-and-comment process during which it considered evidence, including extensive evidence on the benefits to law enforcement of collecting ownership information. *Id.* at 59500–04. For example, the Rule cites a 2016 report from the FATF finding that "the relative ease with which U.S. corporations can be established, their opaqueness and their perceived global credibility makes them attractive to abuse for [money laundering and terrorism financing], domestically as well as internationally." *Id.* at 59501 (citing FATF, *Anti-Money Laundering and Counter-Terrorist Financing Measures: United States Mutual Evaluation Report* (2016)). The rule also cites several past reports from Treasury

that emphasize the importance of comprehensive ownership reporting, including a 2022 "National Money Laundering Risk Assessment," which also identified issues specifically with U.S. domestic entities. *Id.* ("The ease with which companies can be incorporated under state law and the lack of information generally required about the company's owners or activities lead to limited transparency. Bad actors take advantage of these lax requirements to set up shell companies." (quoting U.S. Dep't of Treas., *National Money Laundering Risk Assessment* 37 (Feb. 2002)))

62. During this process, FinCEN also considered objections from small businesses asking to be exempted from reporting. *See id.* at 59498, 59500–01, 59509, 59512, 59519, 59522, 59524, 59538–39, 59546–52, 59554–55, 59557–58, 59561–62, 59569–70, 59574, 59576–77, 59583–86, 59588. In response, FinCEN expressly considered and rejected the path that it would later take in 2025, precisely because such a broad exemption would thwart the will of Congress: "[T]he definition of reporting company requires small businesses to report beneficial ownership information to FinCEN. Given FinCEN's assessment that all reporting companies are likely to be small entities, such an exemption could result in no entities being subject to the rule." *Id.* at 59583.

63. The Reporting Rule also considered possible benefits to small businesses from the regulation by "help[ing] to level the playing field for honest businesses, including small businesses with fewer resources, that are at a disadvantage when competing against criminals who use shell companies to evade taxes, hide their illicit wealth, and defraud employees and customers." *Id.* at 59501.

64. By December 2024, FinCEN had already received approximately 10 million reports containing the required beneficial ownership information in anticipation of the January 1, 2025, deadline.

**C. The 2025 Interim Exemptions Rule**

65. Then, in January 2025, the new leadership of the Treasury Department arrived and almost immediately began unwinding the orderly implementation of the Act passed by Congress.

66. On February 18, 2025, FinCEN announced that it would extend the reporting deadlines for most companies and that it would "initiate a process this year to revise the BOI

reporting rule to reduce burden for lower-risk entities, including many U.S. small businesses." FinCEN, *FinCEN Extends Beneficial Ownership Information Reporting Deadline by 30 Days; Announces Intention to Revise Reporting Rule*, FIN-2025-CTA1 (Feb. 18, 2025), https://www.fincen.gov/system/files/shared/FinCEN-BOI-Notice-Deadline-Extension-508FINAL.pdf [https://perma.cc/2L3R-6F64].

67. On March 2, 2025, Treasury announced that even after the revised reporting deadlines, it would not enforce penalties or fines against "U.S. citizens or domestic reporting companies or their beneficial owners" and that it would issue a new proposed rulemaking "narrow[ing] the scope of the rule to foreign reporting companies only." Press Release, U.S. Dep't of Treas., Treasury Department Announces Suspension of Enforcement of Corporate Transparency Act Against U.S. Citizens and Domestic Reporting Companies (Mar. 2, 2025), https://home.treasury.gov/news/press-releases/sb0038 [https://perma.cc/57CL-7NVS].

68. On March 26, 2025, as threatened, FinCEN issued an interim final rule that revised the 2022 Reporting Rule by inventing two significant exemptions found nowhere in the statute. Beneficial Ownership Information Reporting Requirement Revision and Deadline Extension, 90 Fed. Reg. 13688 (Mar. 26, 2025) (Interim Exemptions Rule). The interim rule became effective immediately and sought comments on or before May 27, 2025. *Id.* at 13689.

69. First, the Interim Exemptions Rule created the **Domestic Company Exemption**. Citing the Act's delegation of power to the Treasury Secretary to exempt an "entity or class of entities" from reporting ownership information under carefully delineated circumstances, *see supra* ¶ 53, the Rule exempted *all* domestic companies wholesale from the requirement to provide ownership information. It did so by deleting the statutory language for domestic reporting companies from the regulation and replacing it with a single word: "[Reserved]." 90 Fed. Reg. at 13697 (codified at 31 C.F.R. § 1010.3809(c)(1)(i)).

70. The Interim Exemptions Rule's reasoning for eviscerating the Act in this manner relied, first and foremost, on nakedly political considerations: "On January 20, 2025, there was a change in presidential administrations, which has resulted in a reassessment of the balance struck

Case: 24-40792 Document: 410 Page: 19 Date Filed: 10/29/2026

by the Reporting Rule." 90 Fed. Reg. at 13691. The preamble then cites a January 31, 2025, Executive Order titled "Unleashing Prosperity Through Deregulation." Exec. Order No. 14192 (Jan. 31, 2025), 90 Fed. Reg. 9065 (Feb. 6, 2025) (Deregulation EO). While not specific to regulations addressing corporate transparency or regulations issued by FinCEN, the executive order sets a general policy "to significantly reduce the private expenditures required to comply with Federal regulations." 90 Fed. Reg. at 13691 (quoting the executive order).

71. The Interim Exemptions Rule recited the elements for exempting a class of entities pursuant to 31 U.S.C. § 5336(a)(11)(B)(xxiv). It contained a determination from the Treasury Secretary that "the reporting of BOI by domestic reporting companies and their beneficial owners 'would not serve the public interest' and 'would not be highly useful in national security, intelligence, and law enforcement agency efforts to detect, prevent, or prosecute money laundering, the financing of terrorism, proliferation finance, serious tax fraud, or other crimes.'" 90 Fed. Reg. at 13691.

72. The Interim Exemptions Rule asserted that the Treasury Secretary had received the written concurrence of the Attorney General and the Secretary of Homeland Security with this determination, *id.*, referred to hereinafter as the "Written Concurrences."

73. Even as the Interim Exemptions Rule recognized that "failure to require BOI reporting by domestic reporting companies could result in illicit finance risks," it asserted without support that "[t]he Secretary has taken illicit finance risks into account in considering the usefulness of collecting BOI." *Id.* The Rule does not describe how such risks were "taken into account."

74. Second, the Interim Exemptions Rule created the **U.S. Persons Exemption**, which allows *foreign* reporting companies to decline to identify any beneficial owners who are "United States persons." *Id.* at 13692 (codified as amended at 31 C.F.R. § 1010.380(b)(5)). United States persons, or "U.S. persons," includes American citizens, residents, and entities organized "under the law of the United States or of any State." 26 U.S.C. § 7701(a)(30) (Internal Revenue Code definition incorporated by reference at 31 U.S.C. § 5336(a)(14), 31 C.F.R. § 1010.380(f)(10)).

75. The Act itself provides no authority for exempting categories of persons who are beneficial owners of non-exempted reporting companies. Instead, FinCEN pointed to a general provision of the Bank Secrecy Act of 1970 that allows the Treasury Secretary to "prescribe an appropriate exemption from a requirement under this subchapter and regulations prescribed under this subchapter." 31 U.S.C. § 5318(a)(7).

76. In support of the U.S. Persons Exemption, the Interim Exemptions Rule again merely cites to the Deregulation EO and asserts without further explanation "the Secretary has considered that exempting reporting companies from reporting U.S. persons' BOI could result in risks of evasion or illicit finance risks." Interim Exemptions Rule, 91 Fed. Reg. at 13692. The rule provides no further analysis explaining how FinCEN determined that these risks were outweighed by the benefits of this exemption.

77. As to both novel exemptions, the Interim Exemptions Rule provides no justification for why requiring reporting from domestic entities and U.S. persons would "not be highly useful" to law enforcement. 31 U.S.C. § 5336(a)(11)(B)(xxiv). Indeed, the Interim Exemptions Rule openly admits that FinCEN has not undertaken "the kinds of robust quantitative analysis necessary to estimate the incremental value of such intelligence." 90 Fed. Reg. at 13694.

78. In assessing the reduced benefit from access to ownership information caused by its new exemptions, the Interim Exemptions Rule speculates that "the reduction in expected benefits may, in some cases, be attenuated by the availability of alternative sources of similar beneficial ownership information (e.g., commercially available information)." The preamble provides no support for this proposition.

## D. The 2026 Final Exemptions Rule

79. On August 14, 2026, FinCEN issued a final rule that reaffirmed the Interim Exemption Rule's exemption of all domestic entities and U.S. persons. Beneficial Ownership Information Reporting Revision, 91 Fed. Reg. 52508, 52516–17 (Aug. 14, 2026) (Final Exemptions Rule). The Final Exemptions Rule added still further exemptions for U.S. persons, providing that they need not continue updating their FinCEN identifiers. *Id.* at 52515–16.

Moreover, the Final Exemptions Rule—without warning or any opportunity for public comment and without any citation to statutory authority—announced an imminent data purge of all beneficial ownership information submitted to date about domestic companies and persons. *Id.* at 52518.

80. In sum, the Final Exemptions Rule has made four major changes as compared to the original Reporting Rule:

**a.** **The Domestic Company Exemption:** Exempting all domestic companies from reporting under the Act (codified at 31 C.F.R. § 1010.380(c)(1)(i), (2)(xxiv)).

**b.** **The U.S. Persons Exemption:** Exempting all U.S. persons from being reported as a beneficial owner, company applicant, or person with control over a foreign pooled investment vehicle under the Act (codified at *id.* § 1010.380(b)(2)(iii), (5));

**c.** **The FinCEN Identifier Freeze:** Suspending the requirement to update FinCEN identifiers for U.S. individuals (codified at *id.* § 1010.380(b)(4)(iii)(A)); and

**d.** **The Data Purge:** Wiping all previously collected data that would have qualified for FinCEN's new, broad, novel exemptions.

81. Taken together, these actions—discussed in more detail below—effectively repeal the Act by exempting over 99.9% of the entities and persons covered by the statute that Congress passed.

**a. The Domestic Company Exemption**

82. The Final Exemptions Rule reaffirms, without change, what it openly calls a "blanket exemption of domestic entities from the definition of 'reporting company.'" 91 Fed. Reg. at 52516.

83. The Final Exemptions Rule, like the Interim Exemptions Rule, accomplishes this sweeping change to the Act's requirements by taking language that Congress used to identify

domestic entities *covered* by the Act and reusing that very same language to *carve out* those same entities. *See* 91 Fed. Reg. at 52528 (preserving the Interim Rule without change on this point). First, the statutory language for the law's coverage of domestic companies found at 31 U.S.C. § 5336(a)(11)(A) is simply deleted from the regulation and replaced with "[Reserved]." 31 C.F.R. § 1010.380(c)(1)(i). Second, for good measure, the same language is repurposed as a regulatory exemption, such that FinCEN has expressly nullified Congress's enacted text. *See id.* § 1010.380(c)(2)(xxiv).

84. The Final Exemptions Rule estimates that, with this novel exemption in place, only 28,000 existing foreign reporting companies will need to report ownership information, along with an additional 1,800 new foreign reporting companies in future years. 91 Fed. Reg. at 59520–21. As the Final Rule notes, *id.* at 59520, the original estimate of the reporting population was over 32.5 million existing companies, plus another 5 million new companies in future years. (citing Reporting Rule, 87 Fed. Reg. at 59568).

85. As a result, according to FinCEN's own estimates for the first two years of compliance, the Domestic Company Exemption excludes 99.9% of the reporting companies that are covered by the Act as Congress wrote it.[2]

86. The Act, at 31 U.S.C. § 5336(a)(11)(B)(xxiv), permits the Treasury Secretary to create a new exemption from the statutory definition of "reporting company" only if reporting "would not serve the public interest" and "would not be highly useful" to law enforcers.

87. Congress concluded that beneficial ownership reporting from domestic entities would serve the public interest. *See* 31 U.S.C. § 5336(a)(11)(A)(i); Pub. L. 116-283, § 6402(5)(B)–(C). The Final Exemptions Rule, in contrast, asserts generally that "the costs of time and money that the BOI requirements would place on law-abiding American small businesses" do not serve the public interest. 91 Fed. Reg. at 52513.

88. Congress concluded that beneficial ownership reporting from domestic entities would generate a database highly useful to law enforcement. *See* 31 U.S.C. § 5336(a)(11)(A)(i);

---

[2] 1 – ((28,000 + 1800) / (32,556,929 + 4,998,468)) equals approximately 99.92 percent.

Pub. L. 116-283, § 6402(5)(D). The Final Exemptions Rule, in contrast, asserts that "collecting of BOI from nearly all American small businesses" would not generate a "highly useful database" because the "vast majority" of business are "not engaged in illicit activity." 91 Fed. Reg. at 52514. For the subset of shell companies that *are* formed for illicit purposes, however, FinCEN does not describe how reporting "would not be highly useful" (as it must to justify the blanket Domestic Company Exemption).

89. The Treasury Secretary did not obtain new written concurrences from the Attorney General and the Secretary of Homeland Security to support the Final Exemptions Rule; rather, the Final Exemptions Rule relies on the Written Concurrences allegedly obtained before the Interim Final Rule. *Id.* at 52514, 52516 n.56.

90. The Final Exemptions Rule disregarded alternate proposals that would have instead adopted "more targeted carve-outs as alternatives to the blanket exemption." 91 Fed. Reg. at 52516. The Rule did not discuss any of the proposals in detail but merely concluded that they were not "effective" "on a benefit-to-burden ratio basis." *Id.* at 52517.

91. In conclusion, the Rule explains that its exemptions mean that "methods for addressing certain existing illicit finance risks return to the status quo ante before the [2022] Reporting Rule;" *id.* at 52514—that is, before FinCEN had implemented the Congressional Act through regulation. In other words, the Final Exemptions Rule effectively returns to "the status quo ante" before the Act existed at all.

**b. The U.S. Persons Exemption**

92. The Final Exemptions Rule reaffirms and expands the U.S. Persons Exemption created by the Interim Final Rule in three ways.

93. First, like the Interim Rule, the Final Rule excuses even foreign companies—the only ones that are left after the Domestic Company Exemption—from having to report ownership information about "any beneficial owner who [is] a U.S. person." 91 Fed. Reg. at 52517.

94. However, the Act includes a specific definition of "beneficial owner" with five exceptions, none of which exempt owners based on whether they are U.S. persons. *See* 31 U.S.C. § 5336(a)(3)(B).

95. Second, the Final Rule expands the Interim Rule's exemption for U.S. persons who are beneficial owners of foreign companies to also exclude U.S. persons who are "company applicants," 91 Fed. Reg. at 52517, meaning the individuals who file the documents that create an entity with a State or foreign government, 87 Fed. Reg. at 59596 (formerly codified at 31 C.F.R. § 1010.380(e)). So, under the Final Rule, foreign companies no longer need to disclose U.S. persons who register them to do business in the United States.

96. The Act also defines "applicant," and this definition provides no exemption for U.S. persons. 31 U.S.C. § 5336(a)(2).

97. The Final Exemptions Rule codified these first two U.S. persons exemptions as "special exemptions" at 31 C.F.R. § 1010.380(b)(5). *See* 91 Fed. Reg. at 52528.

98. Third, the Final Exemptions Rule reaffirms another exemption innovated by the Interim Exemptions Rule, excusing any U.S. person from having to be named as the controlling individual of a "foreign pooled investment vehicle." 91 Fed. Reg. at 52515 (codified at 31 C.F.R. § 1010.380(b)(2)(iii)). As noted, *supra* ¶ 50, Congress generally exempted from the Act domestic investment vehicles formed by banks and securities firms, *id.* § 5336(a)(11)(B)(xviii), but required that *foreign* investment vehicles disclose at least one individual with substantial control over them, *id.* § 5336(b)(2)(C). The Interim and Final Rules, ignoring the distinction that Congress drew, excuse U.S. persons from ever having to be named as the person with control over even a *foreign* investment company. If there is "no individual with substantial control who was not a U.S. person"—in other words, if all individuals with substantial control *are* U.S. persons—then foreign investment companies are not "required to report any beneficial owners." 91 Fed. Reg. at 52515.

99. As authority for all three components of the U.S. Persons Exemption, the Final Exemptions Rule once again merely points to the Secretary's general power under Bank Secrecy Act of 1970 to "prescribe an appropriate exemption from a requirement." 31 U.S.C. § 5318(a)(7).

100. Only a single, brief passage of the Final Exemptions Rule describes why the Treasury Secretary has deemed the U.S. Persons Exemption to be “appropriate.” That passage merely cites the Deregulation EO and the current administration’s preference to reduce regulatory burdens. *See* 91 Fed. Reg. at 52512. As to the exemption for foreign investment companies in particular, the Final Rule simply notes that the new exemption is “consistent with the general approach to the exemption of U.S. beneficial owners from reporting obligations.” *Id.* at 52515.

**c. The FinCEN Identifier Freeze**

101. The Final Exemptions Rule also exempts U.S. persons from a requirement to update or correct information previously provided in order to obtain a FinCEN identifier. 91 Fed. Reg. at 52515–16. Under the Act, individuals and reporting companies can choose to request a FinCEN identifier by providing the ownership information required by the statute, after which they can use the FinCEN identifier for some reporting purposes. *See* 31 U.S.C. § 5336(b)(3). The 2022 Reporting Rule implemented this method of facilitating compliance with the Act. 87 Fed. Reg. at 59523-4 (formerly codified at 31 C.F.R. § 1010.380(b)(4)(iii)).

102. The Act provides that once an individual has obtained such a “FinCEN identifier,” they must update their personal information, like their street address, “in a timely manner” if the personal information changes. 31 U.S.C. § 5335(b)(2)(A)(iii), (b)(3)(A)(ii). The Reporting Rule accordingly required such updates within 30 days. 31 C.F.R. § 1010.380(b)(4)(iii)(A). The Final Exemptions Rule modifies this requirement by specifying that it applies only if the individual “is not a United States person.” 91 Fed. Reg. at 52528 (now codified at 31 C.F.R. § 1010.380(b)(4)(iii)(A)).

103. The Final Exemptions Rule reasons that its sweeping repeal of the Act as to domestic companies and persons essentially renders the requirement to update a FinCEN identifier obsolete: Given that the Final Rule “eliminates all requirements for reports about U.S. persons—beneficial owners, company applicants, and legal entities alike,” keeping those domestic FinCEN identifiers updated would have no “justification.” 91 Fed Reg. at 52516.

104. The Final Exemptions Rule provides no independent reasons for why, in the absence of the novel Domestic Company and U.S. Persons Exemptions, the FinCEN Identifier Freeze would be warranted.

105. The Final Exemptions Rule cites, as the statutory authority for the FinCEN Identifier Freeze, the Treasury Secretary's authority "by regulation [to] prescribe procedures and standards governing . . . any FinCEN identifier." 31 U.S.C. § 5336(b)(4)(A).

106. Any regulations promulgated under that provision must, once again, "ensure the beneficial ownership information reported to FinCEN is accurate, complete, and highly useful." *Id.* § 5336(b)(4)(B)(ii). The Final Exemptions Rule contains no analysis as to how the FinCEN Identifier Freeze meets that standard.

**d. The Data Purge**

107. FinCEN has already collected millions of BOI reports under the 2022 Reporting Rule, including approximately 15 million BOI reports prior to FinCEN's issuance of the Interim Exemptions Rule on March 26, 2025.

108. After imposing the broad exemptions discussed *supra* ¶¶ 82-106, the Final Exemptions Rule then announces that FinCEN will delete all information previously reported by entities who would have qualified for its new exemptions had they been in effect, 91 Fed Reg. at 52518—which is to say, more than 99.9% of entities. The rule explains that FinCEN plans to delete this information in one "sweep," and warns that if a U.S. company or U.S. person reports BOI after February 10, 2027, FinCEN does not anticipate deleting that information. *Id.*

109. This mass deletion of beneficial ownership information, which Plaintiff States refer to as the "Data Purge," is a policy, guideline, or directive implemented by Treasury and FinCEN to effect the destruction of data collected under the Act.

110. This language about a single "sweep" on or about February 10, 2027, indicates that the Purge is imminent and will occur on or before that date.

111. The Final Exemptions Rule contains no discussion of FinCEN's statutory authority to undertake the Data Purge.

112. The Final Exemptions Rule states that "FinCEN anticipates working with the National Archives and Records Administration and implementing a process" to carry out the deletion of records, but the Final Exemptions Rule does not indicate that any such process has begun or that the Archivist has approved the destruction of records planned by FinCEN on any timeline, as required under the Federal Records Act. 44 U.S.C. §§ 3303, 3303a.

**E. Implications of the Exemptions Rules**

113. The Exemptions Rules create a set of exemptions to the Corporate Transparency Act's beneficial ownership reporting scheme that guts the Act's reporting requirements by providing multiple avenues for malign actors to avoid any beneficial ownership reporting at all.

114. First and foremost, the Exemptions Rules have eliminated 99.9% of the coverage of the original Act as passed by Congress, because FinCEN's own data reflect that the overwhelming majority of reporting companies were domestic. *See supra* ¶ 85; *see also* 91 Fed. Reg. at 52520 (the "proportion of foreign companies in FinCEN's internal data" before the Interim Exemptions Rule was only "0.06 percent of all reporters").

115. The Exemptions Rules also provide straightforward pathways even for *foreign* companies to easily evade the Act's requirements. For example, foreign reporting companies can create new American subsidiaries to do their domestic business, merge with existing domestic entities, or transfer ownership to a U.S. person, any of which would exempt foreign companies from beneficial ownership reporting. And by inserting just one exempt entity or "blocker" into an ownership structure, individuals engaging in illicit activities can easily avoid reporting ownership information to FinCEN for an entire chain of entities that own and control an exempt entity.

116. The Final Exemptions Rule does not anticipate or address the ease with which malign foreign actors will make use of the Domestic Company and U.S. Persons Exemptions.

117. That failure is all the more glaring because the Interim Exemptions Rule acknowledged the problems posed by complex corporate structures involving layers of entities. In summarizing FATF's findings about shell companies, the Interim Exemption Rule explained that "[w]hen these structures are used for illicit purposes, money may flow through multiple layers of

shell companies before finally being withdrawn in cash or transferred to its final destination internationally." 90 Fed. Reg. at 13693. In issuing the Final Exemptions Rule, however, FinCEN makes no effort to explain how the Act's remaining sliver of beneficial ownership reporting could effectively prevent bad actors' established practice of using layers of corporate entities to disguise ownership.

**F. The Exemptions Rules Harm Plaintiff States**

118. The Exemption Rules' return to the pre-Act status quo, in which bad actors can easily avoid reporting ownership information to FinCEN, inflicts harm on Plaintiff States.

119. State agencies are among the authorized recipients of the beneficial ownership data collected by FinCEN. State[3] and local law enforcement agencies, with court authorization, can obtain the information for use in a "criminal or civil investigation" which includes "investigative and enforcement activities relating to civil or criminal violations of law." 31 U.S.C. § 5336(c)(2)(B)(i)(II); 31 C.F.R. § 1010.955(b)(iii). Additionally, state regulators who are authorized by law to supervise or assess a financial institution's compliance with "customer due diligence requirements under applicable law" can obtain beneficial ownership information for purposes of assessing or supervising such compliance. 31 U.S.C. § 5336(c)(2)(B)(iii)–(iv), (c)(2)(C).

120. Financial institutions themselves are also allowed to obtain beneficial ownership information from FinCEN to carry out their "customer due diligence requirements under applicable law." 31 U.S.C. § 5336(c)(2)(B)(iii). A financial institution may, in turn, share the information it obtained from FinCEN with its state regulator to allow the regulator to supervise the institutions' compliance with customer due diligence laws. 31 C.F.R. § 1010.955(c)(2)(iii).

121. The Exemption Rules will force law enforcement agencies to instead return to time-consuming and often ineffectual alternative procedures to obtain such information. As described in the 2022 Reporting Rule, "grand jury subpoenas and other means can be time-consuming and of limited utility." 87 Fed. Reg. at 59504. For instance, after opening an underlying grand jury

[3] The Act's definition of "state" includes the District of Columbia. 31 U.S.C. § 5336(a)(12).

investigation into a possible violation and obtaining a grand jury subpoena, law enforcement must still "determine the proper recipient of the subpoena and coordinate service, which raises additional complication in cases where excessive layers of corporate structures hide the identity of the ultimate beneficial owners." *Id.* After all of this, ownership records may not exist "because most states do not require the disclosure of BOI when creating or registering a legal entity," or for that matter, when entities acquire property. *Id.*

122. Aware of these challenges, Plaintiff States lent active support to the implementation of the Act after its passage. As contemplated by the Act, 31 U.S.C. § 5336(e)(2), secretaries of state and similar officials in Plaintiff States added notifications regarding the Act's requirements to the registration and renewal processes for entities in their States.

123. Having incurred costs to promote the effective implementation of the Act, the Exemptions Rules have now deprived Plaintiff States of access to information they are statutorily entitled to receive.

124. Plaintiff States and their agencies intend to use the beneficial ownership data to further state and local law enforcement efforts, as Congress intended. For example, Plaintiff States intend to access the data as part of criminal fraud investigations, as part of consumer protection efforts, and to assist in collecting judgments and fines imposed against defendants who are found to have violated the States' laws.

125. Additionally, each Plaintiff State has at least one agency that regulates financial institutions, including state-chartered financial institutions. Plaintiff States intend to use the beneficial ownership data as part of their regulatory functions, including during their oversight of the regulated institutions' compliance with customer due diligence laws, confirming the accuracy of the more limited ownership information collected by institutions under the Bank Secrecy Act.

126. The Exemption Rules will render the ownership data that was to be collected under the Act almost wholly unavailable to Plaintiff States for these law enforcement purposes.

127. Moreover, FinCEN is currently refusing States any access to beneficial ownership data, including the data not scheduled to be purged by the Exemption Rules. For example, in

October 2026, the Illinois Department of Financial and Professional Regulation ("IDFPR") requested access to the beneficial ownership data from FinCEN. IDFPR, which regulates state-chartered banks and other financial institutions, already had access to other data maintained by FinCEN. In response to IDFPR's request for beneficial ownership data access, a FinCEN representative wrote that "[c]urrently, FinCEN has not yet begun providing BOI access to non-federal partners" and, citing the Final Exemptions Rule, stated that "FinCEN is prioritizing efforts to ensure the BOI database complies with the updated regulatory requirement prior to proceeding with new BOI access [memorandums of understanding]," which states must enter with FinCEN before requesting information from the BOI database.

128. FinCEN's denial of access to IDFPR frustrates IDFPR's future use of the data as part of its supervision of financial institutions and those institutions' customer due diligence requirements. It also prevents IDFPR's use of the data to investigate potential violations of law involving the financial institutions and other entities that it regulates, including laws that serve to protect the safety and soundness of financial institutions, such as customer lending limits.

129. The deprivation of information also harms the Plaintiff States by preventing them from using beneficial ownership information in FinCEN's database to enforce compliance with state tax laws. This will deprive the plaintiff states of tax revenues that they would collect if not for the Domestic Company and U.S. Persons Exemptions. *See Wyoming v. Oklahoma*, 502 U.S. 437, 447–48 (1992).

130. Layered shell corporations pose great challenges to the Internal Revenue Service and state tax authorities in investigating and prosecuting tax evasion. The owners of pass-through entities, including LLCs, limited partnerships, and S corporations, typically owe taxes on the entity's income. As a result, tax authorities must determine which entities a taxpayer owns to confirm they are paying the taxes that they owe. Of course, the complexity of corporate and other entity structures designed to obscure beneficial ownership makes such determinations extremely challenging. Before the Act's passage, the multistep process of identifying the beneficial owner of an entity could take the Internal Revenue Service, which has more resources than state tax

authorities, many years. *Combating Illicit Financing by Anonymous Shell Companies Though the Collection of Beneficial Ownership Information: Hearing Before the S. Comm. on Banking, Housing, and Urb. Affs.*,116th Cong. 8–9 (2019) (statement of Steven M. D'Antuono, Acting Dep. Assistant Dir., Crim. Investigative Div., FBI), https://www.congress.gov/116/chrg/CHRG-116shrg36988/CHRG-116shrg36988.pdf.

131. Plaintiff States intend to use the beneficial ownership data to assist with the assessment and collection of state taxes, including to determine the accuracy of taxpayers' claimed income and to collect assessed state taxes from taxpayers who are delinquent in their tax payments. The Exemption Rules will significantly impair, if not fully prevent, the use of the ownership data that was to be collected under the Act for these tax-enforcement purposes.

132. The Exemptions Rules harm Plaintiff States by denying them access to beneficial ownership information that would have been contained in FinCEN's database, which the Act entitles Plaintiff States to receive. *See Pub. Int. Legal Found., Inc. v. Nago*, 174 F.4th 664, 672–73 (9th Cir. 2026); *see also FEC v. Akins*, 524 U.S. 11, 21 (1998); *Pub. Citizen v. DOJ*, 491 U.S. 440, 448–50 (1989); *Am. Soc'y for Prevention of Cruelty to Animals v. Feld Ent., Inc.*, 659 F.3d 13, 23 (D.C. Cir. 2011) (quoting *Zivotofsky ex rel. Ariz. v. Sec'y of State*, 444 F.3d 614, 618 (D.C. Cir. 2006)).

## CAUSES OF ACTION

### COUNT 1

**Violation of Administrative Procedure Act**
**Final Exemptions Rule Exceeds Statutory Authority and Is Contrary to Law**
**Against All Defendants**

133. Plaintiff States reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs.

134. The APA requires that a court set aside final agency action that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C), or "not in accordance with the law." *Id.* § 706(2)(A).

135. All the changes effected by the Final Exemptions Rule—the Domestic Company Exemption, the U.S. Persons Exemption, the FinCEN Identifier Freeze, and the Data Purge—are in excess of statutory authority and contrary to law.

136. First, Congress did not authorize the Domestic Company Exemption, which contradicts specific statutory requirements. Congress included domestic companies within the Act's coverage, 31 U.S.C. § 5336(a)(11)(A)(i), and enacted a Sense of Congress that made clear its intent to do so, Pub. L. 116-283, § 6402. Congress then enumerated 23 specific exemptions to the Act. 31 U.S.C. § 5336(a)(11)(B). Congress did not, in authorizing the Treasury Secretary to prescribe limited further exemptions, *id.* § 5336(a)(11)(B)(xxiv), delegate authority to the Secretary simply to repeal the Act as to domestic companies. Congress "does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001). And, when Congress "provides specific statutory [exemptions]," courts do not "read a 'catchall' provision to impose general [exemptions] that would include those specifically enumerated." *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 185 (2011). Moreover, the Domestic Company Exemption does not meet the requirements of § 5336(a)(11)(B)(xxiv) because it contravenes Congress's conclusion, as demonstrated by the text of the Act, that reporting from domestic companies would serve the public interest and be highly useful in law enforcement.

137. Second, Congress did not authorize the U.S. Persons Exemption, which contradicts specific statutory requirements. Congress did not exempt U.S. persons from the Act's definitions of "applicant" or "beneficial owner," nor from the Act's requirement that foreign investment companies identify an individual who controls them. 31 U.S.C. § 5336(a)(2)–(3), (b)(2)(C). Nor does the Act provide the Secretary with authority to exempt reporting about classes of such persons. *See id.* § 5336(a)(11)(B)(xxiv). The Treasury Secretary cannot use his generic authority to promulgate "an appropriate exemption from a requirement," *id.* § 5318(a)(7), to create instead a categorical exemption for all U.S. persons that Congress did not provide. *See Whitman*, 531 U.S. at 468.

138. Third, for similar reasons, Congress did not authorize the FinCEN Identifier Freeze. Congress mandated that individuals who have obtained FinCEN identifiers keep them updated "in a timely manner." 31 U.S.C. § 5336(b)(3)(A)(ii). The Treasury Secretary cannot, pointing to his general authority to regulate FinCEN identifier procedures, *id.* § 5336(b)(4)(A), nullify that requirement. *See Whitman*, 531 U.S. at 468.

139. Fourth, Congress did not authorize FinCEN to undertake the Data Purge, which is wholly without any statutory authority, and which contravenes multiple federal statutes. For one, the Act itself requires FinCEN to retain reported beneficial ownership information "for not fewer than 5 years after the date on which the reporting company terminates." 31 U.S.C. § 5336(c)(1). A company has not "terminated" merely because FinCEN has decided to exempt it from the Act. The Data Purge violates 31 U.S.C. § 5336(c).

140. Furthermore, beneficial ownership reports constitute "records" within the meaning of the Federal Records Act ("FRA"), 44 U.S.C. § 3301, because they are documentary materials made or received by an agency of the United States "in connection with the transaction of public business and preserved or appropriate for preservation as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the United States Government, or because of the informational value of the data they contain." *Id.* § 3301(a)(1)(A). The FRA prohibits the destruction or other disposition of federal records except as authorized under records schedules or disposal authorities approved by the Archivist of the United States, including through a General Records Schedule or agency-specific schedule, and only after the statutory review and approval processes. 44 U.S.C. §§ 3301, 3303, 3303a, 3314; 36 C.F.R. pt. 1225.

141. The Data Purge therefore constitutes an agency policy, guideline, or directive for disposal and destruction of federal records. Such agency policies must be supported by National Archives and Records Administration-approved disposition authority that identifies the beneficial ownership records series and authorizes their deletion on the terms proposed. *See Pub. Citizen v. Carlin*, 184 F.3d 900, 902 (D.C. Cir. 1999). But no such disposition authority exists, and thus the Data Purge is contrary to law on that basis as well. *See FCC v. NextWave Pers. Commc'ns Inc.*,

Case: 24-40792 Document: 410 Page: 34 Date Filed: 10/29/2026

537 U.S. 293, 300 (2003) (contrary to law "means, of course, *any* law, and not merely those laws that the agency itself is charged with administering").

142. As a result, the Final Exemptions Rule, in its entirety, exceeds the Treasury Secretary's authority and is contrary to law.

**COUNT 2**

**Violation of the Administrative Procedure Act**
**Final Exemptions Rule Is Arbitrary and Capricious**
**Against All Defendants**

143. Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs.

144. Under the APA, a court must set aside final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency's action is arbitrary and capricious when it "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, [or] offered an explanation for its decision that runs counter to the evidence before the agency, or [that] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also Ohio v. EPA*, 603 U.S. 279, 292 (2024) ("An agency action qualifies as arbitrary or capricious if it is not reasonable and reasonably explained." (citation modified)). Furthermore, when an agency changes position and "its new policy rests upon factual findings that contradict those which underlay its prior policy," the agency must "provide a more detailed justification than what would suffice for a new policy created on a blank slate." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

145. The Final Exemptions Rule is arbitrary and capricious because FinCEN relied on factors Congress did not intend it to consider, failed to consider important aspects of the problem the Act was designed to address, and offered explanations that run counter to the evidence before the agency. FinCEN also departed from its prior position and factual findings in the 2022 Reporting Rule without adequate explanation.

146. The Domestic Company Exemption is arbitrary and capricious because FinCEN does not reasonably explain its conclusions that beneficial ownership reporting from domestic entities would not serve the public interest and would not be "highly useful." Instead, it relies throughout on the alleged burden to small businesses. But by enacting a statute that largely requires reporting from small businesses, *see* 31 U.S.C. § 5336(a)(11)(B)(xxi), Congress has already weighed this burden and decided to require reporting from small businesses. Thus, the alleged burden to small businesses is not a factor that Congress directed FinCEN to consider in assessing whether reporting is "highly useful" under § 5336(a)(11)(B)(xxiv).

147. The Domestic Company Exemption is also arbitrary and capricious because FinCEN did not meaningfully consider "alternatives . . . within the ambit of the existing policy." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 30 (2020) (alterations omitted). FinCEN failed to meaningfully consider narrower exemptions that would have better aligned with Congress's intent to require beneficial ownership reporting from domestic entities.

148. The Domestic Company and U.S. Persons Exemptions are also both arbitrary and capricious because their explanations run counter to the evidence before FinCEN and ignore important aspects of the problem before FinCEN. For instance, FinCEN fails to consider or discuss the ease with which foreign malign actors will be able to evade the Act's remaining reporting requirements through the broad exemptions that FinCEN has created.

149. The FinCEN Identifier Freeze and the Data Purge are arbitrary and capricious for the same reasons: The only justification that the agency has offered for these actions was to establish conformity with the Domestic Company and U.S. Persons Exemptions. The FinCEN Identifier Freeze and Data Purge also ran counter to the evidence before the agency.

150. Finally, the Final Exemptions Rule does not adequately explain how the agency arrived at factual findings that are diametrically opposed to the 2022 Reporting Rule. The Final Exemptions Rule dismisses extensive evidence FinCEN presented in the 2022 Reporting Rule in support of the value of beneficial ownership reporting by merely concluding that (1) the exempted

ownership information is not worth the cost, and (2) the 2022 Reporting Rule was "inadequately appreciative of business burden." It presents no specific evidence in support of these conclusions.

151. Because the Final Exemptions Rule is arbitrary and capricious, it violates the APA.

**COUNT 3**

**Violation of Administrative Procedure Act**
**Written Concurrences Are Arbitrary and Capricious**
**Against Defendants Blanche and Mullin**

152. Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs.

153. Under the APA, a court must set aside final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also State Farm*, 463 U.S. at 52 (agency action must be supported by a "rational connection between the facts found and the choice made" (citation modified)).

154. The Act requires the Treasury Secretary to obtain the "written concurrence of the Attorney General and the Secretary of Homeland Security" before the Treasury Secretary may promulgate an exemption pursuant to 31 U.S.C. § 5336(a)(11)(B)(xxiv).

155. In the Interim Exemptions Rule, the Treasury Secretary claims that he had received the required written concurrences for the Domestic Company Exemption. *See* 90 Fed. Reg. at 13691; *see also supra* ¶ 72.

156. The Written Concurrences of the Attorney General and Homeland Security Secretary were final agency action because they marked the consummation of the Attorney General's and Homeland Security Secretary's decision-making processes and resulted in legal consequences. *See generally Bennett v. Spear*, 520 U.S. 154, 178 (1997).

157. The Written Concurrences were arbitrary and capricious because they were "not reasonable and reasonably explained." *Ohio v. EPA*, 603 at 292. The Attorney General and Homeland Security Secretary did not reach a reasoned conclusion that beneficial ownership information from domestic companies would not serve the public interest and would not be highly useful in law enforcement. *See* 31 U.S.C. § 5336(a)(11)(B)(xxiv).

## COUNT 4

**Violation of Administrative Procedure Act**
**Interim Exemptions Rule Exceeded Statutory Authority and Was Contrary to Law**
**Against All Defendants**

158. Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs.

159. For the same reasons alleged above, the Interim Exemptions Rule also exceeds defendants' statutory authority. The Interim Exemptions Rule first promulgated the Domestic Company Exemption and U.S. Persons Exemption in materially identical forms as compared to the versions in the Final Exemptions Rule.

160. Congress did not authorize the Domestic Company Exemption, which contradicts specific statutory requirements. *See supra* ¶ 136.

161. Congress did not authorize the U.S. Persons Exemption, which contradicts specific statutory requirements. *See supra* ¶ 137.

162. As a result, the Interim Exemptions Rule, in its entirety, exceeds the Treasury Secretary's authority and is contrary to law.

## COUNT 5

**Violation of Administrative Procedure Act**
**Interim Exemptions Rule Was Arbitrary and Capricious**
**Against All Defendants**

163. Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs.

164. Under the APA, a court must set aside final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also State Farm*, 463 U.S. at 52 (agency action must be supported by a "rational connection between the facts found and the choice made" (citation modified)); *Ohio v. EPA*, 603 at 292 ("An agency action qualifies as arbitrary or capricious if it is not reasonable and reasonably explained." (citation modified)). Furthermore, when an agency changes position and "its new policy rests upon factual findings that contradict those which underlay its prior policy," the agency must "provide a

more detailed justification than what would suffice for a new policy created on a blank slate." *Fox Television Stations*, 556 U.S. at 515.

165. The Interim Exemptions Rule was also arbitrary and capricious because FinCEN relied on factors Congress did not intend it to consider, failed to consider important aspects of the problem the Act was designed to address, and offered explanations that run counter to the evidence before the agency. FinCEN also departed from its prior position and factual findings in the 2022 Reporting Rule without adequate explanation.

166. Because the Interim Exemptions Rule was arbitrary and capricious, it violated the APA.

## COUNT 6

### Violation of Administrative Procedure Act
### Data Purge Is Without Observance of Required Procedure
### Against All Defendants Except Defendants Blanche and Mullin

167. Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs.

168. The APA requires that a court set aside final agency action that is "without observance of procedure required by law." 5 U.S.C. § 706(2)(D). The Data Purge was implemented without required procedure because it did not pass through the required opportunity for comment. *Id.* § 553(c).

169. The possibility of a Data Purge was not mentioned in the Interim Exemptions Rule, and the Treasury Department did not solicit comment on it.

170. The Data Purge was therefore not a "logical outgrowth" of any part of the Interim Exemptions Rule because "interested parties" could not possibly "have anticipated that the [Data Purge] was possible." *CSX Transp., Inc. v. Surface Transp. Bd.*, 584 F.3d 1076, 1080 (D.C. Cir. 2009). Only "a new round of notice and comment would provide the first opportunity for interested parties to offer comments that could persuade the agency to modify" the Purge. *Env't Def. Ctr., Inc. v. U.S. E.P.A.*, 344 F.3d 832, 851 (9th Cir. 2003).

Case 6:25-cv-02259-MTK Document 1 Filed 10/27/26 Page 36 of 41

## COUNT 7

### Violation of the U.S. Constitution
### Data Purge Violates Separation of Powers and Take Care Clause
### Against All Defendants Except Defendants Blanche and Mullin

171. Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs.

172. Federal courts possess the power in equity to "grant injunctive relief . . . with respect to violations of federal law by federal officials." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326–27 (2015).

173. Congress possesses the exclusive power to legislate. Article I, Section 1 of the U.S. Constitution states that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and a House of Representatives." U.S. Const. art. I, § 1; *see Clinton*, 524 U.S. at 438.

174. In consequence, an executive agency "literally has no power to act . . . unless and until Congress confers power upon it." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986). "An agency may not confer power upon itself." *Id.*

175. Under the Take Care Clause, the President "shall take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3; *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 327 (2014) ("Under our system of government, Congress makes the laws and the President . . . faithfully executes them.").

176. Defendants fail to identify any statutory authority in the Act, or any other law, for deleting beneficial ownership information already collected under duly promulgated rules.

177. As a result, the Final Exemptions Rule's announcement of plans to destroy previously reported beneficial ownership information exceeds the Executive Branch's constitutional authority and violates separation of powers and the Take Care Clause.

178. Pursuant to 28 U.S.C. § 2201, Plaintiff States are entitled to a declaration that the Data Purge is unconstitutional and to injunctive relief preventing defendants from implementing the Data Purge.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court:

a. Declare and hold unlawful the Exemptions Final Rule;

b. Vacate and set aside the Exemptions Final Rule;

c. Declare and hold unlawful the Written Concurrences;

d. Vacate and set aside the Written Concurrences;

e. Declare and hold unlawful the Interim Final Rule;

f. Vacate and set aside the Interim Final Rule;

g. Enjoin defendants from implementing or effectuating the Data Purge, including by entering a stay of the Data Purge pursuant to 5 U.S.C. § 705;

h. Award Plaintiffs' costs of suit and reasonable attorneys' fees and expenses pursuant to any applicable law; and

i. Award such additional relief as the interests of justice may require.

DATED: October 27th, 2026.

Respectfully submitted,

**DAN RAYFIELD**
Attorney General for the State of Oregon

By: <u>*s/ Leanne Hartmann*</u>
LEANNE HARTMANN #257503
BRIAN SIMMONDS MARSHALL #196129
NOAH STEIMEL T26070601, DC #1723832
TY BAIR #251894
Senior Assistant Attorneys General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tel (971) 673-1880
Fax (971) 673-5000
Leanne.Hartmann@doj.oregon.gov
Brian.S.Marshall@doj.oregon.gov
Noah.Steimel@doj.oregon.gov
Ty.Bair@doj.oregon.gov

*Counsel for State of Oregon*

**KWAME RAOUL**
Attorney General for the State of Illinois

By: <u>*s/ Katharine Roller*</u>
Cara Hendrickson
*Executive Deputy Attorney General*
R. Henry Weaver
Michelle Petersen
*Public Interest Counsel*
Katharine Roller
*Complex Litigation Counsel*
Gretchen Helfrich
*Deputy Chief, Special Litigation Bureau*
Office of the Illinois Attorney General
115 S. LaSalle St.,
Chicago, IL 60603
312-814-3000
Cara.Hendrickson@ilag.gov
Robert.Weaver@ilag.gov
Michelle.Petersen@ilag.gov
Katharine.Roller@ilag.gov
Gretchen.Helfrich@ilag.gov

*Counsel for State of Illinois*

**KRISTIN K. MAYES**
Attorney General for the State of Arizona

By: *s/ Syreeta A. Tyrell*
Syreeta A. Tyrell
Senior Litigation Counsel
2005 North Central Avenue
Phoenix, Arizona 85004
Phone: (602) 542-3333
Syreeta.Tyrell@azag.gov
ACL@azag.gov

*Counsel for State of Arizona*

**ROB BONTA**
Attorney General for the State of California

By: *s/ Quincy P. Vien*
BRIAN D. WESLEY
Supervising Deputy Attorney General
QUINCY P. VIEN
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013-1230
Telephone: (213) 269-6776
Fax: (916) 731-2144
Quincy.Vien@doj.ca.gov

*Counsel for State of California*

**PHIL WEISER**
Attorney General of Colorado

By: *s/ Gabe Podesta*
Gabe Podesta
*Senior Assistant Attorney General*
1300 Broadway, 10th Fl.
Denver, CO 80203
(720) 508-6000
gabe.podesta@coag.gov

*Counsel for State of Colorado*

**KATHLEEN JENNINGS**
Attorney General of Delaware

By: *s/ Ian R. Liston*
IAN R. LISTON
*Director of Impact Litigation*
VANESSA L. KASSAB
*Deputy Attorney General*
ANURADHA SIVARAM
*Assistant Attorney General*
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
302-683-8899
Ian.Liston@delaware.gov

*Counsel for State of Delaware*

**BRIAN L. SCHWALB**
Attorney General for the District of Columbia

EMMA SIMSON
ELIZA H. SIMON
Senior Counsels to the Attorney General

By: *s/ Mitchell P. Reich*
MITCHELL P. REICH
Senior Counsel to the Attorney General
Office of the Attorney General for the District of Columbia
400 Sixth Street, NW
Washington, D.C. 20001
(202) 279-1261
mitchell.reich@dc.gov

*Counsel for District of Columbia*

**AARON M. FREY**
Attorney General for the State of Maine

By: *s/ Katherine W. Thompson*
Katherine W. Thompson
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME 04333
Tel.: 207-626-8455
Fax: 207-287-3145
Kate.thompson@maine.gov

*Counsel for State of Maine*

**ANTHONY G. BROWN**
Attorney General of Maryland

By: *s/ Keith M. Jamieson*
Keith M. Jamieson
*Assistant Attorneys General*
Office of the Attorney General
200 Saint Paul Place
Baltimore, Maryland 21202
(410) 576-6960
kjamieson@oag.maryland.gov

*Counsel for State of Maryland*

**ANDREA JOY CAMPBELL**
Attorney General of Massachusetts

By: *s/ Savannah Arguello*
Savannah Arguello
*Assistant Attorney General*
Nita K. Klunder
*State Trial Counsel*
Office of the Attorney General
One Ashburton Place, 20th Floor
Boston, MA 02108
(617) 963-2394
Nita.Klunder@mass.gov
Sav.Arguello@mass.gov

*Counsel for Commonwealth of Massachusetts*

**DANA NESSEL**
Attorney General for the State of Michigan

By: *s/ Daniel J. Ping*
Daniel J. Ping
Neil Giovanatti
Assistant Attorneys General
Michigan Department of Attorney General
525 W. Ottawa St.
Lansing, MI 48909
(517) 241-1050
PingD@michigan.gov
GiovanattiN@michigan.gov

*Counsel for State of Michigan*

**KEITH ELLISON**
Attorney General for the State of Minnesota

By: *s/ Lindsey E. Middlecamp*
Lindsey E. Middlecamp
Special Counsel, Rule of Law
445 Minnesota Street, Suite 600
St. Paul, Minnesota, 55101
(651) 300-0711
Lindsey.middlecamp@ag.state.mn.us

*Counsel for State of Minnesota*

**AARON D. FORD**
Attorney General of Nevada

By: *s/ K. Brunetti Ireland*
K. Brunetti Ireland
Chief of Special Litigation
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
kireland@ag.nv.gov

*Counsel for State of Nevada*

**JENNIFER DAVENPORT**
Attorney General of New Jersey

By: *s/ Cory Fedorowich*
Corey Fedorowich
*Deputy Attorney General*
New Jersey Office of Attorney General
25 Market St, 8th Floor
Trenton, NJ 08611
(609) 940-7933
Corey.Fedorowich@law.njoag.gov

*Counsel for State of New Jersey*

**RAÙL TORREZ**
New Mexico Attorney General

By: *s/ Anjana Samant*
Anjana Samant
Director, Impact Litigation
New Mexico Department of Justice
408 Galisteo Street
Villagra Building
Santa Fe, NM 87501
(505) 270-4332
ASamant@nmdoj.gov

*Counsel for State of New Mexico*

**LETITIA JAMES**
Attorney General of New York

By: *s/ Mark Ladov*
Mark Ladov
*Special Counsel*
28 Liberty St.
New York, NY 10005
(212) 416-8240
Mark.ladov@ag.ny.gov

*Counsel for State of New York*

**JEFF JACKSON**
Attorney General of North Carolina

**LAURA HOWARD**
Chief Deputy Attorney General

By: *s/ Hannah Bloom*
Hannah Bloom
*Chief Deputy Fellow*
Daniel P. Mosteller
*Associate Deputy Attorney General*
North Carolina Department of Justice
PO Box 629
Raleigh, NC 27602
919-716-6026
hbloom@ncdoj.gov
dmosteller@ncdoj.gov

*Counsel for State of North Carolina*

**PETER F. NERONHA**
Attorney General of Rhode Island

By: *s/ Michael B. Collins*
Michael B. Collins
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400
mcollins@riag.ri.gov

*Counsel for State of Rhode Island*

**JAY JONES**
Attorney General of the Commonwealth of Virginia

By: *s/ Megan C. Keenan*
Megan C. Keenan
Deputy Solicitor General
202 North Ninth Street
Richmond, Virginia 23219
(804) 997-5222
mkeenan@oag.state.va.us

*Counsel for Commonwealth of Virginia*

**NICHOLAS W. BROWN**
Attorney General of Washington

By: *s/ Lucy Wolf*
LUCY WOLF, WSBA #59028
Assistant Attorney General
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104
206-464-7744
lucy.wolf@atg.wa.gov

*Counsel for State of Washington*

**JOSHUA L. KAUL**
Attorney General of Wisconsin

By: *s/ Lewis W. Beilin*
Lewis W. Beilin
Assistant Attorney General
Wisconsin Department of Justice
17 West Main Street
Post Office Box 7857
Madison, WI 53707-7857
(608) 266-3076
Lewis.Beilin@wisdoj.gov

*Counsel for State of Wisconsin*

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

State of Oregon, et al.

**(b)** County of Residence of First Listed Plaintiff: Marion County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Leanne Hartmann, Oregon Department of Justice,
100 SW Market Street, Portland, OR 97201, (971) 673-1880

## DEFENDANTS

Scott Bessent, et al.

County of Residence of First Listed Defendant: ____________
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [X] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [X] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
Violations of the APA, 5 U.S.C. § 706; Violation of the Separation of Powers and Take Care Clause of the U.S. Constitution

Brief description of cause: Defendants exceed statutory authority, and acted contrary to law, arbitrary and capricious in IFR and final rule; defendants violated U.S. Constitution

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [ ] Yes [X] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ____________ DOCKET NUMBER ____________

DATE: October 27, 2026

SIGNATURE OF ATTORNEY OF RECORD: s/ Leanne Hartmann

**FOR OFFICE USE ONLY**

RECEIPT # ________ AMOUNT ________ APPLYING IFP ________ JUDGE ________ MAG. JUDGE ________

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Oregon

State of Oregon, et al.

*Plaintiff(s)*

v.

Scott Bessent, et al.

*Defendant(s)*

Civil Action No. 6:26-cv-2359

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Scott Bessent, in his official capacity as
Secretary of the Treasury
1500 Pennsylvania Avenue, NW
Washington, DC 20220

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Leanne Hartmann
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: ____________________

____________________________________
*Signature of Clerk or Deputy Clerk*

Civil Action No.

## PROOF OF SERVICE

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))***

This summons for *(name of individual and title, if any)* ____________________
was received by me on *(date)* ____________ .

❒ I personally served the summons on the individual at *(place)* ____________________
____________________ on *(date)* ____________ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* ____________
____________________ , a person of suitable age and discretion who resides there,
on *(date)* ____________ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* ____________________ , who is
designated by law to accept service of process on behalf of *(name of organization)* ____________
____________________ on *(date)* ____________ ; or

❒ I returned the summons unexecuted because ____________________ ; or

❒ Other *(specify)*:

My fees are $ ________ for travel and $ ________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ____________

____________________
*Server's signature*

____________________
*Printed name and title*

____________________
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Oregon

State of Oregon, et al.

*Plaintiff(s)*

v.

Scott Bessent, et al.

*Defendant(s)*

Civil Action No. 6:26-cv-2359

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* United States Department of the Treasury
1500 Pennsylvania Avenue, NW
Washington, DC 20220

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Leanne Hartmann
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: ____________________

____________________
*Signature of Clerk or Deputy Clerk*

Civil Action No.

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))***

This summons for *(name of individual and title, if any)* ______________________________
was received by me on *(date)* ______________ .

❒ I personally served the summons on the individual at *(place)* ______________________
______________________________ on *(date)* ______________ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* ______________
______________________, a person of suitable age and discretion who resides there,
on *(date)* ____________ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* __________________________ , who is
designated by law to accept service of process on behalf of *(name of organization)* ______________
______________________________ on *(date)* ______________ ; or

❒ I returned the summons unexecuted because __________________________ ; or

❒ Other *(specify)*:

My fees are $ ________ for travel and $ ________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ______________

______________________________
*Server's signature*

______________________________
*Printed name and title*

______________________________
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Oregon

| | |
|---|---|
| State of Oregon, et al.<br>*Plaintiff(s)*<br>v.<br>Scott Bessent, et al.<br>*Defendant(s)* | Civil Action No. 6:26-cv-2359 |

**SUMMONS IN A CIVIL ACTION**

To: *(Defendant's name and address)* Financial Crimes Enforcement Network
P.O. Box 39
Vienna, Virginia 22183

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Leanne Hartmann
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: ____________________

____________________
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))***

This summons for *(name of individual and title, if any)* ____________________
was received by me on *(date)* __________ .

❐ I personally served the summons on the individual at *(place)* ____________________
____________________ on *(date)* __________ ; or

❐ I left the summons at the individual's residence or usual place of abode with *(name)* __________
____________________ , a person of suitable age and discretion who resides there,
on *(date)* __________ , and mailed a copy to the individual's last known address; or

❐ I served the summons on *(name of individual)* ____________________ , who is
designated by law to accept service of process on behalf of *(name of organization)* __________
____________________ on *(date)* __________ ; or

❐ I returned the summons unexecuted because ____________________ ; or

❐ Other *(specify)*:

My fees are $ __________ for travel and $ __________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: __________

____________________
*Server's signature*

____________________
*Printed name and title*

____________________
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Oregon

| | | |
|---|---|---|
| State of Oregon, et al.<br>*Plaintiff(s)*<br>v.<br>Scott Bessent, et al.<br>*Defendant(s)* | ) | Civil Action No. 6:26-cv-2359 |

**SUMMONS IN A CIVIL ACTION**

To: *(Defendant's name and address)* Jenna Casanova, in her official capacity as Acting Director of the Financial Crimes Enforcement Network
P.O. Box 39
Vienna, Virginia 22183

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Leanne Hartmann
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: ______________________

______________________
*Signature of Clerk or Deputy Clerk*

Civil Action No.

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))***

This summons for *(name of individual and title, if any)* ____________________
was received by me on *(date)* ____________ .

❐ I personally served the summons on the individual at *(place)* ____________________
____________________ on *(date)* ____________ ; or

❐ I left the summons at the individual's residence or usual place of abode with *(name)* ____________
____________________ , a person of suitable age and discretion who resides there,
on *(date)* ____________ , and mailed a copy to the individual's last known address; or

❐ I served the summons on *(name of individual)* ____________________ , who is
designated by law to accept service of process on behalf of *(name of organization)* ____________
____________________ on *(date)* ____________ ; or

❐ I returned the summons unexecuted because ____________________ ; or

❐ Other *(specify)*:

My fees are $ ________ for travel and $ ________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ____________

____________________
*Server's signature*

____________________
*Printed name and title*

____________________
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Oregon

State of Oregon, et al.

*Plaintiff(s)*

v.

Scott Bessent, et al.

*Defendant(s)*

Civil Action No. 6:26-cv-2359

**SUMMONS IN A CIVIL ACTION**

To: *(Defendant's name and address)* Todd Blanche, in his official capacity as
Attorney General of the United States
950 Pennsylvania Avenue, NW
Washington, DC 20530

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Leanne Hartmann
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: ____________________

____________________
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))***

This summons for *(name of individual and title, if any)* ______________________

was received by me on *(date)* ______________ .

❒ I personally served the summons on the individual at *(place)* ______________________

______________________ on *(date)* ______________ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* ______________

______________________ , a person of suitable age and discretion who resides there,

on *(date)* ______________ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* ______________________ , who is designated by law to accept service of process on behalf of *(name of organization)* ______________

______________________ on *(date)* ______________ ; or

❒ I returned the summons unexecuted because ______________________ ; or

❒ Other *(specify)*:

My fees are $ ________ for travel and $ ________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ______________

______________________
*Server's signature*

______________________
*Printed name and title*

______________________
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Oregon

State of Oregon, et al.

*Plaintiff(s)*

v.

Scott Bessent, et al.

*Defendant(s)*

Civil Action No. 6:26-cv-2359

**SUMMONS IN A CIVIL ACTION**

To: *(Defendant's name and address)* Markwayne Mullin, in his official capacity
as Secretary of Homeland Security
2707 Martin Luther King Jr Ave SE
Washington, DC 20528

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Leanne Hartmann
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: ____________________

____________________
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))***

This summons for *(name of individual and title, if any)* ______________________

was received by me on *(date)* ______________ .

❒ I personally served the summons on the individual at *(place)* ______________________

______________________ on *(date)* ______________ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* ______________

______________________ , a person of suitable age and discretion who resides there,

on *(date)* ______________ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* ______________________ , who is

designated by law to accept service of process on behalf of *(name of organization)* ______________

______________________ on *(date)* ______________ ; or

❒ I returned the summons unexecuted because ______________________ ; or

❒ Other *(specify)*:

My fees are $ __________ for travel and $ __________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ______________

______________________

*Server's signature*

______________________

*Printed name and title*

______________________

*Server's address*

Additional information regarding attempted service, etc: